RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

866

2005 JUL - 9 P 3: 12

|                                          |                                    |
|------------------------------------------|------------------------------------|
| Inline Connection Corporation,           |                                    |
| Plaintiff,                               |                                    |
| v.                                       | Civil Action No. 2:05CV205         |
| Verizon Internet Services, Inc., et al., |                                    |
| Defendants.                              |                                    |

FILED

DEC 1 4 2005

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION**
**TO STAY SUBSTANTIVE DISCOVERY PENDING RESOLUTION**
**OF THE THRESHOLD VENUE AND JURISDICTIONAL MOTIONS**

Inline's opposition to the Defendants' motion to stay discovery temporarily in order to preserve the status quo while the threshold motions to transfer and to dismiss for lack of personal jurisdiction are resolved ignores the critical facts concerning the co-pending Delaware actions upon which both the threshold motions and the motion to stay are based. Inline does not mention, and thus effectively concedes, that:

- Inline originally sued Verizon Communications Inc., the ultimate parent of the Defendants in this case, <u>in Delaware</u> in June 2002 on the very same patents; but voluntarily dismissed when it learned it had named the wrong party without ever attempting to amend its complaint.

- Inline <u>consented</u> to trial before Magistrate Judge Thynge in the Delaware actions against AOL and Earthlink, and has been litigating the very same patents and very same issues before Judge Thynge for the last three years.

- During the last three years, Judge Thynge has heard and resolved numerous discovery disputes (Exhibit A at 1-2[1]), overseen the taking of dozens of depositions (*id.* at 3-4), supervised more than 20 separate discovery responses and

---

[1] Exhibit A contains excerpts from the docket sheet in the Delaware actions grouped into relevant categories.

*36*

supplementations by Inline (*id*. at 5-6), received extensive written memoranda, containing Inline's judicial admissions, concerning claim construction, infringement and patent validity (*id*. at 7-10), and issued three detailed written opinions construing the claims and granting partial summary judgment of non-infringement.[2]

- Although Inline has had full and complete access to all of the discovery, pleadings, depositions and declarations from the Delaware actions before Judge Thynge, it has refused Defendants' request to make those same materials (most of which are cloaked under Inline's overbroad confidentiality designations) immediately available in this case.

Accordingly, Defendants motion for temporary stay of discovery pending resolution of the threshold venue and jurisdictional motions, which is consistent with this Court's Pretrial and Scheduling Orders, must be considered and addressed in the unique factual circumstances of this case. The issues presented are not merely ones of procedural efficiency, but also involve matters of basic fairness as well as prevention of inappropriate forum shopping.

**I.    This Court's Pretrial And Scheduling Orders Are Expressly "Subject To" The Pending Threshold Venue And Jurisdictional Motions.**

Inline's opposition (pp. 2-4) incorrectly suggests that the Court's June 3, 2005 Rule 26(f) Pretrial Order and its June 24, 2005 Rule 16(b) Scheduling Order prohibit any stay of substantive discovery pending resolution of the threshold transfer and personal jurisdiction motions. In fact, both orders recognize the pendency of the threshold motions and their potential impact on future proceedings, and are "subject to" those pending motions.[3]

Defendants have done everything possible to have the threshold transfer and jurisdictional motions decided without delay. Once it was learned that Judge Morgan was unavailable for a

---

[2] Judge Thynge written opinions are reproduced as Exhibits D, E and F to Defendants' May 31, 2005 Transfer Motion.

[3] The June 3, 2005 Pretrial Order, entered three days after the threshold transfer and jurisdictional motions were filed, states that it is "[s]ubject to any special appearance, questions of jurisdiction, or other motions now pending …" Likewise, the June 24, 2005 Scheduling Order, entered after the threshold motions had been fully briefed, states that it is "[s]ubject to any motions now pending …"

hearing until after August 15, 2005, Defendants promptly requested that, because of their critical importance, the threshold motions be decided on papers. In the alternative, Defendants requested referral of the motions to the Magistrate Judge for prompt review and recommendation. *See* June 20, 2005 letter from R. McFarland to E. Paret (Exhibit B).

By contrast, Inline's filing of overbroad boilerplate discovery (consisting of 2,100 document requests and 300 interrogatories)[4] is a clear attempt to present the Court with a *fait accompli* and thereby preempt substantive consideration of the Defendants' fully-briefed motions. As discussed in Defendants' opening memorandum (pp. 5-6), there is extensive case law authority – which Inline does not dispute – confirming this Court's broad power to prevent such unilateral preemptive action and preserve the status quo while the compelling threshold jurisdictional and venue motions are resolved. There is nothing in the Court's Pretrial Order and Scheduling Order to the contrary.

**II.    It Would Be Burdensome And Wasteful Of Judicial Resources For This Court To Involve Itself In Preliminary Discovery Issues Until The Threshold Motions Are Decided.**

Because of the three year pendency of the Delaware actions, which include Inline's judicial admissions and Judge Thynge's rulings and opinions, discovery in this case does not take place on a blank slate. Indeed, one of the key reasons supporting transfer is that the Delaware court,

---

[4] Inline's assertion that its initial discovery is "appropriate" and consists merely of 12 interrogatories and 84 document requests to each of the 25 individual defendants (Opp. 5-6) is belied by the discovery that was actually served. The documents requests (*see* Exhibit C for one example) are word processor-generated "catchall" requests, with no attempt to tailor them to any individual defendant, to focus on the specific claims and limited ADSL services actually at issue, or to take into account Judge Thynge's rulings and Inline's own judicial admissions in the Delaware actions. In effect, the requests call for production of every document that has any connection to the open-ended category of so-called "DSL", irrespective of any relevance to the patent claims and splitterless ADSL services actually at issue, and would require production of millions of pages of irrelevant material. *See e.g.*, Exhibit C at RFP No. 56 ("All Documents Relating To or identifying each customer or licensee of any Accused Service," encompassing every document (even monthly phone bills) concerning several million DSL subscribers).

through referral of all discovery matters to Judge Thynge, is clearly in the best position to ensure that discovery procedures in this case are not abused to generate inconsistent rulings or to allow Inline to disavow its prior judicial representations and positions. Unless and until the motion to transfer to Delaware is denied, there is no need for this Court to take on these burdens.

For example, the Delaware court already has in place a Protective Order regarding confidential information, highly sensitive business information and confidential information of third parties. The Protective Order applies to Inline, AOL and Earthlink, as well as third parties who provided documents and information in the Delaware proceedings. It would be a relatively simple matter for the Delaware court to enter an appropriate modified order in this litigation that would give the Verizon Defendants prompt access to the depositions, discovery responses, briefs and declarations submitted in the Delaware actions over the last three years. This Court, by contrast, would have to fashion difficult and complex confidentiality procedures to ensure that the Verizon Defendants are not prejudiced and get full, fair and immediate access to all of the relevant materials from the Delaware litigations. Even then, there would be a host of problems in trying to coordinate application of protective orders entered in the two separate jurisdictions so that confidential information is adequately protected while at the same time the parties are given fair and equal access.

Similarly, Inline's initial discovery requests in this case broadly encompasses all of the claims of the "Inline Patents." The patents-in-suit, however, contain a total of 139 claims, each of which contains numerous highly complex technical limitations.[5] In the Delaware actions, Inline appropriately limited its allegations of infringement to only 16 claims. Although its initial

---

[5] The 139 claims of the Inline Patents are reproduced as Exhibit B to Defendants' May 31, 2005 Transfer Motion.

discovery in this case is broadly directed to all 139 claims, Inline has not alleged that Defendants infringe each and every claim of the patents-in-suit, nor does it have any good faith basis to make such an allegation.[6] It makes no sense for this Court to become prematurely involved in focusing discovery on claims that are actually at issue, when the Delaware court has already spent three years considering and ruling on such matters.

Even when Inline specifically delineates the claims that are actually at issue, prior rulings and judicial admissions in the Delaware actions will limit the scope of the Defendants' services that might conceivably be alleged to infringe. For example, in the Delaware actions Inline represented that its infringement claims only concern so-called "splitterless" ADSL services. Indeed, Inline submitted declarations to the Delaware court expressly conceding that other types of ADSL service – *e.g.*, ADSL services that utilize splitters and ADSL services that do not share a line with analog voice capability – do not infringe any claims of the patents-in-suit. In addition, Judge Thynge ruled that ADSL services that utilize a certain piece of equipment (*i.e.*, a "DSLAM") that is installed at the local telephone company's central office do not infringe the claims of the patents-in-suit. Despite its own admission and Judge Thynge's rulings, however, Inline's discovery in this case broadly encompasses a wide variety of other open-ended "DSL services" that cannot possibly infringe any of the claims. There is no good reason for this Court to become involved in sorting out Inline's patently inconsistent positions until the transfer motion has been decided.

---

[6] Inline's assertion that it is "universal in patent litigation" (Opp. at 6) to provide claim construction for all 139 claims – the vast majority of which Inline has no good faith basis to allege infringement – is not true. To the contrary, most courts (including Chief Judge Spencer's special "Patent Case" pretrial order) require a patentholder to identify the specific claims at issue and limit claim construction proceedings solely to those claims.

### III.    Defendants' Stay Motion Is Not Concerned Merely With Procedural "Efficiencies," But Raises Issues Of Basic Fairness And Due Process.

