UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

RECEIVED
AUG 17 2005
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| INLINE CONNECTION CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:05CV205 HCM |
| | ) |
| VERIZON INTERNET SERVICES, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

**INLINE'S REPLY TO DEFENDANT OPERATING TELEPHONE
COMPANIES' OPPOSITION TO INLINE'S MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS**

The Verizon OTCs' opposition to Inline's motion to compel jurisdictional discovery is replete with arguments relevant to their pending motions to transfer this case to Delaware, to stay discovery, and to dismiss the OTCs for lack of personal jurisdiction. When they finally reach the instant motion to compel the production of jurisdictional documents, the moving OTCs admit that they conduct substantial business activities with and through their Virginia-based affiliates and other Virginia companies. For example, in response to document requests seeking the OTCs' agreements *with Virginia companies*, the OTCs admit that 1) there are "agreements entered by or on behalf of each moving OTC" (OTC opp'n at 9);[1] 2) "each Verizon-affiliated operating telephone company has, from time to time, authorized other Verizon affiliated corporate entities to execute certain agreements on its behalf" (*Id.* at 11); 3) "each operating telephone company is required to deal with other affiliated Verizon entities pursuant to written

---

[1] Throughout this brief, references to the "OTC opp'n" refer to the Operating Telephone Company Defendants' Opposition to Inline's Motion to Compel Production of Documents to which Inline files this reply.

46

agreements" (*Id.* at 12); "[e]ach of the OTC movants . . . will from time to time contract for services with other entities located in other states, including Virginia" (*Id.*); 4) OTC published tariffs "are incorporated by referenced in the standard ISP agreement" (*Id.* at 15).

These admissions alone show that the OTCs conduct substantial business in Virginia, with their Verizon affiliates located in Virginia and with internet service providers ("ISPs") located in Virginia. These admissions further show that these relationships are reflected in the very written agreements Inline seeks in discovery. These clearly relevant and material agreements, detailing the relationships that establish personal jurisdiction over the OTCs in Virginia, will show, as the OTC admissions indicate, that the OTCs' motion to dismiss for lack of personal jurisdiction is frivolous.[2] As each of Inline's discovery requests is specifically targeted to reveal the OTCs' substantial business activities in Virginia, Inline's motion to compel should be granted in its entirety.

## I. INLINE'S MOTION TO COMPEL IS TIMELY

The OTCs argue that Inline's discovery requests are untimely, citing *Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) and *ALS Scan, Inc. v. Digital Servs. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) for support. Neither case is relevant here.

In *Second Amendment Found.*, the D.C. Circuit upheld the district court's dismissal of the case for lack of personal jurisdiction before plaintiffs had an opportunity to conduct jurisdictional discovery because plaintiffs first raised the issue at oral argument, did not move the court for the opportunity to serve jurisdictional discovery (the court had not issued a discovery

---

[2] While Inline's response to certain OTCs' motion to dismiss for lack of personal jurisdiction, based solely on publicly available documents, is sufficient to support jurisdiction, the substantial, systematic and continuous nature of these OTCs' contacts with Virginia will no doubt be supported by the discovery Inline seeks. Moreover, this discovery should also establish that Virginia is the single state with the strongest connection to all OTCs.

order), and did not defend the motion on the ground that jurisdictional discovery had not been taken.

In this case, in contrast, Inline requested informal jurisdictional discovery within the same week the OTCs filed their motion to dismiss for lack of personal jurisdiction. When OTC counsel finally made clear the OTCs would not produce documents, Inline served formal discovery requests, as permitted by this Court's June 3, 2005 Rule 26(f) Pretrial Order. Under that request and the Court's Order, the OTCs were due to produce documents on July 25, 2005, over three weeks ago. Moreover, when Inline opposed Verizon's motion to dismiss, Inline advised the Court it was seeking informal jurisdictional discovery from defendants. *See* Inline's Resp. to Certain Defendant Operating Companies' Mot. to Dismiss for Lack of Personal Jurisdiction at 5 n.2, and 11 n.14.

