UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



INLINE CONNECTION CORPORATION,    )
                                  )
            Plaintiff,            )
                                  )
        v.                        ) CIVIL ACTION NO. 02:05 CV 205 HCM
                                  )
VERIZON INTERNET SERVICES,        )
INC., et al.                      )
                                  )
            Defendants.           )


**PLAINTIFF INLINE CONNECTION CORPORATION'S REBUTTAL BRIEF IN
SUPPORT OF MOTION TO COMPEL RESPONSES TO INLINE'S FIRST SETS OF
REQUESTS FOR PRODUCTION AND INTERROGATORIES**

FILED

DEC 14 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION................................................................................... 1

II.   ARGUMENT ....................................................................................... 1

A.    The Court's Orders Permit Inline To Proceed With Full-
      Scale Discovery Now..................................................................... 1

B.    Defendants' Incomplete and Late Document Production
      Does Not Satisfy Their Discovery Obligations. ........................... 3

C.    Inline's Production of Delaware Documents, Regarding
      Which Defendants' Complaints Are Meritless, is Irrelevant
      to This Motion............................................................................... 4

D.    Inline's Discovery Requests Are Not Overbroad, and
      Having Refused to Meet and Confer in Good Faith
      Regarding Their Breadth, Defendants Cannot Complain ............. 6

      1.    Defendants' Supposition That They Need Produce
            Only Documents Relevant To The DSL Services
            They Consider At Issue In Delaware Is Incorrect
            And Does Not Limit Their Obligations ............................. 7

      2.    Inline Is Entitled To Complete Discovery
            Responses, Including A Reasonable Search For
            Documents, From Each Defendant. .................................... 9

      3.    That Inline Has Propounded a Variety of Requests
            Regarding Various Topics Relevant To The Case
            Does Not Make The Requests Overbroad, Even If
            the Number of Responsive Documents Is
            Substantial. ....................................................................... 10

      4.    Defendants Did Not Meet and Confer In Good Faith
            Regarding Their Overbreadth and Undue Burden
            Objections. ....................................................................... 11

E.    The Alleged Existence of Privileged Materials From the
      Three-Month Delaware Litigation With Defendants' Parent
      Company Does Not Excuse Defendants From Conducting
      a Reasonable Search For Responsive Documents. ...................... 13

      F.     Inline's Interrogatories Are Proper and Timely............................................ 13

      G.    Inline's Damages Discovery Is Proper and Timely...................................... 14

      H.    Verizon Services, Inc. Has Waived Any Objections To
           Inline's Requests............................................................................................ 15

III.   CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

### CASES

*D'Addario v. Geller*,
  No. 2:02cv250, 2005 WL 1667913 (E.D. Va. June 28, 2005) .................................... 4, 10

*Fonville v. District of Columbia*,
  __ F.R.D. __, No. CV.A.02-2353, 2005 WL 1244816 (D.D.C. July 25, 2005) ........... 10

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*,
  No. Civ.A. 00-3058, 2002 WL 32349387 (E.D. Pa. Jan. 8, 2002) ................................ 8

*MicroMotion, Inc. v. Kane Steel Co.*,
  894 F.2d 1318 (Fed. Cir. 1990) ...................................................................................... 8

*Riles v. Shell Exploration & Prod'n Co.*,
  298 F.3d 1302 (Fed. Cir. 2002) ...................................................................................... 9

*Woolen v. Surtran Taxicabs*, Inc.,
  684 F.2d 324 (5th Cir. 1982) ........................................................................................ 14

### RULES

Fed. R. Civ. P. 26 ............................................................................................................ 9, 15

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 6

Fed. R. Civ. P. 26(b)(5) ........................................................................................................ 4

Fed. R. Civ. P. 26(d) ............................................................................................................. 5

Fed. R. Civ. P. 33(b)(1) ....................................................................................................... 14

## I.    INTRODUCTION

This Court has set an aggressive schedule for the completion of fact discovery and trial. To meet that schedule, this Court has authorized that all necessary discovery proceed forthwith and Inline, in turn, served the discovery at issue in this motion.   Defendants, however, made this motion necessary by ignoring the Court's clear instruction – given in two separate orders -- regarding full-scale, immediate discovery.  Defendants have improperly chosen to proceed only with sharply limited discovery of their own choosing.

