UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED
AUG 17 2005
CLERK, US DISTRICT COURT
NORFOLK, VA

INLINE CONNECTION CORPORATION,   )
                                 )
         Plaintiff,              )
                                 )
    v.                           )  CIVIL ACTION NO. 02:05 CV 205 HCM
                                 )
VERIZON INTERNET SERVICES,       )
INC., et al.                     )
                                 )
         Defendants.             )

FILED
DEC 14 2005
U.S. DISTRICT COURT

**DECLARATION OF ANDREW C. BYRNES IN SUPPORT OF PLAINTIFF INLINE CONNECTION CORPORATION'S REBUTTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INLINE'S FIRST SETS OF REQUESTS FOR PRODUCTION AND INTERROGATORIES**

I, Andrew C. Byrnes, declare:

1. I am an attorney with the law firm of Heller Ehrman LLP, counsel to Plaintiff Inline Connection Corporation ("Inline") in this matter. I have personal knowledge of the facts set forth in this declaration unless otherwise noted, and, if called as a witness, could and would testify thereto.

**PRODUCTION OF DELAWARE DOCUMENTS**

2. Attached hereto as Exhibit 1 is a true and correct copy of my August 11, 2005 letter to Defendants' counsel John Wyss accompanying production of documents labeled ICC/VZ 000001 through ICC/VZ 060162, and Inline's privilege log.

3. Attached hereto as Exhibit 2 is a true and correct copy of Mr. Wyss' August 3 letter to Inline counsel C. Joel Van Over and Michael Plimack regarding obtaining authorization



from AOL and Earthlink for disclosure in this case of certain confidential material from the Delaware actions.

4. Attached hereto as Exhibit 3 is a true and correct copy of Mr. Plimack's August 4, 2005 letter to Mr. Wyss, responding to Mr. Wyss' August 3 letter.

5. Attached hereto as Exhibit 4 is a true and correct copy of Ms. Van Over's August 5 letter to AOL counsel Kurt Rogers and Frederick Cottrell regarding Mr. Wyss' request that AOL provide Defendants with certain confidential material from the Delaware actions.

6. Attached hereto as Exhibit 5 are true and correct copies of Mr. Plimack's August 9 and 10 emails to Mr. Wyss conveying Inline's comments regarding Defendants' proposed protective order, without attachments.

**THE PARTIES' MEET AND CONFER PRIOR TO INLINE'S FILING ITS MOTION**

7. During the parties' meet and confer discussions, described in greater detail in my July 30, 2005 declaration in support of Inline's motion to compel, Inline offered to accept Defendants' complete production of documents that Defendants consider relevant to this lawsuit even under Defendants' view of the Delaware court rulings, i.e., relating to splitterless ADSL service with remote terminal DSLAMs, without prejudice to its right to seek the Court's assistance in securing full production of all documents responsive to its requests. Defendants refused to accept Inline's offer.

8. While Defendants reiterated during the meet and confer discussions their general overbreadth objection as to many of Inline's requests, they identified certain categories of responsive documents that were likely to be voluminous only as to a few requests. These included RFPs 12, 36, 51, 70 and 75. In most of these instances, Inline proposed to agree to a more narrow production but only if Defendants agreed that they would then produce all

documents responsive to the narrowed request. Defendants never accepted Inline's offer as to any request.

9. For example, with respect to RFP 36, which requests "[a]ll Documents Relating To any communication or agreement between You and any third Person about the provision, sale, lease, license, or marketing of any Accused Service . . . ," Inline offered to exclude from Defendants' production obligation communications with end users of the Accused Services or with advertising agencies except to the extent that the communications describe the Accused Services, which Defendants asserted would be overly burdensome to produce. As noted above, Defendants refused Inline's offer.

10. As another example, with respect to RFP 75, which requires production of "documents received from and sent to modem, microfilter, DSLAM or DSLAM component distributors, sales agents, assemblers or manufacturers . . . ," Inline offered to exclude from Defendants' obligation to produce documents each of the categories of documents that Defendants asserted would be overly burdensome to produce, including invoices and documents regarding billing disputes. Again, Defendants refused Inline's offer.

## REVIEW OF DEFENDANTS' DOCUMENT PRODUCTION

11. I have reviewed Defendants' August 11 document production and I believe that I have a thorough understanding at least of the general subject matter and type of the documents produced and the corresponding volume of each.

12. Roughly 34500 (or 70%) of the 49162 pages that Defendants produced are documents related to Alliance for Telecommunications Industry Solutions T1 Committee Standards, including regarding the reports and meetings of the T1E1 Subcommittee. These documents include (1) documents addressing only ADSL, (2) documents addressing only HDSL

(high bit-rate DSL), (3) documents addressing only VDSL (very high bit-rate DSL), and (4) documents addressing several or all of these DSL types.

13.     Attached hereto as Exhibit 6 is a true and correct copy of one of the documents addressing only HDSL, a January 6, 1995 Metalink Transmission Devices "Report On Measurements of a 1.568 Mbps single pair HDSL system," produced at VIS 44228-VIS 44234.

14.     Attached hereto as Exhibit 7 is a true and correct copy of one of the documents addressing only VDSL, Tut Systems' August 21, 1995 "Simply Line Code System (SLC) for VDSL" article, produced at VIS 44470-VIS 44473.

15.     Attached hereto as Exhibit 8 is a true and correct copy of one of the documents addressing ADSL, HDSL and VDSL, the preliminary interim agenda of the DSL Access T1E1.4 Working Group meeting on September 4-5, 1996, produced at VIS 47377-VIS 47378.

16.     Defendants' production does not appear to include any internal Verizon-generated (i.e., generated either by Defendants or any other Verizon branded entity) documents regarding current or recent DSL service. The only documents of any type that I could identify that addressed in any respect the provision or operation of Defendants' DSL service were several recent tariffs, produced at VIS 6590-VIS 7823, and an application for Verizon Infospeed DSL Solution Services, produced at VIS 48545-VIS 48546.

17.     Financial statements from 2002-2004 for some of the OTC Movant Defendants comprise roughly 600 pages of Defendants' production, at VIS 48547-VIS 49162. There appear to be no other documents directly relating to the damages to which Inline is entitled for Defendants' infringement.

///

///

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Menlo Park, California on August 16, 2005.

_____
Andrew C. Byrnes