05- 866

# UNITED STATES DISTRICT COURT
*EASTERN DISTRICT OF VIRGINIA*
<u>Norfolk</u>   DIVISION

FILED
OCT - 4 2005
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

<u>Tuesday, October 4, 2005</u>

MINUTES OF PROCEEDINGS IN <u>Open Court</u>
**PRESENT**: THE HONORABLE <u>Henry Coke Morgan, Jr., U. S. District Judge</u>

Courtroom Deputy Clerk: <u>S. Dance</u>
Law Clerk: <u>BS</u>          Reporter: <u>Jody Stewart, OCR</u>

| Set: 10:30 a.m. | Started: 10:45 a.m. | Ended: 11:55 a.m. |
|---|---|---|
| Case No. 2:05cv205 | | |
| Inline Connection Corporation | | |
| v. Verizon Internet Services, Inc., et al | | |

FILED DEC 14 2005 U.S. DISTRICT COURT DISTRICT OF DELAWARE

Stephen Noona & Michael Plimack app. on behalf of ptf.

Robert McFarland & John Wyss app. on behalf of dfts.

Leonard Suchyta, dfts'. in house cnsl. also pres.

  Came on for hearing on dfts.' motion to transfer case (#20); argued.
  Rulings read into record.
  Motion granted.  Court stays case as to all OTC defendants, takes issue under advisement, & grants parties until October 11, 2005, to submit brief.
  Joint motion to stay discovery & not comply with deadlines in Rule 16(b) Scheduling Order; granted.
  Court to prepare opinion.

  Exhibits: Ptf. 1) United States Patents (2), Chart, Order of Delaware USDC
           Dft. 1) E-mails (2), Chart of Verizon defendants

Total Hours: _____

53

**From:** John Wiles [wilesii@hotmail.com]
**Sent:** Monday, January 07, 2002 1:52 PM
**To:** datavid@overvoice.com
**Subject:** RE: fax number

yes the famous rocket docket. i'll check out the sites and give you a call later. why do they want you to buy a filter? after reading the article do you feel they are stepping on inlines toes?

>From: "David D Goodman use \(datavid@overvoice.com\) NOT"
>Reply-To:
>To: "John Wiles"
>Subject: RE: fax number
>Date: Mon, 7 Jan 2002 11:26:39 -0500
>
>John,
>
>Thanks for the data. I found the article on the web, so no fax necessary.
>But its a very good article.
>The fax # is 509-471-8717
>I couldn't get in touch with the lawyer the day we spoke. I called him once
>since, and sort of forgot. I guess in the back of my head I'm not really
>worried about the issue, although I can't tell you why.
>
>
>We just got a call from the litigators at www.kglrlaw.com They are one of
>the three firms now in the running for contingency.
>They want me to go out and buy a DSL filter -- they are getting ready to sue
>on the "rocket docket" in Alexandria, VA. You go to trial in 9 months from
>that point.
>The important thing is -- they want to play ball.
>
>We are entertaining 3 firms:
>
>www.kglrlaw.com
>www.gpiplaw.com
>and the most well known contingency lawyers -- Niro, Scavone in Chicago
>(they have no website)
>
>
>I have cancelled 2 firms:
>www.bode.com -- I couldn't stand the guy that would do the litigation
>Fairfield Resources -- they were too greedy
>
>One firm cancelled -- www.rkmc.com, because they had a conflict.
>
>I'm psyched.


DEFENDANT'S EXHIBIT 1 10/4/05
2:05cv205

```
>
>
>
> -----Original Message-----
> From: John Wiles [mailto:wilesii@hotmail.com]
> Sent: Monday, January 07, 2002 12:53 PM
> To: datavid@overvoice.com
> Subject: Re: fax number
>
>
> DG,
> please give me your fax number again. I have an article on intertainer
>from business 2.0 (Dec) i want to fax you. if you have read it please let me
>know. gives an overview of their vision and method of getting product to
>members, including wireless set top box that sounds similar to the
>radioshack one.
>
> did you call your lawyer? any answer why companies dont come to inline
>before service rollout?
>
> cheers,
> JWWII
>
>
>------------------------------------------------------------------------
>--
> Join the world's largest e-mail service with MSN Hotmail. Click Here
>
```

Send and receive Hotmail on your mobile device: Click Here

Highly Confidential

ICC/VZ 000002

```
To:            1265
Subject:       FW: question
```

Goodman asks bramson to comment on C.V. of possible contingency firm
Also asks Bramson a question about doing business with him


-----Original Message-----
From: David D Goodman use (datavid@overvoice.com) NOT [mailto:david.d.goodman@verizon.net]
Sent: Thursday, January 31, 2002 3:54 PM
To: Robert S. Bramson [rbramson@b-p.com]
Subject: question

Bob,

...

