## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

Inline Connection Corporation,

        Plaintiff,

    v.

Verizon Internet Services, Inc., et al.,

        Defendants.

Civil Action No. 2:05CV205 (HCM)

FILED

## VERIZON DEFENDANTS' OPPOSITION TO INLINE'S MOTION TO COMPEL RESPONSES TO FIRST SETS OF DISCOVERY

The Verizon Defendants hereby provide their joint opposition to Inline Connection Corporation's ("Inline") Motion to Compel Responses to Inline's First Sets of Requests for Production and Interrogatories dated August 1, 2005.

## I.    Introduction

Inline's discovery requests and premature motion to compel should be rejected as improper attempts to preempt the Court's consideration of the pending threshold motions to transfer and dismiss for lack of personal jurisdiction. The threshold motions are fully briefed and due to be decided shortly. Resolution of the transfer motion, in particular, will determine whether this Court or the Delaware court – where Inline originally sued the Verizon Defendants' parent corporation in June of 2002 and has been litigating the same patents and claims against AOL and Earthlink for more than three years – will ultimately control merits discovery in this action.

Discovery in this case does not take place on a blank slate. During the last three years in the co-pending AOL/Earthlink Delaware litigation before Magistrate Judge Thynge ("the

Delaware Actions"), Inline and its experts have made a number of express representations and judicial admissions limiting the scope of the patent claims at issue. In addition, Judge Thynge has already issued multiple rulings regarding discovery disputes, claim construction, and a partial summary judgment that largely disposes of Inline's case. As discussed in Defendants' pending transfer motion, Inline's re-filing of the present case in Virginia, rather than in Delaware where it originally sued Verizon Communications, Inc. ("VCI") in 2002, is clear forum-shopping designed to avoid the rulings and admissions from the co-pending Delaware litigation and to evade Judge Thynge's expertise concerning the technical details of the patents, the accused splitterless ADSL service, and the reasonable scope of discovery relating thereto.[1]

Defendants' threshold transfer and personal jurisdiction motions were fully briefed and ready for hearing on June 16, 2005. After the parties were informed of Judge Morgan's unavailability until August 15, Inline served the overbroad boilerplate discovery now at issue in an obvious attempt to present the Court with a *fait accompli* and preclude substantive consideration of the pending threshold motions. In response, Defendants filed a motion on June 21, 2005 to preserve the status quo and stay substantive discovery until the Court has the opportunity to hear the transfer and jurisdictional motions. Defendants' motion to stay substantive discovery is fully briefed, but has not yet been heard or decided.

Despite the pendency of their motion to stay substantive discovery and the "kitchen sink" nature of Inline's boilerplate discovery requests, Defendants agreed to work with Inline in the interim to make a substantial initial production of documents that would be necessary

---

[1] *See* Exhibit A to Defendants' July 8, 2005 Reply Memorandum in support of motion to stay substantive discovery pending resolution of the threshold venue and jurisdictional motions. This exhibit lists docket entries from the co-pending Delaware actions concerning discovery disputes, depositions taken, discovery responses, Markman claim construction proceedings and summary judgment motions and hearings.

irrespective of whether or not the case is transferred to Delaware. Pursuant to those discussions, and without prejudice to their pending motions and objections, Defendants produced more than 49,000 pages of materials regarding the Verizon Online ADSL service, the prior art, DSL industry standard setting activities, corporate structure and policies, audited financial statements, Defendants' estoppel and laches defenses, Defendants' first knowledge of Inline and named inventor David Goodman, and a variety of other subjects on which the parties were able to reach agreement during their meet and confer discussions. In addition, at Inline's request, Defendants also produced two examples of each of the current DSL kits, which include physical components, user manuals and other descriptive information.

In return, Defendants asked Inline to produce critical documents that were generated during the last three years in the co-pending Delaware lawsuits against AOL and Earthlink. Inline and its counsel have a three year head start and full access to the key depositions of the named inventors, the attorneys that prosecuted the patents, and all of the underlying documents produced by Inline in that litigation. However, because Inline had cloaked most of these materials under overbroad claims of confidentiality, the deposition transcripts, documents and many of the basic Markman and summary judgment briefs are sealed and unavailable to Defendants. Defendants have asked Inline to produce these materials – which are sitting on a shelf in Inline counsel's office – since this case first began. As of the preparation of this opposition, Inline, however, had not produced any of these essential materials.[2]

In these circumstances, Inline's present motion demanding full and complete responses to its overbroad and unduly burdensome boilerplate discovery requests should be dismissed.

---

[2] After the Verizon Defendants provided its initial production, Inline's counsel sent a letter informing the Verizon Defendants that Inline was finally making production of some of the Delaware case materials.

Detailed consideration of substantive discovery issues is premature until (a) the threshold transfer motion has been decided, (b) Inline has reviewed Defendants initial 49,000 page production, and (c) the Verizon Defendants have access to, and reasonable time to review and analyze, all the co-pending Delaware Action materials including critical deposition transcripts, interrogatory answers, expert declarations, documents and sealed briefs.

To the extent the Court considers the substance of Inline's motion to compel at this time, it should be denied. Inline's discovery is hopelessly overbroad and unduly burdensome, particularly in light of the substantial narrowing of the issues by the court and admissions by Inline in the Delaware Actions. Inline's discovery is overly broad and unduly burdensome in two important and distinct respects: (1) the discovery as drafted seeks virtually every document that relates in any fashion to any type of Internet access service offered without regard to reasonable limits imposed by asserted claims of the patents-in-suit; and (2) Inline seeks identical discovery from each of the Verizon Defendants without any consideration as to the scope of relevant documents maintained by each Defendant and without any regard to the pending threshold motions. As discussed below, Inline's discovery is so broadly worded as to be virtually limitless. Despite numerous meet and confer telephone conversations, Inline has refused to narrow any of its requests in any meaningful fashion.

