UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

INLINE CONNECTION CORP.,

                        Plaintiff,

    v.

VERIZON INTERNET SERVICES,
INC., et al.,

                       Defendants.

C.A. No. 05-866 (JJF)

## INLINE'S MOTION TO STAY

Plaintiff Inline Communications Corp. ("Inline") respectfully moves to stay this litigation pending conclusion of *Inline Connection Corp. v. AOL Time Warner, et al*, C.A. No. 02-272-MPT[1] and *Inline Connection Corp. v. EarthLink, Inc.,* C.A. No. 02-477-MPT (collectively the "*AOL Case*"), two previously-filed and substantially-related lawsuits filed in 2002 and consolidated for trial in January, 2007. By allowing far more advanced and very closely related lawsuits to proceed to completion first, the requested stay will substantially simplify the discovery and trial of this matter. The stay will accomplish these efficiencies, moreover, without causing prejudice to any party.

All parties have agreed that a stay is a sensible way to proceed. Defendants, however, insisted that they be allowed to litigate two specific issues despite the stay. This proposal, however, is flawed for at least two reasons. First, it is inherently unfair to stay the case while allowing Defendants to continue litigating the selected issues they deem most favorable. Second, the issues Defendants want to litigate – prosecution laches and claim construction – are complicated and will require extensive discovery. In fact, no scheduling order has been entered

---

[1]    AOL Time Warner, Inc. (now Time Warner, Inc.) was voluntarily dismissed from the case. Thus, America Online, Inc. ("AOL") is the sole defendant in this case currently.

in this case and discovery has barely begun.  The whole point of the requested stay is to allow the litigation of the more-advanced case to narrow and define these kinds of issues before the Court and the parties undertake to litigate them.

## STATEMENT OF FACTS

### A.    DSL Technology

The patents-in-suit relate to transmitting data over telephone lines using systems that allow simultaneous use of these lines for regular voice communications.  As relevant here, the claimed inventions allow companies to offer internet access using improved Digital Subscriber Line ("DSL") technology that transmits internet data over the high frequency portion of the telephone line and regular voice communications over the low frequency portion. Customers can self-install all the equipment needed at their home to use this improved DSL service.

Many Internet Service Providers ("ISPs") use DSL technology for the transmission of internet traffic to and from their customers' locations.  DSL allows use of an ordinary telephone line to provide internet connectivity between an ISP's facilities  and the customers' homes and offices.  The Verizon defendants transferred to this Court (like defendants in the *AOL Case*) are ISPs and related internet services companies.[2]

### B.    Procedural History

Inline has earlier-filed cases pending in this Court that charge infringement of these DSL patents: the *AOL Case*, filed in April, 2002, in which plaintiff alleges that AOL Time Warner, Inc. ("AOL") and Earthlink, Inc.  ("Earthlink") infringe the patents based on their DSL

---

[2]    In contrast, the sixteen defendants that the Virginia Court did not transfer (and who remain defendants in the now-stayed Virginia action) are all operating telephone companies who provide ISPs like Earthlink, AOL, and Verizon Internet Services, Inc. DSL transmission between the central office and the customer locations.

services.   The present case, which Inline originally filed in the Eastern District of Virginia in April, 2005 against several Verizon companies, alleges infringement of those same patents.   This motion addresses the most efficient way to manage these cases without unnecessary duplication of the Court's and parties' efforts.

### 1.    The *AOL Case.*

Inline's infringement case against AOL and Earthlink is well advanced.   Fact discovery is complete, and the parties are scheduled to finish expert discovery by May of this year.[3]   Judge Thynge has entered a comprehensive, 25-page claim construction order in which ten patent terms were construed,[4] a subsequent modification of that order,[5] and at least two summary judgment decisions.[6]   With leave of court, the parties may file case-dispositive motions by July 12, 2006.   *Amended Scheduling Order* (Exh. A), at 2.   Trial is set to begin on January 8, 2007.   *Id.*

### 2.    This Lawsuit

In June, 2002 (two months after filing the *AOL Case*), Inline sued Verizon Communications, Inc. ("VCI") in this Court for infringement of the DSL patents.   Civil Action No. 02-545.   Immediately after answering, VCI moved for summary judgment on the ground that it was only a holding company with no operations other than ownership of the operating Verizon

---

[3]     *See Amended Scheduling Order* entered December 23, 2005 in the *AOL Case* (Exhibit A).

[4]     Inline Connection Corp. v. AOL Time Warner, Inc., 302 F. Supp.2d 307 (D. Del. 2004 ).

[5]     Inline Connection Corp. v. AOL Time Warner, Inc., 347 F. Supp.2d 56 (D. Del. 2004).

