IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Inline Connection Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>Verizon Internet Services, Inc., et al.,<br><br>        Defendants. | Civil Action No. 05-866 (JJF) |

## VERIZON DEFENDANTS' RESPONSE TO INLINE'S MOTION TO STAY

The Verizon defendants[1] agree with Plaintiff Inline Connection Corp. ("Inline") that there are certain issues in this litigation that can and should be stayed pending conclusion of the *AOL/Earthlink* actions.[2] In particular, the accused infringing services and devices in both this case and *AOL/Earthlink* comply with the same specified industry technical standards for Asymmetrical Digital Subscriber Line ("ADSL") systems that provide internet access. Thus, there is no reason for the parties to conduct discovery concerning infringement and damages issues until the *AOL/Earthlink* cases are concluded. Likewise, there is little reason for discovery at this time concerning many relatively recent factual events that occurred during the last seven and a half years since the earliest of the patents-in-suit (*i.e.*, the '596 patent) issued on December 1, 1998.[3] Once the *AOL/Earthlink* cases are over, there will be ample opportunity to explore such matters.

---

[1] Verizon Internet Services, Inc., GTE.Net LLC, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc. *d/b/a* Verizon Southwest.

[2] *Inline Connection Corp v. AOL Time Warner, et al*, C.A. No. 02-272-MPT; *Inline Connection Corp. v. EarthLink, Inc.*, C.A. No. 02-477-MPT.

[3] U.S. Patent No. 5,844,596 ("the '596 patent"). The other patents-in-suit are: U.S. Patent No. 6,236,718 ("the '718 patent"), issued May 22, 2001; U.S. Patent No. 6,234,446 ("the '446 patent"), issued June 5, 2001; and U.S. Patent

At the same time, however, discovery is required for a number of critical issues in this case that concern facts and events dating back some 10 to 20 years or more. With each day that passes, documents relating to these key facts become lost or destroyed, witnesses die or can no longer be located, and memories fade. The Verizon defendants have already been, and continue to be, greatly prejudiced and placed at a clear tactical disadvantage because of Inline's delays in providing discovery concerning these issues.

Likewise, there are three or four purely legal claim construction issues involved in the present case that have not been addressed, and in some cases will never be addressed, in the *AOL/Earthlink* actions. Rulings on these few discrete additional claim construction issues are likely to be dispositive and provide independent bases for summary dismissal of Inline's claims. The Verizon defendants suggest that these issues can be handled most appropriately by reference pursuant to Local Rule 72.1(a)(2) to Magistrate Judge Thynge, since she is already intimately familiar with the patents-in-suit and most of the asserted claims. *See Inline Connection Corp. v. AOL Time Warner, Inc.* 302 F. Supp. 2d 307 (D. Del 2004) ("*Inline I*") and 347 F. Supp. 2d 56 (D. Del. 2004) ("*Inline II*") (Markman claim construction opinions). Judge Thynge's consideration of these discrete claim construction issues will also assist her during final pretrial preparation and trial in the *AOL/Earthlink* cases.

## STATEMENT OF FACTS

### A. Procedural History

All of the patents-in-suit claim priority to an original parent application filed on July 14, 1989 by Inline's principal, David Goodman. While employed by Bolt Beraneck and

---

No. 6,542,585 ("the '585 patent"), issued April 1, 2003. In addition, although not part of the present action, Inline has threatened to assert U.S. Patent No. 6,970,537 ("the '537 patent"), issued November 29, 2005, against the Verizon defendants.

2

Newman, Inc. ("BBN") in 1988, Goodman allegedly conceived and began reducing to practice a system for transmitting analog video signals (*e.g.*, from a VCR) and infrared control signals (from a TV remote control device) over active telephone wires between rooms within a residence. After filing his original July 14, 1989 parent application, Goodman filed three additional CIP applications on December 5, 1991. Some of the CIP applications included additional named inventors (Robert Domnitz and Terry Mahn). Thereafter, Goodman and his patent attorneys deliberately and unreasonably delayed substantive prosecution of the CIP applications for many years by improperly filing – and then abandoning without explanation – a long series of identical continuation applications.

In 1992, Verizon's predecessors Bell Atlantic and NYNEX publicly announced plans to deploy ADSL systems to distribute compressed digital video signals from the telephone company central office to subscriber residences. Goodman expressly accused the Bell Atlantic ADSL system of infringing Inline's patents and patent applications on several occasions in 1993 and 1994. Inline, however, never filed a lawsuit.

