RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

2005 MAY 31 P 4:03

U.S. DISTRICT COURT
NORFOLK, VIRGINIA

Inline Connection Corporation,

Plaintiff,

v.

Verizon Internet Services, Inc., et al.,

Defendants.

Civil Action No. 2:05CV205
(HCM)

05-866 JJF

**MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANT
OPERATING TELEPHONE COMPANIES'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants Verizon California Inc., Verizon Florida Inc., Verizon Hawaii Inc.,[1] Verizon Delaware Inc., Verizon Maryland Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon Pennsylvania Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Verizon New England Inc., Verizon North Inc., Verizon Northwest Inc., Verizon West Coast Inc., GTE Southwest Inc. d/b/a Verizon Southwest, and Contel of the South Inc. d/b/a Verizon Mid-States (collectively the "Operating Telephone Company movants" or "OTC movants") respectfully submit this memorandum in support of their joint motion to dismiss the claims of plaintiff Inline Connection Corporation ("Inline") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).[2]

---

[1] Verizon Hawaii Inc. was sold on May 2, 2005, to the Carlyle Group. This entity is no longer a Verizon-related Operating Telephone Company, and is now doing business as Hawaiian Telecom Inc. While it was functioning as Verizon Hawaii Inc., its activities were confined solely to Hawaii, and, as described for the other Operating Telephone Company movants, *infra*, it conducted no business in Virginia and had no meaningful ties to Virginia.

[2] In the alternative, Defendants Verizon Delaware Inc. and GTE Southwest Inc. d/b/a Verizon Southwest have joined the motion to transfer venue of this action to Delaware. *See* Verizon Defendants' Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404. Defendant Operating Telephone Companies Verizon

1

The Operating Telephone Company movants operate entirely outside of Virginia as local telephone companies in their respective geographic regions and are not Virginia corporations. They have no constitutionally relevant contacts whatsoever with Virginia or residents of Virginia. Accordingly, this Court lacks personal jurisdiction over the Operating Telephone Company movants and the complaint against them should be dismissed.

## I. BACKGROUND

### A. The Complaint

In April and June, 2002, Inline filed complaints against Verizon Communications, Inc. ("Verizon") (Civ. Action No. 02-545), AOL Time Warner, Inc. ("AOL"), and EarthLink, Inc. ("Earthlink"), in the United States District Court for the District of Delaware alleging patent infringement. Verizon, AOL and EarthLink all answered Inline's complaints. Shortly after Verizon filed its Answer in Delaware on September 3, 2002, it filed a motion for summary judgment arguing, in effect, that Inline had named the wrong Verizon entity. Inline filed a stipulation of dismissal without prejudice on September 17, 2002, which was granted on October 2, 2002. Inline did not file a substantive response to Verizon's motion for summary judgment, nor did Inline re-file its suit against or amend its Complaint to name the proper Verizon entities. Instead, Inline made a tactical decision to dismiss the original Delaware action against Verizon and proceed solely against AOL and EarthLink, even though one or more Verizon entities were suppliers of allegedly infringing services to AOL and Earthlink, apparently hoping to obtain favorable rulings against these two Internet Service Providers ("ISPs") that it could then use against other similarly situated ISPs, including Verizon Internet Services, Inc. and GTE.Net

---

Virginia Inc. and Verizon South Inc. operate in portions of Virginia and therefore do not join in this motion. This motion does not address personal jurisdiction matters related to any of the non-Operating Telephone Company defendant companies named in this suit.

LLC, and their suppliers.

In April of 2005, approximately three years after initially bringing suit in Delaware – and despite the Delaware court's substantial investment in the facts of the case, its analysis of closely-related factual and legal issues, and its issuance of certain rulings that are potentially relevant to this matter and/or binding on Inline – Inline filed a new complaint in this Court ("Complaint"). The Complaint named twenty-five separate corporations as defendants, including eighteen individual Operating Telephone Companies (sixteen of which join in this motion). The Complaint alleges that the Defendants, including the Operating Telephone Company movants, offer Digital Subscriber Line ("DSL") services that infringe one or more claims of four U.S. patents.

