# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| Inline Connection Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Verizon Internet Services, Inc., et al.,<br><br>Defendants. | Civil Action No.  05-866 (JJF) |
| Verizon Internet Services, Inc. and<br>Verizon Delaware, Inc.,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Inline Connection Corporation;<br>Broadband Technology Innovations, LLC; and<br>Pie Squared LLC,<br><br>Counterclaim-Defendants. | Civil Action No.  05-866 (JJF) |

## VERIZON DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

Pursuant to Rule 15(a), Fed. R. Civ. P., and the written consent of Plaintiff Inline

Connection Corporation ("Inline"), Verizon Internet Services, Inc. ("VIS"), GTE.Net LLC *d/b/a*

Verizon Internet Solutions ("GTE.Net"), Verizon Services Corp. ("Verizon Services"),

Telesector Resources Group, Inc. ("TRG"), Verizon Corporate Services Group Inc. ("Verizon

Corporate Services"), Verizon Advanced Data Inc. ("Verizon Advanced Data"), and Verizon

Avenue Corp. ("Verizon Avenue") named as Defendants in the above-captioned suit (hereinafter

referred to collectively as "Answering Defendants"), hereby amend their answer to the Complaint and Defendant VIS counterclaims as follows:[1]

## THE PARTIES

1.     Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and therefore deny same.

2.     Answering Defendants admit that Verizon Internet Services, Inc. ("VIS") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1880 Campus Commons Dr., Reston, Virginia and that it conducts business in Virginia.  Answering Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3.     Answering Defendants admit that GTE.Net LLC ("GTE.Net") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 4055 Corporate Drive, #400, Grapevine, Texas, and that it conducts business in Virginia.  Answering Defendants deny the remaining allegations in Paragraph 3 of the Complaint.

4.     Answering Defendants admit that Verizon Services Corp. ("Verizon Services") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1310 N. Court House Road, Arlington, Virginia, and that it conducts

---

[1]     On December 5, 2005, the District Court for the Eastern District of Virginia, Norfolk Division, transferred the present action to the United States District Court for the District of Delaware and severed sixteen of the originally named Defendants. Accordingly, for purposes of this First Amended Answer And Counterclaims, the Answering Defendants are only those defendants that originally filed answers and still remain in the action as a result of the transfer and severance. For purposes of judicial economy and for the parties' convenience, Answering Defendants submit their First Amended Answer And Counterclaims jointly, and Defendant VIS joins in the counterclaims previously asserted by Verizon Delaware, Inc.

2

business in Virginia. Answering Defendants deny the remaining allegations in Paragraph 4 of the Complaint.

5.     Answering Defendants admit that Telesector Resources Group, Inc. ("TRG") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 140 West Street, New York, New York and that prior to 2005 it conducted business in Virginia. Answering Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6.     Answering Defendants admit that Verizon Corporate Services Group Inc. ("Verizon Corporate Services") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 140 West Street, New York, New York, and that it conducts business in Virginia. Answering Defendants deny the remaining allegations in Paragraph 6 of the Complaint.

7.     Answering Defendants admit that Verizon Advanced Data Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia, and that it conducts business in Virginia. Answering Defendants deny the remaining allegations in Paragraph 7 of the Complaint.

8.     Answering Defendants admit that Verizon Avenue Corp. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 12901 Worldgate Drive, Herndon, Virginia, and that it conducts business in Virginia. Answering Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

9.     a.  Answering Defendants admit that severed former defendant Verizon California Inc. is a corporation organized and existing under the laws of the State of California. Answering Defendants deny the remaining allegations in Paragraph 9a of the Complaint.

3

b.  Answering Defendants admit that severed former defendant Verizon Florida Inc. is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 201 N. Franklin St., Tampa, Florida.  Answering Defendants deny the remaining allegations in Paragraph 9b of the Complaint.

c.  Answering Defendants deny the allegations in Paragraph 9c of the Complaint.

d.  Answering Defendants admit that severed former defendant Verizon North Inc. is a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business at 8001 W. Jefferson Blvd., Fort Wayne, Indiana.  Answering Defendants deny the remaining allegations in Paragraph 9d of the Complaint.

e.  Answering Defendants admit that severed former defendant Verizon Northwest Inc. is a corporation organized and existing under the laws of the State of Washington with a principal place of business at 1800 41st Street, Everett, Washington.  Answering Defendants deny the remaining allegations in Paragraph 9e of the Complaint.

f.  Answering Defendants admit that severed former defendant Verizon South Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia. Answering Defendants admit that Verizon South conducts business in Virginia, but deny the remaining allegations in Paragraph 9f of the Complaint.

g.  Answering Defendants admit that severed former defendant Verizon West Coast Inc. is a corporation organized and existing under the laws of the State of California.  Answering Defendants deny the remaining allegations in Paragraph 9g of the Complaint.

h.  Answering Defendants admit that GTE Southwest Inc. is a corporation organized and existing under the laws of the State of Delaware.  Answering Defendants deny the remaining allegations in Paragraph 9h of the Complaint.

