IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| Inline Connection Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Verizon Internet Services, Inc., et al.,<br><br>Defendants. | Civil Action No. 2:05CV205[*] |

**GTE.NET LLC AND VERIZON INTERNET SERVICES, INC.'S
FIRST SET OF INTERROGATORIES (NOS. 1-9)**

Defendants GTE.net LLC and Verizon Internet Services, Inc., by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 33, direct the following Interrogatories to Plaintiff Inline Connection Corporation ("Inline") to be answered within thirty (30) days, subject to the following definitions and instructions.

I. **INSTRUCTIONS**

1. These Interrogatories are deemed to be continuing so as to require the filing of supplemental responses promptly in accordance with Rule 26 of the Federal Rules of Civil Procedure.

2. Each Interrogatory is to be responded to separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each request as fully as possible. The omission of any information from Inline's responses shall be deemed a representation that such information is not

---

[*] Pursuant to the Court's oral ruling on October 4, 2005, this action against Defendants GTE.net LLC and Verizon Internet Services, Inc. will be transferred to the United States District Court for the District of Delaware.

known to Inline, its agents, counsel or other representatives at the time of the service of the responses or thereafter.

3. If Inline withholds any information called for in these Requests on the grounds of privilege, provide a Privilege Log in accordance with Fed. R. Civ. P. 26(b)(5) identifying the nature of the documents, communications, or things not produced or disclosed in a manner sufficient to assess the claim of privilege.

4. If any interrogatories cannot be answered because a document containing responsive information has been lost or destroyed, or transferred to a Third Party over whom Inline claims it lacks control, please identify the document by author, date, and subject matter, the date and circumstances surrounding the loss, destruction or transfer, the reason for the loss, destruction or transfer, the person or entity to whom transferred, the present location of the document and the date and manner in which Inline can or may obtain the document.

A. **DEFINITIONS**

1. The term "Patents-In-Suit" means U.S. Patent Nos. 5,844,596, 6,236,718, 6,243,446, 6,542,585, any patent issuing from Application Ser. No. 09/863,061, and any other patent issuing hereafter from any pending application owned or assigned (in whole or in part) to Inline.

2. The term "CLAIM" shall mean each and every claim in each of the Patents-In-Suit that Inline asserts, or intends to assert, is infringed, in any way, by any of the named Defendants in this action.

3. "Communication" shall mean the transmittal of information in the form of facts, ideas, inquiries or otherwise.

4. "Document" shall have the broadest meaning ascribed by the Federal Rules of Civil Procedure and applicable case law, including but not limited to electronic files.

2

5. "Identify" shall mean:

    (a)    when used with respect to a person:

        (1)    the person's name;

        (2)    the person's last known residence, business address and telephone number;

        (3)    the person's company or business affiliation at the date of transaction, correspondence, or thing referred to; and

        (4)    the person's title and duties in the company or business with which he was or is affiliated;

    (b)    when used with respect to a document or thing:

        (1)    the identity of each person who prepared and/or authored and/or signed it;

        (2)    the date of the document or thing;

        (3)    the general nature of the document or thing (e.g., letter, memorandum, photograph, computer printout, model, etc.);

        (4)    the identity of each person to whom it was addressed or distributed;

        (5)    its present location and the identity of its present custodian;

        (6)    the nature and substance of the document or thing with sufficient particularity to enable it to be identified;

        (7)    additionally, if the document is a patent, the country in which such patent was applied for, published, issued or granted, and each number, the title holder, date, the identity of each alleged inventor thereof, and the identity of any assignee; and

        (8)    additionally, if the document is a printed publication, the name of the publication in which the document was printed, the volume number and/or issue number, and page numbers;

    (c)    when used with respect to a communication:

        (1)    if written, the identity of the document or documents in which the communication was made, and the identity of all documents which

refer to, relate to, or reflect such communication, in whole or in part, or which were discussed, displayed, or used during such communication;

(2) if oral:

i. whether the communication was made in person or by telephone;

ii. the identity of each person who attended, heard or observed it;

iii. the location of each such person at the time of communication; and

iv. the substance of what each person said.

## II. **INTERROGATORIES**

1. For each claim element in each CLAIM, identify with specificity (*e.g.*, by specification column and line number, by individual reference numbers in specified patent figures) the words, structures, figures, diagrams and/or formulas that constitute the alleged Section 112(1) "written description" support for each such claim element.

2. Describe in detail the conception and reduction to practice of each invention claimed in each CLAIM, including but not limited to specific identification of the date on which the invention was first conceived, each document evidencing and/or corroborating the conception, each person involved in the conception, the specific contribution to the invention supplied by each such person, the date of reduction to practice, whether the reduction to practice was actual or constructive, each document evidencing and/or corroborating the reduction to practice, each person involved in the reduction to practice, and the specific contribution of each such person to the reduction to practice.

3. Describe in detail for each named Defendant the factual basis for Inline's good faith belief at the time it filed its Complaint in this action that each such Defendant has infringed or is

4

infringing one or more claims of the Patents-In-Suit, including but not limited to identification of each claim allegedly infringed and, for each such claim, identification of the specific product or service that is accused of infringement and a detailed claim chart showing how each individual claim element is satisfied by the accused product or service.

4. For each CLAIM, identify with specificity the language in the claim preamble that Inline asserts to be limiting with respect to infringement and/or anticipation, as well as any such preamble language that Inline asserts to be non-limiting with respect to infringement and/or anticipation.

5. Describe in detail how the disclosure of the transmission of video signals at a frequency of 6 MHz or higher in the specification and drawings of the U.S. Patent No. 6,236,718 would enable one of skill in the art to transmit digital signals at lower frequencies between roughly 10 KHz and 1 MHz such as those utilized by commercial ADSL systems.

6. Identify each meeting, telephone conversation or other communication, written or oral, between David D. Goodman and any member of the T1E1.4 Committee since January 1, 1992, including but not limited to Tom Starr and David Waring.

7. Identify each communication, written or oral, between any representative of Inline (including but limited to David D. Goodman or Edward Kahn) and any representative of Bell Atlantic (including but not limited to Brian Williams, Art Bushkin, Anthony Capuano, Tim Eggleston, Randy Lewis, David Daley, Bill Lawrence, Wendell Simms or John Funk) during the period January 1, 1991 to June 12, 2002.

8. Identify each person or entity (including but not limited to employees, directors, shareholders, law firms, investors, consultants, advisors, agents, licensees or co-venturers) that has any actual or potential financial interest (contingency, options or otherwise) in Inline

Connection Corporation, in the Patents-In-Suit, or in any patent infringement litigation brought or to be brought concerning any of the Patents-In-Suit; and, for each such person or entity, describe in detail the nature, amount and full circumstances concerning that financial interest.

9. Identify each communication, written or oral, from Inline or any Inline representative (including but not limited to David D. Goodman and Edward Kahn) to any representative of a Regional Bell Operating Company (or any affiliate or subsidiary thereof) concerning any type of ADSL service during the period January 1, 1991 to date.

Respectfully submitted,

By: _____
John B. Wyss
Kevin P. Anderson
Robert J. Scheffel
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Robert W. McFarland
MCGUIRE WOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Counsel for Defendants GTE.net LLC and Verizon Internet Services, Inc.

Dated: October 6, 2005