**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INLINE CONNECTION CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>VERIZON INTERNET SERVICES, INC. et al.<br><br>　　　　　　Defendants. | C. A. No. 05-866 (JJF) |
| VERIZON INTERNET SERVICES, INC.; and VERIZON DELAWARE, INC.<br><br>　　　　Counterclaim-Plaintiffs,<br><br>　v.<br><br>INLINE CONNECTION CORPORATION;<br>BROADBAND TECHNOLOGY<br>INNOVATIONS, LLC; and<br>PIE SQUARED LLC,<br><br>　　　Counterclaim-Defendants. | C. A. No. 05-866 (JJF) |

**JOINT REPLY OF INLINE CONNECTION CORPORATION,
BROADBAND TECHNOLOGY INNOVATIONS, LLC AND PIE SQUARED LLC
TO COUNTERCLAIMS OF VERIZON INTERNET SERVICES, INC.
AND VERIZON DELAWARE, INC. AND COUNTERCLAIMS**

Counterclaim-Defendants Inline Connection Corporation ("Inline"); Broadband Technology Innovations, LLC ("BBTI"); and Pie Squared LLC ("Pie Squared") (hereinafter, "Plaintiffs") in the above-captioned suit, hereby answer the Counterclaims of Counterclaim-Plaintiffs Verizon Internet Services, Inc. ("VIS") and Verizon Delaware, Inc. ("Verizon Delaware") and BBTI and Pie Squared counterclaim as follows:

## COUNTERCLAIMS OF VIS AND VERIZON DELAWARE

### PARTIES

1.    Plaintiffs admit the allegations of Paragraph 1 of the Counterclaims.

2.    Plaintiffs admit the allegations of Paragraph 2 of the Counterclaims.

3.    Plaintiffs admit the allegations of Paragraph 3 of the Counterclaims.

4.    Plaintiffs admit the allegations of Paragraph 4 of the Counterclaims.

5.    Plaintiffs admit and allege that, before April of 2005, Inline entered into a qualified exclusive license with BBTI relating to the '596, '718, '446, and '585 patents ("the original patents-in-suit") and that Inline granted Pie Squared a qualified five percent (5%) partial ownership interest in the original patents-in-suit.  Plaintiffs deny the remaining allegations in Paragraph 5 of the Counterclaims.

### JURISDICTION AND VENUE

6.    Plaintiffs admit the allegations of Paragraph 6 of the Counterclaims to the extent that they relate to Plaintiffs.  Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Counterclaims and on that basis deny each and every such allegation.

7.    Plaintiffs admit the allegations of Paragraph 7 of the Counterclaims.

8.    Plaintiffs admit the allegations of Paragraph 8 of the Counterclaims.

9.    Plaintiffs admit that BBTI and Pie Squared are Delaware corporations and that this Court has personal jurisdiction over BBTI and Pie Squared.  Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Counterclaims and on that basis deny each and every such allegation.

**FIRST CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS**
**(For Declaratory Judgment of Noninfringement and Invalidity**
**of the Original Patents-in-Suit)**

10.     Plaintiffs repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 9 above in response to Paragraph 10 of the Counterclaims.

11.     Plaintiffs admit that Inline alleges that Counterclaim-Plaintiffs use, sell, and offer for sale Digital Subscriber Line Service that infringes the patents-in-suit literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271.  Except as so expressly admitted, Plaintiffs deny each allegation of Paragraph 11 of the Counterclaims.

12.     Plaintiffs admit that Inline filed suit against Counterclaim-Plaintiffs for infringement of the original patents-in-suit and that there is a substantial and continuing controversy between Plaintiffs and Counterclaim-Plaintiffs on this issue.   Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Counterclaims and on that basis deny each and every such allegation.

13.     Counterclaim-Plaintiff uses, sells, and offers for sale DSL service that infringes the patents-in-suit.   Except as expressly averred, Plaintiffs deny the allegations of Paragraph 13 of the Counterclaims.

14.     Plaintiffs deny the allegations of Paragraph 14 of the Counterclaims.

15.     Plaintiffs deny the allegations of Paragraph 15 of the Counterclaims.

**SECOND CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS**
**(For Declaratory Judgment of Unenforceability of the Original Patents-in-Suit)**

16.     Plaintiffs repeat and incorporate herein the entirety of their response contained in Paragraphs 1 through 15 above in response to Paragraph 16 of the Counterclaims.

