## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Inline Connection Corporation,

        Plaintiff,

        v.

Verizon Internet Services, Inc., et al.,

        Defendants.

Civil Action No.  05-866 (JJF)

**REDACTED –
PUBLIC VERSION**

## VERIZON DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
## TO ENFORCE COURT'S PRIOR DISCOVERY ORDER (D.I. 97)

Pursuant to the Court's set schedule (D.I. 105), the Verizon defendants file this reply brief

in support of their motion (D.I. 99) to enforce the Court's prior discovery order (D.I. 97) and in

response to Inline's May 5, 2006 Opposition.  There is only one issue remaining for the Court to

decide on this motion:

> Whether Inline must produce all of the ownership-related documents that will
> allow the Court and Defendants to understand the interlocking web of
> financial interests between and among Paperboy Ventures, LLC, Broadband
> Technology Innovations, LLC ("BBTI"), Pie Squared LLC and Inline that
> transferred effective ownership of the patents-in-suit to Paperboy Ventures
> and BBTI in March of 2004;

> or

> Whether Inline, BBTI and Pie Squared can unilaterally limit their compliance
> with the Court's April 24, 2006 Memorandum Order (D.I. 97), produce only
> those documents that they deem "relevant" to the ownership issue, and
> withhold information about the owners of Paperboy Ventures, BBTI and Pie
> Squared and their respective contractual powers to direct and control the
> present lawsuit.

### A.    Compliance With D. Del. LR 7.1.1

Before filing their motion to enforce the Court's Memorandum Order (D.I. 97), the

Verizon defendants' counsel met and conferred telephonically with Inline's counsel on

April 27, 2006. *See* D.I. 99, Exhibits 1-3. After the motion was filed, Inline's counsel changed position and agreed to produce selected "ownership" documents by May 31. *See* Exhibit A to Inline's Opp., p. 1 at ¶ 3. At the same time, Inline reconfirmed that it would limit its interpretation of the "issue of ownership" and requested additional meet and confer discussions on May 1. *Id.*, p. 2.

The parties were able to resolve certain issues during their May 1 discussions. *See* Exhibit C to Inline's Opp. However, a fundamental issue remains as to the "scope" of Inline's ownership response, and whether Inline will disclose all of the surrounding circumstances and interlocking web of financial interests between and among Inline, BBTI, Pie Squared, Paperboy Ventures and other investors that own and control the patents-in-suit and litigations brought thereunder. *Id.*, at pp. 1-2.

**B.    Schedule For Complete Compliance With The Court's Order (D.I. 97)**

There is no longer a dispute on this issue. Inline has now agreed to provide full and complete responses to the ownership discovery requests on or before May 31 (*i.e.*, five weeks after entry of the Court's order). There remains, however, a fundamental dispute as to the scope of Inline's response and whether Inline can unilaterally withhold documents relating to the various financial interests and agreements between and among Paperboy Ventures, BBTI, Pie Squared and Inline/Goodman.

**C.    Inline Must Disclose To The Court And Defendants All Of The Facts Necessary To Identify The True Parties In Interest That Own And Control The Patents-In-Suit And This Litigation.**

Inline made an initial, incomplete production of selected "ownership" documents on May 4, 2006 (*see* Exhibit 1). Although critical agreements referenced in the documents produced are still missing (*see* Exhibit 2), these documents clearly establish that on March 4, 2004 – more than one year before this lawsuit was filed – effective ownership of the

2

patents-in-suit was transferred from plaintiff Inline to BBTI and its controlling owner, Paperboy Ventures. In particular, the documents show that:

Despite these new revelations, Inline, Paperboy Ventures, BBTI and Pie Squared insist on holding back additional information that they deem "not relevant" to the ownership issue – including the identity of the investors in Paperboy Ventures and Pie Squared, the owners of Inline, and documents relating to the control of and financial interests in both this litigation and the co-pending *AOL* case. This information is necessary to show the interlocking relationships and overlaps between the Paperboy Ventures and Pie Squared investors that link together the nominally separate agreements and will further confirm that Inline had no standing to file the

---

[1]     The HellerEhrman website lists Paperboy Ventures as one of the principal clients of the Firm's Patent & Trademark Practice.

present action.[2] Neither the Court nor Defendants can get to the bottom of the ownership issue as long as Inline and its privies unilaterally limit production of relevant documents and information.

## CONCLUSION

The Court should order Inline to provide full and complete answers to Interrogatory Nos. 8 and 13, as well as all documents responsive to Document Request Nos. 36, 37, 46 and 57-59, on or before May 31, 2006.

In addition, the Court should order Inline to produce all of the missing documents referenced in its initial, incomplete May 4 production – as specified in Exhibit 2 – without further delay.

Respectfully submitted,

By: /s/ Jeffrey B. Bove

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile:  202.719.7049

Jeffrey B. Bove (#998)
Kevin M. Baird (#4219)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE  19801
Telephone:  302.658.9141
Facsimile:   302.658.5614

Dated: May 11, 2006

Counsel for Verizon Defendants

---

[2]     In addition, the owners of Inline are believed to include a number of individuals (*e.g.*, Messrs. Domnitz, Mahn, Kanyuck, Savage, Kaplan, various BBN employees) who were personally involved in key factual events during the late 1980s and early 1990s relevant to the invalidity and unenforceability of the patents-in-suit. The financial interests of these individuals directly bear upon their bias and credibility as factual witness concerning these issues.

4

# CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of May, 2006 a true copy of the ***Redacted Verizon***

***Defendants' Reply Brief In Support Of Motion To Enforce Court's Prior Discovery Order***

***(D.I. 97)*** was sent to plaintiff's and counterclaim-defendants' counsel, in the manner indicated,

upon:


Michael K. Plimack, Esq.                    (Served electronically & by overnight delivery)
Alexander L. Brainerd, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brainerd@hellerehrman.com
Michael.Plimack@hellerehrman.com


C. Joël Van Over, Esq.                      (Served electronically & by overnight delivery)
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
joel.vanover@bingham.com


Julia Heaney, Esq.                          (Served by hand delivery)
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
Post Office Box 1347
Wilmington, Delaware 19899-1347
jheaney@mnat.com


/s/ Jeffrey B. Bove
Jeffrey B. Bove (#998)

464175_2.DOC