McGuireWoods LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510-1655
Phone: 757.640.3700
Fax: 757.640.3701
www.mcguirewoods.com

Robert W. McFarland
Direct: 757.640.3716

MCGUIREWOODS

rmcfarland@mcguirewoods.com
Direct Fax: 757.640.3966

May 16, 2006

HAND DELIVERY

Fernando Galindo, Acting Clerk
United States District Court
600 Granby Street
Norfolk, VA 23510

RECEIVED
2006 MAY 16 A 10:43
CLERK US DISTRICT COURT
NORFOLK, VIRGINIA

Inline Connection Corporation v. Verizon Internet Services, Inc., et al
Civil Action No. 2:05cv205

Dear Mr. Galindo:

Enclosed for filing please find:

1. The stayed defendants' motion to lift stay, dismiss with prejudice, award defendants attorneys fees, and grant sanctions against Inline and its counsel;

2. Memorandum in support thereof with Exhibits 1-6, to be filed under seal;

3. Motion for protective order (to file documents under seal);

4. Memorandum in support of motion for protective order;

5. Proposed order upon the motion for protective order.

Thank you for your assistance. With best wishes, I am

Sincerely yours,

Robert W. McFarland

Robert W. McFarland

RWM/j
Encl
CC: Stephen E. Noona, Esq.
Michael K. Plimack, Esq.
C. Joel Van Over, Esq.

RECEIVED

2006 MAY 16 A 10:43

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| Inline Connection Corporation,<br>Plaintiff,<br>v.<br>Verizon Internet Services, Inc., et al.,<br>Defendants. | Civil Action No. 2:05CV205 (HCM) |

**STAYED DEFENDANTS' MOTION TO LIFT STAY, DISMISS WITH PREJUDICE, AWARD DEFENDANTS ATTORNEYS FEES AND GRANT SANCTIONS AGAINST INLINE AND ITS COUNSEL**

Defendants Verizon California Inc., Verizon Florida Inc., Verizon Hawaii Inc., Verizon Maryland Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon Pennsylvania Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Verizon New England Inc., Verizon North Inc., Verizon Northwest Inc., Verizon West Coast Inc., Verizon Virginia Inc., Verizon South Inc., and Contel of the South Inc. d/b/a Verizon Mid-States hereby move this Court to: (1) dismiss with prejudice the claims of plaintiff Inline Connection Corporation ("Inline") for lack of standing; (2) grant sanctions against Inline and its counsel under the Court's inherent powers and 28 U.S.C. § 1927; and (3) declare this case exceptional under 35 U.S.C. § 285 and award the defendants their fees and costs associated with this matter.

In support of this Motion, the defendant movants provide the accompanying Memorandum of Law.

Respectfully submitted,

By: [signature]

Robert W. McFarland
McGuire Woods LLP
World Trade Center
101 West main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Dated: May 16, 2006

Counsel for Verizon Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of May, 2006, a true copy of the foregoing was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq. (Served electronically and by overnight delivery)
Alexander L. Brainerd, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brianerd@Heller.com
Michael.Plimack@hellerhrman.com

C. Joël Van Over, Esq. (Served electronically and by overnight delivery)
BINGHAM MCCUTCHEN LLP
3000 K Street, NW
Suite 300
Washington, DC 20007-5116
joël.vanover@bingham.com

Stephen E. Noona, Esq. (Served via hand delivery)
KAUFMAN & CANOLES, PC
150 W. Main Street
Suite 2100
Norfolk, Virginia 23510
senoona@kaufcan.com

/s/ R W McFarland

Robert W. McFarland

WRFMAIN 12481096.1
5/15/06 4:56 PM

RECEIVED

2006 MAY 15 A 10:43

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| Inline Connection Corporation,<br>Plaintiff,<br>v.<br>Verizon Internet Services, Inc., et al.,<br>Defendants. | Civil Action No. 2:05CV205 (HCM) |

**MOTION FOR PROTECTIVE ORDER (TO FILE DOCUMENTS UNDER SEAL)**

NOW COME defendants Verizon California Inc., Verizon Florida Inc., Verizon Hawaii Inc., Verizon Maryland Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon Pennsylvania Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Verizon New England Inc., Verizon North Inc., Verizon Northwest Inc., Verizon West Coast Inc., Verizon Virginia Inc., Verizon South Inc., and Contel of the South Inc. d/b/a Verizon Mid-States ("Verizon Defendants"), by counsel, pursuant to Rule 5 of the Rules of the United States District Court for the Eastern District of Virginia, and for the reasons set forth in the accompanying memorandum in support, move for entry of a protective order providing for the filing of documents under seal.

WHEREFORE, the Verizon Defendants pray that the Court enter the proposed order, submitted herewith, either granting or denying the Verizon Defendants' motion for a protective order, and ordering the filing, under seal or in the public records of this Court, of their memorandum in support of their motion to lift stay, dismiss with prejudice, award defendants attorneys fees and grant sanctions against Inline and its counsel and exhibits thereto.

