1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                    Norfolk Division

3

 - - - - - - - - - - - - - - - - - -
4                                    )
   INLINE CONNECTION CORPORATION,    )
5                                    )
           Plaintiff                 )    CIVIL ACTION NO.
6                                    )    2:05cv205
   v.                                )
7                                    )
   VERIZON INTERNET SERVICES, INC.,  )
8   et al,                           )
                                     )
9          Defendants.               )
 - - - - - - - - - - - - - - - - - -

10

11                TRANSCRIPT OF PROCEEDINGS

12                   Norfolk, Virginia

13                   October 4, 2005

14

BEFORE:   THE HONORABLE HENRY C. MORGAN, JR.
15            United States District Judge

16

17  APPEARANCES:

18            HELLER EHRMAN, LLP
              By:  Michael Kenneth Plimack
19                 AND
              KAUFMAN & CANOLES, PC
20            By:  Stephen Edward Noona
              Attorneys for the Plaintiff
21
              WILEY REIN & FIELDING, LLP
22            By:  John Benedict Wyss
                   AND
23            McGUIRE WOODS, LLP
              By:  Robert William McFarland
24            Attorneys for the Defendants

25                                         COPY

JODY A. STEWART, Official Court Reporter

2

1                          I N D E X

2                        E X H I B I T S

3

4   PLAINTIFF'S
    NO.              DESCRIPTION                    PAGE

5     1              Documents                        48

6

7

8   DEFENDANT'S
    NO.              DESCRIPTION                    PAGE

9     1              Documents                        48

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JODY A. STEWART, Official Court Reporter

3

```
 1              (Hearing commenced at 10:43 a.m.)
 2         THE CLERK:  In case number 2:05cv205, Inline
 3  Connection Corporation versus Verizon Internet Services,
 4  Inc., et al.
 5         Mr. Noona, Mr. Plimack, is the plaintiff ready to
 6  proceed?
 7         MR. NOONA:  We are.
 8         THE CLERK:  Mr. McFarland and Mr. Wyss, are the
 9  defendants ready to proceed?
10         MR. McFARLAND:  The defendants are ready, Your
11  Honor.
12         THE COURT:  All right.  We are here on the
13  defendant's motion, so I'll hear from the defendants first.
14         MR. McFARLAND:  Thank you, Your Honor.  May it
15  please the Court.  Robert McFarland on behalf of the moving
16  Verizon defendants.  Your Honor, let me introduce my
17  co-counsel, John Wyss, from the Wiley Rein firm, and also
18  with us is Mr. Lynn Suchyta who is in-house counsel for
19  Verizon.
20         We appreciate the Court hearing us on this matter.
21  We come, as the Court has noted, on our motion to transfer
22  venue from the moving Verizon defendants from this court to
23  the District of Delaware.  And I submit to the Court,
24  recognizing the burden that we face on a transfer motion, it
25  is nonetheless plain that the only logical action for this
```

4

```
 1    Court to take is to transfer this court to Delaware where it
 2    was originally filed over three years ago.
 3              THE COURT:  Verizon is an internet service provider,
 4    correct?
 5              MR. McFARLAND:  That's correct, Your Honor.  There
 6    are really two Verizon internet service providers:  VIS,
 7    Verizon Information Services, and GTE Net.
 8              THE COURT:  Are they both defendants in Delaware?
 9              MR. McFARLAND:  Yes, Your Honor.  They are both
10    Delaware corporations and --
11              THE COURT:  They are defendants in the Delaware
12    action?
13              MR. McFARLAND:  Oh, no, Your Honor, they are not
14    defendants in the Delaware action.
15              THE COURT:  So there are two other internet service
16    providers who are defendants in the Delaware action?
17              MR. McFARLAND:  That's correct.
18              THE COURT:  And Verizon was dismissed because
19    apparently they have the wrong corporate entities?
20              MR. McFARLAND:  That is exactly correct, Your Honor.
21              THE COURT:  But they didn't bring Verizon back in
22    after that happened?
23              MR. McFARLAND:  That is exactly right, Your Honor.
24    They sued Verizon Communications, Inc., originally over three
25    years ago in 2002 at the same time the plaintiffs sued AOL
```

5

1  and Earth Link.  They then, after Verizon Communications

2  moved for summary judgment -- and it's critical that they

3  moved for summary judgment, Your Honor, on the basis of

4  subject matter jurisdiction, not personal jurisdiction,

5  because they could not be brought before that court on a

6  personal jurisdiction basis but on the basis of subject

7  matter jurisdiction because that company is nothing but a

8  holding company and simply doesn't do what, for example, an

9  AOL or an Earth Link does as internet service provider.

10          THE COURT:  All right.  Well, presumably, they are

11  incorporated in Delaware.  So are you telling me that there's

12  no issue that they are amenable to the jurisdiction of the

13  Delaware court?

14          MR. McFARLAND:  That's correct.

15          THE COURT:  The plaintiff has not elected to join?

16          MR. McFARLAND:  That's correct, Your Honor.  No

17  question that the two Verizon entities, who are the proper

18  defendants in this action, the ISPs, the internet service

19  providers, the VIS and GTE Net, are both Delaware

20  corporations plainly amenable to jurisdiction in Delaware.

21          THE COURT:  All right.  Now, the so-called OTCs,

22  only two of those are subject to jurisdiction in Delaware?

23          MR. McFARLAND:  That's correct, Your Honor.  Which

24  is the same number that would be subject to jurisdiction in

25  this court.  There are only two --

JODY A. STEWART, Official Court Reporter

6

1          THE COURT:  We haven't gotten to jurisdiction yet.

2          MR. McFARLAND:  Correct, but I'm just saying --

3          THE COURT:  Now, the OTCs simply furnish the -- I'm

4     not a computer expert so you'll have to bear with me, but the

5     OTCs simply provide the means of transmitting the services to

6     the consumer?

7          MR. McFARLAND:  That's correct.

8          THE COURT:  They don't provide the offending

9     services --

10          MR. McFARLAND:  That's correct.

11          THE COURT:  -- initially.  They just transport,

12     let's say, the offending services of the internet provider to

13     the consumer?  That's what they do?

14          MR. McFARLAND:  Yes.  That is exactly right, Your

15     Honor.

16          THE COURT:  Well, what about --

17          MR. McFARLAND:  And that's why the OTCs are not a

18     necessary party to this litigation.  If they had been a

19     necessary party, they'd already be in the two Delaware cases.

20     In other words, the two Verizon entities that are clearly

21     necessary, VSI and GTE Net, they're ISPs, just like AOL and

22     Earth Link.  This litigation over the exact same four, and

23     soon to be five, patents is going on in Delaware without any

24     OTCs whatsoever in the case.

25          THE COURT:  There are only two defendants in the

7

1    case?

2            MR. McFARLAND:   There is one defendant in each case,

3    that's correct, AOL and Earth Link, the ISPs.

4            THE COURT:   There are two separate cases?

5            MR. McFARLAND:   Two separate cases essentially

6    consolidated, at least coordinated, and in both of those

7    cases, Your Honor, there are no OTCs as defendants, which

8    indicates that the OTCs are really not a necessary party.   In

9    fact, pursuant to the Delaware courts, claim construction --

10   I believe the claims construction done to date in that case

11   would indicate that the OTCs would not be infringers of the

12   ASDL.

13           THE COURT:   There are too many initials.   What is an

14   ASDL?

15           MR. McFARLAND:   That is what is at issue in this

16   case, Your Honor.   That is the Asymmetric Digital Subscriber

17   Line, the high speed internet access that's at issue here.

18   And if I said ASDL, I should have said ADSL.   But I think it

19   is very telling, Your Honor, that the same plaintiff for all

20   three cases not only brought suit against a Verizon entity in

21   2002 in Delaware, but has continued to litigate for over

22   three years against only the internet service providers.