Inline's assertion that a brief stay of discovery while the threshold motions are resolved "would not result in any efficiency or preserve judicial resources" (Opp. 5) ignores everything that has gone on during the last three years in the Delaware actions. Instead, Inline seeks to make discovery an unfair "one-way street" – *i.e.*, obtaining broad discovery from Defendants, while simultaneously refusing to produce all of Inline's own "confidential" materials and testimony from the Delaware actions – and to relitigate anew all of the legal issues already decided and/or now being addressed by Judge Thynge.

For example, claim construction of a patent is an issue of law that defines the scope of relevant factual discovery. Inline has already litigated the claim construction issues before Judge Thynge. *See* Exhibit A at 7-8 (documenting extensive briefing, hearings and decisions regarding the "Markman" claim construction issues); *see also* Exhibits D, E and F to Defendants' May 31, 2005 Transfer Motion (Judge Thynge's opinions construing claims and applying claim construction). Inline's initial discovery requests, however, make clear that Inline seeks to relitigate these issues anew in this case and to induce this Court into issuing inconsistent judicial rulings vis-à-vis the Delaware court.

Similarly, Judge Thynge has already resolved numerous disputes in the Delaware actions concerning the appropriate scope and limitations of discovery. *See* Exhibit A at 1-2. She has also entered a Protective Order which Inline has invoked to cloak its own documents and inventor testimony in secrecy and to seal off many of the parties substantive briefs in the Delaware actions.

In these circumstances, absent a temporary stay of substantive discovery until the threshold venue motion is decided, the Defendants will be enormously prejudiced as Inline continues to

hold back all of the depositions, discovery, declarations and substantive briefs from Delaware

actions, deny Defendants access to the critical materials developed before Judge Thynge over the

last three years, and prevent Defendants from having a fair opportunity to prepare their defense.

## IV.    Inline's Opposition Confirms Its Improper Forum Shopping.

Inline's protestation that it has not engaged in "forum-shopping" to avoid adverse rulings

from the Delaware actions, and instead filed in Virginia solely "because of the parties' physical

presence in, and close ties with, this forum" (Opp. 7), strains credibility.  The undisputed facts

are clear:  (a) Inline originally sued AOL, Earthlink and Verizon Communications Inc. in

Delaware in 2002; (b) after dropping Verizon Communications Inc., Inline has been litigating the

patents-in-suit in Delaware for more than three years; (c) Inline consented to trial before Judge

Thynge; and (d) Judge Thynge issued decisions on claim construction that were clearly adverse

to Inline and which inevitably resulted in partial summary judgment of non-infringement.  It was

in this context that Inline fled the Delaware jurisdiction and refiled against Verizon in Virginia,

hoping to use this Court's accelerated docket to nullify Judge Thynge's decisions and rulings.

Indeed, Inline's opposition makes clear that, no matter what happens with the pending

transfer motion, it will do everything it can to foreclose further oversight and involvement by

Judge Thynge.  *See* Opp. at 8 &n.5 ("this case will not be assigned to Magistrate Judge Thynge if

it were transferred to Delaware" because "[a]ssignment to a magistrate judge requires consent of

all parties") (emphasis in original).  Inline, however, cannot evade Judge Thynge's expertise and

intimate familiarity with the patents-in-suit so easily.  If the case is transferred to Delaware, the

court can assign the litigation to Judge Thynge for purposes of pretrial discovery, where Inline

will not be able to run away from its prior admissions.  In addition, the Delaware court does not

need Inline's consent to refer the claim construction issues to Judge Thynge for review and

recommendation in order to take full advantage of Judge Thynge's expertise concerning the

patents-in-suit and her knowledge of Inline's prior representations and positions with respect thereto.

In sum, the Court should temporarily stay merits discovery until the threshold transfer motion is decided in order to prevent inappropriate forum shopping. If the case is transferred to Delaware – where Inline brought (and dismissed) this case against Verizon Communications Inc. more than three years ago – it is highly likely that Judge Thynge will be able to supervise all further substantive discovery, ensure consistency in the legal positions taken by Inline, and help avoid inconsistent judicial rulings.

Respectfully submitted,

By: _____

Robert W. McFarland
MCGUIRE WOODS LLP
World Trade Center
101 West main Street, Suite 9000
Norfolk, Virginia 23510
Telephone:  757.640.3716
Facsimile:  757.640.3966

Andrew G. McBride
John B. Wyss
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Brian C. Riopelle
MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone:  804.775.1084
Facsimile:  804.698.2150

Dated: July 8, 2005                      Counsel for Verizon Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2005, a true copy of the foregoing ***Defendants'***

***Reply Memorandum In Support Of Their Motion To Stay Substantive Discovery Pending***

***Resolution Of The Threshold Venue And Jurisdictional Motions*** was sent to plaintiff's

counsel, in the manner indicated, upon:

  Michael K. Plimack, Esq.  (Served electronically and by overnight delivery)
  Alexander L. Brainerd, Esq.
  Alyssa T. Koo
  HELLER EHRMAN LLP
  333 Bush Street
  San Francisco, California 94104
  Alexander.Brianerd@hellerehrman.com
  Michael.Plimack@hellerhrman.com
  Alyssa.Koo@hellerehrman.com

  C. Joël Van Over, Esq.  (Served electronically and by overnight delivery)
  Robert C. Bertin, Esq.
  SWIDLER BERLIN LLP
  3000 K Street, NW
  Suite 300
  Washington, DC 20007-5116
  cjvanover@swidlaw.com
  rcbertin@swidlaw.com

  Stephen E. Noona, Esq.  (Served via hand delivery)
  Kaufman & Canoles, PC
  150 W. Main Street
  Suite 2100
  Norfolk, Virginia 23510
  senoona@kaufcan.com

Exhibit A

| Filed | # | Docket Text | Type |
|---|---|---|---|
| 12/2/2002 | 36 | Letter from Donald Parsons, Esq. to Judge Thynge re discovery dispute. (ntl) (Entered: 12/02/2002) | Discovery Disputes |
| 12/2/2002 | 37 | Letter from Frederick Cottrell, Esq. to Judge Thynge re discovery dispute. (ntl) (Entered: 12/02/2002) | Discovery Disputes |
| 12/2/2002 | | Tele-conference held; rprtr. Jennifer Guy (Hawkins) (ntl) (Entered: 12/02/2002) | Discovery Disputes |
| 12/3/2002 | 38 | ORDER: the transcript of the 12/2/02 teleconference shall serve as the Order of the Court regarding D.I. 36-37; ( signed by Judge Mary P. Thynge ) copies to: cnsl. (ntl) (Entered: 12/03/2002) | Discovery Disputes |
| 12/11/2002 | 39 | TRANSCRIPT filed [0-0] telephone conference for dates of 12/2/02 (ntl) (Entered: 12/11/2002) | Discovery Disputes |
| 1/10/2003 | 54 | Letter MOTION by AOL Time Warner Inc., America Online Inc. for Protective Order Opening brief due 1/24/03 re: [54-1] motion (kjk) (Entered: 01/13/2003) | Discovery Disputes |
| 1/10/2003 | 55 | Letter MOTION by Inline Connection for Protective Order Opening brief due 1/24/03 re: [55-1] motion (kjk) (Entered: 01/13/2003) | Discovery Disputes |
| 1/16/2003 | 61 | ORDER ( signed by Judge Mary P. Thynge ) that the transcript of the telephone conference held on January 15, 2003, shall serve as the Order of the Court regarding D.I. 54, 55, and the letter dated January 14, 2003 from Donald L. Parsons, Jr. and the letter dated January 14, 2003 from Frederick L. Cottrell, III.; copies to: cnsl (rbe) (Entered: 01/16/2003) | Discovery Disputes |
| 3/20/2003 | 88 | ORDER, that the tanscript of the 3/19/03 teleconference shall serve as the Order of the Court , set Telephone Conference for 3:00 pm on 4/9/03 ( signed by Judge Mary P. Thynge ) copies to: cnsl (kjk) (Entered: 03/21/2003) | Discovery Disputes |
| 3/26/2003 | 91 | TRANSCRIPT filed for dates of 3/19/03 teleconference (kjk) (Entered: 03/26/2003) | Discovery Disputes |
| 4/4/2003 | 96 | SEALED LETTER by defendants to Judge Thynge; stored in Clerk's office (ljj) (Entered: 04/10/2003) | Discovery Disputes |
| 4/4/2003 | 97 | Letter by John L. Reed, Esq. on behalf of EarthLink, Inc. to Judge Thynge, re addressing the discovery disputes that will be presented to the Court during the 4/9/03 hrg. (ljj) (Entered: 04/10/2003) | Discovery Disputes |
| 4/7/2003 | 98 | Letter by Julia Heaney, Esq. on behalf of pltf. to Judge Thynge, re error in 4/4/03 letter - insert enclosed (ljj) (Entered: 04/10/2003) | Discovery Disputes |
| 4/9/2003 | | Tele-conference held; Judge Thynge presiding; Ct. rptr. Karen McCloski of Hawkins Reporting Services; re discovery disputes (ljj) (Entered: 04/10/2003) | Discovery Disputes |
| 4/10/2003 | 99 | Letter dated 4/10/03 to Judge Thynge by Julia Heaney enclosing documents for in-camera review. (rwc) (Entered: 04/10/2003) | Discovery Disputes |
| 4/10/2003 | | Tele-conference held; Thynge, U.S. Magistrate presiding; Court Reporter Brian Gaffigan present; re: scheduling (kjk) (Entered: 04/24/2003) | Discovery Disputes |
| 4/11/2003 | 100 | SEALED Letter by Inline Connection (kjk) (Entered: 04/14/2003) | Discovery Disputes |
| 4/11/2003 | 101 | ORDER, that the transcreipts of the teleconferneces held on 4/9/03 and 4/10/03 shall serve as order of the court ( signed by Judge Mary P. Thynge ) copies to: cnsl (kjk) (Entered: 04/14/2003) | Discovery Disputes |