Thus, Inline has responsibly pursued jurisdictional discovery throughout, and well in advance of the Court's consideration of the OTCs' motion.[3] Although Inline has established that all defendant OTCs have significant business contracts with Virginia resident corporations, that all retail DSL customers served by the OTCs must litigate all disputes in Virginia state court under Virginia law, and that all OTCs sell their wholesale DSL service to Virginia corporations for resale, Inline has also sought discovery of the details of the OTCs' relationship with Virginia companies, and the revenues they derive under their contracts with Virginia companies, in case the Court requests additional facts. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) ("The mere fact that [a plaintiff]

---

[3] A court may defer ruling on a motion to dismiss for lack of personal jurisdiction until the completion of jurisdictional discovery. Safer Display Tech., Ltd. v. Tatung Co., 227 F.R.D. 435, 439 (E.D. Va. 2004). As the OTCs have unreasonably refused such discovery deferral of the OTCs' motion to dismiss until discovery occurs is particularly appropriate here. It is further proper in complex cases to defer a jurisdictional ruling until completion of a trial on the merits, or to let a jury decide disputed fact issues. *Id.*

also argued that the record was sufficient to establish jurisdiction without discovery was not a waiver of the right to the discovery in the event the district court disagreed").

The *ALS Scan* case, holding that passive internet transmissions by an ISP company that derived no revenue from accused internet postings do not alone support general personal jurisdiction, is also far afield. Although the Fourth Circuit upheld a denial of jurisdictional discovery, the court did so on the ground that the plaintiff proffered no further facts available through discovery that would be material to the court's "limited jurisdictional ruling." *ALS Scan*, 293 F.3d at 715. Nor did the plaintiff dispute the ISP's affidavit concerning its passive transmission of internet content. Here, in contrast, Inline has explained the highly material nature of the six specific discovery requests at issue, all directed to the OTCs' contracts with Virginia companies, and details of the extensive business relationships between the OTCs and these Virginia companies. *See* Mot. to Compel Defendant Operating Telephone Companies' Production of Documents. Moreover, Inline has already adduced abundant affirmative evidence demonstrating that the OTC declarations supporting the OTCs' motion are either false, misleading, or irrelevant. More significantly, however, the OTCs have not submitted any declarations or any evidence whatsoever to rebut the evidence submitted by Inline that supports personal jurisdiction.

## II.     THIS MOTION TO COMPEL IS NOT MOOTED BY DEFENDANTS' MOTION TO TRANSFER

The OTCs argue that neither their motion to dismiss for lack of personal jurisdiction nor this motion to compel need be decided because the case should be transferred to Delaware. OTC opp'n at 1-2, 13. But jurisdiction over the OTCs in Virginia is highly relevant to the Courts' consideration of the defendants' motion to transfer. Inline has sued the OTCs along with other Verizon affiliates in Virginia because this Court has jurisdiction over *all* defendants. The Verizon defendants desire to transfer this case to Delaware, a much less convenient forum for all parties, is an attempt to fracture jurisdiction. If the case was transferred to Delaware, Inline

would likely be required to sue the moving OTCs in Virginia anew, as these OTCs have substantial systematic, and ongoing business relationships with their Virginia affiliates and ISP customers. Inline knows of no such substantial contacts with Delaware.

The "Verizon" OTCs, moreover, do not concede personal jurisdiction over all OTC defendants in Delaware, and proffer no evidence that these defendants could have been sued in Delaware. Rather, they simply argue that the Delaware court will decide whether it has jurisdiction. But it is this Court, in the first instance, that must determine whether the Delaware court has personal jurisdiction over the OTCs prior to considering transfer. *See One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d. 824, 829 (E.D. Va. 2004) (The court may not transfer a case unless the court to which the case is transferred would have been a proper forum for the action originally). Finally, as the OTCs own much of the equipment used to provide the accused infringing service throughout the Verizon territories, they could not be more central to Inline's claims of infringement.