First, Defendants have granted themselves a stay of *any* discovery they deem inconvenient pending the Court's decision on their motions to dismiss or transfer.  Second, without demonstrating that any ruling of the Delaware court creates collateral estoppel in this case, Defendants have chosen to limit discovery based on their view of how certain rulings in Delaware might impact this case.  Defendants' unilateral limits on discovery are inconsistent with the Court's orders and the Federal Rules.

Given the Court's expeditious scheduling order, there is no time for Defendants to play these dilatory games.  Inline respectfully requests that Defendants be ordered to proceed forthwith with full-scale discovery according to the Federal Rules.  Inline's motion to compel should be granted in full.

## II.    ARGUMENT

### A.    The Court's Orders Permit Inline To Proceed With Full-Scale Discovery Now

Inline's opening memorandum recounted in detail this Court's Rule 26(f) and 16(b) Orders (the Court's only orders regarding discovery) which require (a) that "[d]iscovery shall be commenced timely," (b) that Inline complete its discovery on all topics by November 15, 2005,

and (c) that trial begin January 24, 2006. *See* Inline's Memorandum ISO Motion to Compel Responses to Inline's First Sets of RFPs and Rogs ("Mem.") at 4, 5, 9, 13; Declaration of Andrew C. Byrnes ISO Inline's Motion to Compel ("Byrnes Decl."), Ex. 1, 10.[1] These Orders – entered by the Court with full knowledge of Defendants' pending motions – unambiguously require the parties to proceed with full-scale discovery on all issues now. Failure to do so will render the Court's trial date entirely untenable.

The Court's statement in the Rule 16(b) Order that the pre-trial schedule set forth in the Order is "[s]ubject to any motions now pending" did not – as Defendants seem to argue – constitute a stay of discovery until the Court resolved those motions. *Id.*, Ex. 10 at 1. To the contrary, the Court plainly meant that the parties should proceed on the stated discovery schedule unless and until the Court modified that schedule because of a ruling on one or more pending motion. Indeed, the Court stated in that same paragraph, that **"only the court, by order, may approve extensions of time."** *Id.* (emphasis in original).

Certainly nothing in the Court's Orders supports Defendants' position that Inline's motion, let alone Defendants' production of responsive documents, is premature until (1) the motion for transfer is decided; (2) Inline has reviewed Defendants' production; and (3) Defendants have reviewed the documents from the Delaware litigation. *See* Opp. at 4. The Rule 16(b) Order,

---

[1] By contrast, in their opposition brief, Defendants mention only one of these orders -- the Rule 16(b) scheduling order -- in a footnote, in which they state only that "the [Rule 16(b)] Scheduling Order is expressly subject to the pending threshold motions." Verizon Defendants' Opposition to Inline's Motion to Compel Responses To First Sets of Discovery ("Opp.") at 9 n.7.

absent further order of the Court, governs discovery and under that Order, discovery must proceed.

### B.     Defendants' Incomplete and Late Document Production Does Not Satisfy Their Discovery Obligations.

Defendants disingenuously claim they have "work[ed] with Inline" and "expended substantial efforts" in making their recent, belated document production. *See id*. at 2-3, 7.   The truth is that Defendants – having refused in the meet and confer to commit to full satisfaction of any portion of any of Inline's actual document requests – simply chose the roughly 49,000 pages that they were comfortable producing.   It is a self-serving and self-selected collection of documents, and Defendants make no pretense that they have produced all documents that would be responsive to even a single one of Inline's requests.   Tellingly, Defendants had not produced a single document before Inline filed its motion to compel.