- ddg


-----Original Message-----
From: Bradford E. Kile, Esq. [mailto:bkile@kglrlaw.com]
Sent: Thursday, January 31, 2002 2:40 PM
To:   datavid@overvoice.com
Subject:   RE: questions about contingency

    David:
        Responses to your questions are as follows:

    a)   I assume that we can work something out.  As Charles observed when you were
here, we are really becoming your partner for this enforcement activity.  To the extent
that we are successful for you we hope to have an upside that offsets the risk and
recognizes the benefit to you of our success.  In other words if we are quite successful,
which we believe we will be, why not share the upside.  Having said this, we are willing
to decrease the contingency proposal to the following four parts: a) 45% for any litigated
party following the final pretrial conference; b) 40% for any party where a law suit is
filed and the case is settled at any time prior to the final pretrial conference; c) 35%
of any third party were litigation is not filed against that party; and a sliding scale
downward at a reduction of 5% for every 5M recovered with a floor of 15% on any ultimate
recovery.  What do you think?

    b)   The principal team will be Brad Kile, Charles Reed and Bob McManus regarding
litigation, per se.  Simultaneously, Bruce Lagerman will be attempting to negotiate
licenses.  (Good cop bad cop concept.)  As I indicated to you before, Bruce's entire
practice is marketing and negotiating technology licenses and he is good at it.  I have
been lead counsel in over 60 IP law suits where issue was joined but the firm is not just
a patent firm.  We have a general business and technology litigation practice.  Right now
I am litigating a fee case with Charles and Bob before the Superior Court for the District
of Columbia where we represent the defendant – owner of the National Press Club Building
here in DC, with respect to telephony services within the Press Club building on the user
side of the PBX.  We have just reversed an initial TRO and the matter is still in an
initial stage.  Recently, I was the lead IP counsel on a case in the Southern District of
New York where we represented Mabuchi Motor Co. - the largest manufacturer of fractional
horsepower D.C. motors in the world - against Johnson Electric of HK - the second largest.
Our client Mabuchi was the patentee and we secured a permanent injunction on their behalf
against Johnson for the patented technology.  In another case in the Federal District
Court of Las Vegas I was lead IP counsel in a jury trial against IOLab and Johnson &
Johnson where we won at a liability phase of the trial. The jury verdict was appealed to
the Federal Circuit and affirmed.  The case settled for $25M in favor of our client before

1

Highly Confidential                                                                 ICC-VZ 061370

the damages trial was completed. I have been before all the judges of the Eastern District of Virginia and we are quite familiar with litigation there, which is where we recommend filing an action to get an early trial date. It has been my experience that there is nothing like an immutable trial date to focus everyone's attention and drive a resolution. My undergraduate degree is Mechanical Engineering, Charles is PhD. Chemical Engineering, Roy Ackerman PhD in Chemical Engineering MIT, Scott Houtteman is PhD in Genetics U of Chicago. We do not have EE degrees, per se, however, we have all taken EE courses of circuits, power and electronics. This technology is what I call light electrical/electronic subject matter from a comprehension point of view and we all understand the patents, as written, so that I do not regard that less than perfect feature as being a particularly negative factor. Moreover, here in DC it is very easy to get EE associates from local law schools if we need them for special projects. Finally, you will be providing the technical support in the first instance.

   c)   We easily have enough people to handle the litigation. Beyond the people you met there is Karan Singh (about 45 with significant litigation experience, ChemE degree and an avocation for Internet issues), Jay Besch, Scott Houttemann, Eduardo Silva and Devta Ohri are all currently available. However, a law suit at the EDVa. only needs a team of three or four for a case of this nature. So, in sum, we have enough to man the cases.

   d)   I agree that IVOD is exciting and I want to develop a strategy with Bruce Lagerman to pursue both avenues, simultaneously, however, the first case filed will be the DSL distributed splitter case as soon as we complete an engagement agreement.

   Let's discuss the above at your convenience.