Additionally, Inline asks this Court to require Defendants to respond to prematurely posited contention interrogatories and extremely burdensome damages discovery before the Defendants have the benefit of any discovery in this action. As noted above, the Verizon Defendants should be permitted to review and analyze all of the critical depositions, expert declarations, interrogatory answers, briefs, and other documents from the three-year old Delaware Actions. Defendants should not be required to provide premature statements of

contentions, only to be required to promptly supplement those responses after they receive and have the opportunity to analyze the detailed supporting documentation from the Delaware lawsuits.

In short, Inline's omnibus motion to compel a full and complete response by every single one of the Verizon Defendants for every single document request and interrogatory is premature and unreasonable in view of the pending motions, as well as the overbreadth and unduly burdensome nature of Inline's requests. It is a waste of the Court's and the parties' resources to address these discovery disputes until a decision is rendered as to the threshold motions. At a minimum, Inline should be required to reasonably tailor its overbroad requests to focus on the appropriate Defendants and to reasonably limit the scope consistent with the rulings and judicial admissions in the Delaware Actions. Additionally, discovery with respect to the Verizon Defendants' contentions and damages should be temporarily deferred until the threshold motions have been decided and the parties have engaged in initial discovery sufficient to reasonably identify those services and claims of the patents-in-suit that are reasonably at issue.

## II.    Inline's Discovery Requests Are A Premature Attempt To Preempt Consideration Of The Threshold Motions And Evade The District Court's Rulings In The Delaware Actions, Thereby Imposing Unreasonable Burden And Expense On The Verizon Defendants.

As of June 16, 2005, the pending threshold motions to transfer the entire proceeding to Delaware and to dismiss 16 of the 18 operating telephone company defendants ("OTC Defendants") for lack of personal jurisdiction have been fully briefed and ready for decision. Defendants' motion to stay substantive discovery is similarly fully briefed and ready for decision. Nonetheless, Inline seeks to force discovery issues upon this Court to effectively preempt consideration of the pending motions.

After the parties were informed of Judge Morgan's unavailability until mid August, Inline

5

promptly served 975 pages of boilerplate discovery on the Verizon Defendants, including a total of 2,100 document requests and 300 interrogatories. Besides being overbroad, unduly burdensome, and harassing, Inline's discovery is an improper attempt to run away from its judicial representations and Judge Thynge's rulings in the Delaware Actions. Inline's discovery and the present motion to compel make clear that Inline seeks to re-litigate the Delaware case anew in a different forum. *See, e.g.*, Inline Br. at 2. In the Delaware Actions against similarly situated Internet service providers (AOL and Earthlink), the same claims asserted in the present action have been significantly narrowed to potentially cover only very specific types of ADSL services with very specific configurations. Despite this significant narrowing, Inline seeks discovery, not just for all of the Verizon Defendants' ADSL services, but for all DSL services, a much broader category including services that Inline cannot reasonably contend infringe the patents-in-suit.[3]

Should the Court rule in favor of Defendants on either of the pending threshold motions, much of Inline's overbroad, burdensome, and harassing discovery will be unnecessary. In any event, resolution of these discovery disputes is more efficiently postponed until the threshold motions are decided and the relevant scope of discovery can be addressed by the Court that maintains jurisdiction over the dispute.

## III. The Verizon Defendants Have Made Substantial Efforts To Provide Discovery to Inline, Despite Their Objections And The Pending Threshold Motions.

Contrary to Inline's suggestions in its motion to compel, throughout the meet and confer telephone conferences, the Verizon Defendants sought to work with Inline's counsel to

---

[3] To the extent Inline argues that it has asserted additional claims in this action, it bears noting that only three new claims have been asserted. These three claims involve the same subject matter and are indeed narrower than many of the claims already asserted. The addition of three narrower claims cannot reasonably justify the overly broad extension of the scope of discovery Inline now seeks in this Court.

determine reasonable limits to Inline's overbroad and unduly burdensome boilerplate discovery requests. *See* Declaration of Robert J. Scheffel, Esq. ("Scheffel Decl.") ¶¶ 7-8. While Inline's counsel admitted on numerous occasions that the requests were overlapping, extremely broad, and designed to be over-inclusive, Inline's counsel refused to limit the requests in a manner reasonable in light of the unique circumstances of this case. *See id.* As demonstrated in examples discussed below, Inline's discovery requests are so broad and overreaching as to seek production of every single document created by all of the Defendants that relates in any way to the provision of DSL services.

Nonetheless, the Verizon Defendants have expended substantial efforts to compile initial responsive documents and to work with Inline to avoid burdening the Court with premature discovery disputes. Inline's motion to compel largely ignores these efforts, in attempt to characterize the Verizon Defendants as wholly uncooperative. Indeed, prior to the filing of Inline's motion to compel, the Verizon Defendants' counsel provided a letter stating that more than 30,000 pages of documents had been assembled for production, and identifying their concerns about the necessity of receiving information in the Delaware action in order to appropriately respond to a number of the discovery disputes.[4] *See* Exh. 25 to Declaration of Andrew C. Byrnes, Esq. ("Byrnes Decl.") (July 29, 2005 Letter from John Wyss to Carl Nadler).