[6]     *Inline Connection Corp. v. AOL Time Warner, Inc.,* 364 F.Supp.2d 417 (D. Del. 2005) (summary judgment order); *Inline Connection Corp. v. AOL Time Warner, Inc.,* 395 F. Supp.2d 115 (D. Del. 1995) (reconsideration of summary judgment order).

companies. In September, 2002, Inline and VCI stipulated to dismissal of the action without prejudice.

Inline proceeded to investigate which Verizon entities were the proper defendants for its patent infringement suit. Having identified the proper defendants, Inline brought suit in the Eastern District of Virginia, where the Verizon defendants are located or active. *Inline Connection Corp. v. Verizon Internet Services, et al.,* Civil Action No. 2:05CV205 (HCM) (filed Apr. 6, 2005). The Verizon defendants moved to transfer the suit to this Court, stressing the related nature of the *AOL Case.* By order dated December 6, 2005, the Virginia court transferred this case to this Court.

Discovery in this matter is at the earliest stage; the parties have proceeded with very limited document discovery and interrogatories. Neither side has completed document production or interrogatory responses, and the parties have yet to begin depositions. The Court has not entered a scheduling order.

### 3. The Merits of the Two Cases are Substantially Related

As Verizon itself noted in moving to transfer this case from Virginia, the *AOL Case* addresses "the very same patent issues" as this litigation.[7] Those patent issues will be addressed in the next twelve months in the *AOL Case* in dispositive motions and at trial. As Verizon recognizes, the decisions of the Court and jury in *AOL* "impact both Inline and the Verizon Defendants."[8]

Indeed, the patent claims the parties have identified as at issue in the *AOL Case*

---

[7]    Memorandum in Support of Verizon Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, at 8, *Inline Connection Corp. v. Verizon Internet Services, Inc.,* (E.D. Va. Filed May 31, 2005).

[8]    *Id.,* at 9

and this litigation are virtually identical:[9]

| Claim | In *AOL* | In This Case |
|:---:|:---:|:---:|
| **U.S. Patent No. 5,844, 596** | | |
| 47 | No | Yes |
| 61 | Yes | Yes |
| **U.S. Patent No. 6,243,446** | | |
| 1 | Yes | Yes |
| 2 | Yes | Yes |
| 3 | Yes | Yes |
| 4 | Yes | Yes |
| 5 | Yes | Yes |
| 6 | Yes | Yes |
| **U.S. Patent No. 6,542,585** | | |
| 1 | Yes | Yes |
| 2 | Yes | Yes |
| 3 | No | Yes |
| 4 | Yes | Yes |
| 8 | Yes | Yes |
| 9 | Yes | Yes |
| **U.S. Patent No. 6,236,718** | | |
| 5 | Yes | Yes |
| 22 | No | Yes |
| 24 | Yes | Yes |
| 38 | Yes | Yes |
| 39 | Yes | Yes |

---

[9]     On November 29, 2005, the United States Patent and Trademark Office issued a new patent to Inline (No. 6,970,537). Inline has previously advised Defendants that upon issuance of this patent, it would seek leave to amend this suit to add additional claims from the new patent. *See* Letter from Nadler to Wyss (dated Aug. 30, 2005)(Exh. B).

In addition to involving the same claims, these cases involve closely related infringing services and devices. As Verizon recognizes, both this case and the *AOL* case involve internet access services provided through an "industry-standard type of DSL service. . ."[10]    In fact, AOL, Earthlink, and Verizon all provision the main part of their DSL internet services – the transmission facilities between the consumer and the telephone company central office – over the same Verizon facilities. There is thus substantial factual overlap in the services and methods Inline charges with infringement in the *AOL Case* and this litigation.

There is every reason to believe that as the *AOL Case* proceeds through dispositive motions and trial over the next year, it will generate rulings that narrow and clarify the issues in this litigation. The outcome on validity and infringement will have an obvious impact – both legally and in terms of the parties' approach to settlement – on Inline's claims against substantially similar DSL services in this case. If the AOL defendants secure rulings on issues relating to the asserted patents, the ruling might very well remove those same issues from this case. While an appeal in the *AOL Case* cannot be predicted, a Federal Circuit ruling on the patents-in-suit would also have an obvious impact on Inline's case against the Verizon defendants.