Eight years later, in April and June of 2002, Inline filed complaints in this Court against Verizon Communications, Inc. ("Verizon") (C.A. No. 02-878), AOL Time Warner, Inc. ("AOL") (C.A. No. 02-272) and Earthlink, Inc. ("Earthlink") (C.A. No. 02-477). The three cases were assigned to Magistrate Judge Thynge for coordinated pretrial proceedings. *See, e.g.*, Exhibit A hereto.

Verizon, AOL and Earthlink all answered Inline's Delaware complaints. Shortly after Verizon filed its Answer on September 3, 2002, it filed a motion for summary judgment arguing in effect that Inline had named the wrong Verizon entity (*i.e.*, a holding company and the ultimate parent of all Verizon companies). Inline did not file a substantive response to Verizon's motion, nor did Inline amend its complaint to name the proper Verizon entities that actually offer

3

ADSL service.[4] Instead, Inline made a tactical decision to dismiss the action against Verizon on September 17, 2002, and to proceed solely against AOL and Earthlink.

The Verizon defendants have been excluded from participation in the *AOL/Earthlink* litigation over the last four years. During that time, Inline, AOL and Earthlink have conducted extensive factual discovery, participated in Markman hearings resulting in two published opinions (*Inline I* and *Inline II*), and filed cross-motions for summary judgment resulting in a third published opinion by Judge Thynge. 364 F. Supp. 2d 417 (D. Del. 2005) ("*Inline III*").

On April 6, 2005 – without any prior warning – Inline refiled a new patent infringement lawsuit against the Verizon defendants, as well as some 16 additional Verizon operating telephone companies ("OTCs"), in the United States District Court for the Eastern District of Virginia. The OTC defendants moved to dismiss for lack of personal jurisdiction, while the Verizon defendants moved to transfer the action to this Court because of Inline's improper forum shopping and attempts to relitigate issues that Judge Thynge had already decided adversely to Inline. Inline's position at that time regarding the *AOL/Earthlink* actions was as follows:

> Defendants point to the on-going [*AOL/Earthlink*] litigation in Delaware as evidence that Delaware is a convenient forum for Inline. While Delaware may be a convenient forum for parties in that case, this [*i.e.*, *AOL/Earthlink*] is a separate action and involves an entirely different set of defendants.[5]

Judge Morgan entered a written opinion on December 5, 2005, granting the Verizon defendants' motion to transfer and severing and staying the action against the 16 OTC defendants.

---

[4] Information regarding the Verizon entities that actually offer ADSL service was as readily available to Inline in September 2002 as it is today.

[5] Inline's Memorandum In Opposition To Verizon Defendants' Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404, dated June 13, 2005 (Dkt. #24) at p. 10 (emphasis added and citation omitted).

## B. Key Facts And Historic Events From The 1980-1998 Time Period.

While this case was pending in the Eastern District of Virginia, the court's initial scheduling orders specified a January 24, 2006 trial date. Inline took the position that these orders "unambiguously require the parties to proceed with full-scale discovery on all issues now,"[6] and that "[t]here is absolutely no compelling reason to stay or delay discovery in this matter."[7] As a result, the Verizon defendants have already invested an enormous amount of time, effort and money in preparing to defend against Inline's substantive patent infringement claims.

The Verizon defendants' investigations to date have identified a number of issues that concern facts and events that occurred many years ago and as to which discovery should not be delayed. These issues include:

**Prosecution Laches**. Inline and its patent attorneys engaged in a deliberate plan of unreasonable and unexplained delay in prosecuting the patents-in-suit which renders all of the patents unenforceable. *See e.g.*, *Symbol Tech. Inc. v. Lemelson Medical Education & Research Foundation LP*, 422 F.3d 1378 (Fed. Cir. 2005). The Verizon defendants have issued subpoenas *duces tecum* to Inline's patent attorneys to explore the relevant facts, especially those relating to the period of unexplained delay from 1991-1998. The law firms have forwarded their files to Inline, but Inline has refused to produce all of the responsive documents to the Verizon defendants.

**Prior Art**. The modern industry-standard ADSL systems are based upon technology developed at Bell Labs and other companies in the 1980s long before Goodman ever became

---

[6] Plaintiff Inline Connection Corporation's Rebuttal Brief In Support Of Motion To Compel Responses To Inline's First Sets of Requests For Production And Interrogatories, dated August 17, 2005 (Dkt. #47) at p. 2.