The Complaint charges that each of the Operating Telephone Companies "resides and/or does substantial business in this judicial district directly or through their authorized Verizon affiliates and agents, are committing infringement in this judicial district, and are subject to personal jurisdiction in this judicial district."[3] (Complaint ¶19). This attempt to obtain personal jurisdiction in Virginia over the individual Operating Telephone Company movants that are neither residents of nor doing business in Virginia is without merit. There is no factual basis for Inline's incorrect and/or misleading assertions, and therefore Inline cannot establish personal jurisdiction in this forum over the out-of-state Operating Telephone Company movants.

### B. The Operating Telephone Company Movants Operate On A Local Basis.

Each Operating Telephone Company is a local telephone company, providing services to

---

[3] The Complaint further alleges that "[o]n information and belief, each Verizon Operating Telephone Company authorizes other defendants, including Verizon Internet, Verizon Internet Solutions, Verizon Services, Verizon Services Group, and/or Verizon Corporate Services Group, to perform substantial business and/or acts of infringement within this judicial district on behalf of each Verizon Operating Telephone Company, including marketing, sales, accounting, finance, corporate governance, media relations, and corporate advertising." (Complaint ¶19).

3

customers within its respective geographic territory. The Operating Telephone Companies are regulated by the Federal Communications Commission ("FCC") and state regulatory commissions. The Operating Telephone Companies provide services in accordance with rates, terms, and conditions set forth in tariffs filed with the FCC and the state agencies. Thus, each Operating Telephone Company provides DSL solely pursuant to these tariffs, and only to customers located in the specific geographic territory where it is licensed to offer service.

That the Operating Telephone Companies operate on a local basis is largely due to federal law and FCC regulations that originated with the federal government's antitrust settlement with AT&T, and the consequent divestiture of local telephone companies from their parent company AT&T in 1984.[4] As a result of the divestiture, seven "regional Bell operating companies" ("RBOCs") were created as holding companies for the twenty-two "Bell operating companies" ("BOCs") divested from AT&T.[5] BOCs and their affiliates were normally prohibited from providing telecommunications services outside of certain defined territories known as "Local Access Transport Areas" ("LATAs"). The physical boundaries of these LATAs, generally contained within a single state, are regulated by the FCC. 47 U.S.C. § 153(25).

The Operating Telephone Company movants provide tariffed telecommunications services to customers in the following territories (OTC Decls. ¶3):[6]

---

[4] See U.S. v. AT&T, Co., 552 F. Supp. 131, 226 –34 (D.D.C. 1982) ("Modification of Final Judgment"), judgment aff'd, 460 U.S. 1001 (1983) and amended, 714 F. Supp. 1 (D.D.C. 1988) amendment denied, 690 F. Supp. 22 (D.D.C. 1988), and decision aff'd in part, rev'd in part, 900 F.2d 283 (D.C. Cir. 1990) and modified, 890 F. Supp. 1 (D.D.C. 1995), order vacated, 84 F.3d 1452 (D.C. Cir. 1996).

[5] AT&T, Co., 552 F. Supp. at 142 n.41. One of the original RBOCs was Bell Atlantic Corporation, which was the holding company for seven BOCs. These BOCs were authorized to provide local telephone service within separate areas in Delaware, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia and the District of Columbia, respectively.

[6] The Operating Telephone Company movants have submitted declarations in support of this motion, which

4

- Verizon California Inc. provides services to customers within portions of California, Nevada, and Arizona.

- Verizon Florida Inc. provides services to customers within portions of Florida.

- Verizon Hawaii Inc. (now Hawaiian Telecom Inc., no longer operating as a Verizon-related OTC) provided services to customers within Hawaii.

- Verizon Delaware Inc. provides services to customers within Delaware.

- Verizon Maryland Inc. provides services to customers within Maryland.

- Verizon New Jersey Inc. provides services to customers within New Jersey.

- Verizon New York Inc. provides services to customers within portions of New York and Connecticut.

- Verizon Pennsylvania Inc. provides services to customers within Pennsylvania.

- Verizon Washington, D.C. Inc. provides services to customers within the District of Columbia.

- Verizon West Virginia Inc. provides services to customers within West Virginia.

- Verizon New England Inc. provides services to customers within portions of Maine, Massachusetts, New Hampshire, Rhode Island and Vermont.

- Verizon North Inc. provides services to customers within portions of Alabama, Illinois, Indiana, Michigan, Missouri, Ohio, Pennsylvania and Texas.