4

i.    Answering Defendants admit that severed former defendant Contel Of The South Inc. is a corporation organized and existing under the laws of the State of Georgia.  Answering Defendants deny the remaining allegations in Paragraph 9i of the Complaint.

j.    Answering Defendants admit the allegations in the first sentence of Paragraph 9j of the Complaint.  Answering Defendants deny the remaining allegations in Paragraph 9j of the Complaint.

k.    Answering Defendants admit the allegations in the first sentence of Paragraph 9k of the Complaint as to the severed former defendant named therein.  Answering Defendants deny the remaining allegations in Paragraph 9k of the Complaint.

l.    Answering Defendants admit the allegations in the first sentence of Paragraph 9l of the Complaint as to the severed former defendant named therein.  Answering Defendants deny the remaining allegations in Paragraph 9l of the Complaint.

m.    Answering Defendants admit the allegations in the first sentence of Paragraph 9m of the Complaint as to the severed former defendant named therein.  Answering Defendants deny the remaining allegations in Paragraph 9m of the Complaint.

n.    Answering Defendants admit that severed former defendant Verizon New York Inc. is a corporation organized and existing under the laws of the state of New York.  Answering Defendants deny the remaining allegations in Paragraph 9n of the Complaint.

o.    Answering Defendants admit the allegations in the first sentence of Paragraph 9o of the Complaint as to the severed former defendant named therein.  Answering Defendants deny the remaining allegations in Paragraph 9o of the Complaint.

p.    Answering Defendants admit the allegations in the first sentence of Paragraph 9p of the Complaint as to the severed former defendant named therein.  Answering Defendants

admit that Verizon Virginia conducts business in Virginia, but deny the remaining allegations in Paragraph 9p of the Complaint.

q. Answering Defendants admit that severed former defendant Verizon Washington, D.C. Inc. is a corporation organized and existing under the laws of the State of New York. Answering Defendants deny the remaining allegations in Paragraph 9q of the Complaint.

r. Answering Defendants admit the allegations in the first sentence of Paragraph 9r of the Complaint as to the severed former defendant named therein. Answering Defendants deny the remaining allegations in Paragraph 9r of the Complaint.

## JURISDICTION AND VENUE

10. Answering Defendants admit that the causes of action alleged in the Complaint arise under the patent laws of the United States, and that for that reason, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. Answering Defendants deny the allegations in Paragraph 11 of the Complaint that venue is proper in the Eastern District of Virginia.

12. Answering Defendants admit that VIS is subject to personal jurisdiction in this judicial district. Answering Defendants deny the remaining allegations of Paragraph 12 of the Complaint.

13. Answering Defendants admit that GTE.Net is subject to personal jurisdiction in this judicial district. Answering Defendants deny the remaining allegations of Paragraph 13 of the Complaint.

14. Answering Defendants admit that Verizon Services is subject to personal jurisdiction in this judicial district. Answering Defendants deny the remaining allegations of Paragraph 14 of the Complaint.

6

15.   Answering Defendants admit that TRG is subject to personal jurisdiction in this judicial district.  Answering Defendants deny the remaining allegations of Paragraph 15 of the Complaint.

16.   Answering Defendants admit that Verizon Corporate Services is subject to personal jurisdiction in this judicial district.  Answering Defendants deny the remaining allegations of Paragraph 16 of the Complaint.

17.   Answering Defendants admit that Verizon Advanced Data Inc. is subject to personal jurisdiction in this judicial district.  Answering Defendants deny the remaining allegations of Paragraph 17 of the Complaint.

18.   Answering Defendants admit that Verizon Avenue Corp. is subject to personal jurisdiction in this judicial district.  Answering Defendants deny the remaining allegations of Paragraph 18 of the Complaint.

19.   Answering Defendants admit that Verizon Delaware Inc. and GTE Southwest Inc. are subject to personal jurisdiction in this judicial district.  Answering Defendants deny the remaining allegations of Paragraph 19 of the Complaint.