17.     Plaintiffs deny the allegations of Paragraph 17 of the Counterclaims.

18.     Plaintiffs deny the allegations of Paragraph 18 of the Counterclaims.

19.     Plaintiffs admit and allege that in the 1980's David Goodman worked for Bolt Beraneck and Newman, Inc. ("BBN"), conceived the inventions claimed in the original patents-in-suit after terminating his employment with BBN, and filed an application for a patent on July 14, 1989.  Except as so expressly admitted and alleged, Plaintiffs deny each allegation Paragraph 19 of the Counterclaims.

20.     Plaintiffs are informed and believe that BellCore worked on the development of certain ADSL technology from the late 1980s through the early 1990s (although much of the work was secret at the time) that was intended to permit simultaneous transmission of video, and voice signals and other data signals, over at least a portion of "customer loops." Except as expressly stated upon information and belief, Plaintiffs arewithout information or knowledge sufficient to form a belief as to the allegations in Paragraph 20 of the Counterclaim and on that basis deny them.

21.     Plaintiffs admit and allege that at some point in time after mid-1992, Mr. Goodman became aware of Bell Atlantic's plans to implement video on demand using ADSL technology.  Plaintiffs deny the remaining allegations of Paragraph 21 of the Counterclaims.

22.     On information and belief, Plaintiffs admit and allege that on December 5, 1991, David Goodman filed three CIP applications, and Plaintiffs refer the Court to the full text of those CIP applications for their contents.   Plaintiffs deny the remaining allegations in Paragraph 22 of the Counterclaims.

23.     Plaintiffs deny the allegations of Paragraph 23 of the Counterclaims.

24.     Plaintiffs deny the allegations of Paragraph 24 of the Counterclaims.

25.     Plaintiffs admit and allege that David Goodman is the president of Inline. On information and belief, Plaintiffs admit that Goodman wrote to Bell Atlantic in March of

1993 concerning ADSL technology; that Goodman has discussed with potential Inline investors the application of Inline patents to ADSL technology; and that in May, 1993, Goodman and Inline announced that "his patent attorneys, Fish and Richardson of Boston, had determined that [Inline's] patent covers certain video on demand using ADSL developed by BellCore, and planned for introduction by Bell Atlantic this summer." Plaintiffs deny the remaining allegations in Paragraph 25 of the Counterclaims.

26.    Plaintiffs admit and allege that Goodman had various conversations with Bell Atlantic employees over several years concerning the inventions disclosed in the Inline-owned patent and related patent applications, Inline's patent rights and the use of these inventions in Bell Atlantic's video on demand or video dial tone planned products, which used ADSL. Plaintiffs deny the remaining allegations of Paragraph 26 of the Counterclaims.

27.    Plaintiffs admit and allege that Goodman and Inline publicly stated that Inline's "patent and patent applications give Inline claim to many developments that will have significant impact on the communications industry including certain uses of the Asymmetric Digital Subscriber Line (ADSL) being tested by Bell Atlantic", video on demand, and that Inline disclosed to reporters for The Wall Street Journal, The New York Times and The Washington Post that "Inline has been advised by its patent attorneys, Fish & Richardson of Boston, that certain uses of an ADSL system would infringe its patent." Plaintiffs deny the remaining allegations in Paragraph 27 of the Counterclaims and allege that any document purportedly quoted speaks for itself.

28.    Plaintiffs admit that the '399 patent issued in April, 1991. Plaintiffs deny the remaining allegations of Paragraph 28 of the Counterclaims.

5

29.    Plaintiffs admit that it contacted a law firm at some point in mid-1993 to discuss enforcement of Inline's patent and Bell Atlantic's activities. Goodman and Inline were aware that the T1E1.4 committee was developing industry standards for ADSL systems. Plaintiffs deny the remaining allegations in Paragraph 29 of the Counterclaims.

30.    Plaintiffs admit and allege that Goodman and Inline participated in various meetings of the T1E1.4 committee during 1993. Plaintiffs deny the remaining allegations of Paragraph 30 of the Counterclaims.