Respectfully submitted,

By: *[signature: Robert W. McFarland]*

Robert W. McFarland
McGuire Woods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Dated: May 16, 2006

Counsel for Verizon Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of May, 2006, a true copy of the foregoing was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq. (Served electronically and by overnight delivery)
Alexander L. Brainerd, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brianerd@Heller.com
Michael.Plimack@hellerhrman.com

C. Joël Van Over, Esq. (Served electronically and by overnight delivery)
BINGHAM MCCUTCHEN LLP
3000 K Street, NW
Suite 300
Washington, DC 20007-5116
joël.vanover@bingham.com

Stephen E. Noona, Esq. (Served via hand delivery)
KAUFMAN & CANOLES, PC
150 W. Main Street
Suite 2100
Norfolk, Virginia 23510
senoona@kaufcan.com

/s/ R W. McFarland
Robert W. McFarland

3989546_1.DOC

RECEIVED
2006 MAY 16 A 10:40
CLERK US DISTRICT COURT NORFOLK, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

Inline Connection Corporation,

Plaintiff,

v.

Verizon Internet Services, Inc., et al.,

Defendants.

Civil Action No. 2:05CV205 (HCM)

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER (TO FILE DOCUMENTS UNDER SEAL)**

NOW COME Defendants Verizon California Inc., Verizon Florida Inc., Verizon Hawaii Inc., Verizon Maryland Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon Pennsylvania Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Verizon New England Inc., Verizon North Inc., Verizon Northwest Inc., Verizon West Coast Inc., Verizon Virginia Inc., Verizon South Inc., and Contel of the South Inc. d/b/a Verizon Mid-States ("Verizon Defendants"), pursuant to Rule 5 of the Rules of the United States District Court for the Eastern District of Virginia ("Local Rule 5"), and file this their Memorandum in Support of their Motion for Protective Order (to File Documents Under Seal).

The Verizon Defendants, pursuant to Local Rule 5, seek to file their "Stayed Defendants' Memorandum in Support of their Motion to Lift Stay, Dismiss with Prejudice, Award Defendants Attorneys Fees and to Grant Sanctions Against Inline and its Counsel" under seal for the reasons set forth herein.

It is well settled that the "protection of a party's interest and confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm" provides a valid basis for an "exception to the presumptive openness of judicial proceedings . . .." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1070-1071 (3rd Cir. 1984) (internal citations omitted). The Fourth Circuit has acknowledged an exception to the public threat of access where such access to judicial records could provide a "source of business information that might harm a litigant's competitive standing." See Woven Electronics Corp. v. Advance Group, Inc., 1991 U.S. App. LEXIS 6004, at **17-19 (4th Cir. April 15, 1991) (unpublished).

In this case, several of the documents attached as exhibits to the Verizon Defendants memorandum are documents that were provided by Inline to the Verizon Defendants in litigation that is presently ongoing in the United States District Court for the District of Delaware. Inline initially refused to provide these documents without a protective order, as Inline contends that the information contained therein is highly confidential and cannot be disclosed without harming Inline.[1] Ultimately, the Verizon Defendants demonstrated to Inline's counsel that the local practice in the District of Delaware is for the production of documents under an agreement between counsel that the documents will be protected as attorneys eyes only or highly confidential until such time as a protective order can be considered. This local practice permits the production of documents more rapidly.

Because the Verizon Defendants, by counsel, have agreed to take steps to protect these documents and the information contained therein, from public disclosure, the

[1] The Verizon Defendants do not believe that Inline's characterization is correct, or that the information contained within these documents is properly the subject of any such protection.

Verizon Defendants have filed this motion to seal in order to comply with their agreement with Inline's counsel.

The Verizon Defendants also seek protection of the memorandum itself because it contains, in a substantial number of places, information culled from these allegedly proprietary documents. This information is interspersed throughout the memorandum in such a manner that redacting solely this information would render the unredacted portions exceedingly difficult to follow, if not outright meaningless. As a result, the Verizon Defendants seek to seal the memorandum in its entirety.

While the Verizon Defendants are filing this memorandum and the exhibits thereto subject to this motion for a protective order, the memorandum and the documents themselves, and the information they contain, came from Inline. As a result, while the Verizon Defendants have taken steps necessary to seal these documents as filed with the Court, a copy of all pleadings and the exhibits thereto, have been provided to Inline's counsel.

WHEREFORE, the Verizon Defendants pray the Court enter a ruling upon the Verizon Defendants' motion after providing Inline an opportunity to convince the Court that these documents, and the information contained therein, must remain protected from public disclosure.

Respectfully submitted,

By: [signature]
Robert W. McFarland
McGuire Woods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Dated: May 16, 2006

Counsel for Verizon Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of May, 2006, a true copy of the foregoing was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq. (Served electronically and by overnight delivery)
Alexander L. Brainerd, Esq.
Alyssa T. Koo
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brianerd@Heller.com
Michael.Plimack@hellerhrman.com
Alyssa.Koo@Heller.com

C. Joël Van Over, Esq. (Served electronically and by overnight delivery)
Robert C. Bertin, Esq.
SWIDLER BERLIN LLP
3000 K Street, NW
Suite 300
Washington, DC 20007-5116
cjvanover@swidlaw.com
rcbertin@swidlaw.com

Stephen E. Noona, Esq. (Served via hand delivery)
Kaufman & Canoles, PC
150 W. Main Street
Suite 2100
Norfolk, Virginia 23510
senoona@kaufcan.com

Robert W. McFarland

3989609_1.DOC

RECEIVED

2006 MAY 16 A 10:44

CLERK US DISTRICT COURT
NORFOLK, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

Inline Connection Corporation,

Plaintiff,

v.