23           So if the OTCs were really necessary parties, either

24   they would have been sued initially, or at a minimum there

25   would have been a motion to join them.   In fact, the OTCs are

8

1    not necessary parties, Your Honor.  They are brought in this

2    case as a red herring to try and divert this Court from what

3    is plainly the appropriate action, and that is to transfer

4    this case, which is incredibly complex.

5              We have right now four patents at issue in a highly

6    technological area.  I understand the plaintiffs want to add

7    a fifth patent, so that I believe it's 178 claims are open

8    for construction presently.  There would be 39 new claims

9    brought with a fifth patent --

10             THE COURT:  Sounds like a very interesting case.

11             MR. McFARLAND:  It is interesting, Your Honor, in

12   some sense, but it is interesting that it has been proceeding

13   for three and a half years in Delaware, and only now in 2005,

14   after originally agreeing that Delaware was the appropriate

15   forum, not only for AOL and Earth Link but for Verizon, does

16   the plaintiff come back and want to add -- excuse me, want to

17   file now in this court and force this court to undergo the

18   extensive, first off, discovery, as one might expect for

19   three and a half years of litigation.  There are incredible

20   discovery that's gone on in this case with all kinds of

21   discovery rulings, and there has already been claims

22   construction.  There has been Markman hearings in the

23   Delaware case.

24             Plaintiffs are asking this Court to have to step in

25   new and come up to speed and learn what has been going on for

JODY A. STEWART, Official Court Reporter

9

1   three and a half years when there is a court that has already

2   dealt with all these issues.  And there is no question, Your

3   Honor, that jurisdiction is appropriate in Delaware, and I

4   recognize that's the first thing this Court has to look at,

5   is jurisdiction appropriate in Delaware, could this case have

6   been brought in Delaware, and plainly it could have.

7           Not only are the two ISPs, Verizon ISPs amenable to

8   jurisdiction in Delaware, but we don't think they're

9   necessary, but the second level of defendants, what are

10  called the service companies, they are also Delaware entities

11  and can be subject to suit and certainly proceed there in

12  Delaware.

13          And then we get to there is a third level of

14  defendants that we don't think has anything to do with this

15  case, those are general service providers, such as Verizon,

16  that deals with such things as human resources benefits, that

17  kind of thing.  I don't think they're properly in this case,

18  but they're all Delaware companies, as well.

19          It is only when we get to the OTCs who really don't

20  need to be in this case whatsoever that then of the 18 OTCs

21  who have been sued, two are admittedly Virginia entities, but

22  they have nothing to do with what's really going on here.

23          THE COURT:  Well, I mean, in the more common

24  situation where a manufacturer would be suing another

25  manufacturer for patent infringement, the retailers are

JODY A. STEWART, Official Court Reporter

10

1  considered infringing?

2      MR. McFARLAND:  They are, Your Honor, but there is a

3  major difference.  For example, in the case, Your Honor had

4  the Brown situation where there were the sort of downstream

5  merchants who were selling the allegedly offending product.

6  There you've got either a direct sales situation, right, I go

7  into a merchant who is offending only in the sense that he is

8  selling the product, and you've got a one-on-one

9  relationship.

10      That isn't the case here with the OTCs.  The OTCs

11  are your basic local phone company, and the OTCs do not

12  contract with the person, the subscriber who wants this

13  service.  The internet service provider contracts directly

14  with the consumer here.  The OTC is simply serving as a

15  conduit for perhaps one element of the service.  But there is

16  no -- unlike even in the merchant relationship that Your

17  Honor dealt with in Brown, with the downstream merchant that

18  the Court felt was nonetheless removed enough that it could

19  be severed, in this case there is no direct relationship, no

20  contractual relationship, no direct relationship between the

21  consumer subscriber and the entity that's allegedly providing

22  the allegedly offending product, the ISP.  It's the ISP who

23  contracts.  So that's why, Your Honor, the OTCs are not

24  necessary --

25      THE COURT:  Well, what are you asking me to do,

JODY A. STEWART, Official Court Reporter

11

1   dismiss them?

2           MR. McFARLAND:  Yes, Your Honor.

3           THE COURT:  As opposed to stay the proceedings?

4           MR. McFARLAND:  You could stay the proceedings, Your

5   Honor, and wait to see what happens in Delaware.  That would,

6   I think, be acceptable, as well, or you could dismiss them

7   without prejudice and see if there's ever any indication by

8   Inline that they want to renew that litigation.  I suspect

9   there will not be.  It's gone on for three and a half years

10  in Delaware without a single OTC being a defendant.

11          Hard to believe that they are somehow a necessary

12  party in this case, but I do say, Your Honor, that absolutely

13  this Court needs to transfer the bulk of this case, what is

14  the crux of this case, the allegations against the ISPs to

15  the court that has dealt with it for three and a half years.

16          THE COURT:  Maybe that's why they want to because

17  they have been dealing with it for three and a half years.

18          MR. McFARLAND:  There is no question that is why

19  they want it here, Your Honor.  That is the only reason.  I

20  mean, if you step back and think about it, why else would a

21  plaintiff --

22          THE COURT:  Well, that is one of the considerations

23  in the motion to transfer is the condition of the docket.

24          MR. McFARLAND:  The docket is one thing, Your Honor,

25  and that is a consideration.  We acknowledge that.  But what

12

1    the plaintiff is asking in this case is to try and beat a

2    case, that's been going on in Delaware for three and a half

3    years, to trial to see if they can get one ruling here versus

4    perhaps what appears to be the ruling that they are going to

5    get in Delaware where they've already lost partial summary

6    judgment, they've already had claims construction and Markman

7    hearings that went against them, as well as discovery

8    rulings.   That's not appropriate.

9          In fact, I think it's the DataServices case, the

10   judge there, dealing with almost the exact same situation

11   with two districts in Texas, acknowledges what should not

12   occur is a race to the courthouse to see who can get to trial

13   first, particularly in the patent area where you are dealing

14   with such technical and complex subject matter and there is a

15   chance for inconsistent rulings.

16         The Delaware court makes one claim construction.

17   Then plaintiffs are asking this court to make essentially

18   another claim construction ruling.   That would mean that

19   theoretically you could have two appeals going up to the

20   Federal Circuit on claim constructions of the same patent.

21   That's not advisable.

22         And the only reason the plaintiffs are here in

23   Virginia, after they first filed suit against my client's

24   holding company in Delaware, is because they don't like

25   what's happened in Delaware.   That can be the only

JODY A. STEWART, Official Court Reporter

13

1    explanation.  It can't be that Delaware's an inconvenient

2    forum for them.  My goodness, they've been litigating there

3    for three and a half years.  It can't be that they can't get

4    access to the sources of proof for the witnesses.  In fact,

5    virtually all the critical witnesses are based in D.C., New

6    Jersey, New York or Pennsylvania, which is somewhat closer,

7    obviously, to Delaware than it is to Norfolk.  So that's not

8    the reason.

9        It can't be that they can't get jurisdiction over my

10    clients.  We've acknowledged we are absolutely amenable to

11    suit in Delaware.  What is the only reason that the plaintiff

12    now brings this case here having originally filed it three

13    and a half years ago in Delaware?