EXHIBIT
A

| Filed | # | Docket Text | Type |
|---|---|---|---|
| 4/23/2003 | 117 | STIPULATION with proposed order, pltf. to have until 4/30/03 to file Motion for Reconsideration of ruling on waiver of privileged emails. (maw) (Entered: 04/25/2003) | Discovery Disputes |
| 5/7/2003 | 129 | MOTION by Inline Connection for Reargument and reconsideration of the April 9th ruling that Inline waived the attorney client privilege Answer Brief due 5/21/03 re: [129-1] motion (kjk) (Entered: 05/09/2003) | Discovery Disputes |
| 5/7/2003 | 130 | MOTION by Inline Connection for reargument and reconsideration of the courts ruling during the April 9th, 2003 teleconference that Inline waived the attorney client privilege Answer Brief due 5/21/03 re: [130-1] motion (kjk) (Entered: 05/09/2003) | Discovery Disputes |
| 5/7/2003 | 131 | Opening Brief Filed by Inline Connection [129-1] motion for Reargument and reconsideration of the April 9th ruling that Inline waived the attorney client privilege (kjk) (Entered: 05/09/2003) | Discovery Disputes |
| 5/7/2003 | 132 | Opening Brief Filed by Inline Connection [130-1] motion for reargument and reconsideration of the courts ruling during the April 9th, 2003 teleconference that Inline waived the attorney client privilege (kjk) (Entered: 05/09/2003) | Discovery Disputes |
| 6/18/2003 | 156 | TRANSCRIPT filed for 5/27/03 tele-conf. before Judge Thynge (re: discovery disputes). (bkb) Modified on 07/15/2003 (Entered: 06/20/2003) | Discovery Disputes |
| 7/18/2003 | | In-chambers conference held, re discovery dispute; Judge Thynge presiding; Ct. Rptr. Heather Alford of Hawkins Reporting Services (ljj) (Entered: 07/21/2003) | Discovery Disputes |
| 10/15/2003 | 217 | Letter by plaintiff Inline Connection re: discovery issues (kjk) (Entered: 10/23/2003) | Discovery Disputes |
| 10/27/2003 | 223 | Letter by defendant's AOL Time Warner and Earthlink, Inc.; re: response to Inline's letter regarding discovery issues (kjk) Modified on 10/28/2003 (Entered: 10/28/2003) | Discovery Disputes |
| 6/25/2004 | 282 | ORDER denying [277-1] motion for Sanctions and deciding the discovery disputes contained in letters dated June 22, 2004 (D.I. 280 and 281) shall serve as the Order of this Court; Local counsel are reminded of their obligation to inform all out of state counsel of this order. ( signed by Judge Mary P. Thynge ) copies to: counsel (rbe) (Entered: 06/25/2004) | Discovery Disputes |

| Filed | # | Docket Text | Type |
|---|---|---|---|
| 12/17/2002 | 41 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of Robert M. Domnitz on 1/3/03 at 9:30 a.m. (rwc) (Entered: 12/18/2002) | Depositions |
| 12/20/2002 | 44 | NOTICE by AOL Time Warner Inc., America Online Inc., to take deposition of Bill Woodward on 1/7/03 at 9:30 a.m. (rwc) (Entered: 12/23/2002) | Depositions |
| 12/20/2002 | 45 | NOTICE by AOL Time Warner Inc., America Online Inc., to take deposition of Robert Kanyuck on 1/6/03 at 9:30 a.m. (rwc) (Entered: 12/23/2002) | Depositions |
| 12/27/2002 | 47 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of Suite Technology Systems Network on 1/10/03 at 9:30 a.m. (rwc) (Entered: 12/30/2002) | Depositions |
| 12/30/2002 | 48 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of Terk Technologies Inc. on 1/9/03 at 9:30 a.m. (rwc) (Entered: 01/02/2003) | Depositions |
| 1/6/2003 | 49 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of Technical Collaborative, Inc. on 1/10/03 at 9:30 a.m. (rwc) (Entered: 01/07/2003) | Depositions |
| 1/15/2003 | 57 | NOTICE of Deposition of Fish & Richardson P.C. filed by Defendant Earthlink (kjk) (Entered: 01/15/2003) | Depositions |
| 1/15/2003 | 58 | NOTICE of DEPOSITION of Lagerman & Associates, P.C. filed by Defendant Earthlink (kjk) (Entered: 01/15/2003) | Depositions |
| 1/15/2003 | 59 | NOTICE of DEPOSITION of Hale and Dorr filed by defendant Earthlink (kjk) (Entered: 01/15/2003) | Depositions |
| 1/15/2003 | 60 | NOTICE of DEPOSITION of Sughrue Mion filed by Defendant Earthlink (kjk) (Entered: 01/15/2003) | Depositions |
| 3/5/2003 | 74 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of David Goodman on 3/19/03 at 9:30 am (maw) Modified on 03/10/2003 (Entered: 03/10/2003) | Depositions |
| 3/5/2003 | 75 | NOTICE by AOL Time Warner Inc., America Online Inc. to take 30(B)(6) deposition of Inline Connection Corp. on 3/19/03 at 9:30 am (maw) (Entered: 03/10/2003) | Depositions |
| 3/18/2003 | 84 | NOTICE of Deposition of Terry G. Mahn by defendant Earthlink, Inc. (kjk) (Entered: 03/21/2003) | Depositions |
| 3/18/2003 | 85 | NOTICE of Deposition of Daniel Marz by defendant Earthlink, Inc. (kjk) (Entered: 03/21/2003) | Depositions |
| 3/20/2003 | 89 | NOTICE by Inline Connection to take deposition of Eartlink, Inc. on 4/2-4/4/03 (kjk) (Entered: 03/21/2003) | Depositions |
| 3/20/2003 | 90 | NOTICE by Inline Connection Corporation to take deposition of AOL Time Warner and America Online on 3/26-3/28/03 at 9:30 am (kjk) (Entered: 03/21/2003) | Depositions |
| 4/16/2003 | 108 | NOTICE by Inline Connection to take re-deposition of AOL Time Warner and America Online on 4/28/03 (kjk) (Entered: 04/24/2003) | Depositions |
| 4/16/2003 | 109 | NOTICE by Inline Connection to take deposition of Geraldine MacDonald on 4/29/03; Mark Goldstein on 4/30/03; E.G. Livaditis on 5/1/03 and Mark Pilipczuk (kjk) (Entered: 04/24/2003) | Depositions |
| 4/16/2003 | 110 | NOTICE by Inline Connection to take deposition of AOL Time Warner on 4/30/03 (kjk) (Entered: 04/24/2003) | Depositions |
| 4/18/2003 | 116 | NOTICE by Inline Connection to take deposition of Greg Collins on 4/25/03 (kjk) (Entered: 04/24/2003) | Depositions |

| Filed | # | Docket Text | Type |
|-------|---|-------------|------|
| 6/20/2003 | 157 | NOTICE by EarthLink Inc. to take deposition of Inline Connection Corp. on 6/30/03 at 9:30 a.m. (bkb) Modified on 07/15/2003 (Entered: 06/23/2003) | Depositions |
| 6/20/2003 | 158 | NOTICE by EarthLink Inc. to take deposition of David D. Goodman on 6/30/03 at 9:30 a.m. (bkb) Modified on 07/15/2003 (Entered: 06/23/2003) | Depositions |
| 6/27/2003 | 166 | NOTICE by AOL Time Warner Inc., America Online Inc. to take deposition of David D. Goodman on 7/2/03 at 9:30 a.m. (rwc) Modified on 07/15/2003 (Entered: 06/27/2003) | Depositions |
| 6/27/2003 | 167 | NOTICE by AOL Time Warner Inc., America Online Inc. to take Rule 30(b)(6) deposition of Inline Connection Corp. on 7/2/03 at 9:30 a.m. (rwc) Modified on 07/15/2003 (Entered: 06/27/2003) | Depositions |
| 12/29/2003 | 229 | NOTICE by Inline Connection to take deposition of AOL Time Warner on 1/9/04 at 9:30 am (kjk) Modified on 12/30/2003 (Entered: 12/30/2003) | Depositions |
| 12/29/2003 | 230 | NOTICE by Inline Connection to take deposition of America Online, Inc. on 2/4 thru 2/6/04 at 9:30 am (kjk) (Entered: 12/30/2003) | Depositions |
| 12/29/2003 | 231 | NOTICE by Inline Connection to take deposition of Dave Thompson on 1/15/04 at 9:30 am (kjk) (Entered: 12/30/2003) | Depositions |
| 12/29/2003 | 232 | NOTICE by Inline Connection to take deposition of Earthlink Incorporated on 1/21 thru 1/23/04 at 9:30 am (kjk) (Entered: 12/30/2003) | Depositions |