In sum, as personal jurisdiction over all defendants lies in this Court, Inline's motion to compel jurisdictional discovery is essential to the disposition of all defendants' pending motions. Although Inline has already provided substantial evidence that the Court has personal jurisdiction over all OTCs, there is no basis for denying the discovery Inline seeks in light of the OTCs' challenge to this jurisdiction.

### III. DEFENDANTS MOTION TO STAY DISCOVERY DOES NOT PRECLUDE JURISDICTIONAL DISCOVERY

The Defendants' motion to stay discovery pending this Court's decision on defendants' motion to transfer this case to Delaware also does not defeat this motion to compel. First, this Court's June 3, 2005 Rule 26(f) Pretrial Order, and this Court's June 24, 2005 Rule 16(f) Scheduling Order, provide for discovery now. The June 3 Pretrial Order provides that "the parties may initiate *any form of discovery at anytime subsequent to the date of this order*."

June 3, 2005 Order ¶ 3. The discovery at issue here was properly propounded under this order. The June 24 Scheduling Order provides that "Discovery shall be commenced timely and . . . shall be completed by plaintiff(s) on or before November 15, 2005." June 24, 2005 Order ¶ 3. Significantly, this Scheduling Order acknowledges defendants' motion to stay discovery, but does not amend the scheduling order to delay any discovery in light of this motion. *Id.* at ¶ 11.

Second, when defendants filed their motion to stay discovery, the defendants expressly acknowledged that jurisdictional discovery would be appropriate now. Defendants' Mot. to Stay Substantive Discovery 3.[4] Having conceded that their motion to stay discovery excluded jurisdictional discovery, defendants have no basis whatsoever to now object to such discovery.

### IV. THE MOVING OTCS MARKET AND SELL THEIR ACCUSED INFRINGING DSL SERVICE IN VIRGINIA

Assuming *arguendo* that each moving OTC owns telecommunications and DSL transport facilities in its respective state and provides service to customers residing in each respective state, this asserted fact is insufficient to support a finding that this court lacks personal jurisdiction.[5] Left unanswered by this assertion is how each moving OTC markets and sells the accused infringing DSL service to both retail customers and to ISP customers who purchase DSL service on a wholesale basis. The answer is that the moving OTCs jointly market and sell the accused DSL service through affiliates located in Virginia and to ISPs located in Virginia.[6]

---

[4] Throughout this brief references to the "Defendants' Mot. to Stay Substantive Discovery" refer to Defendants' Motion to Stay Substantive Discovery Pending Resolution of Threshold Motions to Transfer the Case to Its Original Delaware Venue and to Dismiss Some Defendants for Lack of Personal Jurisdiction.

[5] The moving OTCs make many assertions without evidentiary support. Moreover, they provide no evidence whatsoever to rebut Inline's evidence that they conduct substantial commercial and purposeful activities with and through their Virginia affiliates, and earn substantial revenue from these activities. Through these many activities the moving OTCs avail themselves of the protections of Virginia law and the Virginia courts.

[6] *See* Inline's Resp. to Certain Defendant Operating Companies' Mot. to Dismiss for Lack of Personal Jurisdiction at 5-13, and exhibits cited therein.

These joint marketing and sales activities for the sale of an integrated DSL service accessing the worldwide web (not a segregated state-by-state local service) are themselves infringing activities, regardless of where each OTC is located. Indeed, when the OTCs market and sell the accused infringing DSL service in Virginia through their Virginia affiliate agents and to Virginia Internet Service Providers ("ISPs"), they infringe in Virginia. *Commissariat A L'Energie Atomique*, 395 F.3d at 1318. Infringement occurs where the offer of sale or sale occurs – in this case, in Virginia. *Id.*

The Patent Act provides that offers of sales, sales and use of an infringing service each constitute a separate act of infringement:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a); *Rotec Indus. Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1253 (Fed. Cir. 2000) (The 1996 amendment to the Patent Act, adding an "offer to sell" as a basis of liability broadened a patentee's protection under the act.)