Even in their opposition, Defendants state only that they have produced "*materials regarding* the Verizon Online ADSL service, the prior art, DSL industry standard setting activities, corporate structure and policies, audited financial statements, Defendants' estoppel and laches defenses, Defendants' first hand knowledge of Inline and named inventor David Goodman, and *a variety of other subjects on which the parties were able to reach agreement during their meet and confer discussions*."  *Id*. at 3 (emphasis added).   Inline is entitled under the Federal Rules to a clear identification of which requests or portions of requests Defendants have satisfied in full, so that it can (1) confirm whether it received all responsive documents, not just Defendants' selection of those most helpful to their case, and (2) seek relief as to requests that Defendants do not commit to satisfy in full.

Moreover, in the short period of time Inline has had to review Defendants' last minute, prophylactic production before filing this rebuttal brief, it has become clear that Defendants'

production omits entire categories of critical documents, including documents regarding the

design, operation, provision, marketing and sale of Defendants' DSL services and related

equipment, and damages.  Declaration of Andrew C. Byrnes ISO Inline's Rebuttal Brief ISO

Motion to Compel ("Byrnes Rebuttal Decl."), ¶¶ 16-17.  Indeed, Defendants' production does not

include many documents that would be relevant in this suit even if one were to accept

Defendants' claims about the limiting effect on discovery of the Delaware rulings.  *See id.*

    Under these circumstances, it is utterly outrageous for Defendants to suggest that Inline

cannot get real answers to *its* discovery requests until Inline has reviewed and responded to

Defendants' self-serving selection of the documents it views as satisfactory for production

independent of the requests actually served by Inline.  *See* Opp. at 4.

    Finally, Defendants still have not provided any privilege log identifying the documents

they have withheld from production based on privilege.  Fed. R. Civ. P. 26(b)(5).  Their failure

to provide any log, even a preliminary one, now one month after their responses were due,

waives any privilege objection.  *See D'Addario v. Geller*, No. 2:02cv250, 2005 WL 1667913, *7-

8 (E.D. Va. June 28, 2005).

### C.    Inline's Production of Delaware Documents, Regarding Which Defendants' Complaints Are Meritless, is Irrelevant to This Motion.

    In their continuing attempt to distract Inline and this Court from their own discovery

intransigence, Defendants in their opposition brief again decry their supposed lack of access to

materials from the Delaware cases, which they assert precludes them from having to produce

"substantive" discovery in this case.  Opp. at 3-4.  Indeed, Defendants propose that Inline's

motion to compel be stayed pending their receipt and review of Inline's production of documents

from the Delaware case.  *Id*. at 4.

Both this Court's Orders and the Federal Rules expressly disapprove this sort of "tit for tat" approach to discovery. The Court's Rule 26(f) Order provides clearly that "[t]he failure of a party to comply with any disclosure provision, or any other form of discovery, will not excuse any other party from the failure to comply with any disclosure provision or any other form of discovery." Byrnes Decl., Ex. 1; *see also* Fed. R. Civ. P. 26(d) ("the fact that a party is conducting discovery . . . does not operate to delay any other party's discovery"). It is particularly outrageous for Defendants to suggest that its discovery obligations should be stayed completely pending a full production of the Delaware documents. Nothing in the Federal Rules or this Court's Orders suggests that Defendants are entitled to this preferential treatment in discovery.

Moreover, Defendants have never proffered any reasonable explanation as to why they need additional documents from Inline in order to respond to Inline's requests to produce documents in their possession, custody or control relating to the configuration of Defendants' networks and the operation, marketing and sale of Defendants' services. Rather, Defendants have simply used the pending Delaware case as mantra for their near-total disregard of its obligations in this case and to this Court.

In any event, on August 11, fewer than 30 days after Defendants served their first set of requests regarding the Delaware cases, and as it repeatedly promised in response to Defendants' badgering that Inline produce such documents immediately regardless of the Rules, Inline produced approximately 60,000 pages of pleadings, deposition transcripts, and produced documents from the Delaware cases. Byrnes Rebuttal Decl., Ex. 1; *see also, e.g.*, Byrnes Decl., Ex. 3; Ex. 17 at 3; Ex. 18; Ex. 22; Ex. 24. As Inline also has promised, in the week of August

5

22, it will produce the remaining responsive documents that it has agreed to produce and is able to produce under the Protective Order in Delaware.