Brad
-----Original Message-----
From:    David D Goodman use (datavid@overvoice.com) NOT [<mailto:david.d.goodman@verizon.net>]
Sent: Monday, January 28, 2002 5:22 PM
To:    bkile@kglrlaw.com; lcreed@kglrlaw.com
Subject:    questions about contingency

Brad,

Thanks for the call, this morning. It was very very useful.
I am trying to make a decision promptly.
There are a lot of things to consider.


a) I appreciate your downward flexibility on the percentages.
The only other thing I might ask for is a sliding scale with respect to the royalties that come in without a trial.
In other words, I might, for example, ask that the firm might take x% of the first $5 million, and y% of whatever comes in after that,
where x is bigger than y.

b) I need to get some more detailed information on the background of the team you propose. While I know you have had a very very large amount of litigation experience, I would like to know a summary of the
patent lawsuits that you personally, have taken to trial. What was the issue and what were the results?
Did you represent the patent holder or the potential infringer?

Another question is this. Whom else would be on the litigation team?
In particular, who or whom would provide the electrical engineering expertise?


c) What happens if the trial workload gets very large? How will the firm handle the extra load?

d) Finally, the "interactive video over DSL" (IVOD) claims seem to be very valuable, but

2

Highly Confidential

ICC-VZ 061371

collecting royalties
might have to wait until after the "distributed splitter" lawsuit is finished. Can you tell me your thoughts about
starting to pursue the IVOD royalties earlier than that?

Thanks in advance for your response.

- dave g.

3

Highly Confidential

## Verizon Defendants

| | | Incorporated | HQ |
|---|---|---|---|
| A. | **ISP Defendants** | | |
| | Verizon Internet Services, Inc. | Delaware | Virginia |
| | GTE.NET LLC | Delaware | Texas |
| B. | **"Service" Company Defendants** | | |
| | Verizon Services Corp. | Delaware | Virginia |
| | Telesector Resources Group, Inc. | Delaware | New York |
| | Verizon Corporate Services Group Inc. | Delaware | Texas |
| | Verizon Advanced Data Inc. | Delaware | (Not operating) |
| | Verizon Avenue Corp. | Delaware | Virginia |
| C. | **OTC Defendants** | | |
| | Verizon California Inc. | California | Texas |
| | Verizon Florida Inc. | Florida | Florida |
| | Verizon Hawaii Inc. | Hawaii | New York |
| | Verizon North Inc. | Wisconsin | Indiana |
| | Verizon Northwest Inc. | Washington | Washington |
| | Verizon South Inc. | Virginia | Texas |
| | Verizon West Coast Inc. | California | Texas |
| | GTE Southwest Inc. | Delaware | Texas |
| | Contel Of The South Inc. | Georgia | Texas |
| | Verizon Delaware Inc. | Delaware | Delaware |
| | Verizon Maryland Inc. | Maryland | Maryland |
| | Verizon New England Inc. | New York | Massachusetts |
| | Verizon New Jersey Inc. | New Jersey | New Jersey |

| | | |
|---|---|---|
| Verizon New York Inc. | New York | New York |
| Verizon Pennsylvania Inc. | Pennsylvania | Pennsylvania |
| Verizon Virginia Inc. | Virginia | Virginia |
| Verizon Washington, D.C. Inc. | New York | Washington, DC |
| Verizon West Virginia Inc. | West Virginia | West Virginia |

United States Patent 5,844,596

**Claim 47**

21. A system for communicating information between an external source of information and a plurality of destinations of information over a telephone wiring network used for passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange, comprising:

    a plurality of transceivers coupled between the telephone wiring network and corresponding destinations of information, each including

        circuitry for accepting signals in a high frequency band of frequencies above the highest frequency of the telephone voice band and rejecting signals in the telephone voice band; and

    a signal interface coupled between the external source of information and the telephone wiring network, including

        circuitry for receiving a plurality of external signals encoding a plurality of information streams from the external source of information,

        circuitry for selecting a subset of zero or more transceivers for receipt of each of the information streams from the external source of information, and

        circuitry for transmitting over the telephone wiring network to each transceiver in each selected subset of transceivers an internal signal in the high frequency band encoding an information stream corresponding to that subset of transceivers.

47. The system of claim 21 further comprising:

    a filter coupled between the telephone wiring network and one of a plurality of telephone devices for preventing transmission of signals in the high frequency band to the telephone device.