As of August 11, the Verizon Defendants produced 49,192 pages of documents specifically requested by Inline. *See* Exh. 2 to Scheffel Decl. The Verizon Defendants produced these

---

[4] The Delaware materials are critical to the Verizon Defendants' ability to prepare many of its discovery responses. To the extent that Inline contends that the Verizon Defendants must provide immediate responses, despite its dilatory actions in providing readily available materials, it is being unreasonable. The Verizon Defendants have repeatedly stated they would provide interrogatory responses promptly once they have the opportunity to review documents from the Delaware Actions. Requiring piece-meal interrogatory responses and supplements is unfair and not reasonable in light of Inline's three year head start in this litigation. The Verizon Defendants are entitled to review those materials they believe are critical to their litigation positions before providing a statement of their contentions on the issues in this case.

documents despite Inline's unwillingness to reciprocate with the exchange of the documents relating to the Delaware Actions. *See id.*

## IV. Inline's Discovery Requests And Positions Are Overbroad, Unduly Burdensome, And Not Reasonably Tailored To Lead To The Discovery Of Admissible Evidence.

Virtually every discovery request and interrogatory, identically served on every one of the 25 Verizon Defendants in this action, are hopelessly overbroad and unduly burdensome. In their objections to Inline's discovery requests and interrogatories, the Verizon Defendants set forth each of their objections.[5] In its motion to compel, Inline fails at every turn to provide a reasonable basis as to why it is entitled to such broad discovery, other than such conclusory assertions that "time is short" (Inline Br. at 2) and that "the Court should require Defendants to produce all documents requested by Inline" (Inline Br. at 11). Rather than address the Verizon Defendants' substantive objections to the overbreadth and undue burden (described by examples in more detail below), Inline has elected to seek an order requiring a complete response to all of its discovery requests as initially drafted – even before the pending threshold transfer and personal jurisdiction motions are heard.[6]

Contrary to Inline's contentions, the Verizon Defendants repeatedly sought reasonable

---

[5] Inline suggests in a footnote that Verizon Services Corp. served no responses or objections and therefore waived any objection to full responses. *See* Inline Br. at 5. At the first of three meet and confer telephone conferences, the Verizon Defendants' counsel addressed this issue and sent a confirmatory email clearly identifying an inadvertent omission and that the Remaining Defendants' objections to Inline's first sets of discovery properly included Verizon Services Corp. *See* Scheffel Decl., ¶¶ 3 and 4. The confirmatory email specifically asked whether Inline's counsel would require a new red-lined version of these objections. *See* Exh. 1 to Scheffel Decl. When Inline's counsel did not respond, the Verizon Defendants' counsel reasonably understood that further formalities to correct this clerical omission were not required.

[6] Courts routinely deny motions to compel in instances such as this where the movant phrases its motion generally, without regards to specific document requests and interrogatories. *See, e.g., Preston v. Settle Down Enterprises, Inc.,* 90 F.Supp.2d 1267, 1282-83 (N.D. Ga. 2000) (motion to compel discovery which was phrased in general terms was denied for lack of specificity); *Glaxo, Inc. v. Torphram, Inc.,* 1996 WL 411487, *3 (N.D. Ill. 1996) (denying Defendant's motion to compel based upon "lack of specificity"); *Arons v. Lalime,* 167 F.R.D. 364, 368 (W.D.N.Y. 1996) ("motion to compel further discovery was denied primarily because ... it failed to identify with specificity the discovery requests and responses at issue").

limitations to the admittedly overlapping, overbroad discovery requests. As a practical matter, the Verizon Defendants seek to address their valid discovery objections, particularly in view of Inline's three-year litigation of the exact same patents-in-suit, not in a piece-meal fashion as Inline evidently supports, but in a manner that reasonably allows for the timely and complicated process of obtaining relevant and responsive discovery from the appropriate defendants in this action.[7] As discussed in examples below, the overbreadth and unduly burdensome nature of Inline's discovery requests highlight the prejudicial nature of requiring complete responses to every single boilerplate discovery request by every single Verizon Defendant as drafted.

### A. Inline's Definitions Of "Accused Services" and "Accused Equipment" Are Improperly Overbroad, Particularly In Light Of The Asserted Claims And The Rulings By The Delaware Court.

The vast majority of Inline's discovery requests and interrogatories, identically served on every single Verizon Defendant, are predicated on unreasonably overbroad definitions of the "Accused Services" and "Accused Equipment" that on their face include every aspect of every possible type of DSL service (which is a much broader universe than the subset of splitterless ADSL services which are arguably at issue in this action). *See* RFP 30-40, 42, 43, 45-53, 55-68, 71, 74, 76-80 and 83; Rogs. 1,2, 5 and 8.

In its discovery, Inline defined the "Accused Services" as:

> any product, apparatus, device, system, method, or service used to provide
> internet access or other online services to an end user using DSL, including Retail
> Services or Wholesale Services, and any service packages incorporating these
> services, that are, by or on behalf of You, provided (in whole or in part), sold, or
> offered for sale in the United States or for which you provide any marketing or
> sales services in the United States.

---

[7] Inline cites to the Court's Scheduling Order as alleged support that it has *carte blanche* to storm ahead with unreasonably overbroad discovery requests. By its terms, however, the Scheduling Order is expressly subject to the pending threshold motions.

*See, e.g.*, Exh. 4 to Byrnes Decl. Inline defined the "Accused Equipment" as:

> all products, devices, or equipment, including modems, gateways, and/or DSL
> self-install Kits, that are, by or on behalf of You, made (in whole or in part), sold,
> or offered for sale in the United States, imported into the United States, or
> provided, required, or caused to be provided, to a user connection with Accused
> Services in the United States.