### 4.    The Parties' Meet and Confer Regarding a Stay

When Inline first filed this suit in Virginia, counsel for Verizon suggested that the parties consider staying this action pending resolution of the *AOL Case*. *See* Declaration of Michael Plimack, ¶ 2 (Exhibit C). Because the case was pending in Virginia at that time,

---

[10]    *Verizon Transfer Mem.*, at 2. Because discovery has just started in this lawsuit, Inline has not finalized precisely which Verizon services it accuses of infringement. But there is no doubt that a predominant part of Inline's case against Verizon will be the same Asymmetric Digital Subscriber Line ("ADSL") system for providing internet access that is at issue in the *AOL Case*.

however, there was every reason to believe it would proceed to final verdict *before* the *AOL Case*. For this reason, Inline at that time declined the request to stay this matter. *Id.*

Once the case was transferred to this Court, however, it became clear that the *AOL Case* would proceed to final judgment far more quickly. Accordingly, Inline suggested that the parties proceed with Verizon's original suggestion to stay this matter. The meet and confer discussions confirmed that all parties believe that it would be desirable to stay this suit until the *AOL Case* is resolved. *Id.*

Verizon indicated, however, that it would agree to a stay only if two specific issues were exempt from the stay. First, despite entry of a stay, Verizon wants to proceed now with its claim that some or all of Inline's claims are barred by prosecution laches. *See, e.g., Symbol Technologies, Inc. v. Lemelson Medical, Education & Research Foundation, L.P.*, 422 F.3d 1378 (Fed. Cir. 2005). Similarly, Verizon wants to proceed with a claim construction hearing as to some undefined "additional claim terms" that were not construed in the *AOL Case*. Plimack Decl., ¶ 4.[11]

## ARGUMENT

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir.1983). The decision whether to enter a stay is firmly within the discretion of this Court. *See Cost Bros. Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir. 1985). This Court has

---

[11] During the meet and confer, Verizon also indicated that notwithstanding a stay Verizon would want this Court to enter a protective order to cover the limited discovery that Verizon has already provided, and to finish certain third-party discovery Verizon propounded after the Virginia court announced the case would be transferred. Plimack Decl., ¶ 6. Inline has agreed to these two conditions (the latter subject to the objections interposed by the third parties).

identified four factors that should be considered in exercising that discretion: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991). Examination of these factors confirms the common-sense conclusion that it simply makes sense to stay this matter until the *AOL Case* is concluded.

### A.    Each Relevant Factor Favors A Stay of this Proceeding

#### 1.    The Stay Would Not Prejudice the Verizon Defendants

Staying this matter pending the *AOL Case* would present no prejudice or tactical disadvantage to Verizon. This conclusion is best evidenced by the fact that Verizon *originally suggested* a stay of this action and has indicated in meet and confer discussions that it would favor a stay (though, as discussed below, only on unreasonable terms and conditions). The Verizon entities are, after all, the defendants in this action. It is entirely in their interest to delay entry of any adverse judgment.

#### 2.    The Stay Would Simplify the Issues and Trial of this Matter

Over the next 12 months, the parties to the *AOL Case* will proceed through any remaining dispositive motions and trial of an infringement case involving substantially the same patent claims and accused DSL technology. In the process, the parties will inevitably clarify and narrow the issues necessary to litigate in this case.

The Court's ruling on dispositive motions, for example, will have an obvious (and potentially conclusive) impact on this litigation. This case will also be substantially impacted by the *AOL Case* jury's conclusions on issues such as validity and the extent to which this DSL technology infringes Inline's patent claims. Beyond whatever narrowing is worked by formal legal doctrines such as collateral estoppel and res judicata, all parties' approach to settlement of

this case will plainly be affected by the outcome of the dispositive motions and trial in the *AOL Case.*

### 3.    The Procedural Posture of the Case Favors a Stay

A stay is further suggested by the fact that discovery is just beginning, and no trial date has been set. *See Alloc, Inc. v. Unilin Decor N.V.*, 2003 U.S. Dist. LEXIS 11917, *8 (D. Del. July 11, 2003) ("court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses."). Indeed, to date, Verizon has steadfastly refused to provide meaningful discovery. The Verizon defendants have refused to produce *any* documents responsive to 77 of Inline's 84 requests for production.[12] Among other issues, the Verizon defendants repeatedly claimed that significant discovery was inappropriate during the pendency of their motion to transfer from Virginia to this Court.[13] They have also refused to answer some 15 of Inline's 20 interrogatories.[14]

In short, allowing the *AOL Case* to proceed first will focus the issues in this case and, accordingly, narrow and more clearly define both the discovery needed by the parties and the rulings (including claim construction rulings) required of the Court before this matter will be ready for trial.

---

[12]    *See generally* Plaintiff Inline Connection Corporation's Memorandum in Support of Motion to Compel Responses to Inline's First Sets of Requests for Production and Interrogatories, at 6-8 (filed Aug. 1, 2005)

[13]    *Id.*, at 10.