[7] Plaintiff Inline Connection Corporation's Memorandum In Opposition To Verizon Defendants' Motion To Stay Discovery, dated July 5, 2005 (Dkt. #35) at p. 8.

5

involved. Bell Labs is now closed and its libraries of technical literature, like the libraries of technical literature of many other companies involved in development of the technology in the 1980s, have been dispersed. Likewise, the individuals involved in the early prior art systems and ADSL development work are scattered and difficult to locate. Any further delay in discovery concerning pre-December 1991 prior art would be highly prejudicial to the Verizon defendants.

**Conception/Reduction To Practice**. Goodman allegedly conceived and reduced to practice his inventions during the period January 1, 1988 to December 5, 1991. All of the relevant documents are now 15-18 years old, as are the memories of any pertinent individuals who can still be located.

**Ownership**. When Goodman joined BBN in early 1980, employees were required to sign a Proprietary Information And Confidentiality Agreement. Under that agreement, all inventions developed by Goodman during the term of his employment were "the sole property of BBN."[8] The limited documents available to date show that Goodman's conception of the alleged inventions in the original July 14, 1989 parent application took place while he was a BBN employee in early 1988.

**Inventorship**. Goodman was the sole named inventor on his original July 1989 parent application. The first of the December 1991 CIP applications listed three inventors: Goodman, Domnitz and Mahn. The second and third December 1991 CIP applications listed only Goodman. During subsequent prosecution, however, Inline's attorneys told the PTO that all three individuals were responsible for inventions relating to the transmission of digital signals,

---

[8] The relevant form of Proprietary Information And Confidentiality Agreement Mr. Goodman would have signed at BBN is known. Due to Inline's prosecution laches and the passage of some 25 years, however, the agreement actually signed by Mr. Goodman may no longer be available in BBN's files. Whether Mr. Goodman has destroyed his copy of the agreement will not be known until Inline responds to the Verizon defendants' outstanding discovery requests.

6

such as ADSL. The Verizon defendants are entitled to full discovery concerning who invented what during the critical 1988-91 time period.

**T1E1.4 Committee Activities**. During the period 1990 through 1998, the T1E1.4 industry standards committee conducted a substantial portion of its standardization activity regarding ADSL technology. Goodman closely monitored and participated in meetings of the T1E1.4 committee. Goodman and his patent attorneys deliberately kept secret, and delayed substantive prosecution of the patents-in-suit, until the T1E1.4 Committee had completed most of its work and the telecommunications industry had heavily invested in ADSL development and standardization activities.

## C.  Claim Construction Issues.

As Judge Thynge explained in *Inline III*, 364 F. Supp. 2d at 420, n.5, the patents-in-suit fall into two separate groups. The '718 patent is based upon the specification of Goodman's original July 14, 1989 parent application. The '596, '446 and '585 patents (the "'596 family patents") are all based on a separate, but common, specification which was the so-called "third" December 1991 CIP application. In *Inline I* and *Inline II*, Judge Thynge construed some of the claim terms in the two groups of patents.

With respect to the '718 patent, Judge Thynge's construction of the "high frequency" claim terms proved dispositive. Inline conceded in the *AOL/Earthlink* actions that it could not prove either literal infringement or infringement under doctrine of equivalents given the Court's claim construction. *See* February 27, 2005 letter from J. Heaney to The Honorable Mary Pat Thynge. As a result, no further issues of claim construction, infringement, validity or unenforceability regarding the '718 patent will be litigated in the *AOL/Earthlink* case.

With respect to the '596 family patents, Judge Thynge's *Inline I* and *Inline II* decisions interpreted, in part, the following claim terms: (a) telephone exchange; (b) signal interface;

7

(c) circuitry for; (d) high frequency band of frequencies; (e) control signals; (f) destination(s) of information; and (g) external source of information. *See Inline I*, 302 F. Supp. 2d at 317-18. These were the only claim limitations that AOL and Earthlink put at issue during the Markman hearing. Judge Thynge did not address two other key claim limitations in the '596 family patents which the Verizon defendants believe are potentially dispositive of the infringement issue.