- Verizon Northwest Inc. provides services to customers within portions of Washington, Oregon and Idaho.

- Verizon West Coast Inc. provides services to customers within portions of California.

- GTE Southwest Inc. d/b/a Verizon Southwest provides services to customers within portions of Texas.

- Contel of the South Inc. d/b/a Verizon Mid-States provides services to customers within portions of Indiana and Michigan.

None of the Operating Telephone Company movants is authorized to service customers

---

are collectively referred to herein as the "Operating Telephone Company Declarations," or "OTC Decls."

situated in Virginia and none provides telecommunications services in Virginia. (OTC Decls. ¶¶ 5, 8, 13). None owns or operates any network switches or landlines in Virginia. (OTC Decls. ¶14). None provides DSL services in Virginia. (OTC Decls. ¶¶ 6, 12). None directs its activities toward residents of Virginia. (OTC Decls. ¶16, 20).

For example, if a customer seeks DSL service in California, that customer contacts and arranges service through an ISP, such as GTE.Net LLC (the Verizon-affiliated ISP in California), AOL or Earthlink. Verizon California then acts as a local voice and data signal transfer point. Indeed, Verizon California provides local services in California regardless of the identity of the ISP on a non-discriminatory basis, pursuant to and solely in accordance with the published tariffs on file with the FCC. For instance, if a California resident contacts Earthlink for DSL services, and Earthlink uses Verizon California as its local telephone company, Verizon California must provide the DSL services (*i.e.*, transmitting/receiving data) per the exact same published rate and conditions as if GTE.Net LLC were the ISP. Verizon California acts in accordance with the published tariff, pursuant to FCC and state regulation.

By the same token, a Virginia resident cannot request DSL service in Virginia from Verizon California, nor could Verizon California supply such services to a Virginia resident. Rather, one of the two Verizon Operating Telephone Companies that service Virginia would be responsible for local telephone, DSL and other telecommunications services in Virginia.

In sum, the individual Operating Telephone Company movants do not direct any commercial activities towards residents of Virginia. By law, they operate solely in defined geographical areas governed by the FCC and state regulatory commissions. Because the OTC movants lack any relevant contacts with the Commonwealth of Virginia, there is no basis for the exercise of personal jurisdiction over them in this forum.

6

C.  **Each Operating Telephone Company Movant Is A Separate Corporate Entity.**

Each Operating Telephone Company movant operates as a distinct corporate entity. Each OTC is separately incorporated. (OTC Decls. ¶8). Each OTC movant maintains its own officers and directors. (OTC Decls. ¶9). The OTC movants are capitalized independent of each other and of the other defendants in this litigation and own assets independent of each other and of the other defendants in this litigation. (OTC Decls. ¶10). The OTC movants do not receive financing from any other defendant in this litigation. (OTC Decls. ¶10).

Each Operating Telephone Company movant keeps its own books and records independent of the other defendants in this litigation. (OTC Decls. ¶11). Each OTC movant makes its own financial and regulatory filings, separate from those of the other defendants in this litigation. (OTC Decls. ¶11). Each OTC movant is separately regulated by the state or states in which it operates. (OTC Decls. ¶4).

Each Operating Telephone Company movant is qualified to do business within its respective region, and no OTC movant is registered, licensed or qualified to do business in Virginia. (OTC Decls. ¶8). None of the OTC movants is incorporated in Virginia. (OTC Decls. ¶8). None maintains offices, owns real estate, has assets, or manufactures, provides, or sells any goods or services in Virginia. (OTC Decls. ¶¶ 14, 15). None has employees in Virginia. (OTC Decls. ¶17). None has a registered agent for service of process in Virginia. (OTC Decls. ¶18). None pays taxes in Virginia. (OTC Decls. ¶19).