## BACKGROUND

20.   Answering Defendants admit that on its face U.S. Patent No. 5,844,596 ("the '596 patent") issued on December 1, 1998 listing David D. Goodman as the inventor and that Robert Domnitz was later added as a co-inventor.  Answering Defendants admit that a copy of the '596 patent was attached to the Complaint as Exhibit A.  Answering Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21.   Answering Defendants admit that on its face U.S. Patent No. 6,236,718 ("the '718 patent") issued on May 22, 2001 listing David D. Goodman as the inventor and that Robert

Domnitz was later added as a co-inventor.  Answering Defendants admit that a copy of the '718 patent was attached to the Complaint as Exhibit B.  Answering Defendants deny the remaining allegations in Paragraph 21 of the Complaint.

22.     Answering Defendants admit that on its face U.S. Patent No. 6,243,446 ("the '446 patent") issued on June 5, 2001 listing David D. Goodman as the inventor and that Robert Domnitz was later added as a co-inventor.  Answering Defendants admit that a copy of the '446 patent was attached to the Complaint as Exhibit C.  Answering Defendants deny the remaining allegations in Paragraph 22 of the Complaint.

23.     Answering Defendants admit that on its face U.S. Patent No. 6,542,585 ("the '585 patent) issued on April 1, 2003 listing David D. Goodman as the inventor and that Robert Domnitz was later added as a co-inventor.  Answering Defendants admit that a copy of the '585 patent was attached to the Complaint as Exhibit D.  Answering Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

24.     Answering Defendants deny the allegations of Paragraph 24 of the Complaint.

## COUNT ONE:  INFRINGEMENT OF THE '596 PATENT

25.     Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 25 of the Complaint.

26.     Answering Defendants deny the allegations of Paragraph 26 of the Complaint.

27.     Answering Defendants deny the allegations of Paragraph 27 of the Complaint.

28.     Answering Defendants deny the allegations of Paragraph 28 of the Complaint.

29.     Answering Defendants deny the allegations of Paragraph 29 of the Complaint.

30.     Answering Defendants deny the allegations of Paragraph 30 of the Complaint.

## COUNT TWO:  INFRINGEMENT OF THE '718 PATENT

31.  Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 31 of the Complaint.

32.  Answering Defendants deny the allegations of Paragraph 32 of the Complaint.

33.  Answering Defendants deny the allegations of Paragraph 33 of the Complaint.

34.  Answering Defendants deny the allegations of Paragraph 34 of the Complaint.

35.  Answering Defendants deny the allegations of Paragraph 35 of the Complaint.

36.  Answering Defendants deny the allegations of Paragraph 36 of the Complaint.

## COUNT THREE:  INFRINGEMENT OF THE '446 PATENT

37.  Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 37 of the Complaint.

38.  Answering Defendants deny the allegations of Paragraph 38 of the Complaint.

39.  Answering Defendants deny the allegations of Paragraph 39 of the Complaint.

40.  Answering Defendants deny the allegations of Paragraph 40 of the Complaint.

41.  Answering Defendants deny the allegations of Paragraph 41 of the Complaint.

42.  Answering Defendants deny the allegations of Paragraph 42 of the Complaint.

## COUNT FOUR:  INFRINGEMENT OF THE '585 PATENT

43.  Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 43 of the Complaint.

44.  Answering Defendants deny the allegations of Paragraph 44 of the Complaint.

45.  Answering Defendants deny the allegations of Paragraph 45 of the Complaint.

46.  Answering Defendants deny the allegations of Paragraph 46 of the Complaint.

47.  Answering Defendants deny the allegations of Paragraph 47 of the Complaint.

48.    Answering Defendants deny the allegations of Paragraph 48 of the Complaint.

*        *        *

Answering Defendants hereby deny each and every allegation of the Complaint not specifically admitted herein.

## PRAYER FOR RELIEF

Answering Defendants deny that Plaintiff is entitled to the relief sought, or any other relief.

## AFFIRMATIVE DEFENSES

1.    The proper venue for Plaintiff's causes of action is the United States District Court for the District of Delaware.

2.    The Complaint fails to state a claim upon which relief can be granted.

3.    The '596, '718, '446, and '585 patents are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

4.    Answering Defendants' actions with respect to the use, sale or offer for sale of services relating to DSL Internet access do not infringe any properly construed, valid and/or enforceable claims of the '596, '718, '446, and '585 patents.