31.    Plaintiffs admit that in 1993, Goodman stated "that Inline had been advised by its patent attorneys, Fish & Richardson of Boston, that certain applications of an ADSL system infringe its patent." Plaintiffs deny the remaining allegations of Paragraph 31 of the Counterclaims.

32.    Plaintiffs deny the allegations in Paragraph 32 of the Counterclaims.

33.    Plaintiffs admit that Bell Atlantic wrote to Inline on January 25, 1994 and refer the Court to the full text of that correspondence for its contents. Plaintiffs deny the remaining allegations of Paragraph 33.

34.    Plaintiffs deny the allegations in Paragraph 34 of the Counterclaims.

35.    Plaintiffs admit the allegations in sentences one and two in Paragraph 35 of the Counterclaims, except to the extent the allegations suggest that Inline stated that all uses of ADSL infringe Inline's patent, and such allegations are denied to this extent. Plaintiffs further allege that any purportedly quoted document speaks for itself. Plaintiffs deny the remaining allegations in Paragraph 35 of the Counterclaims.

36.    On information and belief, Plaintiffs admit and allege that the T1E1.4 committee met to review technical aspects and potential aspects of ADSL technology and its

commercial use and to gather the views of those interested in or involved in the development of ADSL, from approximately 1991 to 1995, and later. Plaintiffs further admit and allege, upon information and belief, that the T1E1.4 committee began working on standards primarily after early 1994. Plaintiffs further admit and allege that they disclosed certain aspects and applications of the inventions described in the three December CIPs to various members of the T1E1.4 committee and the T1E1.4 committee. Plaintiffs deny the remaining allegations in Paragraph 36 of the Counterclaims.

37.     Plaintiffs deny the allegations in Paragraph 37 of the Counterclaims.

38.     Plaintiffs deny the allegations in Paragraph 38 of the Counterclaims.

39.     Plaintiffs admit that the originally submitted claims of the '596 patent were initially rejected for double patenting in light of the '399 patent; that Goodman filed a terminal disclaimer to overcome this rejection; and that the '569 patent issued on December 1, 1998. Plaintiffs deny the remaining allegations in Paragraph 39 of the Counterclaims.

40.     Plaintiffs admit that the application that led to the '466 patent was filed with the PTO on July 27, 1999; that the '466 patent issued on June 5, 2001; that the application that led to the '585 patent was filed with the PTO on April 18, 2002; and that the '585 patent issued on April 1, 2003. Inline admits that Goodman filed a terminal disclaimer and several amendments during the prosecution of both the '466 patent and the '585 patent. Plaintiffs deny the remaining allegations in Paragraph 40 of the Counterclaims.

41.     Plaintiffs admit and allege that the application that led to the '718 patent was filed with the PTO on April 16, 1999 and that the '718 patent issued on May 22, 2001. Plaintiffs also admit that during the prosecution of the application that led to the '718 patent,

Goodman filed a terminal disclaimer.  Plaintiffs deny the remaining allegations in Paragraph 41 of the Counterclaims.

42.    Plaintiffs admit that in June, 2002, Inline filed suit against Verizon Communications Inc. ("VCI") for infringement of the '596, '718, and '446 patents.  Plaintiffs further admit that the '585 patent had not yet issued in June, 2002 and that in April and June of 2002, Inline also filed suit for infringement of the same patents against AOL and Earthlink respectively.  Plaintiffs deny the remaining allegations in Paragraph 42 of the Counterclaims.

43.    Plaintiffs admit that VCI contended that, as a holding company, it was not subject to suit for patent infringement and that in response, Inline did not seek to add any party to that lawsuit.  Plaintiffs deny the remaining allegations in Paragraph 43 of the Counterclaims.

44.    Plaintiffs admit that the lawsuits filed against AOL and Earthlink are still pending and active.  Plaintiffs admit and allege that Inline informed Verizon counsel that it would bring suit against Verizon or Verizon affiliates based on the outcomes in its cases against AOL and EarthLink.  Plaintiffs deny the remaining allegations in Paragraph 44 of the Counterclaims.

45.    Plaintiffs admit that Inline filed suit against Counterclaim-Plaintiffs and multiple other Verizon entities in the Eastern District of Virginia.  Plaintiffs deny the remaining allegations in Paragraph 45 of the Counterclaims.