Verizon Internet Services, Inc., et al.,

Defendants.

Civil Action No. 2:05CV205 (HCM)

**ORDER**

CAME ON the Verizon Defendants, by counsel, upon their motion for a protective order (to file documents under seal), in which the Verizon Defendants seek an order permitting the filing, under seal, of their Memorandum in Support of Their Motion to Lift Stay, Dismiss with Prejudice, Award Defendants Attorneys Fees, and Grant Sanctions, and exhibits 1-6 thererto.

The Court GRANTS / DENIES the motion for a protective order, and ORDERS that the Clerk of this Court file the referenced memorandum and exhibits under seal / in the public records of this Court.

It is so ORDERED.

Entered this ___ day of ____________, 2006.

______________________________
Henry Coke Morgan, Jr.
United States District Judge

3989682_1.DOC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| Inline Connection Corporation,<br>Plaintiff,<br>v.<br>Verizon Internet Services, Inc., et al.,<br>Defendants. | Civil Action No. 2:05CV205 (HCM)<br>**REDACTED – PUBLIC VERSION** |

**STAYED DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO LIFT STAY, DISMISS WITH PREJUDICE, AWARD DEFENDANTS ATTORNEYS FEES AND GRANT SANCTIONS AGAINST INLINE AND ITS COUNSEL**

Defendants hereby submit this memorandum in support of their motion to: (1) lift the Court's previous stay; (2) dismiss the action with prejudice; (3) declare this case exceptional under 35 U.S.C. § 285; (4) award the defendants fees and costs under the Court's inherent powers, § 285, and 28 U.S.C. § 1927; and (5) impose the fee award jointly and severally on Plaintiff Inline Connection Corporation ("Inline") and its lead law firm, Heller Ehrman LLP ("Heller").[1]

The Verizon defendants understand the unusual and serious nature of this request, but newly uncovered facts require that defendants bring this matter to the Court's attention. Recently-produced documents reveal that this lawsuit is based upon an intentional plan to mislead this Court with knowingly deceptive statements. After suffering setbacks in a related

[1] Defendants file this motion under seal only because Inline designated all of its ownership documents disclosed on May 5, 2006, as "highly confidential" and consistent with Inline's designation, they cannot yet be made available to the public. Thus, filing under seal was the only manner in which the Verizon defendants could bring this matter before the Court at the present time. Indeed, despite defendants' prompt and repeated requests, Inline refused to let Verizon's in-house counsel be apprised of the content of the documents until May 12, 2006. Defendants do not concede that these documents are appropriately designated.

Delaware patent infringement case against AOL and EarthLink involving the same patents here at issue, and before Inline commenced this lawsuit, Inline transferred the patent ownership rights necessary for standing to institute a patent infringement lawsuit to different entities: BBTI and Paperboy Ventures. Inline, Heller, BBTI and Paperboy Ventures then brought this lawsuit against the Verizon defendants and deliberately concealed this ownership transfer and the existence of BBTI/Paperboy in an attempt to preserve venue in this Court, so as to use this Court's reputation for efficient docket management to "overturn" the Delaware setbacks.

This deception was uncovered almost by chance in the related Delaware litigation between Inline and AOL/EarthLink in February, 2006. After this Court transferred a portion of this case to Delaware, Inline and Heller continued to conceal the facts from Verizon and even fought (unsuccessfully) a motion to compel in the transferred Delaware case before Judge Farnan. Although Inline and Heller continue to withhold the full set of related documents, the following information is available from the limited documents produced to date:

- This Court lacks subject matter jurisdiction for the present lawsuit because at the critical time of filing this lawsuit, Inline did not possess the requisite ownership interest to sue on the asserted patents;
- Inline and Heller repeatedly misled this Court with statements regarding ownership in opposing Verizon's motion to transfer the case to Delaware;
- Inline and Heller, as well as Paperboy Ventures and BBTI (both of which are Delaware companies), intentionally kept the critical ownership transactions "secret" so as to be able to (falsely) assert venue in this Court and suppressed documents that were critical to this Court's evaluation of the defendants' transfer motion.

The actions described below merit both declaring this case "exceptional" and awarding Defendants their attorneys fees and costs.[2] Strong deterrent measures are necessary to prevent similar future attempts to "game" and deceive this Court.

## I. FACTUAL BACKGROUND

### A. The Original Delaware Actions

In April and June 2002, Inline filed patent infringement complaints against Verizon Communications, Inc. ("Verizon"), AOL Time Warner, Inc. ("AOL") and EarthLink Inc. ("EarthLink") in the United States District Court for the District of Delaware. According to the complaints, Inline held "the entire right, title and interest in" the patents-in-suit at that time. Inline voluntarily dismissed its claims against Verizon without prejudice in September 2002, and made a tactical decision to proceed solely against AOL and EarthLink. Inline apparently hoped to obtain favorable rulings against these two Internet Service Providers ("ISPs") that it could then use against other similarly situated ISPs and their suppliers, including various Verizon entities.