14        The only reason is they don't like what's going on

15    in Delaware.  That is not a basis for this Court to have to

16    wade through everything that's been going on for three and a

17    half years to deal with the discovery issues, potentially

18    inconsistent rulings, et cetera, when there's a court in

19    Delaware that's already done this and has the expertise, has

20    the familiarity to do it.

21        Let me just point this out, Your Honor.  There has

22    been limited discovery, and I say limited because we don't

23    think we've gotten what we're entitled to, but there have

24    been some exchange of discovery, and we got copies of some

25    e-mails in which before the plaintiffs brought suit in

JODY A. STEWART, Official Court Reporter

14

1  Delaware in 2002, their counsel specifically thought about,

2  considered, and apparently drafted a complaint to be filed in

3  this court.

4          Let me hand a couple e-mails up to Your Honor so you

5  can see.  There is two.  The first one is an e-mail from a

6  John Wiles to a Datavid, I guess, January 7th, 2002.  Now,

7  that's before the three suits were filed in Delaware in April

8  and June of 2002, and in January it is clear.  This is

9  Mr. Wiles, is, I believe, connected with Inline.  He notes

10  the rocket docket.  Further down, there is a discussion,

11  about halfway down the page, "They are getting ready to sue

12  on the rocket docket in Alexandria, Virginia."

13          THE COURT:  Well, that is not the rocket docket.

14  The rocket docket is in Norfolk.

15          MR. McFARLAND:  I always thought the rocket docket

16  was the entire eastern district, Your Honor.  And then if you

17  look at the second e-mail, Your Honor, from Mr. Kile later in

18  the month, on the second page, he notes that he's been before

19  the judges of the eastern district.  He's quite familiar with

20  the litigation there.  This is where we recommend filing an

21  action to get an early trial date.

22          These e-mails are critical because they underscore

23  that back in 2002 the plaintiff considered filing here in

24  this court, and thought it could do so, and even proceeded to

25  draft a complaint, and then for whatever tactical reason,

JODY A. STEWART, Official Court Reporter

15

1   decided to file the three cases in Delaware.  So they thought

2   about filing here, decided against it over three and a half

3   years ago, filed in Delaware, dismissed in Delaware as to my

4   client, because they didn't have subject matter jurisdiction

5   against the wrong Verizon entity, and then they didn't refile

6   in Delaware.  They didn't add the proper Verizon defendants,

7   although that information was plainly available to them as to

8   who they really needed to sue, and they didn't do that.

9        They waited three and a half years, let the

10  litigation proceed in Delaware for that period of time, don't

11  like what's happened in Delaware, and now come to this court

12  and say, oh, my goodness, we want to now be in this court,

13  notwithstanding that we decided not to be in this court

14  almost four years ago, notwithstanding that we've litigated

15  for three and a half years, that the Court there is

16  absolutely familiar with all the issues, has dealt with this

17  file history, 16 plus years of patent prosecution have been

18  going on over these patents, Your Honor.  That court is

19  familiar with it.  They ask this Court to ignore reality, and

20  I submit this Court should not ignore reality.

21        THE COURT:  I think it's curious that you have all

22  the books stacked up over there, and the plaintiff doesn't

23  have any.  Think there might be some psychology at work

24  there?

25        MR. McFARLAND:  Absolutely, Your Honor.

JODY A. STEWART, Official Court Reporter

16

1         THE COURT:  My law clerk would enjoy reading that.

2         MR. McFARLAND:  Well, the judge in Delaware, Your

3    Honor, did have to go through all this.  That is part of what

4    is necessary, the file history here, for these four patents.

5    It was necessary for her to go through this for the claims

6    construction.

7         And the plaintiff comes, and I think it's a polite

8    word would be presumptuous, another word might be

9    disingenuous, to ask this Court to go through this kind of

10   effort and this kind of labor when another court has already

11   been dealing with these patents for three and a half years.

12        And I submit to the Court the only thing that makes

13   sense here is to transfer the action to Delaware, Your Honor.

14        THE COURT:  All right.

15        MR. NOONA:  May it please the Court, Your Honor.

16   Stephen Noona on behalf of the plaintiff.  I'd like to

17   introduce Mr. Michael Plimack who is a partner in Heller

18   Ehrman from San Francisco.  He has been admitted before the

19   Court pro hac vice, and he'll address the issues before the

20   Court.  Thank you, Your Honor.

21        MR. PLIMACK:  Good morning, Your Honor.

22        THE COURT:  Good morning.

23        MR. PLIMACK:  May it please the Court.  I'd like to

24   start off by telling the Court why we filed this case in

25   Virginia.  We filed this case in Virginia because the

17

1  plaintiff is a Virginia company.  We filed this case in

2  Virginia because the defendants, that Verizon admits are most

3  important to this case, are in Virginia.

4          Now, what Verizon is trying to do is split this case

5  into a million pieces and ultimately to postpone the day of

6  judgment as long as possible.

7          Verizon --

8          THE COURT:  How would they accomplish that by having

9  to transfer it to Delaware?  Presumably, if they do, that

10  wouldn't be splitting it, it would be combining it with the

11  already pending case.

12          MR. PLIMACK:  Your Honor, it would be --

13          THE COURT:  And presumably since that case is

14  further along, it would result in an earlier resolution.

15          MR. PLIMACK:  Your Honor, the reason this would be

16  split is two:  First, the only court in which these

17  defendants can be sued in one case is this court in Virginia.

18          THE COURT:  Well, "these defendants," you're getting

19  into the OTCs?

20          MR. PLIMACK:  That's right, Your Honor.

21          THE COURT:  Why should the OTCs be in the case?

22          MR. PLIMACK:  The OTCs should be in the case because

23  they do substantial business in this district through the

24  Verizon entities that are located in Virginia.

25          The Verizon companies have a nationwide network that

JODY A. STEWART, Official Court Reporter

18

1 · is operated with a hub in Virginia.

2        THE COURT: Well, what difference does it make who

3 the OTCs are anyway? As the defendants pointed out, not only

4 are they not contracting with the consumer -- I'm trying to

5 think of an analogy. I mean, they're not as involved in the

6 process as the retailer would be, as Mr. McFarland pointed

7 out. They just happen to have a telephone line that's used

8 to transmit the service which the providers offer to the

9 consumer. And it, you know, could be anybody could furnish

10 that service.

11        I'm trying to think. I suppose if a truck delivered

12 a product from a manufacturer to the retailer, you could sue

13 the trucking company as easily as you could sue the OTCs in

14 this case, couldn't you?

15        MR. PLIMACK: Your Honor, the OTCs in this case are

16 not like a retailer. They are not like a distributor. They

17 have separate acts of infringement that make them on the hub.

18        THE COURT: What are the separation actions?

19        MR. PLIMACK: If I might put up a board, Your Honor,

20 I think I can show this, one of the claims from the patent.

21 If I could hand to Your Honor two claims, I think we will get

22 straight on this. I have handed this to opposing counsel.

23 Two of them. I'm handing up two of each, Your Honor. If I

24 could approach the board and put up the first claim.

25        Your Honor, this is the '596 patent. This is one of

19

1  the four patents at issue in the case.  What we have done is

2  we have highlighted the language of the patent that shows the

3  portions of the patent that are operated directly by the OTC

4  companies.

5           If you look, this is claim -- the first one is claim

6  47.  It is a dependent claim which depends on claim 21 so we

7  put claim 21 first.  Claim 21 says, "A system for

8  communicating information between an external source of

9  information and a pleurality of destinations of information

10  over a telephone wiring network used for passing telephone

11  signals in a telephone voice band between a pleurality of

12  telephone devices and telephone exchanges."