| Filed | # | Docket Text | Type |
|---|---|---|---|
| 11/8/2002 | 30 | CERTIFICATE OF SERVICE by Inline Connection re responses to 1st set of interrogs. of dfts, and response to dfts request for prod. of docs. (ntl) (Entered: 11/12/2002) | Discovery Responses |
| 11/14/2002 | 31 | CERTIFICATE OF SERVICE by Inline Connection re initial disclosures. (ntl) (Entered: 11/15/2002) | Discovery Responses |
| 11/20/2002 | 35 | CERTIFICATE OF SERVICE by Inline Connection re suppl. responses to 1st set of interrogs. of dfts. (ntl) (Entered: 11/21/2002) | Discovery Responses |
| 12/13/2002 | 40 | CERTIFICATE OF SERVICE by Inline Connection, Re: Pltf's 1st Amended Resp. to Deft's Req. for Prod., was served. (rwc) (Entered: 12/16/2002) | Discovery Responses |
| 12/18/2002 | 42 | CERTIFICATE OF SERVICE by Inline Connection, Re: Pltf's 2nd Suppl. Resp. to Interrog. (4 & 5), were served. (rwc) (Entered: 12/19/2002) | Discovery Responses |
| 1/6/2003 | 50 | CERTIFICATE OF SERVICE by Inline Connection, Re: Pltf's 1st set Interrog., were served. (rwc) (Entered: 01/07/2003) | Discovery Responses |
| 1/31/2003 | 67 | NOTICE of Service by Inline Connection re: Response to Second Set of Interrogatories (kjk) (Entered: 02/11/2003) | Discovery Responses |
| 2/25/2003 | 71 | NOTICE of Service by Inline Connection re: Plaintiff Inline Connection Corporation's Response to Defendant's Second Set of Requests for Production of Documents (kjk) (Entered: 02/28/2003) | Discovery Responses |
| 3/18/2003 | 83 | NOTICE of Service by Inline Connection Corporation's Supplemental Response to First Set of Interrogatories and Plaintiff's Response to Third Set of Interrogatories (kjk) (Entered: 03/21/2003) | Discovery Responses |
| 3/19/2003 | 86 | NOTICE of Service by Plaintif Inline Connection Corporation's Revised Supplemental Response to the First Set of Interrogatories (kjk) (Entered: 03/21/2003) | Discovery Responses |
| 3/19/2003 | 87 | NOTICE of Service by Plaintiff Inline Connection Corporation's Response to Defendant Eartlink, Inc.'s Second Set of Interrogatories ( Nos. 15 & 16 ) (kjk) (Entered: 03/21/2003) | Discovery Responses |
| 4/16/2003 | 107 | NOTICE of Service by Inline Connection Corporation's Supplemental Answers's to Earthlink, Inc.'s First and Second Set of Interrogatories and Answers to Earthlink's Third Set of Interrogatories (kjk) (Entered: 04/24/2003) | Discovery Responses |
| 4/18/2003 | 114 | NOTICE of Service by Inline Connection of Revised Supplemental Answers to Earthlink, Inc.'s First, Second and Third Set Interrogatories (kjk) (Entered: 04/24/2003) | Discovery Responses |
| 5/15/2003 | 136 | NOTICE of Service by Inline Connection's Second Supplemental Responses to Defendant Erathlink's Interrogatories Nos. 6 and 7 (kjk) (Entered: 05/15/2003) | Discovery Responses |
| 5/30/2003 | 151 | NOTICE of Service by Inline Connection's Supplemental response to Defendant's Third Set of Requests For Production of Documents (kjk) Modified on 06/05/2003 (Entered: 06/05/2003) | Discovery Responses |
| 5/30/2003 | 148 | Reply by Inline Connection to [10-2] the Second Amended Counter Claim of Defendant AOL Time Warner (kjk) Modified on 06/05/2003 (Entered: 06/05/2003) | Discovery Responses |
| 5/30/2003 | 147 | ANSWER by Inline Connection to The Second Amended Counter Claims of Defendant Earthlink, Inc. (kjk) Modified on 06/05/2003 (Entered: 06/05/2003) | Discovery Responses |

| Filed | # | Docket Text | Type |
|-------|---|-------------|------|
| 7/1/2003 | 169 | NOTICE of Service by Inline Connection re: Responses to Defendant Erathlink's Fifth Set of Interrogatories (kjk) (Entered: 07/15/2003) | Discovery Responses |
| 7/1/2003 | 171 | NOTICE of Service by Inline Connection re: Responses to AOL Time Warner Inc.'s and Americal Online Fifth Set of Interrogatories and Fourth Set of Requests For Production (kjk) (Entered: 07/15/2003) | Discovery Responses |
| 3/8/2004 | 253 | NOTICE of Service by Inline Connection Corporation's Amended Answers To Defendant Earthlink, Inc.'s Interrogatories ( Nos. 1-21 ) (kjk) (Entered: 03/15/2004) | Discovery Responses |
| 3/15/2004 | 254 | NOTICE of Service by Inline Connection Corporation's Amended Answers to Defendants AOL Time Warner and America Online (Nos. 1-21 ) (kjk) (Entered: 03/15/2004) | Discovery Responses |

| Filed | # | Docket Text | Type |
|-------|---|-------------|------|
| 6/26/2003 | | Tele-conference held before Judge Thynge re discovery dispute and extension of scheduling deadlines; reporter Triozzi (w/Hawkins Reporting Svc.) present; conference sched. for 8:00 a.m. on 7/18/03; prior to 7/18/03 conf. counsel are to meet & confer to resolve most discovery issues; counsel are to submit a joint memorandum to the Court by noon 7/17/03; initial Markman briefs are due 7/21/03; Markman response briefs are due 8/18/03. (bkb) Modified on 06/27/2003 (Entered: 06/27/2003) | Markman |
| 7/15/2003 | 176 | Joint Submission Regarding Claims Construction (kjk) (Entered: 07/17/2003) | Markman |
| 7/18/2003 | 181 | ORDER, 7/18/03 transcript to serve as Order of the Court; tutorial portion of 8/28/03 hrg to run from 9:30 - noon; Markman portion to run from 1:00 - 5:00 ( signed by Judge Mary P. Thynge ) copies to: cnsl (maw) (Entered: 07/18/2003) | Markman |
| 8/1/2003 | 183 | JOINT SUBMISSION REGARDING CLAIM CONSTRUCTION by Inline Connection, AOL Time Warner Inc., America Online Inc., EarthLink Inc. (ljj) (Entered: 08/05/2003) | Markman |
| 8/5/2003 | 184 | DECLARATION OF DAN SCHONFELD by AOL Time Warner Inc., America Online Inc., EarthLink Inc. Re: (ljj) (Entered: 08/06/2003) | Markman |
| 8/5/2003 | 185 | DECLARATION OF DAVID L. WARING by AOL Time Warner Inc., America Online Inc., EarthLink Inc. Re: (ljj) (Entered: 08/06/2003) | Markman |
| 8/5/2003 | 187 | MEMORANDUM OF LAW by AOL Time Warner Inc., America Online Inc. on Claim Construction (SEALED) (maw) (Entered: 08/06/2003) | Markman |
| 8/5/2003 | 188 | Declaration of Frederick Cottrell, III in support of DI# 187 (SEALED) (maw) (Entered: 08/06/2003) | Markman |
| 8/5/2003 | 189 | Opening Markman Brief Filed by Inline Connection (maw) (Entered: 08/06/2003) | Markman |
| 8/5/2003 | 190 | Appendix to Brief Filed by Inline Connection Appending [189-1] opening brief (maw) (Entered: 08/06/2003) | Markman |
| 8/21/2003 | 197 | Responsive Markman Brief by Inline Connection [192-1] motion for Summary Judgment - Reply Brief due 8/28/03 (kjk) (Entered: 08/22/2003) | Markman |
| 8/21/2003 | 198 | Declaration of Charles Jackson In Support of Inline' Responsive Markman Brief (kjk) (Entered: 08/22/2003) | Markman |
| 8/21/2003 | 199 | ( SEALED ) Appendix to Brief Filed by Inline Connection Appending [197-1] Responsive Markman Brief (kjk) Modified on 10/01/2003 (Entered: 08/22/2003) | Markman |
| 8/21/2003 | 200 | ( SEALED ) RESPONSE by AOL Time Warner Inc., America Online Inc., EarthLink Inc. in opposition to [197-1] Inline's Opening Markman Brief (kjk) Modified on 10/01/2003 (Entered: 08/22/2003) | Markman |
| 8/28/2003 | | Markman Hearing held; Thynge, U.S. Magistrate Judge presiding; Court Reporters Jennifer Guy and Heather Triozzi present ( Hawkins Reporting ) (kjk) (Entered: 09/03/2003) | Markman |
| 8/28/2003 | | ORAL ORDER ( during Markman ) denying [201-1] motion to Dismiss the Defendant's Joint Motion For Summary Judgment ( signed by Judge Mary P. Thynge ) Notice to all parties. (kjk) (Entered: 10/15/2003) | Markman |
| 9/12/2003 | 209 | LETTER MEMORANDUM by Inline Connection in support of Markman hearing re: clarification of claims construction terms (kjk) (Entered: 09/16/2003) | Markman |

| Filed | # | Docket Text | Type |
|---|---|---|---|
| 9/12/2003 | 210 | SUPPLEMENTAL LETTER MEMORANDUM by AOL Time Warner Inc., EarthLink Inc. in support Markman hearing with attached Federal Circuit decision (kjk) (Entered: 09/16/2003) | Markman |
| 1/27/2004 | 239 | MEMORANDUM re: claims construction ( signed by Judge Mary P. Thynge ) copies to: cnsl. (kjk) (Entered: 02/05/2004) | Markman |
| 10/14/2004 | 284 | MEMORANDUM OPINION ( signed by Judge Mary P. Thynge ) copies to: cnsl (kjk) (Entered: 10/20/2004) | Markman |
| 10/14/2004 | 285 | ORDER granting in part, denying in part [242-1] motion for Reconsideration of [239-1] The Phrase - A High Frequency Band of Frequencies Above The Highest Frequency of The Telephone Voice Band, set Telephone Conference for 10:00 am on 10/18/04 ( signed by Judge Mary P. Thynge ) copies to: cnsl (kjk) (Entered: 10/20/2004) | Markman |