## V.   THE OTCS' OBJECTIONS TO INLINE'S DOCUMENT REQUESTS

Inline's discovery requests seek information regarding the moving OTCs marketing sales activities in Virginia through its Virginia affiliates and to Virginia ISPs. Inline's document requests 1, 2, 4, and 5 all seek agreements that govern the relationship between the moving OTCs and their Virginia affiliates or Virginia ISPs. Requests 3 and 8 request documents sufficient to identify and describe the nature and type of services provided by the Virginia affiliates to each moving OTC. While request number 3 is more general, request number 8 specifically concerns those activities that relate to the infringing DSL service the moving OTCs (and their Verizon affiliates) offer, sell, and provide to customers.

### A. Document Request No. 8

The OTCs argue repeatedly that each provides only "local voice and data signal transfer services" in their respective territories. In the same breath, they object to Inline's document request number 8 concerning documents "sufficient to identify and describe communications" between the OTCs and their Virginia affiliates related to "specifications, requirements, standards compliance, testing, approvals, recommendations, FCC waivers, changes or modifications for any Accused Equipment, DSLAMs, Remote Location DSLAMs, DSL Self-Install Kits or components thereof." Tellingly, the OTCs object to this discovery on the ground that this discovery is "open-ended merits discovery." Although merits discovery on the issue of infringement is completely proper, this discovery is also relevant to the OTCs involvement with their Virginia affiliates in the infringing activities at issue in this case. The OTCs simply cannot have it both ways, arguing on the one hand that they are local bystanders, but on the other hand arguing that Inline cannot discover their activities that prove to the contrary, and establish their infringing activities in conjunction with their Virginia affiliates. Whether the acts ultimately establish that the OTCs directly infringe, or whether they also induce or contribute to the infringement of their Virginia affiliates, the OTCs cannot unilaterally refuse to cooperate in producing relevant jurisdictional documents because those documents are also relevant to infringement.

### B. Document Request No. 4

The OTCs object to Inline's document request number 4 on equally frivolous grounds. This document request seeks OTC contracts (executed by or on behalf of the OTCs) that include a Virginia choice of law or a Virginia choice of forum provision. Without supporting evidence, the OTCs respond that such contracts "typically" do not contain such provisions. Suffice it to say then that Inline does not seek those "typical" agreements, but the ones that do in fact contain such Virginia law or forum clauses. Although the OTCs also claim that this request is burdensome, as contracts are not filed by choice of law or forum, the OTCs never say how many

candidate contracts they have. Moreover, if the OTCs produce all candidate contracts, Inline will review them.

Finally, although the OTCs assert that they have no retail DSL contracts, they produce no evidence to support this assertion, and Inline has already adduced one agreement that expressly permits the OTCs to offer and sell accused infringing DSL retail service. Donovan Decl. in support of Inline's response to certain OTCs' motion to dismiss, at ¶ 12, and Exh. 3 thereto. As the terms of service for DSL retail customers served by the defendants show, every retail customer located in each OTC territory must litigate disputes in Virginia under Virginia law. Inline's response to certain operating defendant companies' motion to dismiss at 3-4 and Exhs. 1 and 2; Donovan Decl. in support of Inline's response to certain OTCs' motion to dismiss, Exh. 3. As none of these customers can use the accused infringing service unless they use the OTCs' DSL services, and the OTCs are paid for the use of these DSL services, the only inference is that the OTCs benefit from the laws of the state of Virginia.