With respect to documents that Inline cannot now produce because they contain confidential information of entities other than Inline, Defendants claim that Inline has asserted "overbroad" claims of confidentiality that have delayed production of the Delaware documents. Opp. at 3. But Inline has produced and will continue to produce responsive documents without regard to any *Inline* claim of confidentiality.[2]

The only documents Inline has withheld are those for which third parties – such as AOL and Earthlink – have asserted confidentiality claims. As to those, Inline contacted AOL and Earthlink and is attempting to resolve their confidentiality issues. *See, e.g.*, Byrnes Decl., Ex. 17, 21; Byrnes Rebuttal Decl., Ex. 2-4. In addition, much of the confidentiality problem will be resolved if Inline and Defendants can work out a protective order in this case. Inline has suggested only modest changes in Defendants' proposed protective order, and is simply waiting for Defendants to submit the protective order to the Court for approval. *See id.*, Ex. 5.

### D.     Inline's Discovery Requests Are Not Overbroad, and Having Refused to Meet and Confer in Good Faith Regarding Their Breadth, Defendants Cannot Complain

Pursuant to Federal Rule of Civil Procedure 26(b)(1), Inline is entitled to receive from Defendants "discovery of any matter relevant to the subject matter involved in the action." Defendants concede that "there exists relevant information" responsive to Inline's requests that

---

[2] Defendants assert, without any citation or basis in fact, that the Delaware case materials that Defendants have requested "are sitting on a shelf in Inline's counsel's office." *Id.* at 3. As Defendants are well aware, these voluminous materials are not on anyone's "shelf," and certainly not on the shelf of anyone at Heller Ehrman LLP, Inline's chief counsel in this lawsuit, or Kaufman & Canoles, Inline's local counsel, who are not counsel in the Delaware lawsuits.

they refuse to produce because the requests are purportedly "overbroad" and "unduly burdensome." Opp. at 8-15.[3] Defendants' assertion largely reduces to their ubiquitous argument that any discovery that they do not believe would proceed in Delaware, or would not proceed in this Court if their motions to dismiss or transfer were granted, is inherently burdensome and overly broad. But, as Inline explained in its initial brief and reiterates below, its requests are not overbroad for these or any other reason. Moreover, by failing to meet and confer in good faith about their overbreadth and undue burden objections, Defendants cannot be heard to refuse to produce relevant documents on that basis.

      **1.    Defendants' Supposition That They Need Produce Only Documents Relevant To The DSL Services They Consider At Issue In Delaware Is Incorrect And Does Not Limit Their Obligations**

Fundamental to Defendants' argument that Inline's requests are overbroad is their assumption that they need produce only documents relevant to the services they consider potentially infringing in the Delaware litigation. *See id.* at 9-12. As Inline explained in detail in its initial motion papers, Defendants' supposition is incorrect for at least three reasons:

First, this Court has not ruled that it will accept the Delaware court's claim construction or summary judgment rulings, much less Defendants' view of how those rules impact which services may be accused of infringement. *See* Mem. at 10-11. Defendants are not entitled to narrow discovery based on the Delaware rulings until they can convince the Court, on full briefing, to accept those rulings here.

---

[3] Defendants claim that "Inline's counsel admitted on numerous occasions that the requests were overlapping, extremely broad, and designed to be over-inclusive." *Id.* at 7. This statement, however, finds no support anywhere in Mr. Scheffel's declaration, let alone the cited paragraphs, or the facts.