PLAINTIFF'S EXHIBIT 10-4-05 / 2:05cv 205

United States Patent 6,243,446

## Claim 1

1. A system for communicating information between an external source of information and destinations of information over a telephone wiring network used for passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange, comprising:

> a transceivers coupled between a conductive path of the telephone wiring network and a first destinations of information, including circuitry coupled to said conductive path for accepting signals in a high frequency band of frequencies above the highest frequency of the telephone voice band and rejecting signals in the telephone voice band;
>
> a plurality of filters, each coupled between said conductive path and a corresponding one of the plurality of telephone devices, for preventing transmission of signals in the high frequency band to the telephone devices; and
>
> a signal interface coupled between the external source of information and said conductive path, including
>
>> circuitry for receiving an external signal encoding an information stream from the external source of information,
>>
>> circuitry for transmitting over the telephone wiring network to the transceiver an internal signal in the high frequency band encoding the information stream, and
>>
>> circuitry for limiting transmission of the internal signal in the high frequency band from the telephone wiring network to the telephone exchange and for passing signals in the telephone frequency band between the telephone wiring network and the telephone exchange;
>
> wherein each of the plurality of filters is coupled to said conductive path at a location separated from the transceiver and from the signal interface.

# DEFENDANTS "MOST CENTRALLY CONNECTED TO" ALLEGATIONS
## (Verizon Admission)

**ISP Defendants**

Verizon Internet Services
Principal Office in Reston, VA

GTE.NET
Offices in Reston and Arlington, VA

**DSL Services Companies**

Verizon Advanced Data
Principal Office in Arlington, VA

Verizon Avenue
Principal Office in Herndon, VA

*Virginia*

**General Services Companies**

Telesector Resources Group
Office in Reston, VA

Verizon Services Corp.
Principal Office in Arlington, VA

Verizon Corporate Services Group
Admittedly does business in VA

**OTC Defendants**

Verizon South
Verizon Virginia
Incorporation in VA

**Other OTCs**

Substantial Business in VA through Services provided by ISP Defendants and Services Companies

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| IN RE: | ) |
| PROCEDURES TO GOVERN THE | ) |
| APPOINTMENT OF SPECIAL MASTERS | ) |
| TO HEAR DISCOVERY DISPUTES IN | ) |
| INTELLECTUAL PROPERTY CASES | ) |
|   | ) |

## ORDER

WHEREAS, the Judges of this Court seek to effectively manage and reach the prompt disposition of their cases; and

WHEREAS, the Judges of this Court have determined that it is necessary for the prompt and efficient administration of justice in intellectual property cases to, inter alia, manage discovery, conduct hearings on discovery disputes and rule on same, rule on non-dispositive pretrial motions, and facilitate settlement; and

WHEREAS, the Court has the inherent authority to appoint Special Masters to achieve these critically important goals, see also Rule 53 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 471-482 (1994) (Judicial Reform Act of 1990); and

WHEREAS, given this Court's significant docket of complex intellectual property cases and given that this Court's Magistrate Judge is routinely scheduling hearings and mediation calendars six to eight months out, the need to appoint Special Masters to achieve these stated important goals is clear; and

WHEREAS, the procedure utilized for the appointment of Special Masters in intellectual property cases should be efficient and therefore routinized;

NOW, THEREFORE, this 15th day of September, 2004, it is HEREBY

ORDERED:

1. Special Master Panel for Intellectual Property Cases.

    (a).   The Judges of the Court shall designate a panel of Special Masters who meet the criteria contained in 1(b) (the "Special Master Panel" or "Panel"). Panel members will serve at the pleasure of the Judges of the Court.

    (b)   Persons seeking to be members of the Panel must submit a letter requesting same. Said letter should state the regular hourly rates charged by that person and others who may be assisting in the execution of his/her duties and be accompanied by a Curriculum Vitae which demonstrates the person's experience, competence and acceptability to serve.

    (c)   The Clerk of this Court shall establish and manage the Panel. Vincent J. Poppiti, Esquire who, by Order dated September 15, 2004, was appointed to the Panel, is designated as the Special Master Liaison to the Clerk of this Court. In this regard Mr. Poppiti will assist in the development, execution and monitoring of, inter alia, the referral, work flow and compensation processes.

2. Referral to Panel.

    When, from time-to-time, Judges of this Court elect to appoint a Special Master in an intellectual property case, the matter will be referred to the Special Master Panel. In all cases referred to the Panel for assignment of a Special Master, Mr. Poppiti shall make his recommendation for same to the Judge presiding in the matter.

3. Order Appointing Master.

    The Judge presiding in the matter will issue an Order of Reference naming the Special Master, consistent with the provisions of Rule 53(b)(2) of the Federal Rules of Civil Procedure.

4. Compensation, Costs and Expenses of the Special Master.

    (a)   Special Masters and others who may be assisting them in the execution of their duties will be compensated at their normal hourly rates.

(b) The compensation, costs and expenses of a Special Master shall be allocated equally among the parties unless otherwise ordered by the Court upon recommendation by the Special Master.

FOR THE COURT:

<u>SUE L. ROBINSON</u>
Sue L. Robinson
**CHIEF JUDGE**