*Id.* Inline has attempted to define the scope of its requests to require every single Verizon

Defendant to engage in protracted discovery of every single product, apparatus, system, method

or service used to provide internet access or other digital telecommunications services to an end

user using DSL of any kind. There are many different types of DSL that are not relevant to

issues in this litigation, particularly in view of the judicial admissions and rulings in the

Delaware Actions. DSL includes, for example, high speed Internet service that does not

simultaneously provide voice capability over the same phone line, ISDN (integrated services

digital network), HDSL (high bit-rate DSL), ADSL (asymmetric DSL), VDSL (very high bit-rate

DSL), and SDSL (symmetric DSL). In the Delaware Actions, however, Inline's own experts

conceded that the claims of the patents-in-suit do not cover DSL services other than a limited

subcategory of so-called "splitterless" ADSL services. Moreover, the rulings of the Delaware

Court further limit the pertinent services to splitterless ADSL served by a remote terminal

DSLAM.[8]

On their face, the discovery requests and interrogatories seek every possible document that

in any way "relates to" any kind of DSL service.

During the meet and confer telephone conferences, the Verizon Defendants suggested a

---

[8] Compounding the situation, virtually all the document requests seek every single document "Relating To" these
hopelessly overbroad definitions. "Relating To" has similarly been overly broadly defined as: "Referring to,
mentioning, commenting on, reflecting, pertaining to, evidencing, showing, involving, describing, discussing,
responding to, supporting, contradicting, rebutting, constituting in whole or in part, consisting of, addressing the
subject matter of, or being a draft, copy or summary of, in whole or in part."

reasonable limitation would be to those "splitterless" ADSL services that utilize a remote terminal DSLAM – consistent with the Delaware Court's rulings after three years of litigation. Inline declined to limit its definitions in that regard. Instead, Inline steadfastly held to its definitions of "Accused Services" and "Accused Equipment" as drafted.

Inline argues that it is "entitled to reasonable discovery related to all of Defendants' DSL services to evaluate for itself whether these services infringe (regardless of whether the Court ultimately chooses to apply the Delaware rulings in this Court)." Inline Br. at 11. However, "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel, Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (*citing Netto v. AMTRAK*, 863 F.2d 1210, 1216 (5th Cir. 1989)); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); *Hinton v. Entex, Inc.*, 93 F.R.D. 336, 337-38 (E.D.Tex. 1981); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428 (E.D.Mich. 1979)). It is unreasonable to require the 25 Verizon Defendants to respond to 300 interrogatories and 2000 document requests so that Inline can determine whether any of the Verizon Defendants' services possibly infringe any of the Inline Patents, particularly when the Delaware Actions have already defined the contours of the claims of the Inline Patents.

## B.    Inline's Discovery Requests Are Overbroad And Unduly Burdensome On Their Face.

To appreciate the full scope of discovery sought by Inline, it is necessary to include examples of the discovery requests served on each Verizon Defendant. In effect, Inline's discovery seeks every document in the possession of every single Defendant that relates in any way to any DSL service.

For example, Request Nos. 29-33 seek the following:

**Request for Production No. 29:** All Documents Relating To the design, development, or network configuration of each Accused Service.

**Request for Production No. 30:** All Documents Relating To the provisioning, installation, or implementation of each Accused Service.

**Request for Production No. 31:** All Documents Relating To the operation of each Accused Service.

**Request for Production No. 32:** All Documents Relating To the functionality of each Accused Service.

**Request for Production No. 33:** All Documents Relating To the marketing of each Accused Service.

*See* Exh. 4 to Byrnes Decl. As drafted, these five Requests, served on every Verizon Defendant, would require production of every single document having any relation to DSL. Indeed, these Requests pick up monthly phone bills, customer complaints, customer inquiries into service, maintenance records, purchase orders, employment records, and other documents that are not relevant and upon which Inline has no good faith basis upon which to allege infringement.

Similarly, Request Nos. 49-55 seek duplicative and overbroad discovery pertaining to "All agreements" with third parties that relate to any "Accused Service." These overbroad requests literally call for millions of customer service contracts, routine customer orders agreements, maintenance contracts, warranties, purchase orders, employment contracts, bills of lading, etc.

This clear overbreadth is carried throughout the remaining Requests which are summarized below. Inline's requests unreasonably seek all documents that relate in any way to the following categories of documents for every "Accused Service" or "Accused Equipment:"

- marketing, sale, offer for sale, advertising, promoting, lease, license, co-branding, instructions, publications, strategic plans, periodic plans, business plans, operating plans, marketing plans, commissions, royalties, marketing representatives, sales representatives and distributors (RFPs 34-37, 48);

- every customer, subscriber, licensee, and methods for identifying each customer, customer line(s), and/or facilities utilized for provisioning any DSL service  (RFPs 48, 56, 83);

12

- market analyses, market surveys, forecasts, plans, strategies, and communications relating to the effect, influence, potential effect, or impact of the sale, license, lease, provision, or availability of DSL services on rates of any telephone carrier's telephone services; requirements, design, development, manufacture, functionality, operation, (RFP 57);

- every document pertaining in any way to any DSL-related equipment including technical documents, manufacturers, providers, installers, distributors, sellers, commissions, sales or marketing materials, agreements, provision of any and all DSL equipment, manuals, reference guides, technical references, training materials, ordering tools, provisioning tools, line qualification tools, line qualification data, network upgrades, network outages, network diagrams, equipment lists and implementation plans, request for proposals, requirements documents, testing results, test plans, standards compliance, and product manuals, implementation plans, specifications, operational plans, provisioning, trouble shooting, technical support documents and agreements, guidelines, methods, procedures, training materials, planning, engineering design, deployment, maintenance, and operation (RFPs 58-68, 74-82);

- past, present, and future plans and/or actual services to provide Video-on-Demand, streaming video, or broadband TV utilizing DSL (RFP 71);

- all DSL industry standards and the related committees and forums (RFP 72-74); and

- loop qualification reports or other reports identifying the type of DSLAM provisioned on each local loop qualified for any and all types of DSL (RFP 84).