[14]    *Id.,* at 6.

**B.**    **Verizon's Requested Exemptions From the Stay are Unreasonable**

Apparently, the only impediment to an agreement to stay is the Verizon defendants' desire to exempt two specific issues that it wishes to litigate now: (a) its defense of prosecution laches; and (b) claim construction proceedings as to unspecified claim terms not already defined in the *AOL Case*. The Court should reject these proposed exceptions.

Preliminarily, there is obvious unfairness in a non-uniform stay. All litigants perceive some benefit to moving forward on some issues and delaying others. The only fair way to proceed is to stay *all* proceedings in this matter until the *AOL Case* is concluded.

Moreover, Verizon's two issues are particularly ill-suited to litigation in isolation:

*Prosecution Laches:* Prosecution laches is hugely fact-bound. The Federal Circuit cautioned just last year that there are "legitimate reasons" for delay in patent prosecution, so that the prosecution laches doctrine must be "used sparingly" and only with respect to "egregious cases of misuse of the statutory patent system." *Lemelson*, 422 F.3d at 1384. To claim prosecution laches, moreover, a defendant must show actual prejudice, such as "the adverse effect on businesses that were unable to determine what was patented from what was not patented." *Id.* at 1386.

The prosecution laches defense Verizon wants to litigate, therefore, will require extensive discovery into the reasons and justification for any claimed delay in prosecuting the patents in suit, together with the impact of that delay on Verizon, including any prejudice Verizon claims to have suffered from being unable to perceive the scope and nature of Inline's patents. Much of this extensive discovery will be taken in depositions of individuals such as the inventor and the attorneys who prosecuted the patents whose testimony Verizon will want on a broad range of issues extending far beyond prosecution laches. It makes no sense for discovery to proceed solely on that limited issue as an exception to an otherwise-stayed case.

*Claim Construction:* Judge Thynge has already issued an extensive claim construction ruling in the *AOL Case* (302 F. Supp.2d 307) and a decision on reconsideration of the claim construction ruling (347 F. Supp.2d 56). Verizon has not identified any particular reason to believe that this ruling is inadequate or incomplete for purposes of this litigation. Indeed, Verizon *has identified only one claim term* that it wants to have construed during the stay. Plimack Decl., ¶ 4.

In any event, one major reason to stay this action is to use the *AOL Case* as a way to narrow and define the issues – including claim on construction – that need to be resolved in this case. Once the *AOL Case* has proceeded through dispositive motions and trial, the set of additional claim terms (if any) that need to be construed in this case will become apparent in that case. Entry of a stay will ensure that the Court and the parties devote their claim construction efforts only to those terms that really need to be addressed after conclusion of the *AOL Case*.

## CONCLUSION

The *AOL Case* and this lawsuit involve substantially the same patent claims and accused technology and services. The *AOL Case* is 12 months from trial while this case is at the very beginning of discovery. Simple common sense and this Court's precedents demand that this matter be stayed until conclusion of the *AOL Case*. Proceeding in this fashion will inevitably narrow and simplify any remaining issues while avoiding prejudice to any party.

Indeed, all the parties before the Court agree that a stay makes sense. The only impediment to the stay is Verizon's unreasonable and unfair demand that two issues be exempted from the otherwise-uniform stay. The Court should reject Verizon's proposed carve-out as inherently unfair and because the issues Verizon wishes to litigate now are simply ill-suited to

litigation in isolation. The Court should stay all proceedings in the matter until the final conclusion of the *AOL Case*.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*Julia Heaney*

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
jheaney@mnat.com
*Attorneys for Plaintiff*
*Inline Connection Corporation*

OF COUNSEL:

Alexander L. Brainerd
Michael K. Plimack
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
(415) 772-6000

John R. Ferguson
C. Joël Van Over
SWIDLER BERLIN LLP
3000 K Street, N.W., Suite 300
Washington, DC 20007
(202) 424-7500

January 27, 2006

## RULE 7.1.1 CERTIFICATE

Pursuant to D. Del. L.R. 7.1.1, this is to certify that counsel for Inline has discussed the subject matter of this motion with counsel for defendants, and has not been able to reach agreement on the matters therein.

/s/ Julia Heaney_____
Julia Heaney (#3052)

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

INLINE CONNECTION CORPORATION, :

                  Plaintiff,

      v.                  :   C. A. No. 02-272-MPT

AOL TIME WARNER INCORPORATED, :
et al.,

                  Defendants.