## ARGUMENT

Inline's present Motion To Stay is just one more example of its improper procedural gamesmanship. Inline threatened Verizon with patent infringement litigation in 1993-94, but never followed through. Eight years later in 2002, Inline sued Verizon, AOL and Earthlink in this Court, but then promptly dropped Verizon. It is now clear that this was just a tactical ploy that so Inline could proceed against only AOL and Earthlink who are relative newcomers and had no direct involvement with the prior art systems of the 1970s and 1980s.

Three years after dismissing Verizon, and following a series of adverse rulings in the *AOL/Earthlink* actions, Inline suddenly filed its new April 2005 complaint against Verizon in the Eastern District of Virginia "rocket docket." Inline hoped that it could rush the Virginia case to trial and thereby evade Judge Thynge's decisions. Indeed, in the Virginia court, Inline disavowed any connection to the *AOL/Earthlink* litigation and demanded that discovery proceed full speed ahead. Judge Morgan correctly saw through Inline's attempted forum shopping and transferred the case to this Court.

Although Inline is the plaintiff in this action and has sued Verizon multiple times in multiple courts, it now wants to put everything on indefinite hold for its own convenience. The Verizon defendants are not unreasonable and are willing to defer issues that concern infringement and most other post-1998 events until after the *AOL/Earthlink* case is tried. However, discovery regarding earlier events – and particularly the critical equitable issue of

8

prosecution laches cannot be delayed. To do so would be highly prejudicial to the Verizon defendants and reward Inline's improper "keep it alive" prosecution laches strategy.

## I. Any Stay of Discovery Regarding Events More Than Eight Years Old Would Substantially Prejudice The Verizon Defendants.

### A. The Verizon Defendants Should Be Allowed To Prepare And Present Their Prosecution Laches Defense Which Bars All Of Inline's Claims.

The doctrine of prosecution laches is an equitable defense that can be tried to the court separately from issues of infringement and validity. *Symbol Technologies*, 422 F.3d at 1385. The defense applies broadly to <u>all claims</u> here at issue which are purportedly supported by the same specifications with the same effective filing dates. *Id.* at 1386. The doctrine particularly applies where, as here, the patentee has engaged in multiple repetitive refilings and unexplained abandonments of the exact same application and claims for the business purpose of delaying patent issuance – *i.e.*, a deliberate "keep it alive" strategy. *See id.* at 1385-86. Such conduct is "an abuse of the patent system" that adversely affects entire industries that invest in and standardize technology during the period of unreasonable prosecution delay. *Id.*

The Verizon defendants have already initiated third-party discovery of Inline's patent attorneys to attempt to locate relevant prosecution-related documents that have not been destroyed. The law firms have sent responsive documents to Inline, but Inline has refused to produce all of them. Inline's present Motion To Stay will only further delay and suppress factual development concerning the dispositive prosecution laches issue.

The Verizon defendants respectfully request that the Court order that focused and targeted discovery on the threshold prosecution laches defense be allowed to proceed without delay. Such discovery includes production of the patent attorneys' files that are already in Inline's possession, depositions of the prosecuting attorneys and Mr. Goodman, who directed the improper "keep it alive" strategy, and third-party discovery regarding T1E1.4 committee

9

activities during the period 1990-1998 when the industry standardized ADSL technology and thereby created "intervening private and public rights." *See Symbol Technologies*, 422 F.3d at 1386. Such discovery can be completed in approximately 4-5 months and the threshold prosecution laches issue can be ready for trial to the Court shortly thereafter.

### B. Other Key Issues Involve Facts And Events That Occurred Some 10 To 20 Years Ago.

The Verizon defendants have served a number of focused, rifle-shot interrogatories and document requests concerning information that is solely within Inline's possession. The pertinent discovery requests, which were served months ago, are attached hereto as Exhibit B. The Verizon defendants respectfully request that the Court order Inline to answer these interrogatories and produce the specified documents without further delay. In addition, the Court should allow the Verizon defendants to conduct additional discovery concerning facts and events that occurred prior to issuance of the '596 patent in December 1998 in order to avoid any further evidentiary prejudice resulting from missing documents and witnesses.

The issues addressed by the Verizon defendants' narrowly focused discovery requests include: conception of the alleged inventions; reduction to practice; initial public disclosures, sales or offers for sale; inventorship; ownership; identification of the asserted claims; and the good faith basis for Inline's allegations of infringement. These are all critical issues in this case that are under Inline's exclusive control and most involve matters tracing back to the 1986-1996 time period.