II.  **ARGUMENT**

A.  **The Personal Jurisdiction Inquiry Focuses On Due Process.**

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction. *McNutt v. General Motors Acceptance*

7

*Corp.*, 298 U.S. 178, 189 (1936); *Marston v. Grant*, 351 F. Supp. 1122, 1126 (E.D. Va. 1972) ("[W]here the defendant has presented evidence suggesting personal jurisdiction has not been effected, the burden of proof is on the plaintiff to establish jurisdiction."); *Chisholm v. UHP Projects, Inc.*, 1 F.Supp.2d 581, 583 (E.D. Va. 1998); *Patent Incentives, Inc. v. Seiko Epson Corp.*, 878 F.2d 1446, 1989 WL 59272, *1 (Fed. Cir. 1989) (unpublished). Here, the Operating Telephone Company movants have provided declarations indicating that they lack any meaningful connection to this forum. Given "a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A district court must conduct a two-step inquiry in deciding whether it can assert personal jurisdiction over a non-consenting, non-resident defendant. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).[7] First, the court determines whether a statutory provision makes the defendant amenable to process. *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This determination typically turns on whether a state court in the forum at issue can assert jurisdiction over the defendant under the state's long-arm statute. *Hildebrand*, 279 F.3d at 1354. Second, "the culmination of [a defendant's] activities within the forum state must satisfy the minimum contacts requirement of the due process clause." *Id.*

When the forum state's long-arm statute reaches as far as the Due Process Clause, the analysis folds into one question: whether the exercise of personal jurisdiction would offend due process. *3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998). The

---

[7] In patent cases, the Court of Appeals for the Federal Circuit applies its own law, rather than that of the regional circuits, to determine personal jurisdiction. *Hildebrand*, 279 F.3d at 1354; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Reynolds and Reynolds Holdings, Inc., v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 549 (E.D. Va. 2004).

Virginia long-arm statute is co-extensive with the Due Process Clause. Va. Code. Ann. § 8.01-328.1; *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("[T]he statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.") (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996)). Accordingly, this Court must determine whether the exercise of personal jurisdiction over each of the individual Operating Telephone Company movants violates due process. *Roche v. Worldwide Media, Inc.*, 90 F.Supp.2d 714, 716 (E.D. Va. 2000).

In order to establish jurisdiction, the plaintiff must show that the defendant has "purposefully established minimum contacts within the forum state[s]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). This ensures "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Id.* at 471-72 (quoting *Int'l. Shoe*, 326 U.S. at 319). *See also Int'l. Shoe*, 326 U.S. at 316 (the non-resident defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (citations omitted).

This "purposeful availment" requirement represents an affirmative in-road into the forum state. It is not satisfied by "'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. Likewise, the "unilateral activity of another party or a third person" will not constitute minimum contacts. *Id. See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986) ("The significant contacts considered are those actually

9

generated by the defendant.... Jurisdiction may not be manufactured by the conduct of others. Rather, 'the defendant's conduct and connection with the forum State [must be] ... such that he should reasonably anticipate being haled into court there.'") (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

Under the minimum contacts test, a defendant may be subject to either "specific jurisdiction" or "general jurisdiction." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998); *Reynolds and Reynolds Holdings, Inc., v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 549 (E.D. Va. 2004). For the reasons below, the Operating Telephone Company movants are not subject to either specific jurisdiction or general jurisdiction in this forum.

### B. This Court Lacks General Jurisdiction Over The Operating Telephone Company Movants.

General jurisdiction exists when the non-resident's contacts with the forum state are "continuous and systematic," even if the cause of action has no relation to those contacts. *Red Wing Shoe*, 148 F.3d at 1359 (citing *Helicopteros*, 466 U.S. at 414-16); *Reynolds and Reynolds*, 301 F.Supp.2d at 550. Because jurisdiction need not be tied to the claims, the plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *McGee v. Int'l. Life Ins. Co.*, 355 U.S. 220, 223 (1957); *Reynolds and Reynolds*, 301 F.Supp.2d at 549 (contacts must be "significantly more extensive" than if they had connection to claims); *see also Reynolds and Reynolds*, 301 F.Supp.2d at 550 ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.").

The Operating Telephone Company movants have no meaningful contacts with Virginia at all, much less the "continuous and systematic" contacts sufficient to confer general

jurisdiction. Each of the Operating Telephone Company movants provides local telecommunications services within geographically distinct regions outside of Virginia pursuant to regulations of other states. None of the Operating Telephone Company movants is incorporated in Virginia, manufactures goods in Virginia, sells goods or services in Virginia, conducts business in Virginia or directs activities toward residents in Virginia. None maintains a place of business in Virginia, is qualified to do business in Virginia, or has assets in Virginia. None has employees in Virginia. Instead, the Operating Telephone Company movants are confined by law to conduct commercial activity solely within defined geographic territories outside Virginia. As a result, Inline cannot demonstrate general personal jurisdiction.