5.    Some or all of Plaintiff's claims for damages are barred under the doctrines of estoppel, laches, and/or waiver.

6.    The claims of the '596, '718, '446, and '585 patents are unenforceable under the doctrines of equitable estoppel, laches, prosecution laches, and/or unclean hands.

7.    Plaintiff lacks standing to bring the present action.

8.    Plaintiff's Complaint fails to join indispensable parties.

9.    Answering Defendants reserve the right to assert affirmatively any other matter that constitutes an affirmative defense under applicable law and rules.

WHEREFORE, Answering Defendants pray this Court enter judgment:

A.    dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

B.    declaring that the '596, '718, '446, and '585 patents are not infringed by the use, sale or offer for sale of any of the Answering Defendants' services relating to DSL Internet access, either literally or under the doctrine of equivalents;

C.    declaring that the '596, '718, '446, and '585 patents are invalid and/or unenforceable;

D.    declaring that this case is "exceptional" within the meaning of 35 U.S.C. 285, and that all costs and expenses of this action, including reasonable attorneys' fees, be awarded to Answering Defendants; and

E.    granting Answering Defendants such further relief as this Court may deem necessary, just or proper.

## COUNTERCLAIMS

## PARTIES

1.    For purposes of these Counterclaims, Verizon Internet Services, Inc. ("VIS") and Verizon Delaware Inc. ("Verizon Delaware") are referred to as the "Counterclaim-Plaintiffs."

2.    Inline asserts in Paragraph 1 of its Complaint that it is a corporation organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business at 4017 Davis Pl., NW #1, Washington, D.C. 20007.

3.    Upon information and belief, Broadband Technology Innovations LLC ("BBTI") is a Delaware limited liability company incorporated under the name Mercury Communications I,

11

LLC on or about March 4, 2004 by James Coyne King, its Authorized Person. BBTI changed its name from "Mercury Communications I, LLC" to "Broadband Technology Innovations LLC" on September 29, 2005. Upon information and belief, BBTI's registered agent in Delaware is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

4.    Upon information and belief, Pie Squared LLC ("Pie Squared") is a Delaware limited liability company incorporated on or around June 18, 2003 by James Coyne King, its Authorized Person. Upon information and belief, Pie Squared's registered agent in Delaware is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

5.    Upon information and belief, prior to filing this lawsuit in the Eastern District of Virginia in April of 2005, Inline transferred all, or part, of its ownership interests and its interest in the present action against Defendants pertaining to the '596, '718, '446, and '585 patents ("the patents-in-suit") to BBTI and Pie Squared.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of the counterclaims under 28 U.S.C. §§ 2201, 1331 and 1338.

7.    Venue is proper in the district pursuant to 28 U.S.C. §§ 1391, 1400(b) and 1404(2) by virtue of the District Court of the Eastern District of Virginia's transfer of this action to this Court.

8.    Upon information and belief, and based on Plaintiff's related actions against AOL Time Warner, Inc. and Earthlink, Inc. in this Court (Civ. Action Nos. 02-272 and 02-477), this

Court has personal jurisdiction over Counterclaim-Defendant Inline Connection Corporation ("Inline").

9.    Upon information and belief, as Delaware corporations, effective owners of the patents-in-suit, and owners of interest in the present action pertaining to the patents-in-suit, this Court has personal jurisdiction over BBTI and Pie Squared.

## FIRST CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS
### (For Declaratory Judgment of Noninfringement and Invalidity of the Patents-in-Suit)

10.    Counterclaim-Plaintiffs repeat and reallege the allegations of Paragraphs 1-9 of their Counterclaims as if set forth herein.

11.    In its Complaint, Inline asserts, and continues to assert, that the patents-in-suit are infringed by the Counterclaim-Plaintiffs' use, sale and offer for sale of services related to DSL Internet access under 35 U.S.C. §§ 271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

12.    There is a substantial and continuing controversy between Counterclaim-Plaintiffs and Inline, BBTI and Pie Squared ("Counterclaim-Defendants") as to the assertions of infringement of the patents-in-suit.

13.    The claims of the patents-in-suit are not infringed by the use, sale or offer for sale any of Counterclaim-Plaintiffs' services relating to DSL Internet access.

14.    The use, sale or offer for sale of services related to DSL Internet access by Counterclaim-Plaintiffs does not infringe any properly construed valid and enforceable claim of the patents-in-suit.