46.    Plaintiffs admit that in Inline's Complaint filed on April 6, 2005 in the Eastern District of Virginia, Inline alleged that: "Inline is the owner of all right, title and interest in and to the '596, '718, '446, and '585, patents".  Plaintiffs deny the remaining allegations in Paragraph 46 of the Counterclaims.

47.     Plaintiffs admit that the defendants in the Virginia action filed a motion to transfer this action to this Court, which motion Inline opposed.  Plaintiffs admit that Inline is a Virginia corporation.   Plaintiffs deny the remaining allegations in Paragraph 47 of the Counterclaims.

48.     Plaintiffs admit that Inline has taken the position that this action should be stayed pending resolution of the AOL/Earthlink actions.     Plaintiffs deny the remaining allegations in Paragraph 48 of the Counterclaims.

49.     Plaintiffs deny the allegations in Paragraph 49 of the Counterclaims.  With respect to Counterclaim-Plaintiffs' Prayer for Relief, Plaintiffs deny that Counterclaim-Plaintiffs are entitled to the relief sought, or to any other relief.

## COUNTERCLAIMS

### THE PARTIES

1.     BBTI is a limited liability corporation organized and existing under the laws of the Delaware, with its principal place of business at 1875 K Street, N.W., Washington, D.C. 20006.  BBTI was incorporated under the name Mercury Communications I, LLC on March 4, 2004 and changed its name from "Mercury Communications I, LLC" to "Broadband Technology Innovations LLC" on September 29, 2005.

2.     Pie Squared is a limited liability corporation organized and existing under the laws of the Delaware, with its principal place of business at 1875 K Street, N.W., Washington, D.C. 20006.  Pie Squared was incorporated on June 18, 2003.

3.     For the purposes of these Counterclaims, BBTI and Pie Squared are referred to as "Joined Plaintiffs".

9

4.      In Paragraph 2 of Verizon Defendants' First Amended Answer, filed on April 20, 2006 ("First Amended Answer"), VIS admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1880 Campus Commons Drive, Reston, Virginia.  Upon information and belief, VIS also conducts business throughout the United States, and acts as an agent for Verizon affiliates, including certain Defendants herein.

5.      In Paragraph 3 of the First Amended Answer, GTE.Net LLC d/b/a Verizon Internet Solutions ("Verizon Internet Solutions") admits that it is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 4055 corporate Drive, #400, Grapevine, Texas.  Upon information and belief, Verizon Internet Solutions conducts substantial business throughout the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

6.      In Paragraph 4 of the First Amended Answer, Verizon Services Corp. ("Verizon Services") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1310 N. Court House Road, Arlington, Virginia.  Upon information and belief, Verizon Services conducts substantial business throughout many states within the United States and acts as the agent for Verizon affiliates, including certain Defendants herein.

7.      In Paragraph 5 of the First Amended Answer, Telesector Resources Group, Inc. d/b/a Verizon Services Group ("Verizon Services Group") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 104 West Street, New York, New York.  Upon information and belief,

Verizon Services Group conducts substantial business throughout many states within the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

8.    In Paragraph 6 of the First Amended Answer, Verizon Corporate Services Group Inc. d/b/a Verizon Services Group ("Verizon Corporate Services Group") admits that it is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 140 West Street, New York, New York.  Upon information and belief, Verizon Corporate Services Group conducts substantial business throughout many states within the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

9.    In Paragraph 7 of the First Amended Answer, Verizon Advanced Data, Inc. ("VADI") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia.  Upon information and belief, VADI conducts substantial business throughout many states within the United States, and acts as an agent for Verizon affiliates, including certain Defendants herein.

10.    In Paragraph 8 of the First Amended Answer, Verizon Avenue Corp. ("Verizon Avenue") admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 12901 Worldgate Drive, Herndon, Virginia.   Upon information and belief, Verizon Avenue conducts substantial business throughout many states within the United States and acts as the agent for Verizon affiliates, including certain Defendants herein.

11.    In Paragraph 9(h) of the First Amended Answer, GTE Southwest Inc. d/b/a Verizon Southwest ("Verizon Southwest") admits that it is a corporation organized and existing under the laws of the State of Delaware.  Upon information and belief, Verizon

11

Southwest has its principal place of business at 600 Hidden Ridge, Irving, Texas (with a business address at 1095 Avenue of the Americas, New York, New York). Upon information and belief, Verizon Southwest conducts substantial business throughout many states within the United States.