The AOL and EarthLink actions were consolidated in January 2003 (the "*AOL* case"). Originally, Inline used Kile Goekjian Lerner & Reed PLLC (the "Kile law firm") as its lead counsel. However, trial counsel – and patent ownership – changed at the end of June 2003.

[2] Inline's local counsel, Kaufman & Canoles, was apparently also an innocent victim in this deception. The documents produced to date provide no indication that Kaufman & Canoles knew of the activities.

Immediately thereafter, on July 3, 2003, attorneys from the Swidler firm entered their appearances in the *AOL* action.

The Delaware federal district court held a Markman hearing in the *AOL* case on August 28, 2003 and issued its claim construction opinion on January 27, 2004. *Inline v. AOL*, 302 F. Supp. 2d 307 (D. Del. 2004). The Court's claim construction was highly unfavorable to Inline and effectively eliminated 90% or more of Inline's claimed damages.

**B. Transfer Of Effective Ownership And Control To Paperboy Ventures And Mercury/BBTI.**

Immediately following the Delaware court's Markman decision, the Pie Squared investors and Inline completely renegotiated the ownership arrangements. Based on the documents produced so far, the various entities involved in these negotiations included Inline, Inline's President David Goodman, Pie Squared, Paperboy Ventures LLC (a Delaware corporation), and a new, to-be-formed Delaware corporation originally known as Mercury Communications I, LLC, but which subsequently changed its name on or about September 29, 2005 to Broadband Technology Innovations LLC (hereafter "Mercury/BBTI").[3]

An entirely new ownership arrangement was put into place on March 3-4, 2004.

has not produced these agreements.

With the *AOL* case carved out for Pie Squared, effective ownership of the patents-in-suit was transferred from Inline to Mercury/BBTI, the newly created Delaware corporation, on

[3] Significantly, the "Mercury" to "BBTI" name change occurred just 5 days before the October 4, 2005 hearing before this Court on the Verizon defendants' transfer motion.

March 4, 2004.

To date, Inline refuses to identify the actual owners/investors in Paperboy Ventures and/or Pie Squared.

On the same day that Mercury/BBTI was created, *i.e.*, March 4, 2004, Inline and Goodman entered an "Exclusive License Agreement" with Mercury/BBTI (Exhibit 4).  Under that agreement,

**C. Paperboy Ventures And Heller File The Present Lawsuit Against The Verizon Defendants.**

The present action was filed "in the name of Inline" in this Court on April 6, 2005. From the start, the litigation has been conducted under the day-to-day control of the Heller law firm. It appears that this litigation was initiated and directed by Paperboy Ventures – a Delaware corporation – pursuant to the terms of the Mercury/BBTI exclusive license agreement.

Paragraph 24 of Inline's Complaint filed in this Court states that "Inline is the owner of all right, title and interest" in the four specified patents-in-suit. Inline, Mercury/BBTI, Paperboy Ventures and Heller all knew, or clearly should have known, that this allegation was both false and clearly misleading under controlling Federal Circuit precedent.[5]

As discussed in Defendants' previous motion papers regarding transfer and personal jurisdiction (*see, e.g.*, D.I. 21, 29, 30, 32, 36, and 45), this action was originally filed in this Court as part of a "forum shopping" strategy. Inline and Pie Squared had received a series of adverse decisions from the Delaware court in the *AOL* case. Paperboy Ventures and Mercury/BBTI hoped that by filing this case in the "rocket docket," they could relitigate many of these issues and obtain a favorable jury verdict before the *AOL* case proceeded to trial. At the very least, they hoped they could force immediate discovery from the Verizon defendants that could be used by their Pie Squared affiliate in the *AOL* case.

---

[4] The HellerErhman website identifies Paperboy Ventures as a client of its Patents and Trademarks Group. http://www.hellerehrman.com/en/practices/pr_pate_clients.htm.

[5] The Swidler law firm also appears on the Complaint filed in this action. The documents produced to date do not show the full extent of the Swidler firm's knowledge concerning the prior transfer of effective ownership to Mercury/BBTI and Paperboy Ventures in March 2004. However, there is no information currently produced by Inline to suggest that Inline's local counsel, Kaufman & Canoles, had any knowledge concerning the March 2004 transfer of ownership.

The Verizon Defendants' motion to transfer this action to Delaware threatened to derail the efforts of Paperboy Ventures, Mercury/BBTI and Heller to misuse this Court's jurisdiction for these ulterior purposes. In order to attempt to defeat transfer, they filed affidavits and made arguments emphasizing that Inline – in whose name the suit had been filed – was a Virginia corporation. At the same time, they never revealed to the Court or to Defendants that effective ownership of the patents-in-suit and complete control over this litigation had been transferred to the Delaware corporations, Paperboy Ventures and Mercury/BBTI.