13           Your Honor, that preamble of the claim is operated

14  by the OTC companies.  They are the companies that operate

15  that portion of the claim.  Similarly, the single interface,

16  which is the next portion that we've highlighted -- I won't

17  go into tremendous detail about the technical points, Your

18  Honor, but this signal interface is coupled between an

19  external source of information, which this could be the

20  internet, and the telephone wiring network.

21           The OTC companies operate that telephone wiring

22  network.  The OTC companies operate the signal interface.

23  All of the subelements of this claim are operated by the OTC

24  companies.  This is not a situation where a retailer simply

25  picks up somebody else's product and sells it to the public

20

1    or distributor that puts something in a truck and ships it.

2            These OTC companies, by their own acts, are

3    infringing these patents.  Now, Verizon says, well, you

4    didn't include them in Delaware so they must not be necessary

5    parties.  It is true that the internet service companies

6    themselves infringed the patents, but there is no requirement

7    for a patent holder to sue every infringer in every single

8    case.

9            The fact of the matter is this is the case to

10   address Verizon.  This is the case to address the Verizon

11   national DSL system, and this is the only forum in which we

12   can do it.

13           THE COURT:  Well, if you enjoin the providers, there

14   would be nothing for the OTCs to transmit, would there?  So

15   if you get the injunction against them, that's the end of it.

16   You don't need relief against the OTCs.

17           MR. PLIMACK:  Your Honor, it may be that we get a

18   complete relief against the internet service company.

19           THE COURT:  Well, I mean, you've got to.  I mean, if

20   they can't sell the service, there is nothing to be

21   transmitted by the OTCs.

22           MR. PLIMACK:  The OTCs transmit not only the DSL

23   signals from the Verizon internet companies but they also

24   transmit signals from other internet service providers.  The

25   OTC companies have acts of infringement that relate to a

21

1   variety of ISPs, and we are entitled, in our view, to go

2   against the infringers in the Verizon system in this case.

3           There may be a complete relief as to the acts of the

4   internet companies in Virginia, but there is also a relief as

5   to the OTC companies in Virginia.  I'd point the Court to the

6   Verizon Online Services case, and I think this is an

7   important case for these purposes.

8           This was a case that was brought by --

9           THE COURT:  Well, it seems to me that what you're

10  doing is you're asking the Court to increase the cost and

11  expense of litigation by adding these parties in and making

12  it more complex.  I mean, litigation is already expensive

13  enough, and I think the courts have a duty to try and make

14  matters resolvable not only in a timely manner but in an

15  economical manner; otherwise, there is not going to be

16  anything left to try in this case.  So regardless of whether

17  it is going to be mediated, because it costs too much to

18  litigate the case, all this does is make it worse.

19          You can get complete relief against the internet

20  service providers.  You don't need the OTCs.  And even if

21  you're entitled to it, it just seems to me to be an even more

22  cumbersome and complex method of accomplishing the same

23  thing, at best.

24          MR. PLIMACK:  Your Honor, what Verizon is asking us

25  to do is to go after a remedy against these OTC companies, is

22

1   to sue them in 18 different federal courts across this

2   country.  What we have done --

3            THE COURT:  Well, you don't have to sue them, is the

4   point, just simply not necessary.  What are you accomplishing

5   other than furnishing employment for a whole bunch of

6   different lawyers by suing the OTCs to begin with?  You can

7   get complete relief -- I mean, to me it's much the same as

8   suing the corner computer stores who happens to sell an

9   infringing program, only made it slightly worse because here

10  they are not even -- these companies are not even contracting

11  with the consumer.  They're just carrying over their lines

12  whatever somebody decides to ask them to carry.  And by

13  carrying it you are saying infringing, maybe they are, but --

14           MR. PLIMACK:  I'd make two points, Your Honor.

15  Point number one is, as I said, these OTC companies do

16  business with other internet service providers than these

17  Verizon companies, and they may have liability by virtue of

18  the business they do with AOL, Earth Link, and other ISPs.

19  So Verizon has not established that the remedy against the

20  OTC is exactly the same as the remedy against the Verizon

21  internet service providers.

22           The second point --

23           THE COURT:  Well, it seems to me inescapable that if

24  you enjoin the ISPs from providing the service, that there's

25  no way that the OTCs could then infringe.

JODY A. STEWART, Official Court Reporter

23

1          MR. PLIMACK:  But if Verizon California, for

2     example --

3          THE COURT:  And there ought to be less ISPs than

4     there are OTCs, and the only ones you've sued are amenable to

5     suit in Delaware.  The Delaware corporations -- I mean, the

6     whole thing doesn't make sense to me, counsel, I'd be frank

7     to tell you.  I think the courts have a duty to try to make

8     litigation less complex and less cumbersome, which is exactly

9     the opposite of what's being done here.

10          MR. PLIMACK:  Your Honor, if the Court is inclined

11     to dismiss the OTC companies, I would submit that this case

12     still belongs in Virginia for the simple reason that in the

13     cases that were cited by the parties, there is not a single

14     case in which this Court has transferred a case that was

15     brought by a Virginia plaintiff, regardless of the location

16     of the defendants.

17          THE COURT:  Yeah, but you elected Delaware to sue

18     two others, so you can hardly complain that would be

19     burdensome to you to bring suit in Delaware when you've

20     already done it.

21          MR. PLIMACK:  If I could respond, Your Honor.

22          THE COURT:  You're swimming upstream, counsel.  I

23     guess you realize that.

24          MR. PLIMACK:  It sounds that way, Your Honor, but if

25     I could be heard on that particular point.  Our client sued

24

1   the parent Verizon Communications, and Verizon said, "You

2   sued the wrong company.  This company doesn't do the acts

3   that infringe the patent."  We went back to the drawing board

4   and we looked at the Verizon companies that do infringe the

5   patent, and lo and behold, those companies are in Virginia.

6   The case that was brought in Delaware was brought against

7   companies that could be sued in Delaware.  These are

8   companies that can be sued in Virginia, and the cases --

9          THE COURT:  And also in Delaware.

10         MR. PLIMACK:  There are Delaware corporations among

11   the defendants, that's right, Your Honor.

12         THE COURT:  But I mean, among the ISPs?

13         MR. PLIMACK:  That is right.

14         THE COURT:  Now, apparently, best I can figure out

15   from this complex set of facts, there may be two OTCs which

16   arguably could only be sued in Delaware and two which

17   arguably only be sued in Virginia.

18         MR. PLIMACK:  If I could put a chart up, Your Honor,

19   I think I can illustrate this point.  I have one more chart

20   to show Your Honor.  If I may stand this up, and I'll put

21   another chart on the board, Your Honor.  The top line of

22   these companies are these ISP and so-called service

23   companies, and although some are incorporated in Delaware, as

24   you can see from this chart, they are located in Virginia.

25         THE COURT:  Some are.  Now, isn't it correct that

25

1    every one of the companies on the top part of your chart are

2    amenable to service of process in Delaware?

3            MR. PLIMACK:  Your Honor, I know for a fact that

4    some are.  I cannot represent to the Court that they all are,

5    and perhaps --

6            MR. McFARLAND:  I've got a chart, Your Honor, and I

7    don't mean to interrupt, but I've got a chart, if I can hand

8    up to the Court, that lists the state of incorporation for

9    every defendant and the principal place of business.

10           THE COURT:  Well, if you're going to hand me this

11   chart, counsel, you should be prepared to answer that

12   question.