| Filed | # | Docket Text | Type |
|-------|---|-------------|------|
| 8/8/2003 | 192 | MOTION by AOL Time Warner Inc., EarthLink Inc. with Proposed Order for Summary Judgment Answer Brief due 8/22/03 re: [192-1] motion (kjk) (Entered: 08/14/2003) | Summary Judgment |
| 8/8/2003 | 193 | Opening Brief Filed by AOL Time Warner Inc., EarthLink Inc. [192-1] motion for Summary Judgment - Answer Brief due 8/22/03 (kjk) (Entered: 08/14/2003) | Summary Judgment |
| 8/8/2003 | 194 | Declaration of David A. Felice in Support of Defendant's Motion For Summary Judgment (kjk) (Entered: 08/14/2003) | Summary Judgment |
| 8/22/2003 | 201 | MOTION by Inline Connection to Dismiss the Defendant's Joint Motion For Summary Judgment Answer Brief due 9/5/03 re: [201-1] motion (kjk) (Entered: 08/25/2003) | Summary Judgment |
| 8/25/2003 | 204 | RESPONSE by AOL Time Warner Inc., America Online Inc., EarthLink Inc. in opposition to [201-1] motion to Dismiss the Defendant's Joint Motion For Summary Judgment (kjk) (Entered: 08/27/2003) | Summary Judgment |
| 3/8/2004 | 250 | ( SEALED ) Declaration of Frederick L. Cottrell, III In Support of Defendants' Joint Revised Motion For Summary Judgment of Non Infringement and For Summary Judgement of Invalidity For Failure To Comply With The Written Desription Requirement (kjk) Modified on 03/15/2004 (Entered: 03/15/2004) | Summary Judgment |
| 3/8/2004 | 251 | REVISED MOTION by AOL Time Warner Inc., America Online Inc., EarthLink Inc. with Proposed Order for Summary Judgment Answer Brief due 3/22/04 re: [251-1] motion (kjk) (Entered: 03/15/2004) | Summary Judgment |
| 3/8/2004 | 252 | ( SEALED ) Opening Brief Filed by AOL Time Warner Inc., America Online Inc., EarthLink Inc. [251-1] in Support of Motion for Summary Judgment (kjk) (Entered: 03/15/2004) | Summary Judgment |
| 4/5/2004 | 256 | Declaration of Dr. Charles L. Jackson (kjk) (Entered: 04/09/2004) | Summary Judgment |
| 4/5/2004 | 257 | RESPONSE by Inline Connection in opposition to [251-1] deft.'s motion for Summary Judgment (kjk) (Entered: 04/09/2004) | Summary Judgment |
| 4/19/2004 | 260 | MOTION by Inline Connection with Proposed Order for Partial Summary Judgment of Infringement by America Online and earthlink of Asserted Claims of the '596 Answer Brief due 5/3/04 re: [260-1] motion (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/19/2004 | 261 | Opening Brief Filed by Inline Connection [260-1] motion for Partial Summary Judgment of Infringement by America Online and Earthlink of Asserted Claims of the '596, '446 and '585 patents (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/19/2004 | | ( SEALED ) Exhibits filed Volume I as to Opening Brief ( DI# 261 ) in Support of Inline's Motion For Partial Summary Judgment of Infringement by America Online and Erthlink of Asserted Claims of the '596, '446 and '585 Patents (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/19/2004 | 262 | ( SEALED ) Appendix Volume I to Brief Filed by Inline Connection Appending [261-1] opening brief in support of motion for summary judgment (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/19/2004 | 263 | ( SEALED ) Appendix Volume II to Brief Filed by Inline Connection Appending [261-1] opening brief in support of motion for summary judgment (kjk) (Entered: 04/21/2004) | Summary Judgment |

| Filed | # | Docket Text | Type |
|-------|---|-------------|------|
| 4/19/2004 | 264 | ( SEALED ) Appendix Volume III to Brief Filed by Inline Connection Appending [261-1] opening brief in support of motion for summary judgment (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/19/2004 | 265 | ( SEALED ) Declaration of Dr. Charles Jackson in support of Inlines Motion for Partial Summary Judgment ( DI# 260 ) (kjk) (Entered: 04/21/2004) | Summary Judgment |
| 4/26/2004 | 271 | Reply Brief Filed by America Online Inc., EarthLink Inc. [251-1] Revised Motion for Summary Judgment for Failure to Comply (kjk) (Entered: 04/30/2004) | Summary Judgment |
| 4/26/2004 | 272 | Appendix to Brief Filed by America Online Inc., EarthLink Inc. Appending [271-1] reply brief (kjk) (Entered: 04/30/2004) | Summary Judgment |
| 5/20/2004 | 274 | RESPONSE by America Online Inc., EarthLink Inc. in opposition to [260-1] motion for Partial Summary Judgment of Infringement by America Online and earthlink of Asserted Claims of the '596; Plaintiff's Reply brief due 6/9/04 (kjk) (Entered: 05/21/2004) | Summary Judgment |
| 6/9/2004 | 275 | RESPONSE by Inline Connection in support of [260-1] motion for Partial Summary Judgment of Infringement by America Online and Earthlink of Asserted Claims of the '596, '446 and '585 Patents (kjk) (Entered: 06/15/2004) | Summary Judgment |
| 4/13/2005 | 296 | MEMORANDUM OPINIONDefendants' revised motion for summary judgment granted in part and denied in part. Defendant Inline's motion for summary judgment with respect to "signal interface" claim element is denied. Defendants' motion for summary judgment on non-infringement under doctrine of equivalents is granted. Signed by Judge Mary Pat Thynge on 4/13/2005. (cab, ) (Entered: 04/13/2005) | Summary Judgment |
| 4/13/2005 | 297 | ORDER America Online, Inc.'s and EarthLink, Inc's revised motion for summary judgment of non-infringement of the '596 family of patents (251) is GRANTED in part and DENIED in part. Defendants motion for summary judgment of non-infringement (192) is DENIED as moot. Inline Connection Corporation's motion for summary judgment of infringement of the "signal interface" claim term of the '596 family of patents (260) is DENIED. Teleconference scheduled for Wednesday, April 20, 2005 at 8:30 AM EST to address status and future schedule. Signed by Judge Mary Pat Thynge on 4/13/2005. (cab, ) (Entered: 04/13/2005) | Summary Judgment |
| 4/27/2005 | 300 | MOTION for Reconsideration re 297 Order,,, 296 Memorandum Opinion, [America Online Inc.'s Motion For Reconsideration of the Court's April 13, 2005 Order] - filed by America Online, Inc.. (Shandler, Chad) (Entered: 04/27/2005) | Summary Judgment |

McGuireWoods LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510-1655
Phone: 757.640.3700
Fax: 757.640.3701
www.mcguirewoods.com

Robert W. McFarland
Direct: 757.640.3716

# McGUIREWOODS

Exhibit B

rmcfarland@mcguirewoods.com
Direct Fax: 757.640.3966

June 20, 2005

HAND DELIVERY

Elizabeth H. Paret, Clerk
United States District Court
600 Granby Street
Norfolk, VA 23510

> Inline Connection Corporation v. Verizon Internet Services, Inc., et al
> Civil Action No. 2:05cv205

Dear Ms. Paret:

We understand that Judge Morgan is unavailable for a hearing on certain of the defendants' motion to dismiss and motion to transfer venue until after August 15, 2005. As these are critical threshold motions that determine who will remain in the case and where it will be heard, and because of the parallel proceedings that are ongoing in the United States District Court in Delaware, the defendants request the motions be decided on the briefs and exhibits submitted to date. In the alternative, the defendants request the referral of the motions to the Magistrate Judge assigned to this case for his review and recommendation.

We appreciate the Court's assistance. With best wishes, I am

Sincerely yours,

Robert W. McFarland

Robert W. McFarland

RWM/j
Encl
CC:    Stephen E. Noona, Esq.
       Michael K. Plimack, Esq.
       C. Joel Van Over, Esq.