### C.  Document Request No. 1

Inline's document request number 1 seeks agreements executed on behalf of the OTCs by two Virginia affiliates. Based upon the publicly available agreements Inline has already adduced, these Virginia companies are marketing and sales agents for the OTCs, and one of them, Verizon Services Corporation, effectively manages and operates much of the OTCs' business (including DSL facilities) from their Virginia offices. *See* Inline response to certain OTCs' motion to dismiss at 6 and Exhs. 4 and 5. Inline is entitled to review these relevant agreements that will illustrate the relationships and revenues passing to and from the OTCs and these Virginia affiliates.

### D.  Document Request No. 2

Inline seeks agreements executed between the OTCs and certain Verizon defendant affiliates located in Virginia, all of which are involved in some manner in the marketing, sale,

and provision of DSL services throughout the Verizon territories. While the OTCs admit the existence of such agreements (all affiliate agreements must be in writing), they refuse to produce these agreements. Repeating the mantra that the OTCs only "provide DSL-related telecommunications services in their respective authorized service areas," they duck the issue that business arrangements for the offer and sale of these services through their Virginia affiliates, and the admitted existence of other services or revenues supplied to and from the contracting parties in Virginia, are also highly relevant to both specific and general jurisdiction.[7]

### E.   Document Request No. 3

Inline seeks documents sufficient to show the nature and type of services provided to the OTCs by other Verizon defendants located in Virginia. While the OTCs acknowledge that such services exist, they refuse to produce the requested documents that will show that the OTCs' relationships with Virginia companies are so extensive as to support general jurisdiction over the OTCs in Virginia.

### F.   Document Request No. 5

Finally, Inline seeks agreements executed by or on behalf of the OTCs with ISPs located in Virginia. By the OTCs own admission, they have "Standard ISP contracts" that provide for the sale of their "wholesale DSL service." The Virginia ISPs then market and sell the accused DSL service to their customers. Thus it is reasonable to infer that the OTCs derive substantial revenue from their business relationships with Virginia ISPs, and provide various services directly to those ISPs in Virginia. Whether the OTCs directly infringe through these relationships or induce or contribute to direct infringement by the ISPs, the OTCs' business

---

[7] The OTCs' assertion that they offer service pursuant to published tariffs is irrelevant as they also admittedly supply service pursuant to contracts. OTCs' opposition at 15.

relationship with these Virginia ISPs is highly relevant to personal jurisdiction and the agreements governing these relationships should be produced.

## VI. CONCLUSION

For the foregoing reasons, Inline respectfully requests that the Court orders each OTC to produce documents responsive to Inline's jurisdictional document requests, numbers 1, 2, 3, 4, 5 and 8 immediately, and no later than five days from receipt of an order compelling production.

**INLINE CONNECTION CORPORATION**

By _____
  Of Counsel

Stephen E. Noona
Va. Bar No. 25367
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23514-3037
Telephone: (757) 624-3239
Facsimile: (757) 624-3169

Carl Nadler
Robert M. Hansen
Va. Bar No. 44136
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
Telephone: (202) 912.2000
Facsimile: (202) 912.2020

Alexander L. Brainerd
Michael K. Plimack
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025
Telephone: (650) 324-7000
Facsimile: (650) 324-0638

C. Joël Van Over
Robert C. Bertin
Va. Bar No. 41278
Swidler Berlin LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
Telephone: (202) 424-7581
Facsimile: (202) 424-7643

Attorneys for Inline Connection Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2005, a true copy of the foregoing was sent by hand and via e-mail to:

>Robert W. McFarland, Esq.
>McGuire Woods LLP
>900 World Trade Center
>101 W. Main Street
>Norfolk, VA 23510-1655

And via e-mail and Federal Express to:

>Brian C. Riopelle, Esq.
>McGuire Woods LLP
>One James Center
>901 E. Cary Street
>Richmond, VA 23219
>
>John B. Wyss, Esq.
>Andrew G. McBride, Esq.
>Kevin P. Anderson, Esq.
>Wiley Rein & Fielding LLP
>1776 K Street NW
>Washington, DC 20006

9241199v1