Second, even if the Delaware rulings were accepted in this Court -- and they have not been -- Inline would be entitled to reasonable discovery relating to all of Defendants' DSL services to determine which infringe under the Court's claim construction rulings. *See id.* at 11. Inline is surely not obliged to accept Defendants' self-serving opinions on which services meet their view of the proper claim construction. Nor is Inline prohibited from taking discovery regarding services that it has reason to believe may infringe, but is not yet 100% certain. The several cases Defendants cite address circumstances, unlike those present here, where the movant provided no basis for concluding that the material would be relevant or was necessary, sought discovery from third parties and/or sought additional discovery after discovery had been completed. *See* Opp. at 11. Indeed, *the Delaware court itself* did not impose the limits on discovery Defendants request of this Court.

Tellingly, Defendants continue to refuse to produce even that subset of documents that relate to the services Defendants appear to consider infringing under their view of the Delaware court's rulings. They have produced at most only a few documents tangentially related to, or internal documents regarding, their ADSL services. Byrnes Rebuttal Decl., ¶ 16. This speaks volumes about the bad faith nature of its overbreadth claims.

Lastly, Defendants are simply incorrect that discovery may be properly limited to services that Defendants view as infringing. Discovery as to allegedly non-infringing DSL services is proper for several reasons including, in particular, validity and damages and the determination of a proper royalty in light of non-infringing alternatives. *See*, *e.g.*, *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, No. Civ.A. 00-3058, 2002 WL 32349387, *4-5 (E.D. Pa. Jan. 8, 2002) (granting motion to compel discovery regarding defendant's allegedly non-infringing alternatives; distinguishing *MicroMotion, Inc. v. Kane Steel*

8

*Co.*, 894 F.2d 1318 (Fed. Cir. 1990), cited by Defendants here); *Riles v. Shell Exploration &*
*Prod'n Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (stating that calculation of reasonable royalty
cannot be "divorced of all relation to a potential non-infringing alternative method" or product).
Indeed, Defendants produced many documents related to the Alliance for Telecommunications
Industry Solutions T1 Committee Standards that addressed HDSL (high bit-rate DSL) and VDSL
(very high bit-rate DSL), not just those that addressed ADSL (asymmetric DSL).  Byrnes
Rebuttal Decl., ¶¶ 12-15, Ex. 6-8.

Accordingly, Inline's requests are not overbroad because they request documents beyond
Defendants' view of the "proper" accused services or equipment.

## 2.    Inline Is Entitled To Complete Discovery Responses, Including A Reasonable Search For Documents, From Each Defendant.

Defendants insist that the fact that Inline is seeking discovery from every Defendant
compounds the overbreadth and burden of their responding to Inline's requests.  Opp. at 11-13.
Pursuant to the Federal Rules, however, Inline is entitled to have each Defendant conduct a
reasonable search for documents and provide relevant documents in their possession, custody
and/or control.  *See* Fed. R. Civ. P. 26; *see also* Mem. at 15-16 (citing caselaw support).[4]  To the
extent that Defendants' counsel reasonably concludes that a particular Defendant would not have
documents responsive to a request, counsel can surely take that into account in fashioning the
scope of a reasonable search or, after a search has been conducted, in providing a written
response warranting that no responsive documents exist.  Moreover, although Defendants ignore

_____

[4] Semantics aside, Inline has issued a limited set of discovery to *each* Defendant, which
seeks basic information relevant to this case as allowed by the Federal Rules.  Byrnes Decl., ¶ 5,
Ex. 4-9.  Defendants' wrongful attempts to transform this basic discovery into burdensome
"boilerplate" have no basis and must be swept aside.

it in their opposition, Inline reiterates its proposal that only one copy of documents need be

produced provided that each Defendant in possession/custody/control of such discovery stipulate

to the authenticity of and their possession/custody/control of that discovery. *See* Byrnes Decl.,

Ex. 17 at 4; Mem. at 20.