Certainly within this "kitchen sink" list of requested categories of documents, there exists

relevant information. The breadth, however, is so expansive and burdensome as to make "full

and complete" responses by every single Verizon Defendant an impossible task. Moreover, a

large number of these Requests are wholly duplicative of one another (*see, e.g.*, RFP Nos. 50,

51, and 53). Despite the Verizon Defendants' efforts to seek reasonable limits to these Requests,

Inline refused to limit any of these Requests. Scheffel Decl. at ¶¶ 7-8.

In sum, Inline's premature motion to compel responses should be denied because the

discovery requests are so overbroad as to impose unreasonable, and indeed impossible, burdens

upon the Verizon Defendants, particularly before resolution of the pending motions. At a

minimum, Inline should be required to place reasonable limits on its overly broad definitions and

requests consistent with the legal rulings of the Delaware Court.

**C.    Inline Unreasonably And Impermissibly Seeks To Require The Verizon Defendants To Identify, Categorize And Log Every Single Document Generated After It Brought Suit Against VCI In Delaware More Than Three Years Ago.**

Inline served a number of discovery requests and interrogatories directly seeking all documents evidencing the Verizon Defendants' knowledge of, analyses, and investigation into, Inline, the inventor David B. Goodman, and the patents-in-suit. *See, e.g.* RFP 10-18.

Importantly, however, the Verizon Defendants' substantive knowledge of the Inline Patents, Inline and Goodman stems only from Inline's initial suit against VCI in Delaware on June 12, 2002. *See* Exh. 25 to Byrnes Decl. Accordingly, all documents that were generated or gathered after June 12, 2002 relating to Inline's Delaware lawsuit regarding Inline, Goodman or the patents-in-suit reflect confidential communications with counsel and/or are protected attorney work product. Inline takes issue with the Verizon Defendants' position that it is improper to seek identification, production and logging of documents pertaining to Inline, the patents-in-suit, and/or the inventor David B. Goodman after Inline initially sued VCI in Delaware three years ago. Inline's position is telling as to Inline's overall strategy in this discovery onslaught, which seeks to impose overly burdensome obligations on the Verizon Defendants.

To the extent this issue is in dispute, the materials generated or gathered after Inline filed suit against VCI in Delaware, regardless of the entities originally sued, are unquestionably entitled to protection under the work product doctrine, attorney-client privilege and other applicable privileges. The Fourth Circuit has previously held that work product materials retain their protection under Rule 26(b)(3) even in "subsequent and unrelated litigation." *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 481, 484 (4th Cir. 1973) (emphasis added). The court in *Duplan* specifically held that the trial court should provide immunity from discovery for documents the defendant created for (then-terminated) patent

14

infringement suits with parties other than Duplan. *See id.* In support of its holding, the court

stressed the Supreme Court's broad emphasis in *Hickman v. Taylor,* 329 U.S. 495 (1947), on

protecting the adversary process, rather than any particular litigants. *Id.* at 483.

Notwithstanding the issue of production of privileged documents, the Verizon Defendants

object to Inline's disregard of the Delaware action against VCI when it comes to the treatment of

privileged documents. The effective time period for this litigation for purposes of handling

privileged materials should begin with the initial filing of Inline's suit against VCI in Delaware

in 2002. Parties are not typically required to log privileged materials subsequent to the

commencement of litigation. *See, e.g.*, *Keenan v. Dresdner Bank AG*, 1999 WL 493342, *2

(S.D.N.Y. 1999). It follows, that similar to materials created after the filing of this action in this

Court, privileged materials generated or gathered in the interim need not be identified and

logged.

It is a misuse of federal court process and procedures for Inline to sue and dismiss VCI

from its Delaware action in 2002, only to refile three years later in a different Court and demand

access to privileged and protected information that Inline would not have been entitled to had the

original Delaware lawsuit against Verizon continued (as did Inline's contemporaneously filed

Delaware Actions against AOL and Earthlink). Accordingly, the Verizon Defendants request

that this Court reject Inline's demand for identification and logging of tens of thousands of pages

of privileged communications and documents generated as a result of Inline's initial suit in

Delaware in 2002.

**V.     The Verizon Defendants Should Not Be Required To Respond To Contention**
**Interrogatories At Such A Premature Point In The Proceedings.**

A number of Inline's interrogatories and document requests seek the contentions of each

and every Verizon Defendant. *See* Rog. Nos. 5, 6, 7, 9, 10, 11, 12 and RFP Nos. 19-26. At this

early stage in the proceedings, particularly in view of the pending threshold transfer and

jurisdictional motions, requiring responses to contention discovery is premature.

The contention interrogatories broadly track the allegations in the complaint with respect

to the ultimate issues in the case.  Inline's contention interrogatories are so broad as to be

virtually impossible to completely respond to at this juncture of the proceedings.  For example,

Interrogatory No. 5 states:

> For each Accused Service, to the extent that You contend that You do not infringe
> the Inline Patents, Describe With Particularity the factual basis for Your
> contention, including providing a claim chart for each asserted claim identifying
> each claim element, and specifying each claim element that You contend is not
> found in or satisfied by the Accused Service and Describe With Particularity the
> reasons for and the evidence supporting Your contention.

*See* Exh. 5 to Byrnes Decl.  While this Interrogatory is objectionable simply because it requires a

response for every "Accused Service" – including numerous services that admittedly cannot

infringe the patents-in-suit – it is further objectionable because, on its face, it seeks the Verizon

Defendants' *Markman* position for every single claim of every single patent.[9]

Notwithstanding the practical concerns of overbreadth and undue burden, contention

interrogatories are particularly inappropriate at this state of the litigation, where discovery has

just begun and there are significant, compelling threshold motions to be decided.