_____ .

INLINE CONNECTION CORPORATION, :

                  Plaintiff,

      v.                  :   C. A. No. 02-477-MPT

EARTHLINK, INC.,

                  Defendant.      Consolidated Cases

```
F I L E D

DEC 2 3 2...

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

### AMENDED SCHEDULING ORDER

       At Wilmington this 23rd day of December, 2005.

       THIS MATTER having come before the Court pursuant to the parties' November 21, 2005 Conference with the Court, and the Court having considered the parties' arguments,

       IT IS ORDERED that:

       1.    Initial disclosures of experts on remaining issues upon which a party bears the burden of proof shall be due on Friday, February 3, 2006;

       2.    Initial expert reports on remaining issues upon which a party bears the

burden of proof, and initial disclosure of rebuttal experts shall be due on Friday, March 3, 2006;

       3.      Rebuttal expert reports shall be due on Friday, March 31, 2006;

**Upon submission with any expert report, the dates and times of the experts' availability for deposition shall be provided;**

       4.      Expert depositions shall be completed by Monday, May 26, 2006;

       5.      Letters seeking leave of the Court to file summary judgment motions shall be filed no later than Wednesday, June 7, 2006;

       6.      Conference regarding filing of summary judgment motions shall be held on Tuesday, June 27, 2006 at 4:00 p.m. (the time for this conference may change);

       7.      Case dispositive motions shall be filed no later than Wednesday, July 12, 2006 (briefing and page restrictions shall be according to the Court's Local Rules);

       8.      Plaintiff shall submit draft Pre-Trial Order to Defendants on Monday, November 13, 2006;

       9.      Defendants shall submit draft Pre-Trial Order to Plaintiff on Tuesday, November 28, 2006;

       10.     Joint Proposed Pre-Trial Order shall be due on Tuesday, December 5, 2006;

       11.     Pre-Trial conference shall be held on Tuesday, December 19, 2006 at 9:00 a.m.;

       12.     This matter is scheduled for a five (5) day jury trial to begin at 9:00 a.m. on Monday, January 8, 2007. For the purposes of completing pretrial

preparations, counsel should plan on each side being allocated a total of 13 hours to present its case. Counsel and the parties are directed to the Court's Final Pre-Trial and Trial Management Order regarding the contents of the Pre-Trial Order, motions in limine, voir dire, trial management, and the like. The revised version of the Court's Final Pre-Trial and Trial Management Order may be found on the Court's web-site.

      13.    To the extent this order allows or the Court specifically requests or authorizes any copies of papers to be provide to Chambers, **no originals** of such papers shall be provided. Any copy for Chambers shall be delivered to the Clerk's Office.

UNITED STATES MAGISTRATE JUDGE

EXHIBIT B

# HellerEhrman LLP

August 30, 2005

Carl S. Nadler
carl.nadler@hellerehrman.com
Direct +1.202.912.2575
Main +1.202.912.2000
Fax +1.202.912.2020

*Via E-mail*

John B. Wyss, Esq.
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC 20006

**Re:    Inline Connection Corp. v. Verizon Internet Services Inc., et al.,
Case No. 2:05 CV 205 (HCM)**

Dear John:

On August 10, 2005, the United States Patent and Trademark Office issued a Notice of Allowance for Mr. Goodman's Patent Application 09/863,061. We thus expect that the enclosed claims will issue as a United States Patent within the next 90 days.

On July 15, 2005 I wrote to provide you with a preliminary identification of presently-asserted claims in this litigation. Please be advised that when Application 09/863,061 issues as a United States Patent, Inline will additionally assert at least the following claims from that Application in the litigation: 59-61, 63, 64, 66, 68, 69, 71, 79-81, 87-92, 94-96, and 99-102.

Since Defendants have not yet begun substantive discovery in this matter, they can and should include discovery related to these new claims in their discovery efforts. Inline will make available any non-privileged information from the prosecution that Defendants wish to review.

It may be necessary for Inline to amend its Complaint in this matter to add the new patent when it issues. Please advise as soon as possible whether Defendants will oppose this amendment.

Sincerely,

Carl S. Nadler

Enclosure (allowed claims)

Heller Ehrman LLP  1717 Rhode Island Avenue, NW,  Washington, D.C.  20036-3001   www.hellerehrman.com

Anchorage    Beijing    Hong Kong    Los Angeles    Madison, WI    New York    San Diego    San Francisco    Seattle
Silicon Valley      Singapore    **Washington, D.C.**

·· May-09-05   12:54pm   From-STAAS & HALSEY                202 434 1501         T-869   P.004/010   F-358
                                                                                        Serial No.: 09/863,061

IN THE CLAIMS:

The text of all pending claims is set forth below. The status of each claim is indicated with one of (Previously Presented), (Cancelled), or (New). Please add new claims 87-107, in accordance with the following.

Claims 1-58 (cancelled)

59. (Previously Presented) A method for communicating via a set of frequency bands, comprising:

obtaining a first electrical signal that encodes a first information stream, wherein:

the energy of said first electrical signal is concentrated within a plurality of frequency bands that comprises substantially non-overlapping frequency bands; and

said first information stream can be recovered from any subset of said plurality of frequency bands that is one less, in number, than said plurality of frequency bands,

transmitting said first electrical signal onto a conductive path;