Responses to these discovery requests, as well as follow up third-party discovery regarding pre-1991 prior art systems, is also essential at this time. Until Inline identifies the claims it is asserting and explains how those claims allegedly apply to modern ADSL systems, the Verizon defendants cannot complete their investigations regarding the prior art systems from the 1970s

and 1980s that anticipate and/or render obvious the asserted claims. The prior art systems are all 15 to 35 years old and the relevant third-party documents and knowledgeable individuals are extremely difficult to locate. Any further delay in Inline's answers to the specified discovery requests would greatly prejudice the Verizon defendants' ability to prepare their prior art invalidity defenses.

## II. Many Important Issues Will Not Be Addressed In The *AOL/Earthlink* Case.

Inline's assertion (p. 8) that a stay pending the conclusion of the *AOL/Earthlink* actions "would simplify the issues and trial" in the present action is unsupported. For example, Inline has conceded non-infringement of the '718 patent in the *AOL/Earthlink* actions based solely on Judge Thynge's construction of the "high frequency" claim term, and no additional issues of validity and/or infringement will be addressed regarding that patent. Inline, however, has made clear that it reserves the right to litigate all other issues relating to the '718 patent against the Verizon defendants should the Federal Circuit modify the "high frequency" claim construction several years from now. *See* January 30, 2006 letter from Ms. Van Over to Mr. Wyss (Exhibit C). By that time, the Verizon defendants will have suffered substantial additional evidentiary prejudice as critical documents disappear and potential witnesses become unavailable.

With respect to the '596 family patents, the *AOL/Earthlink* case will address certain issues of infringement and invalidity to the extent they are raised by the parties. Inline will be bound by any adverse rulings on each such issue. In particular, any ruling that the AOL and Earthlink industry standard ADSL systems do not infringe would likely apply in this case, so that discovery concerning the Verizon ADSL systems – which comply with the same specified industry technical standards – would be unnecessary, duplicative and a waste of resources at this time.

11

The Verizon defendants, however, are not parties to the *AOL/Earthlink* case, have not participated in that litigation, and will not be bound by any substantive rulings. In particular, any decision in *AOL/Earthlink* that the asserted claims are not invalid or unenforceable would have no collateral estoppel effect in the present litigation. The Verizon defendants are entitled to develop all of their invalidity and unenforceability defenses regarding the '596 family patents, whether or not some of those defenses may also be raised in *AOL/Earthlink*. Because the invalidity and unenforceability defenses critically depend upon facts and events from the 1980-1998 time period, there should be no stay concerning discovery in this regard.

### III. All Parties, As Well As Judge Thynge, Would Benefit From Additional Claim Construction Briefing.

The parties in *AOL/Earthlink* only asked Judge Thynge to construe a handful of claim limitations. The Verizon defendants believe that there are several additional limitations that, once construed, are potentially dispositive of Inline's infringement allegations.

For example, the Verizon defendants will show that the claims of '718 patent are necessarily limited by Inline's express representations during patent prosecution to the transmission of <u>analog video</u> signals <u>internally</u> within a residence or other structure. The accused ADSL systems, by contrast, all involve transmission of <u>digital</u> signals to and from a residence and far distant <u>external</u> points. The "internal residence" and "video" signal limitations provide separate and independent bases for non-infringement of the '718 patent which will not otherwise be addressed in *AOL/Earthlink*.

With respect to the '596 family patents, the Verizon defendants have identified two additional claim limitations which were not raised during the *AOL/Earthlink* Markman proceedings, but which preclude infringement of the asserted claims. These limitations are:

1. <u>The "passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange" limitation</u>. The quoted language appears in each of the asserted claims of the '596 family patents and was expressly added as a limitation during prosecution to overcome prior art rejections. The limitation is therefore critical, must be literally satisfied and cannot be argued under the doctrine of equivalents.

2. <u>The "selection" limitation</u>. Various asserted claims require that the "signal interface" must be able to "select" individual groups or "subsets" from a plurality of destination "transceivers" and control the signals sent to the "selected subsets." Indeed, the patent specification expressly defines this "selection" function as an essential and indispensable feature of the "signal interface." *See* '596 patent, Col. 31: 12-24 (processor in signal interface "can take on many different embodiments, as long as it fulfills the following three functions," including signal selection).