### C. This Court Lacks Specific Jurisdiction Over The Operating Telephone Company Movants.

A non-resident corporation is subject to specific jurisdiction only if it has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (citing *Burger King*, 471 U.S. at 471-76). The Federal Circuit applies a three-prong test for determining whether a court has specific jurisdiction: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Systems*, 160 F.3d at 1378 (citing *Akro Corp.*, 45 F.3d at 1545-46). Inline cannot meet these criteria.

It is indisputable that the Operating Telephone Company movants do not "purposefully direct" their activities at residents of Virginia. (OTC Decls. ¶16). By law, each OTC movant provides services locally to customers only within the states served by that entity. No OTC movant provides services in Virginia or to residents situated in Virginia. A Virginia customer

11

cannot obtain services from any of the OTC movants.

Moreover, even if Inline could establish, and it cannot, that each of the individual OTC movants had "purposefully directed" its activities into the forum and that the claims at issue arose out of such activity, exercise of jurisdiction over the individual OTC movants would still be inappropriate because it is not, in accordance with due process, "reasonable and fair." There can be no fair justification for Inline to seek relief in Virginia from, for example, an Operating Telephone Company that operates only in Florida.

Indeed, courts applying Federal Circuit law have frequently declined to exercise specific jurisdiction over defendants that do have some connection to the forum state, unlike the individual OTC movants here. *See, e.g., Red Wing Shoe,* 148 F.3d at 1361-62 (defendant's cease and desist letters sent into Minnesota and receipt of royalty income from its thirty-four licensees for sales made in Minnesota were insufficient to establish exercise of specific jurisdiction); *Reynolds v. Reynolds,* 301 F.Supp.2d at 552-54 (no specific jurisdiction despite website accessible in Virginia and relationship with two car dealerships in Virginia who could have ordered infringing products); *Hildebrand,* 279 F.3d at 1356. Courts applying the Virginia long-arm statute have also often declined to exercise specific jurisdiction over defendants, where, unlike here, there were some arguable contacts with the forum. *See, e.g., Young,* 315 F.3d at 261-63 (no personal jurisdiction in defamation suit despite article posted on internet and accessible to Virginia residents); *RZS Holdings, AVV v. Commerzbank, AG,* 279 F.Supp.2d 716, 722 (E.D. Va. 2003) (foreign bank that agrees to confirm a foreign letter of credit for the benefit of a Virginia resident is not subject to specific personal jurisdiction in Virginia because it "does not purposefully avail itself of the laws, privileges and protections of the Commonwealth of Virginia"); *Initiatives, Inc., v. Korea Trading Corp.,* 991 F. Supp. 476, 479-80 (E.D. Va. 1997)

(no specific jurisdiction despite contract between out-of-state party and Virginia resident company).

Where, as here, the individual OTC movants have not directed their activities into Virginia and indeed have nothing to do with Virginia, there is neither factual basis nor constitutional justification for requiring them to defend an action there. In short, Inline cannot demonstrate specific personal jurisdiction.

### D. The Contacts Of Verizon Internet Services Inc. And Other Individual Corporate Defendants Cannot Be Imputed To The Separate OTC Movants.

As discussed, the Operating Telephone Company movants have no contacts with this forum. In an attempt to overcome this fatal jurisdictional defect, Inline alleges that each OTC movant "authorizes other defendants ... to perform substantial business and/or acts of infringement within this judicial district" (Complaint ¶19), and that this forms the basis for personal jurisdiction. Such "authorized" activities allegedly include "marketing, sales, accounting, finance, corporate governance, media relations, and corporate advertising."

In the first instance, there is no factual basis for such allegations. The Operating Telephone Company movants are separate and legally distinct corporate entities. Each Operating Telephone Company movant maintains its own books, has its own board of directors, and conducts its own business. The services provided by each Operating Telephone Company movant are confined to the relevant local geographic territory. Indeed, this corporate separateness is mandated by federal law. *See, e.g.*, 47 U.S.C. § 272(a) (prohibiting a BOC or its affiliate from providing certain inter-LATA long distance services originating within its region or operation other than through an affiliate separate from the entity that provides local telephone service within the region.).