15.    The patents-in-suit are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

## SECOND CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS
### (For Declaratory Judgment of Unenforceability of the Patents-in-Suit)

16.   Counterclaim-Plaintiffs repeat and reallege the allegations of Paragraphs 1-15 of their Counterclaims as if set forth herein.

17.   The claims of the patents-in-suit are unenforceable under the doctrines of equitable estoppel, laches, prosecution laches, and/or unclean hands.

18.   There were many types of systems sold and used in the 1970s and 1980s to transmit both voice and data simultaneously over twisted-pair telephone wires.  By the time Inline substantively prosecuted the patents-in-suit and filed the present lawsuit in April of 2005, much of the technical information relating to these prior art systems has been lost, destroyed, or widely scattered so as to become unavailable.  Potential witnesses also are deceased, no longer available or able to be located.

19.   Upon information and belief, while working for Bolt Beraneck and Newman, Inc. ("BBN") in the late 1980s, Inline's principal, David Goodman, allegedly conceived and began reducing to practice a system for transmitting analog video signals (*e.g.*, from a VCR) and infrared control signals (from a TV remote control device) over active telephone wiring between rooms within a residence.  Goodman filed a patent application concerning his alleged invention (*i.e.*, analog video signals/infrared control signals over active telephone wires between rooms within a residence) on July 14, 1989.  Neither this original application, nor any subsequent continuation-in-part ("CIP") application, satisfies either the "written description" or the "enablement" requirements under 35 U.S.C. §112 to support the full scope of the claims as asserted by Inline in this litigation.

20.   During the 1980s, Bellcore was developing ADSL technology that would permit the simultaneous transmission of both voice telephone signals and high-speed data (at frequencies

above voiceband) from a telephone company central office to residences and businesses over the "customer loops," *i.e.*, twisted-pair copper telephone lines. Industry committees to standardize the new ADSL technology were already active by about 1990.

21.    Upon information and belief, Goodman was aware of Bell Atlantic's plans to implement Bellcore's ADSL technology to deliver, *inter alia*, voice signals and video signals from the central office to its subscribers.

22.    On December 5, 1991, Goodman filed three CIP applications. The new matter disclosed in the CIP applications was limited to the distribution of signals over the internal telephone wires of a residence or, at most, from a point located adjacent to a residence such as a telephone pole or a telephone company pedestal located within a few hundred feet of the residence. Goodman and his patent attorneys deliberately delayed substantive prosecution of the three CIP applications.

23.    Upon information and belief, by mid-1992, Goodman and Inline were aware that both Bell Atlantic and NYNEX had already announced ADSL systems that would transmit 1.5 Mbs of compressed digital video just above voiceband over the entire length of twisted pairs leading from the central office to the subscriber's residence.

24.    Upon information and belief, throughout 1992, Inline closely followed the ADSL activities of Bell Atlantic and other telephone companies, including Bell Atlantic's announcement that it would conduct initial trials of an ADSL system in the spring of 1993.

25.    In early 1993, Inline continued to closely monitor Bell Atlantic's ADSL activities. Inline's President, David Goodman, wrote to Bell Atlantic in March of 1993 asserting that his inventions might be used as an adjunct to Bell Atlantic's ADSL system to deliver a video signal over the last 200 feet or so at the subscriber's residence. Goodman expressly advised potential

investors in Inline that Bell Atlantic's ADSL system infringed Inline's patent. In addition, in May of 1993, Goodman and Inline publicly announced that "his patent attorneys, Fish and Richardson of Boston, have determined that [Inline's] patent covers the ADSL … system developed by BellCore, and planned for introduction by Bell Atlantic this summer."

26.    In mid-1993, Goodman and Inline had discussions with certain Bell Atlantic employees about the Bell Atlantic ADSL system. During these discussions, Goodman admitted that he did not know whether the technology he had developed for Inline could even be used to send a digital signal. Nevertheless, Goodman called other Bell Atlantic employees and expressly accused the Bell Atlantic ADSL system of infringing Inline's patent rights.

27.    Shortly thereafter, Goodman and Inline publicly confirmed these infringement accusations, expressly stating that Inline's "patent and patent applications give Inline claim to many developments that will have significant impact on the communications industry … [including] the Asymmetric Digital Subscriber Line (ADSL) system … now being tested by Bell Atlantic." Inline also publicly disclosed to The Wall Street Journal, The New York Times and The Washington Post that: "Inline has been advised by its patent attorneys, Fish & Richardson of Boston, that the [Bell Atlantic] ADSL system infringes its patent."