12. In Paragraph 9(j) of the First Amended Answer, Verizon Delaware admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 901 Tatnall Street, Wilmington, Delaware. Upon information and belief, Verizon Delaware conducts substantial business throughout many states within the United States.

13. Joined Plaintiffs assert these Counterclaims against VIS, Verizon Internet Solutions, Verizon Services, Verizon Services Group, Verizon Corporate Services Group, VADI, Verizon Avenue, Verizon Southwest, and Verizon Delaware, which for the purposes of these Counterclaims are collectively referred to as "Defendants".

## JURISDICTION AND VENUE

14. These counterclaims arise under the patent laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

15. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1400(b). Each Defendant is incorporated in this judicial district, has committed acts of infringement in this judicial district, which acts are continuing, and/or has already answered related claims for patent infringement by Inline.

## BACKGROUND

16.     On December 1, 1998, U.S. Patent No. 5,844,596 ("the '596 Patent") was duly and legally issued for an invention entitled "Two-way RF Communication at Points of Convergence of Wire Pairs from Separate Internal Telephone Networks," listing David D. Goodman as the inventor.  Robert Domnitz was later duly and lawfully added as a co-inventor. A copy of the '596 patent is attached hereto as Exhibit A.

17.     On May 22, 2001, U.S. Patent No. 6,236,718 ("the '718 Patent") was duly and legally issued for an invention entitled "Video Transmission and Control System Utilizing Internal Telephone Lines," listing David D. Goodman as the inventor.  Robert Domnitz was later duly and lawfully added as a co-inventor.  A copy of the '718 Patent is attached hereto as Exhibit B.

18.     On June 5, 2001, U.S. Patent No. 6,243,446 ("the '446 Patent") was duly and legally issued for an invention entitled "Distributed Splitter for Data Transmission Over Twisted Pairs," listing David D. Goodman as the inventor.  Robert Domnitz was later added duly and lawfully as a co-inventor.  A copy of the '446 patent is attached hereto as Exhibit C.

19.     On April 1, 2003, U.S. Patent No. 6,542,585 ("the '585 Patent") was duly and legally issued for an invention entitled "Distributed Splitter For Data Transmission Over Twisted Wire Pairs," listing David D. Goodman as the inventor.  Robert Domnitz was later added duly and lawfully as a co-inventor.  A copy of the '585 Patent is attached hereto as Exhibit D.

20.     On November 29, 2005, U.S. Patent No. 6,970,537 ("the '537 Patent") was duly and legally issued for an invention entitled "Video Transmission and Control System Utilizing Internal Telephone Lines," listing David D. Goodman as the inventor.  Robert Domnitz was added duly and lawfully as a co-inventor.  A copy of the '537 Patent is attached hereto as

13

Exhibit E.   Joined Plaintiffs understand that Inline intends to move to add claims for infringement of the '537 patent to its original Complaint at an appropriate time after the current stay is lifted, or when otherwise permitted by the Court.

21.     Prior to June 30, 2003, Inline was the owner of the entire right, title and interest in and to the '596, '718, '446, '585, and '537 Patents (the "Inline Patents").   On June 30, 2003, Inline entered into a "Bill of Sale and Assignment and Assumption Agreement" with Pie Squared under which Inline granted to Pie Squared a five percent interest in Inline's entire right, title and interest in and to the Inline Patents.   Today, Inline and Pie Squared together are the owners of all right, title and interest in and to the Inline Patents.   As owner of the Inline Patents, Pie Squared has standing under Article III of the U.S. Constitution to sue for acts of infringement.

22.     On March 4, 2004, BBTI, operating under its former name "Mercury Communications I, LLC", entered into an agreement with Inline, through which BBTI became the exclusive licensee to, with a first right to sue for past, present, and future infringement of, the Inline Patents in the area of Digital Subscriber Line ("DSL") technology.   As exclusive licensee to the Inline Patents in this area, BBTI has standing under Article III of the U.S. Constitution to sue for acts of infringement in this field of use.

## COUNT ONE
## INFRINGEMENT OF THE '596 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

23.     Joined Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 22 above.

24.     Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '596 Patent without license.