For example, the opposition memorandum filed on Inline's behalf to the motion to transfer (D.I. 24) repeatedly argued that: "Plaintiff Inline is a Virginia corporation" (p. 2); "Inline is organized and exists under the laws of Virginia" (pp. 4 & 7); and "A defendant's burden of proof to establish that transfer is warranted is particularly high where the plaintiff has ties to [Virginia]" (p. 6).

The opposition memorandum was supported by a declaration from a Heller attorney. The declaration attached copies of various documents confirming that Inline was a Virginia corporation. The declaration, however, did not disclose to Defendants or the Court the fact that Paperboy Ventures and Mercury/BBTI – both of which are Delaware corporations – had acquired effective ownership of the patents-in-suit and were in control of the litigation.

The same types of misleading arguments were presented by counsel from Heller appearing on behalf of Inline at the October 4, 2005 hearing on the transfer motion:

- "We filed this case in Virginia because plaintiff is a Virginia company." (Tr. 16-17)

- "I would submit that this case still belongs in Virginia for the simple reason that in the cases cited by the parties, <u>there is not a single case in which this Court has transferred a case that was brought by a Virginia plaintiff</u>, regardless of the location of defendants." (Tr. 23, emphasis added)

- "The plaintiff has a choice of forum particularly when the plaintiff is a Virginia corporation, and the Virginia corporation here is Inline." (Tr. 26)
- "The primary reason [for filing in the Eastern District of Virginia] was the location of the parties and the fact that the plaintiff is a Virginia corporation." (Tr. 29)
- "There are cases, Your Honor, where retailers and distributors have been stayed so that the rest of the cases have been transferred, but those cases do not involve a Virginia plaintiff ...." (Tr. 31-32, emphasis added)
- "[T]he fact that the plaintiff is a Virginia company makes this a special case ...." (Tr. 32-33)[6]

Significantly, the "Mercury" to "BBTI" name change had occurred just five days prior to the oral argument, and the fact of Mercury/BBTI ownership was undoubtedly well known to both Inline and Heller at that time.

**D. Excessive Costs Imposed Upon The Verizon Defendants.**

This action was improperly filed "in the name of Inline" by the true parties in interest, *i.e.*, Paperboy Ventures and Mercury/BBTI, both of which are Delaware corporations. Inline has no standing to sue under Federal Circuit precedent (*see infra*, pp. 9 – 11) and the action was brought for the ulterior purpose of evading adverse rulings from the Delaware court in the *AOL* case. Even without knowing any of the facts concerning Paperboy Ventures, Mercury/BBTI, Pie Squared and Heller's representation, this Court correctly recognized that the proper venue for this case was Delaware. (*See* D.I. 53 & 55).

As a result of the improper filling of this action "in the name of Inline" in this Court, the Verizon defendants were required to bear unnecessary costs, expenses and attorneys fees in:

1. Successfully moving to transfer this case to Delaware;
2. Successfully severing and staying claims against OTC defendants who were improperly joined as part of the "forum shopping" strategy; and

[6] A copy of the transcript from that hearing is attached hereto as Exhibit 5.

3. Responding to Inline's massive, preemptory demands for open-ended discovery, including matters that the Delaware court in the *AOL* case had already ruled were irrelevant.

The Verizon Defendants incurred several hundred thousands of dollars of litigation costs in defending this action prior to transfer.

## II. ARGUMENT

### A. This Court Must Lift Its Present Stay And Dismiss The Case And Inline's Actions Warrant Dismissal With Prejudice.

The limited documents grudgingly produced by Inline/Heller on May 4, 2006, conclusively demonstrate that this Court does not have subject matter jurisdiction over the present stayed lawsuit. As Federal Circuit decisions make clear:

- The issue of standing to sue in a patent infringement action is "jurisdictional" and standing must be present at the time the suit is brought.
- Inline bears the burden of establishing that it has standing.
- Under the Patent Act, a "patentee" and "the successors in title to the patentee" can bring suit. 35 U.S.C. §§ 100, 281.
- "[I]f the patentee transfers all substantial rights under the patent, it amounts to an assignment" and the transferee will be deemed the "effective patentee" for purposes of jurisdictional standing.

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1339-40 (Fed. Cir. 2006); *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005).

Where the plaintiff in a patent infringement suit cannot prove that it owned the patents-in-suit when it filed the complaint, "<u>the district court lacks subject-matter jurisdiction</u>." *E.g.*, *Pinpoint, Inc. v. Amazon.com, Inc.*, 347 F. Supp. 2d 579, 581 (N. D. Ill. 2004) (Posner, C. J., sitting by designation) (emphasis added); *Depuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237 (N.D. Ill. 2005) (Posner, C. J., sitting by designation).