13           MR. PLIMACK:  I will accept Mr. McFarland's

14   representation.

15           THE COURT:  I'm going to assume that every company

16   on the top of the chart is amenable to service of process in

17   Delaware, but that's the question that you should be able to

18   answer if you come in to court and argue it.

19           MR. PLIMACK:  Your Honor, we created this chart to

20   show that the convenience of the parties and witnesses are

21   clearly served by having this case in Virginia.  These

22   companies do business in Virginia, and, again, I would --

23           THE COURT:  Are you moving to transfer the Delaware

24   case to Virginia?

25           MR. PLIMACK:  We are not moving to transfer the

26

1   Delaware case to Virginia.  The Delaware case was brought

2   against the defendants that were amenable to suit in

3   Delaware.  But, Your Honor, the cases make very clear that

4   the plaintiff has a choice.  The plaintiff has a choice of

5   forum particularly when the plaintiff is a Virginia

6   corporation, and the Virginia corporation here is Inline.  It

7   has sued these companies that either have a principal office

8   in Virginia or a substantial presence in Virginia.

9          As the Verizon Online Services case made clear, this

10  is an important case for the following reason:  This is a

11  case that Verizon Online Services, which is another name for

12  the first company, Verizon Internet Services, sued in this

13  court.  It sued a Michigan company that did business in

14  Michigan.  That Michigan company was sending spam e-mails

15  throughout the country.  And the Court -- the Michigan

16  defendant moved to dismiss itself from the case and also

17  moved to have the case transferred to Michigan, said we have

18  no contact with Virginia.

19         Verizon came into this court and said the following:

20  They said we have a nationwide system.  We have seven e-mail

21  servers in Virginia.  This is where we operate our online

22  services from this district.  And on that basis this Court

23  refused to transfer the case.  And in that case the court

24  remarked on the fact that Verizon's choice to come to

25  Virginia, it's home turf, to litigate that case, was a

27

1   significant fact.

2           Now when it wants to delay the day of reckoning, it

3   says, no, you can't sue us in Virginia, even though we have

4   this nationwide system that's run from Virginia.

5           THE COURT: Well, I don't know that they are trying

6   to delay the day of reckoning, counsel. The case has been

7   going on in Delaware. A lot of work has been done in

8   Delaware.

9           MR. PLIMACK: I'd like to address that point, Your

10  Honor, if I might.

11          THE COURT: I mean, I don't find that particularly

12  significant because you're the one that chose Delaware to

13  begin with.

14          MR. PLIMACK: Your Honor, there is no requirement

15  that a patent holder bring every lawsuit on its patent in the

16  same district court.

17          THE COURT: Well, I tell you, do you think that the

18  district courts are going to sit still and let you file a

19  case against every internet service provider in a different

20  court around the country and see which one you can get the

21  judgment first, and to see if you lose in one district, you

22  might win in another, and do you think that that is what

23  these district courts are going to permit you to do?

24          MR. PLIMACK: The cases recognize that the primary

25  factor is the location of the parties and the choice of the

28

1    plaintiff when the plaintiff is in that forum, but as Your

2    Honor remarked when Verizon was arguing, the speed of the

3    docket is a factor to be considered.  The fact of the matter

4    is, we have a case in Delaware that's been pending for three

5    and a half years.  There is no trial date that has been set

6    yet.

7              And the Court has remarked that the magistrate judge

8    who was handling that case, which is the only magistrate

9    judge, is extremely busy.  I would like to hand the Court an

10   order from the Delaware court which talks about this very

11   issue, if I might.

12             The reason I submit this is if this case is

13   transferred to Delaware, the magistrate judge is not going to

14   be handling this case.  The arguments about that Verizon

15   makes about judicial economy, that a judge is climbing the

16   learning curve, the district court in Delaware as a matter of

17   practice assigns its case to the four district judges in that

18   court.  To the extent that the Court finds that a matter is

19   amenable to treatment by someone other than the district

20   court, this order which was entered in September of 2004,

21   says that the cases will be assigned to a panel of special

22   masters, in paragraph 2 of the second page.  There is no

23   provision under Delaware practice of assigning a case to the

24   magistrate judge.

25             In fact, if you look at the first page of this

29

1   document in the fourth "whereas" clause, it says, "Given this
2   Court's significant docket of complex intellectual property
3   cases, and given that this court's magistrate judge is
4   routinely scheduling hearings and mediation calendar six to
5   eight months out, the need to appoint special masters to
6   achieve these stated and important goals is clear."

7            In Delaware, you have to wait as long to get a
8   motion scheduled as you do to get the trial in this court.
9   That is a factor under the cases, and that was, of course, a
10  reason for filing in this court.  It was not the primary
11  reason.  The primary reason was the location of the parties
12  and the fact that the plaintiff is a Virginia corporation.
13  Verizon says we are somehow running away from Delaware.  If
14  there is a ruling of the Delaware court that's entitled to
15  collateral estoppel effect, that will follow us wherever we
16  go.  The idea that we are somehow running away from this
17  judge is just not accurate.

18           THE COURT:  That's not really the issue.  The issue
19  is that the judge in Delaware has made certain rulings
20  which -- and I don't know what the status is of those
21  rulings, whether it was a report and recommendation, or
22  whether he made a final ruling, or whatever it is, but that's
23  subject to being the law of the case whether you have a
24  special master or not.  You've got the law of the case.  I
25  don't -- I mean, this court would normally handle even a

JODY A. STEWART, Official Court Reporter

30

1   complex case in less time than that, for whatever reason.

2          But the point is what's disturbing to the Court is

3   that these cases have gone on in two different jurisdictions,

4   and you elected to proceed in the other jurisdiction.  So as

5   far as I'm concerned, that wipes out any consideration that

6   you would otherwise receive as being a Virginia corporation

7   in order to proceed in Virginia.  You were a Virginia

8   corporation, you chose to proceed in Delaware.  So that

9   argument has no persuasive power whatever to me in this

10  instance.

11         MR. PLIMACK:  The only thing I would say, Your

12  Honor, is we chose to proceed in Delaware against different

13  defendants.  This is a case involving Virginia --

14         THE COURT:  An ISP is an ISP.

15         MR. PLIMACK:  But here we have a tort where the

16  Virginia defendant -- where the ISP defendants and the

17  service company defendants do business in Virginia, and this

18  Court has already found that it is a nationwide hub of their

19  broadband services.

20         This is the only court in which we can sue the OTC

21  defendants, and I realize there is a motion to dismiss those

22  defendants which the Court has not decided, but I will point

23  out, as the Court is aware, the first factor in a transfer

24  motion is can you sue the defendants in the chancery court.

25  If you can't sue the defendants in the chancery court --

31

1          THE COURT:  The necessary defendants.

2          MR. PLIMACK:  Well, there are some cases, Your

3     Honor, where there have been stays against retailers and

4     distributors, I admit that.  But, again, as we showed, these

5     OTC defendants are not mere distributors and retailers.  They

6     have independent acts of infringement.  In addition, the

7     Virginia companies act --

8          THE COURT:  The retailers have an independent act of

9     infringement when they sell the product.

10         MR. PLIMACK:  Yes, they do, Your Honor, but here --

11         THE COURT:  Like I'm saying, this is like saying

12    that -- I'm trying to think of a perfect analogy and I can't,

13    but one that comes to mind is the company that transports the

14    physical computer program from the -- I don't know what you

15    call it, I don't know what you call it -- the manufacturer of

16    the program, the creator of the program, whatever transports

17    that program from the creator of the program to the retailer,

18    seems to me to be somewhat analogous to the OTCs in this

19    case.