EXHIBIT
B

Exhibit C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

INLINE CONNECTION CORPORATION,    )
4017 Davis PL NW #1               )
Washington, D.C. 20007,           )
                                  )
                Plaintiff,        )
                                  )
        v.                        ) CIVIL ACTION NO. 02:05 CV 205 HCM
                                  )
VERIZON INTERNET SERVICES, INC.   )
1880 Campus Commons Drive         )
Reston, VA 20191;                 )
                                  )
GTE.NET LLC, d/b/a VERIZON        )
    INTERNET SOLUTIONS            )
600 Hidden Ridge                  )
Irving, TX 75038;                 )
                                  )
VERIZON SERVICES CORP.            )
1310 N. Court House Road          )
Arlington, VA 22201;              )
                                  )
TELESECTOR RESOURCES GROUP, INC.  )
    d/b/a VERIZON SERVICES GROUP  )
1095 Avenue of the Americas       )
New York, NY 10036;               )
                                  )
VERIZON CORPORATE SERVICES        )
    GROUP INC. d/b/a VERIZON SERVICES )
    GROUP                         )
750 Canyon Drive                  )
Coppell, TX 75019;                )
                                  )
VERIZON ADVANCED DATA INC.        )
1320 N. Court House Road          )
Arlington, VA 22201;              )
                                  )
VERIZON AVENUE CORP.              )
12901 Worldgate Drive             )
Herndon, VA 20170;                )
                                  )



VERIZON CALIFORNIA INC.  )
750 Canyon Drive     )
Coppell, TX 75019;     )
             )
VERIZON FLORIDA INC.   )
201 N. Franklin Street    )
Tampa, FL 33602;     )
             )
VERIZON HAWAII INC.   )
1095 Avenue of the Americas  )
Room 3868        )
New York, NY 10036;    )
             )
VERIZON NORTH INC.    )
8001 W. Jefferson Boulevard  )
Fort Wayne, IN 46804;    )
             )
VERIZON NORTHWEST INC.  )
1800 41st Street      )
Everett, WA 98201;     )
             )
VERIZON SOUTH INC.    )
600 Hidden Ridge     )
Irving, TX 75038;      )
             )
VERIZON WEST COAST INC.  )
750 Canyon Drive     )
Coppell, TX 75019;     )
             )
GTE SOUTHWEST INC. d/b/a  )
  VERIZON SOUTHWEST  )
600 Hidden Ridge     )
Irving, TX 75038;      )
             )
CONTEL OF THE SOUTH INC. d/b/a )
  VERIZON MID-STATES   )
750 Canyon Drive     )
Income Tax Dept      )
Coppell, TX 75019-3834;   )
             )
VERIZON DELAWARE INC.   )
901 Tatnall Street      )
Wilmington, DE 19801;    )
             )

VERIZON MARYLAND INC.                    )
One E. Pratt Street                      )
Baltimore, MD 21202;                     )
                                         )
VERIZON NEW ENGLAND INC.                 )
185 Franklin Street                      )
Boston, MA 02110;                        )
                                         )
VERIZON NEW JERSEY INC.                  )
540 Broad Street                         )
Newark, NJ 07102-3178;                   )
                                         )
VERIZON NEW YORK INC.                    )
1095 Avenue of the Americas              )
New York, NY 10036;                      )
                                         )
VERIZON PENNSYLVANIA INC.                )
1717 Arch Street                         )
Philadelphia, PA 19103;                  )
                                         )
VERIZON VIRGINIA INC.                    )
600 E. Main Street                       )
Richmond, VA 23219;                      )
                                         )
VERIZON WASHINGTON, D.C. INC.            )
1710 H Street, NW                        )
Washington, DC 20006; and                )
                                         )
VERIZON WEST VIRGINIA INC.               )
1500 MacCorkle Avenue, SE                )
Charleston, WV 25314,                    )
                                         )
                    Defendants.          )

## PLAINTIFF INLINE CONNECTION CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT GTE.NET LLC, D/B/A VERIZON INTERNET SOLUTIONS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Inline Connection

Corporation ("Inline"), hereby requests that defendant GTE.Net LLC, d/b/a Verizon Internet

Solutions ("Defendant") produce for inspection and copying the documents described below

- 3 -

within thirty (30) days, at the offices of Inline's counsel, Heller Ehrman LLP, 333 Bush Street, Suite 3100, San Francisco, CA 94104, or at such other place as counsel may agree upon, subject to the following definitions and instructions. A written response to the requests is also required pursuant to Fed. R. Civ. Proc. Rule 34 and Local Civil Rule 26(C).

## GENERAL INSTRUCTIONS

1.      Documents shall be produced in accordance with Rule 34(b) of the Federal Rules of Civil Procedure.

2.      Each request below extends to any documents in the possession, custody, or control of the defendant. The document is deemed to be in the defendant's possession, custody, or control, if it is in the defendant's physical custody, or if it is in the physical custody of any other person and defendant (a) owns such documents in whole or in part; (b) has a right by contract, statute, or otherwise to use, inspect, examine, or copy such documents on any terms; (c) has an understanding, express or implied, that defendant may use, inspect, examine or copy such documents on any terms; or (d) has, as a practical matter, been able to use, inspect, examine or copy such documents when defendant has sought to do so. Such documents shall include, without limitation, documents that are in the custody of defendant's attorneys or other agents.

3.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for production of documents are deemed continuing to the fullest extent permissible and apply to All Documents that defendant subsequently creates, develops, discovers, or receives.

4.      Whenever appropriate, the singular form of the word shall be interpreted in the plural, or vice versa; verb tenses shall be interpreted to include past, present and future tenses; references to a gender shall be interpreted to include the masculine, feminine and neuter; and the

- 4 -

terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

5.      If Defendant cannot respond to any document request in full, it should respond to the fullest extent possible, explain why it cannot respond to the remainder, and describe the nature of the information that it cannot furnish.

6.      For any document or thing withheld in whole or in part on privilege grounds, or any other similar ground, please provide, in accordance with Fed. R. Civ. P. 26(b)(5), a written response with at least the following information:

(a)      The date of the document;

(b)      The basis for withholding the document;

(c)      A list of all persons who participated in the preparation of the document, and the status of each such person (i.e., attorney or non-attorney);

(d)      A list of all persons who have received or reviewed the document, and the status of each such person (i.e., attorney or non-attorney);

(e)      A list of all persons to whom the document was circulated, or its contents communicated, and the status of each such person (i.e., attorney or non-attorney); and

(f)      A description of the document sufficiently particular to allow Inline to evaluate the claimed basis for withholding the document and to identify it for purposes of a court order.

7.      Unless otherwise stated, the time period covered by these requests is the following:

(a)      Requests for Production Nos. 1 to 33, 35, 37 to 39, 44, 46, 49 to 55, 57 to 59, and 63 to 84 apply to documents created, made, developed, discovered, received, during or Relating

To any portion of the time period from the earlier date of (a) when your company first became aware of Inline Connection Corporation and/or the inventions of David Goodman, (b) when your company first became involved in making, using, selling, marketing, offering for sale,distributing, or installing DSL Self-Install Kits, or (c) December 1998, up to and including the date on which the response or supplemental response is served; and

(b)     Requests for Production Nos. 34, 36, 40 to 43, 45, 47 to 48, 56, and 60 to 62 apply to documents created, made, developed, discovered, received, during or Relating To any portion of the time period from April 6, 1999 up to and including the date on which the response or supplemental response is served.

## DEFINITIONS

As used herein, unless specifically indicated otherwise, the following terms shall have the indicated meanings:

1.     **"Documents"** and **"Things"** shall have the broadest meaning ascribed to them by the Federal Rules of Civil Procedure and applicable case law, including but not limited to electronic files.

2.     **"Communication"** or **"Communications"** means any type of oral, written, magnetic, electronic, or visual contact(s) between two or more persons in which information, facts, statements, conversations, or opinions were exchanged, imparted, or received.

3.     **"Inline" or "Plaintiff"** means Plaintiff Inline Connection Corporation, any corporate predecessor, and any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

- 6 -

4.    **"You," "Your," or "Defendant"** means Defendant GTE.Net LLC, d/b/a Verizon Internet Solutions, any corporate predecessor, any joint venture to which it is or was a party, any past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

5.    The **"'596 patent"** means U.S. Patent No. 5,844,596.

6.    The **"'718 patent"** means U.S. Patent No. 6,236,718.

7.    The **"'446 patent"** means U.S. Patent No. 6,243,446.

8.    The **"'585 patent"** means U.S. Patent No. 6,542,585.

9.    The **"Inline Patents"** means collectively the '596 patent, the '718 patent, the '446 patent, and the '585 patent.

10.    **"DSL"** means all variations of digital subscriber line service technology, including but not limited to ADSL (asymmetrical digital subscriber line) and VDSL (very high speed digital subscriber line) technology.

11.    **"ISP"** means Internet Service Provider.

12.    **"End User"** means a person who subscribes to DSL services in order to be able to access the internet or other online services or to send or receive information using the worldwide web.

13.    **"Accused Services"** means any product, apparatus, device, system, method, or service used to provide internet access or other online services to an End User using DSL,

- 7 -

including Retail Services or Wholesale Services, and any service packages incorporating these services, that are, by or on behalf of You, provided (in whole or in part), sold, or offered for sale in the United States or for which you provide any marketing or sales services in the United States.

14.    **"Wholesale Services"** means any Accused Services sold, leased, licensed and/or provided through tariff and/or agreement to another service provider, including ISPs, ILECs (incumbent local exchange carriers), or CLECs (competitive local exchange carriers), and which is not directly sold to End Users of the Accused Services.

15.    **"Retail Services"** means any Accused Services sold and/or provided directly to End Users, including support, software, self-installation kits, and ISP services.

16.    **"DSL Self-Install Kits"** means all versions of any products, devices, packages, components, or kits that are installed within the premises of an End User of Accused Services that are intended to be used in connection with or to connect an End User with Accused Services, including but not limited to ATU-Rs, DSL modems, microfilters, modems, and installation guides, which are, by or on behalf of You, made (in whole or in part), assembled, sold, or offered for sale in the United States, imported into the United States, or provided, required, or caused to be provided to a user of Accused Services in the United States.

17.    **"Accused Equipment"** means all products, devices, or equipment, including modems, gateways, and/or DSL Self-Install Kits, that are, by or on behalf of You, made (in whole or in part), sold, or offered for sale in the United States, imported into the United States, or provided, required, or caused to be provided to a user in connection with Accused Services in the United States.