> **3.    That Inline Has Propounded a Variety of Requests Regarding
> Various Topics Relevant To The Case Does Not Make The Requests
> Overbroad, Even If the Number of Responsive Documents Is
> Substantial.**

Defendants also argue that Inline's requests are overbroad and unduly burdensome

because, even though they concededly call for relevant documents, the requests would require

production of a large number of documents.  Opp. at 11-12.  Of course, the fact that there are

many relevant responsive documents does not make a request overbroad.  In addition, to the

extent that Defendants in their opposition brief rely on objections to Inline's definitions of

"Relating To" and "Describe with Particularity," their failure to object in their written responses

or the parties' meet and confer discussions waived those objections. *See* Opp. at 10 n.8, 16 n.9;

*see, e.g.*, *D'Addario*, 2005 WL 1667913, *7-8 (finding that failure to assert privilege objection at

time of response to request waives objection); *Fonville v. District of Columbia*, __ F.R.D. __,

No. CV.A.02-2353, 2005 WL 1244816 (D.D.C. July 25, 2005) (recommending that court deem

all objections waived where respondent served belated objections).  Further, although certain

requests may be partially duplicative or redundant of other requests in Inline's First Set of RFPs,

they are not unreasonably so and will cause Defendants no additional production burden. *See*

Opp. at 13.  Accordingly, any duplication or redundancy cannot justify Defendants' refusal to

produce responsive documents.

4.    **Defendants Did Not Meet and Confer In Good Faith Regarding Their Overbreadth and Undue Burden Objections.**

Moreover, to the extent that collecting and producing the large number of responsive relevant documents might burden Defendants, their failure to meet and confer in good faith regarding their objections should deprive Defendants of the right to complain now. During its almost entirely unproductive ten-hour attempt to meet and confer regarding Defendants' objections to its discovery requests, Inline repeatedly asked Defendants, when they proffered an overbreadth or undue burden objection, whether Defendants could use their superior knowledge of their own activities and documents to propose specific categories of documents they were willing to produce. *See* Byrnes Decl., ¶ 15. Defendants repeatedly refused. *See id.*

Contrary to Defendants' assertion that Inline made no attempt to reach a compromise by proposing narrowing certain requests, *see* Opp. at 13, in most of the few instances where Defendants identified certain categories of responsive documents that appeared likely to be voluminous, Inline did propose to agree to a more narrow production *contingent upon* Defendants' agreement that they would then produce all documents responsive to the narrowed request. Byrnes Rebuttal Decl., ¶¶ 7-10. Because Defendants refused to make any such commitment, Inline was forced to bring the present motion.[5] *See id.*

_____

[5] Defendants argue that Inline's motion is improper because it "phrased its motion generally, without regards to specific document requests and interrogatories." *Id.* at 8 n.6. Inline, however, did identify the specific requests and interrogatories as to which the Court should compel a full and complete response. Inline Mot. at 2 (moving as to RFPs 1-8, 10-13, 15-41 and 43-84, and Rogs 1-12); *see also* Mem. at 2-3. There is no rule that the movant must discuss individually each objection to each request in the memorandum supporting the motion. The cases Defendants cite, which address other courts' local rules or the movant's failing to identify the discovery sought, are inapposite.

11

For example, with respect to RFP 36, which requests "[a]ll Documents Relating To any communication or agreement between You and any third Person about the provision, sale, lease, license, or marketing of any Accused Service . . . ," Inline offered to exclude from Defendants' production obligation communications with end users of the Accused Services or with advertising agencies except as the communications describe the Accused Services, which Defendants asserted would be overly burdensome to produce.  *Id.*, ¶ 9.

As another example, Inline offered to exclude each of the categories of documents that Defendants asserted would be overly burdensome to produce, including invoices and documents regarding billing disputes, from Defendants' obligation to produce documents pursuant to RFP 75, which requires production of "documents received from and sent to modem, microfilter, DSLAM or DSLAM component distributors, sales agents, assemblers or manufacturers . . . ." *Id.*, ¶ 10.