> A party filing contention interrogatories early in the pretrial period, before
> substantial documentary or testimonial discovery has been completed, has the
> burden of justification.  It must present specific, plausible grounds for believing
> that securing early answers to its contention questions will materially advance the
> goals of the Federal Rules of Civil Procedure.  The burden cannot be met by
> vague or speculative statements about what might happen if the interrogatories

---

[9] Again, compounding the situation is the overly broad definition of "Describe With Particularity" defined as:
"describe all material facts and circumstances surrounding or Relating To the subject matter or event specified in the
interrogatory, and to Identify all persons who were involved in and/or have knowledge of the specified subject
matter or event and All Documents that Relate To the specified subject matter or event in any way."  *See id.*  This
definition incorporates further the overbroad definitions of "Relating To," and "All Documents" further imposing
unreasonable and unduly burdensome breadth upon the requests.

> were answered. To meet the burden . . .a party must show: that there is good
> reason to believe that answers to its <u>well-tailored questions</u> will contribute
> meaningfully to clarifying the issues in the case, narrowing the scope of the
> dispute, or setting up early settlement discussion, or that such answers are likely
> to expose a substantial basis for a motion under Rule 11 or Rule 56.

*Fischer & Porter Co. v . Tolson*, 143 F.R.D. 93, 95 (E.D.Pa. 1992) (emphasis added) (internal

citations omitted). In *Fischer*, the District Court refused to compel responses to contention

interrogatories, despite the fact that significant discovery had already taken place. Here, at the

outset of the case and before this Court has even had an opportunity to rule on the Verizon

Defendants' preliminary threshold motions, there is no justification for requiring a full and

complete response to Inline's contention interrogatories.

In short, Inline unreasonably and prematurely seeks continual piece-meal responses and

supplements to its contention interrogatories. Because no significant discovery has taken place

to date, it would be unreasonable to require every Verizon Defendant to state in the requested

detail its positions as to every aspect of the present action. Accordingly, the Verizon Defendants

request that Inline's motion to compel discovery responses seeking the current contentions of the

Verizon Defendants be deferred until after resolution of the threshold motions and after the

Verizon Defendants receive, and have a reasonable opportunity to analyze, all the critical

Delaware Action materials.

## VI.    The Damages Discovery Sought By Inline Is Overbroad, Unduly Burdensome, And Premature.

Inline's discovery seeks complete discovery of highly confidential financial information

pertaining solely to the issue of damages for every single Verizon Defendant, again without

regard to the pending threshold motions or the Delaware Actions. *See, e.g.*, RFP Nos. 8-10, 22,

27, 36, 43 45, 47, 49, 67 and Rog. No. 8. Again, these requests are premature and so overbroad

as to require the Court to deny Inline's motion to compel full and complete responses at this

time.

The discovery sought as to damages includes, for example RFP N. 43, which seeks:

All Documents Relating To or reflecting the revenues and profits received, or projected to be received for sales, leases, provision under tariff, or licenses of any Accused Service, including information concerning gross sales, leases, provisions under tariff, or licenses, forecasted sales, leases provisions under tariff, or licenses, profit margins, cost reports, cash flow statements, income statements, and any other related management reports prepared on a periodic basis, including but not limited to the revenues attributable to the provision of Accused Services using Remote Location DSLAMs.

*See, e.g.,* Exh. 4, Byrnes Decl.  Interrogatory No. 8 is similarly overbroad and unduly

burdensome.

For each Accused Service, from April 6, 1999 to the present, on a quarterly basis, identify the number of subscribers that are using each Accused Service, Your revenues generated per month, the source of Your revenues, Your gross and net profits by fiscal quarter in relation to each Accused Service, and the percentage over the total revenues for each Accused Services to End Users via a Remote Location DSLAM.

Exh. 5 to Byrnes Decl.

On their face, these document requests and Interrogatories seek every single document, or

require an enormously rigorous month-by-month response for every single Verizon Defendant

that relates in any possible way to the revenues and profits received or projected for any

"Accused Service" – far beyond splitterless ADSL services utilizing a remote terminal DSLAM.

Courts routinely recognize that damages discovery at early stages in proceedings is an

inefficient and wasteful use of services of counsel and the Court, particularly before

consideration of the proper scope of infringement actually alleged and at issue. *See, e.g.*, *Woolen*

*v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 334 (5th Cir. 1982) (permitting stay of discovery of

damages while pending motion to consolidate is considered because: "Discovery exploration of

possible potential damages at this early state in the detail sought is obviously inefficient and wasteful of services of counsel.").

Accordingly, the Verizon Defendants request that Inline's motion to compel responses to discovery pertaining to damages be denied as overly broad, unduly burdensome and premature. The Verizon Defendants submit that full and complete damages discovery in accordance with Inline's broad requests to each Verizon Defendant is an inappropriate use of discovery, particularly in view of the pending motions and the Verizon Defendants' objections to the scope of these discovery requests. At a minimum, invasive discovery into the highly sensitive area of damages should be deferred until there has been reasonable opportunity to address the scope of relevant services and asserted claims that are truly at issue, for instance after a *Markman* hearing.

## VII. Inline Seeks Discovery Of Publicly Available Information That Is Equally Accessible To Inline As It Is To The Verizon Defendants.

Request No. 5 seeks, among other things, filings submitted to the Securities and Exchange Commission ("SEC"). These documents are publicly available and are equally accessible to Inline as to the Verizon Defendants. One need only download them from the SEC website. Indeed, that is how the Verizon Defendants would go about compiling and producing these documents. During the meet and confer discussions, counsel for the Verizon Defendants requested that Inline withdraw its Requests pertaining to publicly available documents filed with the SEC. Inline refused to do so, and now seeks an unreasonable order compelling production of these equally accessible public documents.