receiving energy within a first frequency band from said conductive path, wherein:

a highest frequency of said first frequency band is lower than a lowest frequency of said plurality of frequency bands;

a lowest frequency of said first frequency band is higher than a highest frequency used in a second frequency band,

at least a portion of said first electrical signal is transmitted simultaneously with receiving said energy within said first frequency band; and

transmitting and receiving voiceband signals within said second frequency band onto said conductive path,

wherein at least part of said transmitting and receiving of voiceband signals is conducted simultaneously with said transmitting of said first electrical signal.

60. (Previously Presented) The method of claim 59, further comprising:

encoding a second information stream as a second electrical signal, wherein the energy of said second electrical signal is concentrated within said first frequency band; and

transmitting said second electrical signal onto said conductive path.

1

May-09-05  12:55pm  From-STAAS & HALSEY          202 434 1501        T-989  P.005/010  F-359
Serial No.: 09/863,061

61. (Previously Presented) The method of claim 80, further comprising receiving said first electrical signal at said third point on said conductive path, wherein the energy of said first electrical signal is concentrated within said plurality of frequency bands.

62. (Cancelled)

63. (Previously Presented) The method of claim 61, further comprising sustaining the connection of an ordinary telephone device to a fourth point on said conductive path while providing a relatively high impedance to signals on said path at frequencies above the voiceband, wherein at least part of said sustaining is conducted simultaneously with said transmitting of said first electrical signal and said second electrical signal, said fourth point being different than said first, second, and third points.

64. (Previously Presented) The method of claim 63, wherein said third, and said fourth points are implemented with RJ-11 telephone jacks connected to said conductive path.

65. (Cancelled)

66. (Previously Presented) The method of claim 59, wherein said frequency bands are of substantially equal width.

67. (Previously Presented) The method of claim 59, wherein said first information stream is a stream of video.

68. (Previously Presented) The method of claim 59, wherein said first information stream is a digital stream that represents video information.

69. (Previously Presented) The method of claim 60, wherein said second information stream represents a control signal that has an influence on the content of said first information stream.

70. (Cancelled)

71. (Previously Presented) The method of claim 59, wherein said first frequency band is narrower than the difference between a highest frequency in said plurality of frequency bands and a lowest frequency in said plurality of frequency bands.

2

May-09-05  12:55pm  From-STAAS & HALSEY                    202 434 1501        T-989  P.006/010  F-368

Serial No.: 09/863,061

72. (Previously Presented)  The method of claim 60, wherein said second information stream is transmitted as time-varying infrared light patterns.

Claims 73-76 (cancelled)

77.    (Previously Presented)  The method of claim 69, wherein said second information stream is transmitted as time-varying infrared light patterns.

78.    (Cancelled)

79. (Previously Presented) The method of claim 59, wherein the first electrical signal is transmitted onto the conductive path at a first point on the conductive path,

        wherein energy within a first frequency band is received at the first point on the conductive path, and

        wherein said voiceband signals are transmitted and received at a second point on the conductive path.

80. (Previously Presented)  The method of claim 79, further comprising:

        encoding a second information stream as a second electrical signal, wherein the energy of the second electrical signal is concentrated within the first frequency band; and

        transmitting the second electrical signal at a third point onto the conductive path, the third point being different than the first point on the conductive path.

81. (Previously Presented)  The method of claim 59, wherein transmitting said first electrical signal onto the conductive path presents a high impedance to energy on said path at voiceband frequencies.

82. (Previously Presented)  The method of claim 66, further including a gap band extending between a highest frequency of a first one of said plurality of frequency bands and a lowest frequency of a second one of said plurality of frequency bands, wherein the highest frequency of said first one of said plurality of frequency bands is lower than the lowest frequency of said second one of said plurality of frequency bands.

3

83. (Previously Presented) The method of claim 82, wherein noise is induced on said conductive path within said gap band, where said noise comes from a source that is not connected to said conductive path.

84. (Previously Presented) The method of claim 83, wherein the amplitude of the noise induced within said gap band is higher than an amplitude of noise in a first band that would prevent significant recovery of information from said first band, said first band corresponding to said first one of said plurality of frequency bands.

85. (Previously Presented) The method of claim 59, further including:

recovering said first information stream from the first electrical signal; and

propagation of noise from a source other than said first electrical signal along said conductive path within at least one of said plurality of frequency bands;

wherein in response to the noise said first information stream is recovered without said one of said plurality of frequency bands.