Accordingly, the Verizon defendants respectfully request that the Court permit additional claim construction briefing regarding the foregoing claim terms that were not addressed in *AOL/Earthlink*. Given Judge Thynge's intimate familiarity with the patents-in-suit, the Court should consider referring the issue to her pursuant to Local Rule 72.1(a)(2). The Verizon defendants and Inline should be permitted to submit narrowly focused briefs addressing the additional claim terms based upon the intrinsic record. Such briefing can be conducted expeditiously and the issues would be ripe for decision by early summer, well before final pretrial in the *AOL/Earthlink* case.

## IV. Inline Mischaracterizes The Procedural Posture Of This Case.

Inline's motion (p. 9) attempts to justify a stay on grounds that "discovery is just beginning" and "the stay will be entered before any party incurs substantial litigation-related expenses." Inline's characterization is simply wrong.

13

Inline has already imposed substantial litigation-related expenses on the Verizon defendants – first by suing and dropping Verizon in 2002, and then by "rocket docket" forum shopping and unreasonably suing 16 OTC entities three years later. Faced with an imminent January 2006 trial date at Inline's insistence, the Verizon defendants have already spent a substantial amount of time, effort and money to prepare their defenses. Those efforts are still continuing, especially with respect to the prior art and other "ancient" events from the 1980s and early 1990s that are critical to the issues of invalidity and unenforceability.

As for discovery, Inline produced some 65,000 pages of documents from the *AOL/Earthlink* litigation to the Verizon defendants. Although that production was incomplete and omits key materials relating to infringement, the Verizon defendants' attorneys have spent thousands of hours of time reviewing and analyzing the documents and identifying additional areas for follow-up discovery.

On their part, the Verizon defendants produced approximately 50,000 pages of documents to Inline, as well as physical examples of all 23 current ADSL consumer kits so that Inline could conduct its infringement analysis. In addition, the Verizon defendants have provided a detailed interrogatory answer setting forth factual information regarding their prosecution laches defense. (*See* Exhibit D hereto).

In sum, discovery regarding the validity and unenforceability issues is already well under way. Additional discovery concerning prosecution laches and pre-December 1998 facts and events should not be delayed any further.

## CONCLUSION

For the foregoing reasons, the Court may elect to stay discovery concerning infringement, damages and most post-1998 facts and events until final conclusion of the *AOL/Earthlink* actions. At the same time, the Court should make clear that the parties can and should conduct

full discovery concerning the prosecution laches issue and any factual matters that are now more than eight years old. In addition, the Court should:

(1) Direct Inline to answer the specified discovery requests set forth in Exhibit B without further delay;

(2) Establish a schedule for completion of prosecution laches discovery within approximately five months; and

(3) Refer the discrete claim construction issues identified above to Judge Thynge for prompt briefing and resolution.

Respectfully submitted,

By: /s/ Jeffrey B. Bove
Jeffrey B. Bove (#998)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, Delaware 19801
Telephone: 302.658.9141
Facsimile: 302.658.5614

John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Dated: February 10, 2006     Counsel for Verizon Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February, 2006, a true copy of the foregoing

***Verizon Defendants' Response To Inline's Motion To Stay*** was sent to plaintiff's counsel, in

the manner indicated, upon:

>Julia Heaney, Esq.    (Electronically filed using CM/ECF which will send notification, and served by hand delivery)
>MORRIS NICHOLS ARSHT & TUNNELL LLP
>1201 N. Market Street
>Post Office Box 1347
>Wilmington, Delaware 19899-1347
>jhefiling@mnat.com


>Michael K. Plimack, Esq.    (Served electronically and by overnight delivery)
>Alexander L. Brainerd, Esq.
>HELLER EHRMAN LLP
>333 Bush Street
>San Francisco, California 94104
>Alexander.Brianerd@hellerehrman.com
>Michael.Plimack@hellerhrman.com


>C. Joël Van Over, Esq.    (Served electronically and by overnight delivery)
>Robert C. Bertin, Esq.
>SWIDLER BERLIN LLP
>3000 K Street, NW
>Suite 300
>Washington, DC 20007-5116
>cjvanover@swidlaw.com
>rcbertin@swidlaw.com

>/s/ Jeffrey B. Bove
>Jeffrey B. Bove (#998)
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building
>1007 North Orange Street
>P.O. Box 2207
>Wilmington, DE 19899-2207
>(302) 658-9141
>*Attorney for the Defendants*