Second, mere affiliated corporate relationships between entities does not confer

13

jurisdiction. *See 3D Systems*, 160 F.3d at 1380 (parent company not subject to personal jurisdiction based on forum contacts of subsidiary; "[T]he corporate form is not to be lightly cast aside."); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (affirming dismissal of parent telephone company Sprint because it had no contacts with forum and plaintiff failed to show it controlled the corporate activities of its Florida-based subsidiary); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 63 (Fed. Cir. 1993) (affirming lack of personal jurisdiction over parent that had "studiously observed all corporate formalities"); *Goldrick v. D.M. Picton Co.*, 56 F.R.D. 639, 642 (E.D. Va. 1971) ("The doing of business of a subsidiary corporation in a state does not without more confer jurisdiction over the non-resident parent corporation. And the converse of the above principle is true, the service of process on the parent company <u>does not permit the Court to exercise personal jurisdiction over the wholly owned subsidiary</u>, if they are two separate distinct entities and so operate.") (emphasis added and citations omitted). *Cf. Initiatives, Inc.*, 991 F. Supp. at 479 (contractual relationship alone does not establish jurisdiction).

Indeed, courts have consistently recognized that the Operating Telephone Companies and other Verizon-related entities are separate corporations, declining to impute the contacts of one to another. *See, e.g., Newman v. Motorola, Inc.*, 125 F.Supp.2d 717, 721-23 (D. Md. 2000) (finding that "there is no evidence that Verizon Maryland is dominated or controlled by another company" to justify piercing the corporate veil, and granting Bell Atlantic Corporation's[8] motion to dismiss for lack of personal jurisdiction); *Phonetel Comm., Inc. v. U.S. Robotics Corp.*, No. 4:00-CV-1750-R, 2001 U.S. Dist. LEXIS 7233, *9 (N.D. Tex. June 1, 2001) (Verizon-related entities' parent-subsidiary relationship did not justify finding of specific or general personal

---

[8] Verizon Communications Inc. was formerly known as Bell Atlantic Corporation.

14

jurisdiction); *Bell Atlantic Corp. v. Associated Data Consultants, Inc.*, 714 So. 2d 523, 523-24 (Fla. App. 4 Dist. 1998) (granting Bell Atlantic Corporation's motion to dismiss for lack of personal jurisdiction because the record reflected insufficient evidence to support a conclusion that Bell Atlantic Corporation exercised control over its subsidiary company sufficient to impose personal jurisdiction over it); *American Express Travel Related Servs. Co. v. NYNEX Corp.*, Index No. 73 12/92, 1993 N.Y. Misc. LEXIS 617, *7 (N.Y. Sup. 1993) (granting NYNEX Corporation's[9] motion for summary judgment because the contacts between NYNEX Corporation and its subsidiaries were insufficient to justify piercing the corporate veil).

In sum, the Operating Telephone Company movants are separate and distinct entities, and any contacts of other non-OTC defendants with the forum cannot be imputed to the OTC movants.

## III. CONCLUSION

For the foregoing reasons, the Operating Telephone Company movants respectfully move that the complaint against them be dismissed for lack of personal jurisdiction.

---

[9] Bell Atlantic Corporation acquired NYNEX Corporation in 1997.

15

Respectfully submitted,

By: _____
Robert W. McFarland
MCGUIRE WOODS LLP
World Trade Center
101 West main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Dated: May 31, 2005                Counsel for Verizon Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 31ST of May, 2005, a true copy of the foregoing was sent to plaintiff's counsel, in the manner indicated, upon:

'05 MAY 31 P 4:05

Michael K. Plimack, Esq.       (served by e-mail and overnight delivery)
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA 94104

US DISTRICT COURT
NORFOLK, VIRGINIA

C. Joel Van Over, Esq.         (served by e-mail and overnight delivery)
Swidler Berlin LLP
3000 K. Street, NW, #300
Washington, DC 20007 5116

Stephen E. Noona, Esq.         (served by hand delivery)
Kaufman & Canoles, PC
150 West Main Street #2100
Norfolk, VA 23510

_____
Robert W. McFarland