28.    Faced with specific threats of infringement, Bell Atlantic undertook good faith efforts to ensure that its ADSL technology did not infringe any of Inline's patent rights. At that time, Inline had only one published patent, *i.e.*, the '399 Patent that issued in April, 1991. Inline never disclosed to Bell Atlantic either the existence or contents of its three December 1991 CIP applications.

29.    Upon information and belief, in July of 1993, Inline was already scheduling meetings with attorneys from a litigation law firm that might bring a patent infringement action against

Bell Atlantic. Goodman and Inline were also closely tracking and monitoring the activities of the T1E1.4 committee that was developing industry standards for ADSL systems.

30.    Goodman and Inline participated in various meetings of the T1E1.4 committee. At no time did Goodman or Inline ever disclose to the T1E1.4 committee members the contents of Goodman's December 1991 CIP applications or that he was deliberately delaying substantive prosecution of those applications until the committee had completed its work and issued its ADSL standards.

31.    During the remainder of 1993, Goodman and Inline continued to assert publicly that Fish & Richardson had advised Inline that its patents covered the Bell Atlantic ADSL system. Inline also received a written offer from a law firm to represent Inline on a contingency basis in patent infringement litigation against Bell Atlantic. At the same time, Inline also contacted other litigation firms, including Fish & Richardson, about bringing suit against Bell Atlantic for patent infringement on a contingency basis. Goodman also acknowledged to potential investors in Inline that he had accused Bell Atlantic of patent infringement, but that Bell Atlantic declined his demand for royalties.

32.    In late 1993 and 1994, Inline representatives continued to contact Bell Atlantic employees and reconfirm Inline's prior accusations that the Bell Atlantic ADSL system infringed Inline's patent rights.

33.    Bell Atlantic wrote to Inline on January 25, 1994, informing Goodman that Bell Atlantic had decided not to pursue the technology disclosed in Inline's '399 Patent (*i.e.*, the transmission of analog video signals/infrared control signals over active telephone wires between rooms within a residence) and declining Goodman's requests for further meetings. At the same time, Bell Atlantic expressly requested that Goodman and Inline "continue to keep [Bell

17

Atlantic] informed of any new patents that are issued to or acquired by Inline Connection."

Inline never responded to Bell Atlantic's written request. In particular, Inline never advised Bell

Atlantic regarding the contents of the three December 1991 CIP applications. Instead, Inline and

its patent attorneys continued to keep secret and delay any further substantive prosecution of

those CIP applications. They adopted an improper "keep it alive" strategy whereby they would

repeatedly refile the same patent application, receive the exact same rejection, request extensions

of time, and then abandon the application after initiating a new cycle. Such delays were

designed to make it harder for Bell Atlantic or other companies to challenge the validity of any

patents that might ultimately issue.

34. Thereafter, Goodman and Inline continued to closely monitor and track Bell

Atlantic's development and deployment of its ADSL system, as well as the ongoing

standardization activities of the TIE1.4 committee.

35. In March of 1995, Goodman expressly represented and disclosed to a third-party

potential investor in Inline that: "Fish and Richardson, Inline's patent law firm, recently opened

up a department to handle 'contingency' cases. Because they know of Inline's claim against the

Bells, they invited me for a meeting on February 27th. They agreed that Inline's patent very

clearly covered the ADSL technology, and they are currently studying the possibility of taking

Inline's case on contingency. If they don't take the case, I know of another very good patent

firm that will." At the same time, Inline and its patent attorneys continued to delay substantive

prosecution of the CIP applications.

36. During the period 1990 through 1995, the T1E1.4 committee conducted a substantial

portion of its standardization activity regarding ADSL technology. Although Inline continued to

closely track and monitor the activities of the T1E1.4 committee, it never disclosed to the

committee either the existence or contents of the three December 1991 CIP applications, or the

fact that Inline and its patent attorneys were continuing to delay substantive prosecution of the

CIP applications while the committee developed its new ADSL industry standards. Both Bell

Atlantic and the entire telecommunications industry invested substantial amounts of time, effort

and money in the T1E1.4 Committee's ADSL standardization project.

37. Upon information and belief, in January of 1996, Goodman conceived and disclosed a

new idea on how some of his previous concepts could be extended to apply to the field of

Internet access. Goodman admitted that he had not previously conceived this idea and that his

thinking about his new Internet invention was changing from day to day. Nonetheless, Goodman

subsequently conspired with his patent attorneys to mislead the PTO into believing that his

newly conceived inventions had been part of his earlier July 1989 parent application and the

third December 1991 CIP application.