25.     By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '596 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

26.     On information and belief, Defendants have had notice of the '596 Patent. Defendants' infringement of the '596 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

27.     As a direct and proximate consequence of the acts and practices of Defendants, Joined Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

28.     As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Joined Plaintiffs for which there is no adequate remedy at law, and for which Joined Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## COUNT TWO
### INFRINGEMENT OF THE '718 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

29.    Joined Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 22 above.

30.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '718 Patent without license.

31.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '718 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

32.    On information and belief, Defendants have had notice of the '718 Patent. Defendants' infringement of the '718 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

33.    As a direct and proximate consequence of the acts and practices of Defendants, Joined Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

34.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Joined Plaintiffs for which there is no adequate remedy at law, and for which Joined Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

16

## COUNT THREE
## INFRINGEMENT OF THE '446 PATENT
## (35 U.S.C. §§ 271 ET SEQ.)

35.    Joined Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 22 above.

36.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '446 Patent without license.

37.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '446 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

38.    On information and belief, Defendants have had notice of the '446 Patent. Defendants' infringement of the '446 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

39.    As a direct and proximate consequence of the acts and practices of Defendants, Joined Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

40.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Joined Plaintiffs for which there is no adequate remedy at law, and for which Joined Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## COUNT FOUR
### INFRINGEMENT OF THE '585 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

41.    Joined Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 22 above.

42.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '585 Patent without license.

43.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '585 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

44.    On information and belief, Defendants have had notice of the '585 Patent. Defendants' infringement of the '585 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

45.    As a direct and proximate consequence of the acts and practices of Defendants, Joined Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

46.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Joined Plaintiffs for which there is no adequate remedy at law, and for which Joined Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## COUNT FIVE
## INFRINGEMENT OF THE '537 PATENT
## (35 U.S.C. §§ 271 ET SEQ.)

47.    Joined Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 22 above.

48.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '537 Patent without license.

49.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '537 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

50.    On information and belief, Defendants have had notice of the '537 Patent. Defendants' infringement of the '537 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

51.    As a direct and proximate consequence of the acts and practices of Defendants, Joined Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

52.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Joined Plaintiffs for which there is no adequate remedy at law, and for which Joined Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

**DEMAND FOR TRIAL BY JURY**

Joined Plaintiffs hereby demand a jury trial for all issues deemed to be triable by jury.

**CONCLUSION**

WHEREFORE, Joined Plaintiffs pray for the entry of a judgment from this Court:

a.    Declaring that the '596, '446, '718, '585, and '537 Patents were duly and legally issued, and are valid and enforceable;

b.    Declaring that each Defendant has directly and/or indirectly infringed one or more claims of each of the '596, '446, '718, '585, and '537 Patents;

c.    Awarding Joined Plaintiffs damages including a reasonable royalty in accordance with 35 U.S.C. § 284, including damages incurred after those proven at trial, for which Joined Plaintiffs request a post-verdict accounting;

d.    Declaring that Defendants have willfully infringed one or more claims of each of the '596, '446, '718, '585, and '537 Patents and awarding Joined Plaintiffs treble damages therefor;

e.    Deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Plaintiffs to an award of its reasonable attorneys' fees, expenses, and costs in this action;

f.    Enjoining Defendants, and their respective officers, agents, servants, representatives, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement under 35 U.S.C. § 271 of any one or more claims of each of the '596, '446, '718, '585, and '537 Patents, pursuant to 35 U.S.C. § 283;

g.     Awarding Joined Plaintiffs its costs in connection with this action; and

h.     Awarding Joined Plaintiffs such other and further relief as this Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Counsel for Plaintiffs and Counter-Claim Defendants Inline Connection Corporation; Broadband Technology Innovations, LLC; and Pie Squared LLC*

OF COUNSEL:

Michael L. Plimack
Brian D. Kaider
HELLER EHRMAN, LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
(202) 912-2167

May 4, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 4, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Jeffrey B. Bove
> Kevin M. Baird
> Connolly Bove Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> Jeffrey B. Bove
> Kevin M. Baird
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange Street
> Wilmington, DE 19801

### BY EMAIL & FEDERAL EXPRESS

> John B. Wyss
> Kevin Anderson
> Wiley Rein & Fielding LLP
> 1776 K Street, N.W.
> Washington, DC  20006
> jwyss@wrf.com
> kanderson@wrf.com

/s/ Julie Heaney
Julie Heaney (#3052)