Thus, it is clear, when this suit was filed in April 2005, Inline was not the "owner" as required for standing to sue. "A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights." *State Contracting & Eng'g. Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1062 (Fed. Cir. 2003). "It is well established that all entities having substantial rights in the patent must join or be joined in infringement litigation." *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). Given that this Court lacks subject matter jurisdiction, the case must be dismissed.[7]

Moreover, Inline's bad faith litigation and attempts to conceal the true ownership merit dismissal with prejudice. The case was knowingly and purposefully brought by concealed third parties (Paperboy Ventures and BBTI) in Inline's name based upon false allegations of ownership. "[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir., 1989) (quoting *Wyle v. R.J.*

[7] After producing the ownership transfer documents, Inline/Heller tacitly acknowledge that their action against the Verizon defendants should be dismissed for lack of subject matter jurisdiction with two related activities in the District of Delaware. Mercury/BBIT both (a) filed a separate action for patent infringement against the transferred Verizon defendants under substantially the same patents and (b) filed counterclaims of patent infringement to Verizon's first amended answer and counterclaims in the action that this Court transferred to Delaware.

*Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)) (dismissing action for false documents appended to complaint)). Moreover, Inline/Heller's "bad faith motivation also may be inferred from false allegations in the complaint." *Baker v. Urban Outfitters, Inc.*, 2006 U.S.Dist. Lexis 27429, at *11 (S.D.N.Y. 2006)(awarding fees and costs under inherent powers and Section 1927). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *E.g.*, *Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).

Indeed, the facts of the present case are surprisingly close to a recent Federal Circuit case addressing the standing issue:

> As outlined previously, [plaintiff] repeatedly misrepresented its ownership of the *'860 patent* and concealed evidence that would reveal its lack of ownership. See *Schreiber III, 305 F. Supp. 2d at 959-60*. In its brief, [plaintiff] does not contest these facts, except to argue that the misconduct somehow was not intentional and therefore not sanctionable. There can be no claim that [plaintiff]'s conduct is not sanctionable. Quite apart from whether [plaintiff]'s misstatements in the period before September 1998 were sanctionable, the conduct of [plaintiff] and its counsel after September 1998, when counsel became aware of the assignment of the *'860 patent*, was plainly sanctionable. Once counsel became aware that highly material false statements had been made by a witness, in pleadings submitted to the court and in response to discovery requests, and that highly material documents had not been produced as required, [plaintiff] and its counsel were under an obligation to promptly correct the record. "If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures." *Wis. Sup. Ct. R. 20:3.3*, adopted by reference, *E.D. Wis. Local R. 83.10*. "A party is under a duty seasonably to amend a prior response to . . . [a] request for production . . . if the party learns that the response is in some material respect incomplete or incorrect . . . ." *Fed. R. Civ. P. 26(e)(2)* ... [Plaintiff]'s counsel also completely failed to discharge their duty to bring to the "tribunal's attention, 'without delay,' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 23, 137 L. Ed. 2d 170, 117 S. Ct. 1055 (1997)* (quoting *Bd. of License Comm'rs v. Pastore, 469 U.S. 238, 240, 83 L. Ed. 2d 618, 105 S. Ct. 685 (1985))* (emphasis in original). The district court found that, upon learning of the assignment, [plaintiff]'s counsel advised their client to reacquire the patent without disclosure instead of disclosing the potential jurisdictional defect to the court. *Schreiber III, 305 F. Supp. 2d at 959*. Contrary to [plaintiff]'s contention, [plaintiff] and its counsel could not have "reasonably believed that these facts were not material to subject-matter jurisdiction or any other issue" in the case. (Br. of Appellant at 23.) We can find no error in the district court's finding that [plaintiff] and its counsel engaged in improper conduct.

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 (Fed. Cir. 2005) (affirming vacating of judgment)(footnote omitted).

**B. This Court Should Require Inline And Heller To Pay All Of Defendants' Litigation Fees And Costs In Defending This Spurious Lawsuit.**

The facts regarding the efforts of Inline, Paperboy Ventures, BBTI, and Heller to conceal ownership could scarcely be more telling. These entities concocted the entire scheme to mount a collateral attack on the adverse Delaware rulings. The linchpin to the scheme required misusing this Court's reputation for efficient case management to "leapfrog" the Delaware case. The only hope of success for this forum-shopping scheme was to rely upon Inline's alleged Virginia ties. Thus, they had to conceal the true ownership (Paperboy and BBTI) which was entirely based in Delaware to make repeated misleading representations focusing on Inline's connections to Virginia. *See supra* pp. 5-8.

**1. This Court May Rely Upon At Least Three Different Authorities That Compel Deterring The Wrongful Actions Of Inline And Heller.**

The concerted conduct of Inline, Heller, and the true owners of the patents-in-suit (Paperboy Ventures and BBTI) is clearly sanctionable. This Court may rely upon three separate analytical approaches to redress this conduct:

- Utilize this Court's inherent powers as recognized in *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), to award fees and costs against both Inline and Heller;
- Declare this case exceptional and award the defendants attorneys fees under 35 U.S.C. § 285;
- Sanction Heller for its vexatious, bad faith conduct in wrongfully bringing, maintaining, and multiplying these proceedings under 28 U.S.C. § 1927.

If the Court does not deter this egregious conduct, then every future forum-shopper has a

roadmap to attempt to gain venue in a desired district without fear of any adverse consequence.[8]

The requirements of the three independent bases for sanctions are similar. *Chambers*

guides the use of the Court's inherent powers:

> Third, and most relevant here, a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy."