20         So in a patent case are you going to sue the

21    trucking company or the railroad or the FedEx or the postal

22    service, whoever transmits the program?  That is what you are

23    talking about here.

24         MR. PLIMACK:  There are cases, Your Honor, where the

25    retailers and distributors have been stayed so that the rest

JODY A. STEWART, Official Court Reporter

32

1    of the cases have been transferred, but those cases do not

2    involve a Virginia plaintiff, doesn't involve cases --

3            THE COURT:  As I said, whatever advantage you have

4    as to Virginia plaintiff was wiped out when you, the Virginia

5    plaintiff, filed suit against the ISPs in Delaware.

6            MR. PLIMACK:  But --

7            THE COURT:  And initially you chose to try to

8    include Verizon.  You just chose the wrong entity.  So you

9    don't have any advantage as being a Virginia plaintiff having

10   chose to go that route.  You're asking the Court to duplicate

11   what another Court is doing, and that's, per se, an

12   unattractive alternative.  What's to say that you couldn't

13   find another ISP and sue them in yet another court?

14           MR. PLIMACK:  Well, it would depend on where the ISP

15   is located, Your Honor.  We might only have jurisdiction over

16   them in another place and --

17           THE COURT:  An ISP?  I mean, an ISP is going to be

18   furnishing services all over the country.  Maybe there is an

19   ISP who only furnishes services in limited parts of the

20   country, but that would be sort of unusual, wouldn't it?

21           MR. PLIMACK:  I guess all I can say, Your Honor, is

22   that we've prepared this chart, and we have shown, I believe,

23   that there is no contradiction from Verizon that these ISPs

24   and services companies do business -- this is the place where

25   the hub is, that plus the fact that the plaintiff is a

JODY A. STEWART, Official Court Reporter

33

1  Virginia company makes this a special case, even though

2  Inline chose to sue two different ISPs in Delaware the first

3  time around.

4          THE COURT:  Well, they chose to sue this ISP in

5  Delaware the first time around.

6          MR. PLIMACK:  Well, we dispute that, Your Honor.  I

7  mean, we sued a Verizon --

8          THE COURT:  You mean, you just -- who were you

9  trying to sue when you sued Verizon in Delaware initially?

10         MR. PLIMACK:  We sued the parent company.

11         THE COURT:  But weren't you trying to enjoin Verizon

12 as an ISP when you sued them in Delaware?

13         MR. PLIMACK:  We were trying to enjoin --

14         THE COURT:  I mean, do I need to look at that

15 complaint?

16         MR. PLIMACK:  It wasn't just their activities as

17 ISP, it was their activities as a service company, it was

18 their activities as an OTC company.  It was all the

19 activities.

20         THE COURT:  It did include their activities as an

21 ISP?

22         MR. PLIMACK:  It did, Your Honor, but in that case

23 we believed that we could do the whole litigation against

24 this one entity in one court.  Having been told by Verizon

25 that we couldn't, we went back to the drawing board and

JODY A. STEWART, Official Court Reporter

34

1    looked at where we could do a case against the whole Verizon

2    ball game, and it actually turns out that the only court

3    where that can be done is Virginia because these services

4    companies act as an agent for the OTCs.   They enter contracts

5    on behalf of the OTCs.

6           We've made quite an evidentiary showing in our

7    opposition in motion to dismiss, and although Verizon refused

8    to give us jurisdictional discovery, we've nonetheless showed

9    the substantial contacts of the OTC companies through the

10   services companies with Virginia, which is the same reason

11   this Court allowed Verizon to sue Michigan spammers in

12   Virginia.   This is the court where the whole case can be

13   tried at once.   And as I said at the outset, we are not

14   required to sue these companies all over the country, if, in

15   fact, we can't get complete relief against the internet

16   services company.

17          Your Honor's concern about conserving judicial

18   resources is best served by having this one lawsuit heard in

19   Virginia.   Whatever rulings have come out of Delaware that we

20   are bound by as collateral estoppel, we are bound by here,

21   and the fact of the matter is the Delaware case --

22          THE COURT:   How could it be collateral estoppel if

23   the parties are different?

24          MR. PLIMACK:   Well, it may or may not, Your Honor.

25          THE COURT:   These parties weren't even before the

JODY A. STEWART, Official Court Reporter

35

1    Court there?  How could it be collateral estoppel?

2          MR. PLIMACK:  I'm not saying that it is collateral

3    estoppel.  All I'm saying is they are saying that we are

4    attempting to run away from some rulings, and what I'm saying

5    is that if we are bound by rulings, they follow wherever we

6    go; if we are not bound by the rulings, then we are not bound

7    by the rulings.

8          THE COURT:  Well, why haven't you moved to transfer

9    the Delaware case to Virginia?

10         MR. PLIMACK:  Well, we filed the lawsuit in

11   Delaware.  We filed -- our client, not -- my firm was not

12   personally involved in that case.  My firm is not counsel of

13   record in the Delaware case.

14         THE COURT:  Well, your client.

15         MR. PLIMACK:  And I just wanted to clarify when you

16   say "we filed," it wasn't our firm, but our client filed the

17   case in Delaware and chose that forum for a case against

18   those particular defendants.  That was a forum where those

19   defendants are being sued.

20         THE COURT:  That is no good, counsel.  That is no

21   good at all.  They could say that.  They could file against

22   ISPs -- I don't know how many ISPs there are that you can

23   claim an infringing, but you could sue every one of them

24   where you chose, all over the country, and we could have I

25   don't know how many different suits going on over the same

JODY A. STEWART, Official Court Reporter

36

1   pattern, the same nature of infringing.  It would make no

2   sense at all.

3          MR. PLIMACK:  But on the other hand, this is the

4   only court where we can sue the entire Verizon system.

5          THE COURT:  Well, you keep saying that.  It's the

6   only court in which you can sue the OTCs.  You can sue

7   everybody else in Delaware except the OTCs, and you can sue

8   on it, apparently, and I haven't looked into this, but it may

9   be that you can only sue two OTCs in Virginia and the rest of

10  them you can't sue.  You sued what, 18?

11         MR. PLIMACK:  18 OTCs.

12         THE COURT:  Two of them could apparently be sued in

13  Delaware and two of them for sure can be sued in Virginia.

14  We don't know about the rest.

15         MR. PLIMACK:  That's true, Your Honor.  I would say

16  that we've met our prima facie burden on jurisdiction.

17         THE COURT:  Well, maybe you have.  That's why

18  dismissing the case is difficult.  All right.  Do you have

19  anything new?

20         MR. PLIMACK:  May I confer with my co-counsel one

21  second, Your Honor, before stepping down?

22         THE COURT:  You may.

23         MR. PLIMACK:  Thank you.  Your Honor, unless there

24  are further questions from the Court, I conclude.

25         Thank you, Your Honor.

JODY A. STEWART, Official Court Reporter

37

1          THE COURT:  Do you have anything further,

2   Mr. McFarland?

3          MR. McFARLAND:  Very briefly, Your Honor.

4          THE COURT:  I don't see how I can dismiss the OTCs.

5          MR. McFARLAND:  I'm not asking you to dismiss the

6   OTCs at this point, Your Honor.

7          THE COURT:  Well, what are you asking me to do?

8          MR. McFARLAND:  I'm asking you to transfer this case

9   to Delaware, let the Delaware court deal with the motion to

10  dismiss the OTC defendants that's been filed already and

11  fully briefed.