- 8 -

18.    **"DSLAM"** means a digital subscriber line access multiplexer and connected ATU-Cs, modems, and/or splitters that transmit and/or enable transmission of DSL signals (signals above the telephone voice band) over telephone wiring to or from corresponding DSL modems at subscribers' premises, whether or not the DSLAM functionality is included within or separate from hardware associated with digital loop carrier systems.

19.    **"Remote Location DSLAM"** means a DSLAM or an equivalent device that is located outside of the immediate vicinity of the telephone company central office (where the central office contains a telephone voice switch), including but not limited to at a remote terminal or apartment building.

20.    **"Relate To"** or **"Relating To"** means referring to, mentioning, commenting on, reflecting, pertaining to, evidencing, showing, involving, describing, discussing, responding to, supporting, contradicting, rebutting, constituting in whole or in part, consisting of, addressing the subject matter of, or being a draft, copy or summary of, in whole or in part.

21.    **"Person"** refers to any natural person, firm, association, organization, partnership, business, trust, corporation or public entity.

22.    **"Identify"** when referring to a document means to produce a copy of the document or to specify:

> a)  the name of each person who signed it, drafted it (in whole or in part), or under whose name it was issued;
>
> b)  the name of each person to whom it was addressed and the name of each person who received it;
>
> c)  the date of the document;

- 9 -

    d)  the title and nature (e.g., letter, memorandum, notes, etc.) of the document; and

    e)  the contents of the document.

23. **"Identify"** when referring to a natural person means to specify:

    a)  the full name of such person;

    b)  the present position, title, and business affiliation of such person;

    c)  the position, title and business affiliation of such person at the time or times at issue in the interrogatory; and

    d)  the present or last known business or home address and business or home telephone number of such person.

24. **"Identify"** when referring to any person other than a natural person means to specify:

    a)  the full name of such person;

    b)  the present or last known address and telephone number of such person's principal place of business;

    c)  the present or last known address and telephone number of such person;

    d)  the present relationship of such person to You; and

    e)  the relationship of such person to You at the time or times at issue in the interrogatory.

25.    **"Identify"** or **"Identifying"** when referring to anything other than a person or document means to specify and describe the information requested fully, completely, and in detail.

26.    **"Describe with particularity"** means to describe all material facts and circumstances surrounding or Relating To the subject matter or event specified in the

interrogatory, and to Identify all persons who were involved in and/or have knowledge of the specified subject matter or event and All Documents that Relate To the specified subject matter or event in any way.

## REQUESTS FOR PRODUCTION

### Request for Production No. 1:

All Documents identified in response to Plaintiff's First Set of Interrogatories, all Documents that were relied upon to prepare such answers, all Documents that were reviewed in preparing such answers, and all Documents that are relevant to the interrogatories or responses thereto.

### Request for Production No. 2:

Your corporate organizational charts, including but not limited to all such charts showing officers, directors, and employees, and/or organizational structure by function or otherwise.

### Request for Production No. 3:

Documents sufficient to show Your internal organization and the relationship between You and Verizon Communications, Inc. and/or any other subsidiaries or affiliates of Verizon Communications, Inc.

### Request for Production No. 4:

Documents sufficient to show Your corporate history, including the existence of any corporate predecessor, any joint venture to which You are or were a party, any past or present division, department, parent, subsidiary, or affiliate.

### Request for Production No. 5:

All of Your audited financial statements, annual reports, and Securities and Exchange Commission 10-Q and 10-K Forms, including any drafts.

- 11 -

**Request for Production No. 6:**

All Documents Relating To Your Document retention, management, and/or destruction policies.

**Request for Production No. 7:**

All Documents Relating To Your policies with respect to the intellectual property rights of other companies.

**Request for Production No. 8:**

All Documents Relating To any indemnification and/or insurance provided to or received by You against liability for infringement of any of the Inline Patents.

**Request for Production No. 9:**

All Documents related to any indemnification provided by You to any third party for infringement or a claim of infringement, of any of the Inline Patents.

**Request for Production No. 10:**

All Documents Relating To the Inline Patents, including, without limitation, Documents Relating To any infringement analysis or prior art analysis, whether prepared by You or any third party.

**Request for Production No. 11:**

All Documents Relating To or constituting Communications with third parties regarding any lawsuit by Inline Relating To any of the Inline Patents, including but not limited to Communications between or among Defendants or their counsel, on the one hand, and AOL/Earthlink or their counsel, on the other hand, concerning the lawsuits filed by Inline against AOL and Earthlink in the District of Delaware, or concerning the instant lawsuit.

**Request for Production No. 12:**

All Documents Relating To or constituting payments between You and third parties, including but not limited to AOL, Earthlink, or any other Defendant named in the instant lawsuit, Relating To any of the Inline Patents or any lawsuit filed by Inline.

**Request for Production No. 13:**

All Documents Relating To Your knowledge of David Goodman or any of the Inline Patents, including Documents reflecting when You became aware of David Goodman or any of the Inline Patents.

**Request for Production No. 14:**

All Documents concerning any attempt, plan, or decision to design or redesign any Accused Services so as to avoid infringing any Inline Patent.

**Request for Production No. 15:**

All Documents Relating To the patentability, validity, enforceability, infringement, ownership, inventorship, or the scope of the claims of any Inline Patent, including, but not limited to, any and all prior art or prior art search reviewed or considered at any time by You or Your counsel.

**Request for Production No. 16:**

All Documents Relating To any investigation or consideration by You or on Your behalf of the patentability, validity, enforceability, infringement, ownership, inventorship, or the scope of the claims of any Inline Patent, including, but not limited to, any and all prior art or prior art search reviewed or considered at any time by You or Your counsel in connection with any such investigation or consideration.

**Request for Production No. 17:**

All Documents Relating To any opinion of legal counsel Relating To the Inline Patents, including but not limited to the Inline Patents' patentability, validity, enforceability,

infringement, ownership, or inventorship, the scope of the claims of any Inline Patent, and/or the infringement or noninfringement of any Inline Patent by You.

**Request for Production No. 18:**

All Documents Relating To any patent search conducted by You or on Your behalf that identifies or lists any of the Inline Patents or any patent that lists David Goodman as an inventor.

**Request for Production No. 19:**

All Documents and Things which, alone or in combination, You contend render any of the Inline Patents invalid.

**Request for Production No. 20:**

All Documents and Things that You contend render any of the Inline Patents unenforceable.

**Request for Production No. 21:**

All Documents and Things Relating To any contention that You do not infringe any of the Inline Patents.

**Request for Production No. 22:**

All Documents on which You rely or intend to rely on to assert or establish that Your infringement of the Inline Patents was not willful.

**Request for Production No. 23:**

All Documents Relating To any contention that Inline is estopped from enforcing any of the claims of the Inline Patents.

**Request for Production No. 24:**

All Documents Relating To any contention that the doctrine of laches bars Inline's claims of the infringement of the Inline Patents.

- 14 -

**Request for Production No. 25:**

All Documents Relating To any contention that the doctrine of waiver bars Inline's claims of the infringement of the Inline Patents.

**Request for Production No. 26:**

All Documents Relating To any contention that Inline's Complaint in this matter fails to join indispensable parties.

**Request for Production No. 27:**

All Documents Relating To Inline or David Goodman.

**Request for Production No. 28:**

All Documents evidencing or reflecting any Communications between You and Inline.

**Request for Production No. 29:**

All Documents Relating To the design, development, or network configuration of each Accused Service.

**Request for Production No. 30:**

All Documents Relating To the provisioning, installation, or implementation of each Accused Service.

**Request for Production No. 31:**

All Documents Relating To the operation of each Accused Service.

**Request for Production No. 32:**

All Documents Relating To the functionality of each Accused Service.

**Request for Production No. 33:**

All Documents Relating To the marketing of each Accused Service.

**Request for Production No. 34:**

All Documents sufficient to show every sale (including lease, license, or provision under tariff) or offer for sale (including lease, license or provision under tariff) of each of the Accused Services.

**Request for Production No. 35:**

All Documents illustrating or describing each Accused Service in whole or in part, including but not limited to advertising materials, promotional literature, instructions, publications, or network or other diagrams.

**Request for Production No. 36:**

All Documents Relating To any communication or agreement between You and any third Person about the provision, sale, lease, license, or marketing of any Accused Service, including, but not limited to, co-branding, allocation of marketing funds to third parties and/or affiliates, and bounty or commission payments.

**Request for Production No. 37:**

All Documents Relating To any plans or strategies for each Accused Service, including, but not limited to, any business, operating, or marketing plans, any strategic plans, and/or any periodic plans.

**Request for Production No. 38:**

Two (2) samples of each DSL-Self Install Kit provided by You or on Your behalf to an End User.

**Request for Production No. 39:**

All Documents Relating To the use of Remote Location DSLAMs to provide any Accused Service, including any Documents Relating To the design or development of such Remote Location DSLAMs, the functionality or operation of Remote Location DSLAMs,

technical documents, sales or marketing materials, or forecasts, plans or strategies Relating To the past, current, or future use of such Remote Location DSLAMs.

**Request for Production No. 40:**

Documents sufficient to show the physical point of connection on the telephone wiring network of each DSLAM (including Remote Location DSLAMs) used in providing Accused Services.

**Request for Production No. 41:**

For every local loop in the Verizon network, Documents sufficient to show the number of local loops equipped with a Remote Location DSLAM or similar equipment, device, or components, the number of Remote Location DSLAMs installed to date, by type and manufacturer, and the number of subscribers served by each Remote Location DSLAM.