Inline also repeatedly asked whether Defendants were willing to produce at least those documents that Defendants considered relevant even under their view of the Delaware court rulings.  Byrnes Decl., ¶¶ 15, 18. [6]  Shockingly, Defendants refused to produce even this subset of requested documents that would be necessary and appropriate discovery even under Defendants' unilateral limitation on the subject matter of the case.  *Id.*, ¶ 18; Byrnes Rebuttal Decl., ¶ 7.  Defendants' refusal in this regard is telling as the good faith (or lack thereof) with which they have approached discovery.

---

[6] Inline offered to accept this subset of documents without prejudice to its right to seek the Court's assistance in securing full production of all documents responsive to its requests. Byrnes Rebuttal Decl., ¶ 7.

E.    **The Alleged Existence of Privileged Materials From the Three-Month Delaware Litigation With Defendants' Parent Company Does Not Excuse Defendants From Conducting a Reasonable Search For Responsive Documents.**

Defendants miss the point of Inline's argument that they must undertake a reasonable search for responsive documents generated after Inline filed suit against their shell parent, Verizon Communications, Inc., in Delaware in 2002. Even assuming *arguendo* that Defendants, who were not involved in the Delaware suit, created "tens of thousands of pages of privileged communications and documents" incident to that suit,[7] it is unreasonable and improper for Defendants to condition their undertaking a reasonable search even for non-privileged documents on Inline's telling them where to look. Defendants know best the type and location of their documents. They must undertake a reasonable search. *See, e.g.*, Mem. at 15-16 (citing support). If such a search comes up empty, Defendants may warrant in a formal discovery response that result, but Inline should not be required to accept anything less.

F.    **Inline's Interrogatories Are Proper and Timely.**

Defendants' objections to Inline's contention interrogatories reduce to another attempt to disregard this Court's Orders and self-impose a stay on discovery. Defendants do not and cannot assert that they have no contentions regarding their non-infringement, the validity of the patents-in-issue and other topics on which Defendants *have already proffered contentions* in their

---

[7] In their opposition, Defendants do not attempt to explain how they came to create so many privileged documents relating to the earlier Delaware suit, which was ultimately dismissed based on Defendants' shell parent's asserting that it had only a tangential relationship to Defendants. Defendants have pared back, however, their claims as to the number of privileged documents they created. In meet and confer discussions, Defendants asserted that they had created "tens if not hundreds of thousands" of such documents, not the "tens of thousands of pages" of documents they now claim. *See* Byrnes Decl., ¶ 20.

pleadings -- or bases for those contentions. Accordingly, and particularly since another two weeks have passed since Inline filed its motion, this Court should require Defendants to provide contention discovery immediately. *See* Fed. R. Civ. P. 33(b)(1) (recipient "shall answer to extent the interrogatory is not objectionable"). That Defendants may wish to update their interrogatory responses later, after more discovery, is no basis for delaying their initial responses.

Moreover, even assuming *arguendo* that some delay were proper, this Court should disregard Defendants' attempt to seek an open-ended delay that would require a response only "after resolution of the threshold motions and after the Verizon Defendants receive, and have a reasonable opportunity to analyze, all the critical Delaware Action materials." Opp. at 17. Instead, particularly since Defendants created "tens of thousands of pages" of documents regarding these issues several years ago, and will shortly receive the remainder of the Delaware documents, Inline respectfully requests that, at the latest, the Court require Defendants to respond in full to Inline's contention interrogatories 28 days (rather than 14 days) after issuing its order granting Inline's motion.

### G.    Inline's Damages Discovery Is Proper and Timely.

For the reasons discussed above regarding Defendants' arguments regarding alleged overbreadth and contention discovery, Defendants should be required to provide complete responses to Inline's indisputably relevant damages discovery immediately. In the one, 23-year-old, case that Defendants cite to support their claim for bifurcation of discovery, the circuit court stated that the district court *may* wish to delay damages discovery in an antitrust class action where the district court had yet to resolve how to proceed with the action where there were two antagonistic, competing groups of plaintiffs and proposed class counsel. *See Woolen v. Surtran Taxicabs*, Inc., 684 F.2d 324, 334 (5th Cir. 1982). Neither that case, nor any other law of which Inline is aware, mandate that damages discovery follow liability discovery. Certainly Inline is