## VIII. Conclusion

For the foregoing reasons, the Verizon Defendants respectfully submit that the present motion to compel should be dismissed. At a minimum, Inline should be required to reasonably tailor its overbroad discovery requests in view of the appropriate Defendants with reasonable

limits as to the scope of the patent claims in view of the Delaware Actions. Additionally,

discovery with respect to the Verizon Defendants' contentions and damages should be deferred

until after the threshold motions have been decided and the parties have engaged in discovery

sufficient to reasonably identify those services and claims of the patents-in-suit that are

reasonably at issue.

Respectfully submitted,

By: _____

Robert W. McFarland
Steven R. Zahn
McGUIRE WOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone:  757.640.3716
Facsimile:  757.640.3966

Brian C. Riopelle
McGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone:  804.775.1084
Facsimile:  804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Dated: August 12, 2005                    Counsel for Verizon Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2005, a true copy of the foregoing ***Verizon Defendants' Opposition To Plaintiff Inline Connection Corporation's Motion To Compel Responses To Inline's First Sets Of Requests For Production And Interrogatories*** was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq.    (Served electronically and by overnight delivery)
Alexander L. Brainerd, Esq.
Alyssa T. Koo
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brianerd@hellerehrman.com
Michael.Plimack@hellerhrman.com
Alyssa.Koo@hellerehrman.com

C. Joël Van Over, Esq.    (Served electronically and by overnight delivery)
Robert C. Bertin, Esq.
SWIDLER BERLIN LLP
3000 K Street, NW
Suite 300
Washington, DC 20007-5116
cjvanover@swidlaw.com
rcbertin@swidlaw.com

Stephen E. Noona, Esq.    (Served via hand delivery)
Kaufman & Canoles, PC
150 W. Main Street
Suite 2100
Norfolk, Virginia 23510
senoona@kaufcan.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| Inline Connection Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 2:05CV205 |
| Verizon Internet Services, Inc., et al., | |
| Defendants. | |

**DECLARATION OF ROBERT J. SCHEFFEL IN SUPPORT OF VERIZON**
**DEFENDANTS' OPPOSITION TO INLINE'S MOTION TO COMPEL**

I, Robert J. Scheffel, declare:

1.     I am an attorney with the law firm of Wiley, Rein & Fielding LLP, counsel to Defendants. I have personal knowledge of the facts set forth in this declaration.

2.     I was present at, and have personal knowledge of the facts stemming from, all meet and confer telephone conversations occurring on July 20, 25, and 27.

3.     During the first of the three meet and confer discussions, counsel for the Verizon Defendants specifically addressed the issue of the inadvertent omission of Verizon Services Corp. from the "Remaining Defendants'" objections to Inline's first sets of discovery. We made clear that if, in fact Verizon Services Corp. was not listed as a "Remaining Defendant," this was simply a typographical error. Inline's counsel did not suggest otherwise.

4.     Subsequently, I sent a confirmatory email regarding this inadvertent omission. Attached hereto as Exhibit 1 is a true and correct copy of this July 24, 2005 email to Andrew C. Byrnes, Esq., counsel for plaintiff Inline Connection Corporation ("Inline"). The email specifically inquired as to whether Inline's counsel would require a new "red-lined" version of

the Remaining Defendants' objections. Inline's counsel never responded to my email, nor did they make any further mention of this issue in the subsequent meet and confer conversations.

5.     During the three meet and confer discussions, the Verizon Defendants' expressed their objections that, as drafted, Inline's discovery was so overly broad and unduly burdensome as to be unreasonable, if not impossible, to provide complete responses. The Verizon Defendants further objected to the prematurity of Inline's discovery, particularly in view of the pending threshold transfer and personal jurisdiction motions and the motion to stay substantive discovery.

6.     In this connection, the Verizon Defendants inquired as to whether Inline was willing to join in the Verizon Defendants' request that the pending threshold motions be decided on the papers or, in the alternative, be referred to the Magistrate Judge. Inline declined to join in the Verizon Defendants' request, instead insisting that any further communication with the Court concerning the pending threshold motions with would be inappropriate.

7.     Also during the meet and confer discussions, the Verizon Defendants worked through each discovery request and interrogatory in an attempt to determine acceptable, reasonable limits to the overbroad requests in light of the pending threshold motions and the judicial rulings in the Delaware actions involving the patents-in-suit.

8.     With the exception of agreeing to temporarily limit as to the scope of a very select number of the discovery requests and interrogatories, *e.g.*, excluding customer phone bills and the like, Inline was not willing to limit its discovery requests in any meaningful fashion. For example, the Verizon Defendants objected to Inline's definitions of "Accused Services" and "Accused Equipment" as overbroad and unduly burdensome, particularly in light of the judicial rulings in Delaware. Inline was not willing to retreat in any way from its definitions of these

2

terms, nor its claims to the right to complete discovery in accordance with its requests and interrogatories as drafted.

9.    From the earliest stage of the proceedings, and again during the meet and confer discussions, the Verizon Defendants sought production from Inline of critical documents from the three-year old Delaware Actions, including depositions of the inventors and the prosecuting attorneys and documents regarding the alleged inventions in the patents-in-suit. Inline, however, would not agree to immediate production of these documents.

10.    In order to facilitate prompt production of these critical Delaware documents, the Verizon Defendants proposed a Protective Order to Inline that was substantially identical to that of the Delaware Actions. The Verizon Defendants proposed this protective order to avoid any potential problems arising from the potentially disparate treatment of the confidential information of the Defendants in the Delaware Actions, which would likely further delay the Verizon Defendants' receipt of these important materials and accordingly delay the Verizon Defendants' ability to fully respond to Inline's discovery request. During the meet and confer telephone discussions, Inline deferred consideration of this issue to a later point in the future. Indeed, Inline's counsel informed counsel for the Verizon Defendants that to the extent that the Defendants in the Delaware Actions objected to providing their confidential information, that it would be incumbent on the Verizon Defendants to seek the proper relief.