86. (Previously Presented) The method of claim 59, further including:

recovering said first information stream from said first electrical signal; and

propagation of noise along said conductive path, a power spectrum of said noise overlapping each frequency band of said plurality of frequency bands;

wherein said first information stream is recovered without a frequency band in said plurality of frequency bands that has the smallest respective signal to noise ratio.

87. (New) A method for communicating via a set of frequency bands, comprising:

obtaining a first electrical signal from a first information stream, wherein:

the energy of said first electrical signal is concentrated within a plurality of substantially non-overlapping frequency bands; and

said first information stream can be recreated from any subset of said first plurality of frequency bands that is one less, in number, than said first plurality of frequency bands,

applying said first electrical signal on a conductive path;

receiving energy within a first frequency band on said conductive path, wherein:

4

a highest frequency of said first frequency band is lower than a lowest frequency of said plurality of frequency bands;

a lowest frequency of said frequency band is higher than a highest frequency used in a second frequency band,

at least a portion of said first electrical signal is conducted simultaneously with said energy within said first frequency band; and

transmitting and receiving voiceband signals within said second frequency band on said conductive path,

wherein at least part of said transmitting and receiving of voiceband signals is conducted simultaneously with said applying of said first electrical signal.

88. (New) The method of claim 87, further comprising:

expressing a second information stream as a second electrical signal, wherein the energy of said second electrical signal is concentrated within said first frequency band; and

applying said second electrical signal on said conductive path.

89. (New) The method of claim 101, further comprising receiving said first electrical signal at said third point on said conductive path, wherein the energy of said first electrical signal is concentrated within said plurality of substantially non-overlapping frequency bands.

90. (New) The method of claim 89, further comprising sustaining the connection of an ordinary telephone device to a fourth point on said conductive path while providing a relatively high impedance to signals on said path at frequencies above the voiceband, wherein at least part of said sustaining is conducted simultaneously with said applying of said first electrical signal and said second electrical signal, said fourth point being different than said first, second, and third points of connection.

91. (New) The method of claim 90, wherein said third, and said fourth points of connection correspond to RJ-11 telephone jacks connected to said conductive path.

92. (New) The method of claim 87, wherein each frequency band in said plurality of substantially non-overlapping frequency bands are of substantially equal width.

93. (New) The method of claim 87, wherein said first information stream is a stream of video.

5

May-09-05   12:56pm   From-STAAS & HALSEY                202 434 1501           T-969   P.009/010   F-369
Serial No.: 09/863,061

94. (New)  The method of claim 87, wherein said first information stream is a digital stream that represents video information.

95. (New)  The method of claim 88, wherein said second information stream represents a control signal that has an influence on the content of said first information stream.

96. (New)  The method of claim 87, wherein said first frequency band is narrower than the difference between the highest frequency covered by said plurality of substantially non-overlapping frequency bands and the lowest frequency covered by said plurality of substantially non-overlapping frequency bands.

97. (New)  The method of claim 88, wherein said second information stream is expressed as time-varying infrared light patterns.

98. (New)  The method of claim 95, wherein said second information stream is expressed as time-varying infrared light patterns.

99. (New)  The method of claim 93, wherein said second information stream represents a control signal that has an influence on the content of said first information stream.

100. (New)  The method of claim 87, wherein applying the first electrical signal on the conductive path applies the first electrical signal at a first point on the conductive path,

wherein receiving energy within a first frequency band on the conductive path receives energy at the first point on the conductive path, and

wherein transmitting and receiving voiceband signals on the conductive path transmits and receives voiceband signals at a second point on the conductive path.

101. (New)  The method of claim 100, further comprising:

expressing a second information stream as a second electrical signal, wherein the energy of the second electrical signal is concentrated within the first frequency band; and

applying the second electrical signal at a third point on the conductive path, the third point being different than the first point on the conductive path.

6

102. (New) The method of claim 87, wherein applying said first electrical signal on the conductive path applies said first electrical signal while providing a relatively high impedance to energy on said path at voiceband frequencies.

103. (New) The method of claim 92, further including a gap band extending between a highest frequency of a first one of said plurality of frequency bands and a lowest frequency of a second one of said plurality of frequency bands, wherein the highest frequency of said first one of said plurality of frequency bands is a lower frequency than the lowest frequency of said second one of said plurality of frequency bands.