38. Upon information and belief, thereafter, Goodman and Inline continued to closely

track and monitor Bell Atlantic's development and deployment of ADSL systems. They were

aware at that time that ADSL would be popular because of the Internet and not because of video.

For this reason, Goodman and Inline's patent attorneys had to suppress the fact that Goodman

had not first conceived his Internet invention until, at the earliest, early 1996, and had to further

delay substantive prosecution of the third December 1991 CIP application. At the same time,

Inline continued to negotiate contingency relationships with several law firms to bring patent

infringement actions regarding ADSL systems used for hi-speed Internet access or video-on-

demand services.

39. After the publication of various T1E1.4 Committee standards and technical papers,

and after a huge investment by Bell Atlantic, NYNEX, GTE and the other RBOCs in deployment

of ADSL technology, Inline and its patent attorneys finally began drafting new claim language for the deliberately delayed third December 1991 CIP application. The new claim language was first filed on April 13, 1998 and was rejected for double patenting in light of Inline's previous '399 Patent that had issued seven years earlier. The PTO expressly found that "there is no apparent reason why [Goodman] was prevented from presenting claims corresponding to those of the instant application [*i.e.*, the newly submitted 4/13/98 claim language]" during prosecution of the '399 Patent in 1989 and 1990. Goodman did not contest, and expressly acquiesced in, the PTO's ruling by filing a terminal disclaimer. The newly filed claims subsequently issued on December 1, 1998 as the '596 Patent at issue in this case.

40.    Thereafter, Inline and its patent attorneys continued to keep alive additional co-pending continuation applications from the third 1991 CIP application. On July 27, 1999, they again submitted newly drafted claim language which, after further amendments and another terminal disclaimer with respect to the '399 Patent, issued on June 5, 2001 as the '466 Patent at issue in this case. Similarly, on April 18, 2002, Goodman and his patent attorneys submitted another set of entirely new claims which, after amendment and another terminal disclaimer with respect to the '399 Patent, issued on April 1, 2003 as the '585 Patent at issue in this case.

41.    Goodman and Inline's patent attorneys engaged in the same type of deliberate prosecution delay tactics with respect to continuation applications stemming from the original July 14, 1989 parent application. They kept alive a long series of co-pending continuation applications while Goodman tracked and monitored the T1E1.4 committee standardization activities and the massive investment and development of ADSL systems by Verizon (as successor to Bell Atlantic, NYNEX and GTE) and other RBOCs. In March of 2000, after almost ten years of unexplained delay, Goodman and Inline's patent attorneys submitted entirely new

claim language in a continuation of the original July 1989 parent application designed to cover then current ADSL technology. In doing so, they failed to advise the PTO of Goodman's admissions that his original conception was limited to the transmission of full video/infrared control signals between rooms within a residence and that he did not even conceive his "Internet" invention until at least January of 1996, at the earliest. As a result, and after the filing of another terminal disclaimer, the PTO allowed the new claims to issue on May 22, 2001 as the '718 Patent at issue in this case.

42.    In June of 2002, Inline filed suit against Verizon Communications, Inc. ("VCI") for infringement of three of the '596, '718 and '446 patents. The '585 patent had not yet issued at the time of Inline's suit. In April and June of 2002, Inline also filed suit for infringement of the same patents against AOL and Earthlink, respectively.

43.    When VCI pointed out that Inline had named the wrong Verizon entities, Inline made no attempt to amend its June 2002 complaint to add any of the proper parties, including parties subsequently named in the present action refiled almost three years later in a different court. There is no reason why Inline could not have amended the June 2002 complaint to add the two ISP defendants (Verizon Internet Services, Inc., and GTE.net LLC) back in the summer of 2002.

44.    Rather than attempt to add the appropriate Verizon parties in the original suit brought against VCI in 2002 in this Court, Inline voluntarily elected to proceed solely in its cases against AOL and Earthlink, which cases are still pending and active. Based upon these actions by Inline, defendants reasonably believed that Inline had abandoned its patent infringement claims against Verizon.

45.    After receiving a number of adverse rulings in the AOL/Earthlink actions, Inline filed suit against the Counterclaim-Plaintiffs and other Verizon entities in the Eastern District of

21

Virginia in hope of utilizing the speed of that Court's docket to evade the adverse rulings by this Court in the AOL/Earthlink actions.