501 U.S. at 45-46 (emphasis added) (citations and footnote omitted).

The standard for an "exceptional" case under 35 U.S.C. § 285 recites many of the same

factors:

> The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional.

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)

(emphasis added) (citations omitted).

Finally, a similar list of factors provides good cause for granting sanctions against

counsel under 28 U.S.C. § 1927. "The purpose of § 1927 is to deter frivolous litigation and

abusive practices by attorneys and to ensure that those who create unnecessary costs bear them."

*Footman v. Cheung*, 341 F.Supp.2d 1218, 1223 (M.D.Fla. 2004).

---

[8] Rule 11 is also a source of potential authority to grant sanctions. However, as was recognized in *Chambers*, the full breadth of the offensive conduct may not always be completely reachable through Rule 11 and the Court's inherent powers may be employed to address the "entire course of conduct." 501 U.S. at 50-51. Sanctions under either inherent powers or section 1927 require the Court to hold a "show-cause" hearing.

False allegations in a complaint are clearly sanctionable. *E.g.*, *Methode Elecs., Inc. v. Adam Techs., Inc.*, 373 F.3d 923, 925 (7th Cir. 2004) (affirming sanctions under the court's inherent powers where "the venue allegation not only lacked evidentiary support but was intentionally false and that [the party's] conduct in advancing it was 'intentionally deceptive.'"). This Court's inherent power includes "the ability to do whatever is reasonably necessary to deter abuse of the judicial process." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (*en banc*).

**2. The Scheme Of Inline, Heller And The True Owners, As Shown In The Newly-Revealed Documents, Meets The Requirements To Make Defendants Whole For Defending This Bad Faith Lawsuit.**

Inline, Heller, and the true owners of the patents-in-suit filed this action as part of a forum-shopping scheme to avoid then-recent adverse rulings in the Delaware litigation against AOL and Earthlink. The "forum-shopping" scheme involves at least four separate instances of bad faith litigation conduct: (1) attempting to mislead this Court into believing Virginia was an appropriate forum based on false complaint allegations and misleading attorney argument; (2) attempting to conceal BBTI and Paperboy Ventures identity and involvement to prevent discovery against them; (3) attempting to avoid collateral estoppel of any potential adverse judgment by having the incorrect party initiate the lawsuit; and (4) deluging all Defendants with abusive discovery.

After losing in Delaware on key claim construction issues, the parties made a secret deal. ~~All substantive ownership rights were to go to Paperboy/BBTI, which insisted that its regular~~ counsel (Heller) take charge of future litigation against parties such as Verizon. The true owners would "sue in the name of Inline" to preserve a chosen venue and conceal the ownership transfer.

In furtherance of this scheme, Inline and Heller needed to make false and misleading allegations in the complaint filed in this Court against the Verizon defendants. Specifically, Inline and Heller alleged that "Inline is the owner of all right, title and interest" in the four specified patents-in-suit. Complaint at Paragraph 24. Both Inline and Heller knew this to be a false statement.

Compounding the deception, Inline's attorney from Heller repeatedly made misleading statements to this Court at oral argument on the transfer motion:

- "We filed this case in Virginia because plaintiff is a Virginia company." (Tr. 16-17)
- "I would submit that this case still belongs in Virginia for the simple reason that in the cases cited by the parties, <u>there is not a single case in which this Court has transferred a case that was brought by a Virginia plaintiff</u>, regardless of the location of defendants." (Tr. 23, emphasis added)
- "The plaintiff has a choice of forum particularly when the plaintiff is a Virginia corporation, and the Virginia corporation here is Inline." (Tr. 26)
- "The primary reason [for filing in the Eastern District of Virginia] was the location of the parties and the fact that the plaintiff is a Virginia corporation." (Tr. 29)
- "There are cases, Your Honor, where retailers and distributors have been stayed so that the rest of the cases have been transferred, <u>but those cases do not involve a Virginia plaintiff</u> ..." (Tr. 31-32, emphasis added)
- "[T]he fact that the plaintiff is a Virginia company makes this a special case ..." (Tr. 32-33)

While it was technically true that the "plaintiff" (Inline) is a Virginia corporation, the statements were clearly misleading. Inline and Heller knew that the proper plaintiff(s) (necessary for subject matter standing) were, in fact, the Delaware corporations Paperboy Ventures and BBTI. Indeed, just five days prior to the oral argument, BBTI had just changed its name from "Mercury Communications I, LLC," so that Inline and Heller could not have simply "forgotten" the identities of the true owners.

Not only did Inline/Heller make misleading affirmative statements, but they also suppressed relevant information from this Court and Defendants. The documents that Inline/Heller finally produced in May 2006 (after fighting a motion to compel in the Delaware court) were clearly pertinent to this Court's consideration of Verizon's transfer motion last October. To conceal such critical documents from this Court and Defendants clearly merits sanctions.[9]

While concealing the facts of its "non-standing" in this Court, Inline/Heller deluged all 25 defendants with abusive discovery requests demanding, in essence, every single document in every Defendant's files. Indeed, the discovery requests encompassed numerous services that the Delaware court in the AOL/EarthLink case had already ruled were not infringing. Inline/Heller filed motions to compel such documents at a time when they knew that Inline did not have standing to prosecute this lawsuit.