12         THE COURT:  That would be a different motion in

13  Delaware.

14         MR. McFARLAND:  No, Your Honor.  This Court -- the

15  Court pointed out, if you'll look at the chart here with the

16  Verizon defendants -- first off, let me say this so there is

17  absolutely no dispute.  Every one of the critical defendants,

18  the ISP defendants, and I don't think these two are, per se,

19  critical, but if the plaintiff says they are, we will take

20  that for purposes of this motion, what they call the DSL

21  service companies, every one of them is incorporated in

22  Delaware and absolutely amenable to suit in Delaware.  That's

23  the first most important.

24         With respect to the OTC defendants, there are 18 of

25  them; two of them, the same number that plainly are subject

38

1   to jurisdiction in Virginia, are plainly subject to

2   jurisdiction in Delaware.  They're Delaware entities.  So to

3   the extent the plaintiff thinks now all of a sudden after

4   three and a half years of litigation where they didn't think

5   they needed OTCs as defendants, to the extent they now claim

6   they do need OTCs, they have at least two OTCs in Delaware,

7   the same number that they have in Virginia.

8            THE COURT:  Well, we don't know how many they have

9   in Virginia.

10           MR. McFARLAND:  And maybe they have more in Delaware

11   than they would in Virginia, Your Honor.  But the point is

12   they are not necessary defendants.  Now, Your Honor, I think,

13   does have the right analogy in looking at the OTCs.  They are

14   not even like the retailer of the product.  They are, at

15   best, a transporter.  And, in fact, there is another

16   distinction that needs to be made, Your Honor, unlike a FedEx

17   or a DSL or a Norfolk Southern who transports, the OTCs are,

18   quote, transporting pursuant to federal tariff.  It's a

19   requirement.

20           So there is no direct contractual relationship even

21   as to the shipping like there is when I give a package to

22   FedEx and they are allegedly transporting the offending

23   product in that sense.  This is all done -- Mr. Plimack held

24   up the claims construction.  Number one, as this Court knows,

25   you can't just look at the claims in isolation.  You have to

JODY A. STEWART, Official Court Reporter

1    look at them in totality.  And what the OTCs are doing here

2    in providing this allegedly infringing aspect is pursuant to

3    tariff service.  And it is just one -- Verizon Virginia

4    provides it in Virginia, Verizon Maryland provides it in

5    Maryland, Virginia West Coast may provide it in California,

6    et cetera, but they are not the necessary parties to this

7    case.

8            And so what this Court should do is to transfer this

9    action to Delaware and stay it as to the two Virginia OTCs.

10   But the idea of litigating --

11           THE COURT:  Stay it as to how many OTCs?

12           MR. McFARLAND:  You only need to stay -- the two

13   that are plainly --

14           THE COURT:  Why shouldn't we stay it as to all of

15   them?

16           MR. McFARLAND:  If the Court thinks that's

17   appropriate --

18           THE COURT:  I don't see how I can dismiss them

19   because I haven't decided the motion to dismiss.

20           MR. McFARLAND:  No, I'm not saying you should

21   decide.

22           THE COURT:  Well, I mean, if I stay it as to some

23   and not as to others, I would be in effect deciding the

24   motion to dismiss.

25           MR. McFARLAND:  Oh, no, Your Honor.  I think the

40

1   Court when it transfers the case can transfer the motion to

2   dismiss undecided for the Delaware court to deal with.  And

3   if the Delaware court thinks further briefing is needed, it

4   certainly can request that.

5           What I'm saying is there are two Virginia OTCs that

6   we admit this Court plainly does have jurisdiction over.  I

7   think the Court can stay the case as to the two Virginia OTC

8   defendants whom it plainly has jurisdiction over, and let the

9   proceedings go forward in Delaware.  And if the plaintiff

10  obtains certain rulings and then they decide they want --

11          THE COURT:  Then why shouldn't I stay it as to all

12  of them in Virginia?  That doesn't mean that the plaintiff

13  can't pursue them in Delaware, the fact that I've stayed them

14  in Virginia.

15          MR. McFARLAND:  And the plaintiff could do that,

16  Your Honor.  I was trying to make it, I think, a step easier

17  for the Court, but either way is fine.  But what this Court

18  clearly needs to do is to transfer this case.  The crux of

19  this case is the ISPs.

20          I mean, it is very telling that this case has been

21  proceeding for years, when some of these OTCs provide this

22  same service for not just the two Verizon ISPs, but they

23  provide it for AOL and Earth Link, and yet the plaintiff

24  didn't have the need to bring them into the AOL and Earth

25  Link suits in Delaware.

41

1          The final point I'll leave the Court with, when

2     these cases were -- the three of them were filed in Delaware,

3     AOL is a Virginia company.  Its main headquarters is in

4     Arlington, Virginia.  Plaintiff made a conscious decision in

5     2002, after initially thinking it was going to file in

6     Virginia -- that's what those e-mails indicate -- it made a

7     conscious decision initially to file all three cases in

8     Delaware.

9          And the only reason we are now before this Court on

10    one of the cases is not because overnight the plaintiff

11    realized it was a Virginia corporation.  In fact, the

12    plaintiff is now, if you will, less of a Virginia corporation

13    than it was previously because the plaintiff's headquarters

14    are not even in Virginia anymore.  The plaintiff has decided

15    it wants its principal place of business to be in the

16    District of Columbia.  They just still happen to be

17    incorporated in Virginia.  That is their only tie to Virginia

18    at the present time.

19          THE COURT:  I don't think that their ties in

20    Virginia is particularly material.

21          MR. McFARLAND:  I agree, Your Honor.  I think it

22    makes no difference whatsoever.  They didn't bring this case

23    now because of their Virginia citizenship.  They brought this

24    case in 2005 in this court for one reason and one reason

25    only.  They don't like how it's been going in Delaware.  And

42

1   as this Court has said --

2       THE COURT: Well, I don't know what you mean by how

3   it's been doing. I don't know if you are talking about speed

4   or rulings.

5       MR. McFARLAND: I think more -- perhaps both, Your

6   Honor, but certainly more the latter. But the point is what

7   should not be -- the plaintiff should not be asking this

8   Court to do is to run parallel complex litigation with the

9   potential for incongruous decisions and the incredible

10  imposition upon this Court from dealing with four, and soon

11  to be five, patents in a highly complex, technological area

12  and thousands and thousands of documents, when a court in

13  Delaware has already dealt with this.

14      The only thing, Your Honor, that makes any sense in

15  the case is to transfer the case, the crux of the case

16  involving the ISPs to Delaware, and I leave to the Court -- I

17  think the Court could stay as to just the Virginia defendants

18  and transfer the entire cases of the OTCs. If the Court

19  thinks it wants to stay as to all the OTCs, that's fine.

20      THE COURT: All right. In this instance, I'll let

21  you reply to what he just said if you choose to, counsel.

22      MR. PLIMACK: Thank you, Your Honor. I'll be very

23  brief. The Court has obviously expressed the concern about

24  the OTC companies and whether we are really getting a

25  duplicate remedy and whether that's truly necessary.

43

1         We, as I said in my original argument, believe that

2    the OTCs have their own liability.  It is not necessarily

3    co-extensive with the ISPs, the service companies.  So that's

4    why we've included them here, and I stand by those comments.

5         THE COURT:  But you didn't insert them in Delaware.

6    You haven't asked -- apparently you haven't even asked to

7    include them in Delaware.

8         MR. PLIMACK:  Your Honor, my client can only sue so

9    many people at once.  The case in Delaware --

10        THE COURT:  Well, yeah.  That is what we are trying

11   to get at, you can only sue -- they don't want to sue people

12   twice.