**Request for Production No. 42:**

All Documents Relating To any tariffs filed with the FCC Relating To the provision, marketing, lease, license, or sales of any Accused Service, including but not limited to the tariffs themselves.

**Request for Production No. 43:**

All Documents Relating To or reflecting the revenues and profits received, or projected to be received for sales, leases, provision under tariff, or licenses of any Accused Service, including information concerning gross sales, leases, provisions under tariff, or licenses, forecasted sales, leases, provisions under tariff, or licenses, profit margins, cost reports, cash flow statements, income statements, and any other related management reports prepared on a periodic basis, including but not limited to the revenues attributable to the provision of Accused Services using Remote Location DSLAMs.

**Request for Production No. 44:**

All Documents related to DSL-Self Install Kits, or any components thereof, that You have tested, evaluated and/or approved directly or indirectly for use by End Users.

**Request for Production No. 45:**

Documents sufficient to Identify the customer, product or service name or other identifier, volume, dollar amount, date of actual sale, lease, license, or provision under tariff within the United States, and dates of service within the United States of any Accused Service, including but not limited to Identifying the customers and/or End Users provided with Accused Services using Remote Location DSLAMs.

**Request for Production No. 46:**

All Documents Related To the End User churn rates for each Accused Service.

**Request for Production No. 47:**

All Documents Relating To any commissions or other payments to a third party for any sale, lease, provision under tariff, or license of any Accused Service.

**Request for Production No. 48:**

Documents sufficient to Identify any and all marketing or sales representatives, distributors, and customers or subscribers of each Accused Service.

**Request for Production No. 49:**

Documents Relating To any agreement between You and any individual or entity providing for the development, design, testing, manufacture, assembly, production, marketing, implementation, fulfillment, and/or sale (including license, lease, or provision under tariff) of any Accused Service.

- 18 -

**Request for Production No. 50:**

All licenses and/or license agreements between You and any third party Relating To any Accused Service.

**Request for Production No. 51:**

All agreements between You and any third party Relating To any Accused Service, including any agreements to provide delivery of data, sales, marketing, or other services in relation to such Accused Services.

**Request for Production No. 52:**

Documents sufficient to Identify any third party with whom You have an agreement to provide any marketing or sales services in relation to any Accused Service.

**Request for Production No. 53:**

All agreements between You and any third party Relating To any Accused Service, including any agreements to provide access to such Accused Services.

**Request for Production No. 54:**

All DSL transport agreements with third parties or other Defendants herein.

**Request for Production No. 55:**

Documents sufficient to Identify any third party with whom You have an agreement to provide any Accused Service.

**Request for Production No. 56:**

All Documents Relating To or identifying each customer or licensee of any Accused Service.

**Request for Production No. 57:**

All Documents, including but not limited to market analyses, market surveys, forecasts, plans, strategies, and Communications, Relating To the effect, influence, potential effect, or

impact of the sale, license, lease, provision, or availability of Accused Services by You or any telephone carrier on (a) the rates for Your or any telephone carrier's telephone services; and/or (b) Your or any telephone carrier's ability to increase, maintain, or attract customers for telephone services.

**Request for Production No. 58:**

All Documents Relating To any Accused Equipment, including any Documents Relating To the requirements, design, or development of such equipment, the manufacture of such equipment, the functionality or operation of such equipment, any technical documents (including block diagrams and specifications), sales or marketing materials, agreements regarding the manufacturing of such equipment, agreements regarding the provision of such equipment to End Users or customers, or forecasts, inventory reports or data, plans, or strategies.

**Request for Production No. 59:**

Documents sufficient to Identify every manufacturer, provider, installer, distributor, or seller of all Accused Equipment.

**Request for Production No. 60:**

Documents sufficient to Identify every End User or customer who has been sold, leased, or provided with any Accused Equipment, including the date that each such End User or customer received such equipment, from where each such End User or customers received such equipment, and the amount paid for such equipment.

**Request for Production No. 61:**

All Documents Relating To any commissions or other payments to a third party for any sale of any Accused Equipment.

**Request for Production No. 62:**

Documents sufficient to Identify any and all sales representatives, distributors, and customers of any Accused Equipment.

**Request for Production No. 63:**

Documents Relating To any agreement between You and any individual or entity providing for the development, design, testing, manufacture, production, marketing, implementation, provision, and/or sale of any Accused Equipment.

**Request for Production No. 64:**

Documents sufficient to Identify any third party with whom You have an agreement to provide any marketing or sales services in relation to any Accused Equipment.

**Request for Production No. 65:**

All agreements between You and any third party Relating To any Accused Equipment.

**Request for Production No. 66:**

Documents sufficient to Identify any third party with whom You have an agreement to provide any Accused Equipment.

**Request for Production No. 67:**

All Documents Relating To any patent royalties that have been paid or that are customary in the industry Relating To DSL, telephone communications, communications systems, and/or DSL Accused Equipment.

**Request for Production No. 68:**

All Documents and materials provided to ISPs Related To DSL, including, but not limited to, manuals, reference guides, technical references, training materials, ordering tools, provisioning tools, line qualification tools, line qualification data, network upgrades, network outages, network diagrams, equipment lists and implementation plans.

**Request for Production No. 69:**

All Documents and materials provided to third parties under terms of agreement or as referenced in agreement, including, but not limited to, training materials, forecasts, line qualification data, implementation plans, disaster recovery documents, and equipment lists.

**Request for Production No. 70:**

All agreements or Documents setting forth the terms of service for Verizon Online DSL service, or similar services.

**Request for Production No. 71:**

All Documents Relating To past, present, and future plans and/or actual services to provide Video-on-Demand, streaming video, or broadband TV utilizing DSL.

**Request for Production No. 72:**

All Documents Relating To participation and development of DSL industry standards, including, but not limited to, T1E1.4 committee, ADSL Forum, DSL Forum, Universal ADSL Working Group, International Telecommunications Union (ITU) Study Group 15.

**Request for Production No. 73:**

All Documents Relating To implementation of DSL industry standards, including, but not limited to, T1.413, T1.413 Issue 2, T1.421, TI.424-2004, TI.424-TrialUse, TI.418-2002, TI.413a-2001, DSL Forum TR-048, ITU-T G.992.1, ITU-T G.992.2, ITU-T G.992.3, ITU-T G.992.4, and ITU-T G.992.5.

**Request for Production No. 74:**

All Documents received from and sent to DSL customer premises equipment manufacturers, including, but not limited to, request for proposals, requirements documents, testing results, test plans, standards compliance, and product manuals.

**Request for Production No. 75:**

- 22 -

All Documents received from and sent to modem, microfilter, DSLAM or DSLAM component distributors, sales agents, assemblers, or manufacturers, including, but not limited to, request for proposals, requirements documents, testing results, test plans, standards compliance, and product manuals.

**Request for Production No. 76:**

All Documents related to implementation plans, specifications, operational plans, provisioning, trouble shooting, technical support documents and agreements related to the forgoing for any Accused Service.

**Request for Production No. 77:**

All guidelines, methods, procedures, training materials, and any other Documents pertaining to the planning, engineering design, deployment, maintenance, and operation of DSL modems for the provisioning of Accused Services to residential and business customers.

**Request for Production No. 78:**

All guidelines, methods, procedures, training materials, and any other Documents pertaining to the planning, engineering design, deployment, maintenance, and operation of central office mounted splitters for the provisioning of Accused Services.

**Request for Production No. 79:**

All guidelines, methods, procedures, training materials, and any other Documents pertaining to the planning, engineering design, deployment, maintenance, and operation of central office mounted DSLAMs for the provisioning of Accused Services, regardless of whether such devices utilize external splitters or internal splitters to segregate voice band and data traffic.

**Request for Production No. 80:**

All guidelines, methods, procedures, training materials, and any other documents pertaining to the planning, engineering design, deployment, maintenance, and operation of remote terminal mounted DSLAMs for the provisioning of Accused Services, regardless of whether such devices utilize external splitters or internal splitters to segregate voice band and data traffic.

**Request for Production No. 81:**

All Documents Relating to or referring to the manufacturers of equipment utilized in performing remote terminal mounted DSLAM functionality, regardless of whether such functionality is included within or separate from hardware associated with digital loop carrier systems.

**Request for Production No. 82:**

All technical Documents associated with equipment utilized in performing remote terminal mounted DSLAM functionality, regardless of whether such functionality is included within or separate from hardware associated with digital loop carrier systems.

**Request for Production No. 83:**

All Documents associated with any method for identifying each customer, customer line(s), and/or facilities utilized for provisioning Accused Services, including but not limited to those provided via digital loop carrier systems.

**Request for Production No. 84:**

All loop qualification reports or other reports identifying the type of DSLAM provisioned on each local loop qualified for DSL.

Dated: June 17, 2005                          Respectfully Submitted,

- 24 -

Robert Hansen
Va. Bar No. 44136
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
Telephone: 202.912.2000
Facsimile: 202.912.2020

Alexander L. Brainerd
Michael K. Plimack
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: 415-772-6000
Facsimile: 415-772-6268

Robert C. Bertin
Va. Bar No. 41278
C. Joël Van Over
Swidler Berlin LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
Telephone: 202-424-7581
Facsimile: 202-424-7643

Steve Noona
Kaufman & Canoles
150 W. Main Street, Suite 2100
Norfolk, Virginia 23510
Telephone: (757) 624-3239
Facsimile: (757) 624-3169

Attorneys for Inline Connection Corporation

- 25 -