14

aware of no case permitting such an approach in which the fact discovery cutoff is three months away. Indeed, this Court's Orders and the Federal Rules suggest that all discovery, including damages discovery, may proceed from the start of discovery. *See, e.g.*, Byrnes Decl., Ex. 1, 10; Fed. R. Civ. P. 26. Defendants' suggestion that damages discovery proceed only after an as-yet-unscheduled Markman hearing has no basis in law or in the factual circumstances of this case, and would ensure substantial delays in the court-ordered trial schedule.[8]

### H.     Verizon Services, Inc. Has Waived Any Objections To Inline's Requests.

In their opposition, Defendants make no substantive argument regarding why Verizon Services, Inc. did not waive its objections to Inline's document requests or interrogatories by failing to proffer any objections in a timely fashion. Rather, Defendants only point out that Inline did not make any suggestion as to how Verizon Services, Inc. might attempt to cure its failure to preserve any such objections. Opp. at 8 n.5. Although it would be too late to remedy its waiver, it is worth noting that Verizon Services, Inc. still has not even attempted to serve objections, over three weeks after being notified of that waiver. In any event, Inline's motion to compel should be granted in full as to Verizon Services, Inc.

## III.     CONCLUSION

Discovery in patent cases is always extensive and difficult to complete in a timely fashion in this District. As this Court knows, some parties attempt to avoid their discovery obligations

---

[8] In their August 11 production, Defendants produced financial statements from 2002-2004 for some of the OTC Movant Defendants. Byrnes Rebuttal Decl., ¶ 17. While this small production of damages documents falls far short of satisfying Defendants' obligations, even as to a single RFP, their production belies Defendants' argument that all damages discovery and all discovery from Defendants other than the ISP Defendants should be postponed.

by erecting unreasonable barriers to even the most relevant information. Coupled with a self-serving campaign of discovery letters, voluminous general objections, and delay, these parties (such as Defendants here) hope that the time for discovery will pass before the party seeking the information can cut through the legal thicket imposed around the information. This Court must intervene to ensure that Inline is not prejudiced in its pursuit of basic discovery that is mandated by the Rules and orders governing this case.

**INLINE CONNECTION CORPORATION**

By_____
　　Of Counsel

16

Stephen E. Noona
Va. Bar No. 25367
150 West Main Street
Kaufman & Canoles, P.C.
Norfolk, Virginia 23514-3037
Telephone: 757.624.3239
Facsimile: 757.624.3169

Carl Nadler
Robert M. Hansen
Va. Bar No. 44136
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC  20036
Telephone:  202.912.2000
Facsimile:  202.912.2020

Alexander L. Brainerd
Michael K. Plimack
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone:  415-772-6000
 Facsimile:  415-772-6268

Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025
Telephone: 650-324-7000
Facsimile: 650-324-0638

C. Joël Van Over
Robert C. Bertin
Va. Bar No. 41278
Swidler Berlin LLP
3000 K Street, NW, Suite 300
Washington, DC  20007-5116
Telephone:  202-424-7581
Facsimile:  202-424-7643

Attorneys for Inline Connection Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2005, a true copy of the foregoing was sent by hand and via e-mail to:

> Robert W. McFarland, Esq.
> McGuire Woods LLP
> 900 World Trade Center
> 101 W. Main Street
> Norfolk, VA 23510-1655

And *via* e-mail and Federal Express to:

> Brian C. Riopelle, Esq.
> McGuireWoods LLP
> One James Center
> 901 E. Cary Street
> Richmond, VA 23219

> John B. Wyss, Esq.
> Andrew G. McBride, Esq.
> Kevin P. Anderson, Esq.
> Wiley Rein & Fielding LLP
> 1776 K Street NW
> Washington, DC 20006

::ODMA\PCDOCS\DOCSNFK\1006072\1

18