11.    Attached as Exhibit 2 hereto is a true and correct copy of an August 11, 2005 letter from John Wyss to Carl Nadler enclosing the Verizon Defendants' initial production of roughly 49,192 pages of documents responsive to Inline's first set of discovery.

3

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on August 11, 2005.

_____

Robert J. Scheffel

## Scheffel, Robert

**From:** Scheffel, Robert

**Sent:** Sunday, July 24, 2005 5:10 PM

**To:** 'Byrnes, Andrew C.'

**Subject:** RE: Meet and Confer

Andrew,

Following up on our conversation Wednesday regarding Verizon Services Corp., I can confirm that we inadvertently omitted Verizon Services Corp. from the "Remaining Defendants" objections to the interrogatories and document requests. Please consider the "Remaining Defendants" objections as being made on behalf of Verizon Services Corp. as well. I personally apologize for the oversight. Give me a call when you get the chance and let me know how you would like us to remedy the situation. It seems to me that we should serve a redlined-revised set of objections tomorrow with John's signature to replace our original set. I will do whatever is easiest for you.

Again, I apologize and appreciate your understanding.

**Robert J. Scheffel**
***Wiley Rein & Fielding LLP***
**ph. 202.719.7423**
**fax 202.719.7049**

-----Original Message-----
**From:** Wyss, John
**Sent:** Thursday, July 21, 2005 10:10 PM
**To:** Nadler, Carl S.; Scheffel, Robert
**Cc:** Byrnes, Andrew C.
**Subject:** RE: Meet and Confer

I have to leave a 6:30 on Monday, but am available from 4-6:30

-----Original Message-----
**From:** Nadler, Carl S. [mailto:Carl.Nadler@hellerehrman.com]
**Sent:** Thu 7/21/2005 4:59 PM
**To:** Wyss, John; Scheffel, Robert
**Cc:** Byrnes, Andrew C.
**Subject:** RE: Meet and Confer

John,

Thanks. Can we meet then from 4pm until 7pm EDT on Monday? I will circulate a bridge.

Until then, enjoy the shore . . .

Carl.

-----Original Message-----
**From:** Wyss, John [mailto:JWyss@wrf.com]
**Sent:** Thursday, July 21, 2005 3:17 PM
**To:** Nadler, Carl S.; Scheffel, Robert
**Cc:** Byrnes, Andrew C.
**Subject:** RE: Meet and Confer

Carl -- thank you for your email. I have checked on my obligtions for tomorrow and it will not be possible to continue the meet and confer on Friday. I will be back from my vacation and in the office on Monday. I will be available on Monday any time after 1 pm. I should also be available most any time on Tuesday.

NOTICE: This message (including any attachments) from Wiley Rein & Fielding LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by reply email or by calling our Administrative Office at 202.719.7201. Thank You.

-----Original Message-----
**From:** Nadler, Carl S. [mailto:Carl.Nadler@hellerehrman.com]
**Sent:** Thu 7/21/2005 2:16 PM
**To:** Scheffel, Robert
**Cc:** Wyss, John; Byrnes, Andrew C.
**Subject:** Meet and Confer

Robert,

We need to move forward to complete our meet and confer. Can we do that tomorrow? I'm free almost any time after 10am EDT.

Please let me know what time tomorrow is convenient for Verizon and I will set up a bridge.

Regards,

Carl.

**Carl S. Nadler** | Attorney | HellerEhrmanLLP | 1717 Rhode Island Avenue, NW | Washington, DC 20036 tel: +1.202.912.2575 | fax: +1.202.912.2020 | email: carl.nadler@hellerehrman.com | web: www.hellerehrman.com

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.



Wiley Rein & Fielding LLP

Exhibit 2

1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX     202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
McLEAN, VA 22102
PHONE  703.905.2800
FAX     703.905.2820

www.wrf.com

John B. Wyss
202.719.7038
jwyss@wrf.com

August 11, 2005

***Via Hand Delivery***

Carl S. Nadler, Esq.
HellerEhrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036-3001

Re:     *Inline Connection Corp. v. Verizon Internet Services, Inc. et al.*
        Case No. 2:05CV205 HCM

Dear Carl:

As we previously discussed (and reconfirmed in my August 5 letter to Mike Plimack), we had hoped to work out with you a mutual early exchange of documents without prejudice to Defendants' pending motions to transfer, to dismiss for lack of personal jurisdiction, and to stay substantive discovery until the Court rules on the threshold venue and jurisdictional issues. We understand that, despite any production by the Defendants, Inline is not willing to make available the materials generated over the last three years in the Delaware Actions against AOL and Earthlink at this time.

Nonetheless, as indicated in my prior correspondence, Defendants have assembled an initial group of some 49,000 pages of documents based upon our previous meet and confer discussions. These include documents that you have specifically requested and which would be produced whether or not the case is transferred to Delaware. As you directed, Defendants' initial production is being made in electronic format. Pursuant to our prior agreement, you will hold all produced documents designated as confidential on an "attorneys-eyes-only" basis pending entry of a mutually acceptable formal Protective Order.

Enclosed herewith are 3 CDs which contain Defendants' initial document production bearing production numbers VIS00000001 through VIS00049162. The documents are being produced without prejudice to any of Defendants' pending motions or objections to Inline's discovery requests.

Please call me if you have any questions.

Sincerely yours,

John B. Wyss

Enclosures