104. (New) The method of claim 103, wherein at least some noise energy is propagated along said conductive path within said gap band, said at least some noise energy created by a source that is not connected to said conductive path.

105. (New) The method of claim 104, wherein said gap band includes at least some noise energy, propagated along said conductive path, sufficient to degrade the first information stream.

106. (New) The method of claim 87, further including:

recreating said first information stream based on the energy received by said receiver; and

propagating at least some noise energy from a source other than said first electrical signal along said conductive path within at least one of said plurality of substantially non-overlapping frequency bands;

wherein in response to the at least some noise energy said first information stream is recreated without the at least one of said plurality of substantially non-overlapping frequency bands.

107. (New) The method of claim 87, further including:

recreating said first information stream from the energy received by said receiver; and

propagating at least some noise energy along said conductive path within each of said plurality of substantially non-overlapping frequency bands;

wherein said first information stream is recreated without a frequency band in said plurality of substantially non-overlapping frequency bands having the most noise energy.

7

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

INLINE CONNECTION CORP.,

                        **Plaintiff,**

    v.

VERIZON INTERNET SERVICES,
  INC., et al.,

                        **Defendants.**

C.A. No. 05-866-JJF

## DECLARATION OF MICHAEL K. PLIMACK IN SUPPORT OF PLAINTIFF INLINE CONNECTION CORP.'S MOTION TO STAY

I, Michael K. Plimack, declare as follows:

1.     I am a shareholder at Heller Ehrman LLP, counsel to plaintiff Inline Connection Corp. ("Inline"). I make this declaration of my own personal knowledge and if called upon to do so, could testify competently to the matters stated herein.

2.     In April, 2005, after this litigation was instituted in the Eastern District of Virginia, I had discussions with Adam Bernstein, in-house counsel to Verizon, about the future course of the litigation. Mr. Bernstein asked me to consider whether Inline would agree to a stay of all litigation against the Verizon defendants pending the outcome of the litigations in Delaware brought by Inline against AOL and Earthlink (collectively the "*AOL Case*"). I responded to Mr. Bernstein that Inline would not agree to a stay at that time because based on the Virginia court's typical disposition of cases, a trial against the Verizon defendants in Virginia would substantially precede any trial in the *AOL Case*. At that time, no trial date had been set in the *AOL Case*.

3.    In January, 2006, following the Virginia court's transfer of this case to Delaware, I had discussions with John Wyss, outside counsel to the Verizon defendants, about the future course of the litigation.  Specifically, I proposed that the parties jointly request that this Court stay the litigation pending the outcome of the *AOL Case.*  I reminded Mr. Wyss of Verizon's original suggestion that the case be stayed.  I also stated that because of the transfer to this Court, it was now clear that a trial in the *AOL Case* would substantially precede any trial in this case.  Further, because of the overlap of issues between the *AOL Case* and the instant case, the resolution of the *AOL Case* would likely have a substantial impact on this case.

4.    Mr. Wyss responded that the Verizon defendants were also interested in a stay.  However, Mr. Wyss indicated that the Verizon defendants would only agree to a stay if they were able to move forward to seek the Court's claim construction of certain patent terms.  In light of Magistrate Judge Thynge's previous construction of several terms of the patents, I asked Mr. Wyss to specify what claim terms he believes need to be construed.  Mr. Wyss indicated that he believed the term "selection" or "selected sets" needs to be construed.  When I asked him whether there are any other patent claim terms that in his view need to be construed, he refused to identify any other such terms.

5.    Mr. Wyss also indicated that the Verizon defendants were interested in moving forward with respect to their prosecution laches defense.  With respect to this issue, and the issue of claim construction, I told Mr. Wyss that Inline would not agree to a stay that would exclude these two issues from the stay.  I explained to Mr. Wyss that

2

because substantial discovery and motion practice would be required for each issue, litigation of these issues would eviscerate the benefits to be gained by a stay.

6.    Mr. Wyss also indicated that the Verizon defendants would want a protective order in place, and would want to complete certain third-party discovery that had been propounded by the Verizon defendants after the Virginia announced that it would be transferring the case.  I indicated to Mr. Wyss that Inline would have no objection to these two conditions to a stay.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 27, 2006

Michael K. Plimack

3

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 27, 2006, I electronically filed Inline Motion To Stay with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Jeffrey B. Bove
> Kevin M. Baird
> Connolly Bove Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

Jeffrey B. Bove
Kevin M. Baird
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

John B. Wyss
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, DC  20006

/s/ *Julia Heaney* (#3052) _____