46.    In its Complaint filed on April 6, 2005 in the Eastern District of Virginia, Inline alleged that: "Inline is the owner of all right, title and interest in and to the '596, '718, '446, and '585, patents" (the "patents-in-suit"). Upon information and belief, this allegation was not true. At the time of filing of the action in Virginia, other entities, including BBTI and Pie-Squared, (both incorporated in Delaware) owned all, or at least part, of the interest in the patents-in-suit. Counterclaim-Plaintiffs first became aware of these other entities on or about February 28, 2006.

47.    Upon motion by Counterclaim-Plaintiffs and the other defendants, the District Court in Virginia, on or about December 5, 2005, transferred this action to this Court. Inline vigorously opposed this motion and alleged to the Virginia District Court that there was no reason to transfer or stay the proceedings in view of the pending litigation between AOL/Earthlink and Inline in Delaware. As part of its opposition, Inline repeatedly emphasized that it was a Virginia corporation, but did not reveal the fact that it had transferred all, or at least part, of the interest in the patents-in-suit to Delaware corporations BBTI and Pie Squared.

48.    Subsequent to the transfer, Inline now takes the position that this action should be stayed pending resolution of the AOL/Earthlink actions.

49.    Counterclaim-Defendants' dilatory prosecution tactics, vexatious litigation tactics and unjustifiable delay in bringing this action render this case exceptional under 35 U.S.C. § 285, justify the equitable relief of holding the patents-in-suit unenforceable and further justify equitable recovery of all the originally named Verizon defendants costs, including, at a minimum, all costs and attorneys' fees relating to the action prior to transfer to this Court.

WHEREFORE, Counterclaim-Plaintiffs pray for relief as follows:

A.    this Court adjudge and decree that the use, sale or offer for sale of Counterclaim-Plaintiffs' services related to DSL Internet access does not infringe any valid and enforceable claim of the '596, '718, '446, and '585 patents;

B.    this Court adjudge and decree that the '596, '718, '446, and '585 patents are invalid and/or unenforceable;

C.    that this case be declared exceptional pursuant to 35 U.S.C. § 285 and that this Court award Counterclaim-Plaintiffs their costs in this action, including reasonable attorneys' fees; and

D.    that this Court order such further relief as the Court may deem just and appropriate.

Respectfully submitted,

By: /s/ Jeffrey B. Bove_____
    Jeffrey B. Bove (#998)
    jbove@cblh.com
    Kevin M. Baird (#4219)
    kbaird@cblh.com
    CONNOLLY BOVE LODGE & HUTZ LLP
    The Nemours Building
    1007 North Orange Street, Suite 878
    Wilmington, DE 19801
    Telephone: 302.658.9141
    Facsimile: 302.658.5614

OF COUNSEL:

John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

*Counsel for Verizon Defendants*

Dated: April 20, 2006

460091_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April, 2006 a true copy of the *Verizon Defendants'*

*First Amended Answer And Counterclaims* was sent to plaintiff's counsel, in the manner

indicated, upon:

        Michael K. Plimack, Esq.        (Served electronically and by overnight delivery)
        Alexander L. Brainerd, Esq.
        HELLER EHRMAN LLP
        333 Bush Street
        San Francisco, California 94104
        Alexander.Brainerd@hellerehrman.com
        Michael.Plimack@hellerehrman.com


        C. Joël Van Over, Esq.        (Served electronically and by overnight delivery)
        BINGHAM MCCUTCHEN LLP
        3000 K Street, NW, Suite 300
        Washington, DC 20007-5116
        joel.vanover@bingham.com

        Julia Heaney, Esq.                (Served by hand delivery)
        MORRIS NICHOLS ARSHT & TUNNELL LLP
        1201 N. Market Street
        Post Office Box 1347
        Wilmington, Delaware 19899-1347
        jheaney@mnat.com

Pursuant to an agreement between the parties, Mr. Plimack is also accepting service on

behalf of Counterclaim-Defendants Broadband Technology Innovations, LLC and Pie Squared

LLC.

                                        /s/ Jeffrey B. Bove
                                        Jeffrey B. Bove (#998)
                                        jbove@cblh.com
                                        CONNOLLY BOVE LODGE & HUTZ LLP
                                        1007 North Orange Street, Suite 878
                                        Wilmington, DE  19801
                                        Telephone:  302.658.9141