Moreover, Inline and Pie Squared had apparently failed to take important discovery in the Delaware actions against AOL/EarthLink and hoped to misuse this Court's procedures to feed information and documents from the Virginia case back to those Delaware actions. This was all part and parcel of Inline/Heller's attempts to "relitigate" the *AOL* case, so as to correct perceived mistakes made in Delaware.

This scheme also precluded – in bad faith – discovery against the true owners, Paperboy Ventures and BBTI, as well as Paperboy Ventures' affiliate Pie Squared. These entities have

---

[9] There is also evidence that Inline, BBTI, and others attempted to "fix" some of the ownership documents by *ex poste facto* "revising" some of the terms therein.

still refused to provide even the most basic information with respect to their ownership structures.[10] Had Paperboy Ventures and BBTI been named as Plaintiffs, they would have clearly been subject to such discovery.

Finally, this scheme was apparently a surreptitious attempt to avoid potential collateral estoppel of any adverse judgments or rulings from the Delaware litigation against AOL and EarthLink and/or this lawsuit. Had the Defendants established non-infringement and/or invalidity and the true ownership not been uncovered, either Paperboy Ventures or BBTI would have been free to sue again, arguing that they – as the proper owners – are not bound by a judgment against Inline, which never had proper standing. Thus, not only did the entities hope to get a "second bite at the apple" in Virginia, but they were also reserving the ability to take a possible third bite at the apple at some other point in the future.

**3. This Court Cannot Let These Actions Go Unpunished And The Defendants Should Not Bear The Expenses Of Defending This Spurious Lawsuit.**

This intentional, surreptitious scheme attacks the very foundations of this Court. One central tenet of American jurisprudence is that the parties and attorneys are expected to be candid with the Court – particularly about such fundamental issues as the party's standing and right to invoke the judicial process. The Eastern District of Virginia has a well-deserved reputation for quick and efficient administration of patent cases and many judges have highlighted the possibility of abusing that efficiency with forum shopping. This case goes beyond aggressive forum shopping into outright deception. Indeed, under this Court's original schedule, the parties would have proceeded to trial in January 2006. If this Court had not properly transferred the

[10] It would seem appropriate for this Court to require complete disclosure of all such information to fully assess the impropriety of the actions of Inline/Heller.

case, the scheme might well have succeeded. This Court must act to deter such behavior and reimburse the Verizon defendants for their litigation expenses.

In that respect, not only have Inline/Heller wasted the resources of this Court, but their actions have also caused significant financial burden to the Verizon defendants. The Court should hold a show-cause hearing and impose monetary sanctions jointly and severally on Inline and Heller requiring them to reimburse all of the Verizon defendants' attorneys fees and litigation costs incurred in defending this action prior to the Court's December 5, 2006 Order.

## III. CONCLUSION

Inline and Heller filed a complaint containing a crucial material representation that they knew to be false. They knowingly misled this Court with oral statements regarding alleged connections to Virginia. They knowingly withheld key information relevant to this Court's consideration of the pending transfer motion. Even now, they continue to refuse to provide full disclosure of the details of their scheme.

Inline and Heller greatly exceeded the bounds of permissible behavior. This Court should act both to protect the integrity of the Court and to protect parties such as Verizon that are subject to such improper schemes to manipulate the Federal court system. The Verizon defendants respectfully request that this Court order Inline and Heller, jointly and severally, to reimburse the Verizon defendants for the costs incurred in defending this spurious action.

Respectfully submitted,

By: [signature]
Robert W. McFarland
McGuire Woods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: 757.640.3716
Facsimile: 757.640.3966

Brian C. Riopelle
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: 804.775.1084
Facsimile: 804.698.2150

Andrew G. McBride
John B. Wyss
Kevin P. Anderson
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile : 202.719.7049

Dated: May 16, 2006

Counsel for Verizon Defendants

# CERTIFICATE OF SERVICE

I hereby certify that the 15th day of June, 2006, a true copy of the foregoing ***Redacted Version of D.I. 113, Verizon Defendants' courtesy copy of May 16, 2006 E.D. Va. Filing*** was sent to plaintiff's counsel, in the manner indicated, upon:

Julia Heaney, Esq. (Served electronically and by hand delivery)
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
Post Office Box 1347
Wilmington, Delaware 19899-1347
jhefiling@mnat.com

Michael K. Plimack, Esq. (Served electronically and by overnight delivery)
Alexander L. Brainerd, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brainerd@hellerehrman.com
Michael.Plimack@hellerehrman.com

C. Joël Van Over, Esq. (Served electronically and by overnight delivery)
Bingham McCutchen LLP
3000 K Street, NW
Suite 300
Washington, DC 20007-5116
joel.vanover@bingham.com

By: /s/ Jeffrey B. Bove
Jeffrey B. Bove (#998)

469847<CB>