13        MR. PLIMACK:  But, Your Honor, all I'm attempting to

14   say is that if the Court has a concern about the OTC

15   companies, this case could proceed in Virginia against the

16   non-OTC companies, and we could administratively sever them

17   for a later disposition, if Your Honor is right, that that

18   would resolve the issue.

19        THE COURT:  It wouldn't resolve the duplication

20   issue, counsel, of having the case going on here at the same

21   time it is going on in Delaware.  It makes no sense to me.

22        MR. PLIMACK:  The only other point I would make,

23   Your Honor, in response, that AOL is a Virginia company, and

24   we have Earth Link in that case, as well.  And that was a

25   case that was brought in Delaware because the belief at that

JODY A. STEWART, Official Court Reporter

44

1   time was that that was a forum where all the defendants could

2   be sued in one place and one time.  That is the same

3   motivation that is underlying this case.

4           THE COURT:  Well, all the defendants that you

5   originally tried to sue in Delaware can be sued in Delaware.

6           MR. PLIMACK:  That's true, Your Honor, except that

7   the Verizon company we sued, according to them, was the wrong

8   company.

9           THE COURT:  Well, that's easily curable.

10          MR. PLIMACK:  What we did to cure that was we

11  sued -- we sued the parent to get all of the subs.  Now they

12  said you can't get the parent so now what we have done is we

13  have sued all of the subs.  All of the subs are the

14  defendants in this case.  All of the subs cannot be sued in

15  Delaware.  That is why we brought this case here.

16          I have nothing further, Your Honor, unless there are

17  questions from the Court.  The only thing -- there is one

18  last thing, Your Honor.  I wanted to just point out the issue

19  of the schedule in the case, and I appreciate the Court -- we

20  may not have a schedule because we may not have a case here,

21  but I just wanted to point out that, and I have talked to my

22  opposing counsel, I think it is fair to say we are in

23  agreement.  To the extent this case remains in Court, I think

24  all counsel believes that the schedule in the case must be

25  looked at by virtue of the fact where we are relative to

45

1  where we were when the matter was set.  And I just wanted to

2  point out that before we sat down.

3          THE COURT:  All right.

4          MR. PLIMACK:  Thank you, Your Honor.

5          THE COURT:  The Court believes that the most

6  important factor for it to consider in resolving the motion

7  to transfer is the potential duplication of effort between

8  this court and the court in Delaware.

9          There are any number of other factors that the Court

10  may consider.  As indicated, the fact that the plaintiff

11  chose to initially sue in Delaware, including attempting to

12  sue Verizon in Delaware, leads the Court to discount any

13  importance of it being incorporated in Virginia.  And at the

14  time -- perhaps at the time they filed the suit, maybe they

15  had the principal place of business there, but that's really

16  not an important point because I think by initially bringing

17  the suit in Delaware, they made a conscious decision not to

18  take advantage of the Virginia residence for the basis for

19  initiating these actions in Virginia, and having made that

20  choice and having subjected the Delaware court to

21  considerable time and effort in attempting to resolve that

22  litigation, it does not seem reasonable for this Court to

23  duplicate that.

24          So the Court's going to transfer the case to

25  Delaware.  I'm not certain exactly what action the Court's

46

1  going to take as to the OTC defendants.  That is something

2  that I'm going to have to look into further because I haven't

3  attempted to deal with the motion to dismiss the OTC

4  defendants.

5          And that being the case, it may be that the only

6  proper solution would be to simply stay the case as to all of

7  the OTC defendants, making it clear that any action of this

8  Court would not prohibit the defendant from seeking relief

9  from any of the OTC defendants in any other court, including

10  Delaware.

11          But I'm really not certain exactly what disposition

12  the Court will make with the case as to the OTC defendants at

13  this point, whether it should just transfer them all or two

14  of them to Delaware, or whether it should stay it as to all

15  of them or only two of them.  I'll have to look into that

16  further, but I'm going to transfer the case to Delaware

17  because the overwhelming importance with the necessity to

18  avoid having two courts dealing with essentially the same

19  issue at the same time, and the Delaware court having had a

20  three and a half year head start should be closer to

21  resolution than this court.

22          I don't know if counsel have anything to contribute

23  in the way of further briefs on how the Court should handle

24  the transfer and with respect to the OTC defendants.  If

25  either side wishes to make any contribution or file something

JODY A. STEWART, Official Court Reporter

1   with the Court, I'll grant both sides until the 11th of

2   October to file whatever it is they'd like to file. It is

3   not a matter of somebody filing and somebody replying. If

4   anybody wants to file something, they can both file it by

5   October 11th, meaning that I'm not going to enter an order

6   until after that.

7           MR. NOONA:  Your Honor, may I raise one ancillary

8   point?

9           THE COURT: You may.

10          MR. NOONA:  During the pendency of this period,

11  there are deadlines that will pass on the existing 16(b)

12  order.  I have spoken with counsel.  I think it would be

13  helpful for both sides if the Court would indicate that we

14  can suspend any of the deadlines until Your Honor's formal

15  ruling is in on the 16(b) scheduling order.

16          MR. McFARLAND:  We would be in agreement with that,

17  Your Honor, and perhaps let me suggest this, and I'll talk

18  with counsel.  It may be that we can come to an agreement

19  that we would present to the Court as to the OTC defendants.

20  I can't say that right here, and obviously I want to speak to

21  my client further, but I'd like to do that and then speak

22  with them because I have a sense, and I could be proven

23  wrong, but the guts of this case is with the ISPs, and that's

24  what the Court is transferring to Delaware.

25          THE COURT:  Well, that's why I want to give both

48

1    sides an opportunity to address the Court on that issue

2    because it's not clear to the Court how to handle that

3    because I haven't dealt with the motions to dismiss the ISPs.

4    So I felt that this motion was sufficiently complex that it

5    should be dealt with as a separate entity, and so that's what

6    I've done.

7           So if counsel can agree as to how to treat the OTC

8    defendants without prejudice to complaining about the

9    transfer in the first place, that's fine with me.

10          MR. McFARLAND:  And we'll stay the schedule, Your

11   Honor, for right now, the discovery and disclosures.

12          THE COURT:  Right.  Right.  Well, having transferred

13   the case, and I'm not going to have the case proceed against

14   anybody, OTCs or anybody else, so having transferred it --

15          MR. McFARLAND:  That's what I thought.

16          THE COURT:  -- so there is no need for either side

17   to comply with anything in any pretrial order.

18          All right.  Anything further?

19          MR. McFARLAND:  I don't think so, Your Honor.

20          MR. NOONA:  No, Your Honor.

21          MR. PLIMACK:  No, Your Honor.

22          MR. McFARLAND:  Thank you, Your Honor.

23          THE COURT:  Want all these papers admitted into

24   evidence?

25          MR. McFARLAND:  Just for the file, Your Honor.

JODY A. STEWART, Official Court Reporter

49

1          MR. NOONA:   Sandra, why don't we mark the plaintiffs

2    as a group and the defendant is only one.

3          THE COURT:   However you want to mark them is fine.

4          (The documents were received in evidence and marked

5    as Plaintiff's Exhibit No. 1 and Defendant's Exhibit No. 1.)

6          (Hearing adjourned at 11:52 a.m.)

7

8                        CERTIFICATION

9

10         I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13    X_____    x

14              Jody A. Stewart

15         X_____10.6-05_____  x

16                   Date

17

18

19

20

21

22

23

24

25

JODY A. STEWART, Official Court Reporter