## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Inline Connection Corporation,

        Plaintiff,

v.

Verizon Internet Services, Inc., et al.,

        Defendants.

Civil Action No.  05-866 (JJF)

**REDACTED –
PUBLIC VERSION**

## VERIZON DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DISMISSING THIS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile:  202.719.7049

Dated: August 11, 2006

Jeffrey B. Bove (#998)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE  19801
Telephone:  302.658.9141
Facsimile:  302.658.5614

Counsel for Verizon Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 2

SUMMARY OF ARGUMENT ........................................................................... 3

STATEMENT OF UNDISPUTED FACTS ............................................................ 7

    A.   The Technology At Issue ..................................................................... 7

    B.   The Entities And Individuals Involved In The Ownership Issue ............... 7

    C.   The Original Delaware Lawsuits Filed In 2002 ...................................... 9

    D.   The June 2003 Pie Squared Acquisition Of Inline Patent Rights ............ 10

    E.   Events Leading To The Execution Of The Mercury-BBTI "Exclusive License Agreement" ............................................................ 11

    F.   The March 4, 2004 "Exclusive License Agreement" .............................. 13

    G.   The Filing Of The Present Lawsuit On April 6, 2005 ............................. 13

ARGUMENT ............................................................................................... 16

    I.   Only Parties That Have Been Granted "All Substantial Rights" Under A Patent Have Constitutional Standing To Sue For Patent Infringement ................................................................................... 16

    II.   Inline Transferred "All Substantial Rights" Under The Patents-In-Suit To Mercury-BBTI in 2004 ............................................................ 18

        A.   The March 4, 2004 "Exclusive License Agreement" Transferred All Significant DSL Patent Ownership Rights To Mercury-BBTI ................................................................... 19

        B.   Inline Did Not Retain Any Significant Rights To The Patents-In-Suit ............................................................................. 21

        C.   Mercury-BBTI Has Effectively Conceded That It Owns The Patents-In-Suit ............................................................................. 25

    III.   The Present Action Should Be Dismissed With Prejudice ...................... 26

CONCLUSION ............................................................................................ 29

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336
(Fed. Cir. 2006) .................................................................................3, 4, 15-17, 20-22, 24

*Eyeticket Corp. v. Unisys Corp.*, 515 F. Supp. 2d 527 (E.D. Va. 2001) ........................................23

*FW/PGS Inc. v. City of Dallas*, 493 U.S. 215 (1990) .................................................................15

*Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459
(1926) .................................................................................................................................26

*Inline Connection Corp. v. AOL/EarthLink*, 364 F. Supp. 2d 417 (D. Del. 2005) ........................7

*Inline Connection Corp. v. AOL/EarthLink*, 302 F. Supp. 2d 307 (D. Del. 2004) ........................11

*Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d
1333 (Fed. Cir. 2001) .................................................................................. 3, 4, 15-17, 22

*Monsanto Co. v. Aventis*, 226 F. Supp. 2d 531 (D. Del. 2002) .....................................................15

*Pinpoint, Inc. v. Amazon.com*, 347 F. Supp. 2d 579 (N.D. Ill. 2004) ...............................1, 5, 16, 25

*Schrieber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) .....................6, 27

*Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971
(Fed. Cir. 2005) .................................................................................................3, 6, 16, 27

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ................ 1, 3, 4, 15-17, 19, 22, 26

*Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 U.S. Dist. LEXIS 7367 (D. Del.,
March 18, 2005) ..............................................................................................................15

*Warth v. Seldin*, 422 U.S. 490 (1975) ..........................................................................................15

*Waterman v. Mackenzie*, 138 U.S. 252 (1891) ...........................................................................16

## DOCKETED CASES

*Broadband Technology Innovations, LLC, et al. v. Verizon Internet Service, Inc.,
et al.*, Civil Action No. 06-291 (JJF) ........................................................................2, 5, 25

*Inline Connection Corp. v. AOL Time Warner, et al.*, No. 02-272-MPT, No. 02-
477-MPT.............................................................................................................................2

## INTRODUCTION

Pursuant to the Court's Order (D.I. 122) and Rule 56, Fed. R. Civ. P., the Verizon defendants[1] move for summary judgment that the present action be dismissed with prejudice for lack of subject matter jurisdiction.

The present patent infringement action was filed on April 6, 2005 in the name of plaintiff Inline Connection Corporation ("Inline") in the United States District Court for the Eastern District of Virginia. More than a year earlier, however, Inline transferred all substantial rights under the patents-in-suit to another entity, referred to herein as "Mercury-BBTI," pursuant to a March 4, 2004 "Exclusive License Agreement." Indeed, this action was filed "in the name of Inline" by Mercury-BBTI's counsel pursuant to Paragraph 7.3 of the Exclusive License Agreement, which requires Inline to be represented by Mercury-BBTI's counsel and gives Mercury-BBTI plenary control over the litigation "in its sole discretion." *See* Attachment B to this brief.

Because Inline had previously transferred all substantial rights under the patents-in-suit to Mercury-BBTI pursuant to the March 4, 2004 Exclusive License Agreement, it had no constitutional standing on April 6, 2005 when suit was filed in its name in the Eastern District of Virginia. *See, e.g., Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000). As a matter of law, the federal courts never obtained proper subject matter jurisdiction over this action and this Court has "no choice" but to dismiss. *E.g., Pinpoint, Inc. v. Amazon.com*, 347 F. Supp. 2d 579, 581, 586 (N.D. Ill. 2004) (Posner, C.J., sitting by designation).

---

[1] Verizon Internet Services, Inc., GTE.Net LLC, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc. *d/b/a* Verizon Southwest.

On May 3, 2006, the true owners of the patents-in-suit and real parties in interest –

*i.e.*, Mercury-BBTI and its commonly-controlled affiliate, Pie Squared LLC – filed a

separate and independent lawsuit against the Verizon defendants in this. *Broadband*

*Technology Innovations, LLC, et al. v. Verizon Internet Service, Inc., et al.*, Civil Action

No. 06-291 (JJF). This is the third suit filed against Verizon on the same patents and the

only suit over which this Court can exercise proper subject matter jurisdiction.

Consequently, the present action should be dismissed with prejudice to eliminate any

further multiplicity of duplicative lawsuits and as an appropriate sanction for the conduct

of Mercury-BBTI and its counsel for attempted forum-shopping based on false and

misleading complaint allegations.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action that was originally filed on April 6, 2005 in the

Eastern District of Virginia. The Eastern District of Virginia court (Judge Morgan)

transferred the action to this Court on December 5, 2005.

On April 13, 2006, this Court granted, in part, plaintiff Inline's motion to stay

(D.I. 92) by staying further proceedings in this action pending an outcome in the

"*AOL/EarthLink* cases"[2] currently pending in this District before Magistrate Judge

Thynge, but allowing discovery to proceed as to the Verizon defendants' unenforceability

and invalidity defenses.

By order dated April 24, 2006 (D.I. 97), the Court granted the Verizon defendants'

motion to compel discovery regarding the threshold jurisdictional "ownership" issue.

---

[2]    *Inline Connection Corp. v. AOL Time Warner, et al.*, No. 02-272-MPT and *Inline*
*Connection Corp. v. EarthLink, Inc.*, C.A. No. 02-477-MPT.

Subsequently, Inline made a series of productions of ownership-related documents on May 3, June 1, June 14, June 15, June 29, July 14, July 21 and July 24.

On July 25, 2006, this Court entered a Memorandum Order (D.I. 122) directing the Verizon defendants to file the present motion for summary judgment regarding "ownership" and this Court's subject matter jurisdiction.

## SUMMARY OF ARGUMENT

1.    The question of standing to sue in a patent infringement case is a threshold issue of subject matter jurisdiction. Standing to sue must be present at the time that suit is brought. The party bringing the action bears the burden of establishing that it had constitutional standing on the date the original complaint was filed. *E.g., Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1339-40 (Fed. Cir. 2006); *Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005).

2.    A party may bring an action for patent infringement only if it "owns" the patent. The party that "owns" the patent for purposes of constitutional standing and subject matter jurisdiction is the party that has been granted "all substantial rights" under the patent.[*] *E.g., Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir. 2000); *Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001).

3.    The party that has been granted all substantial rights under the patent is the owner regardless of how the parties characterize the transaction or whether the agreement uses the term "license" rather than the term "assignment." *Speedplay*, 211 F.3d at 1250; *Intellectual Prop. Dev.*, 248 F.3d at 1344. An exclusive license agreement that conveys

---

[*]    Unless otherwise indicated, emphasis in all quotations has been supplied.

to the licensee "all substantial rights to the patents at issue" is tantamount to an assignment for purposes of establishing "ownership" and constitutional standing to sue. *Aspex*, 434 F.3d at 1340.

4.    In determining whether there has been a prior transfer of "all substantial rights" in a patent, the proper focus must be on "the substance of what was granted" by the pertinent written instrument.  The Federal Circuit has established a two step analysis in this regard:  first, the Court must consider the scope of the patent rights conveyed under an exclusive license agreement to the licensee; and second, the Court must determine the comparative "significance," if any, of any rights allegedly retained by the licensor.  *E.g.*, *Speedplay*, 211 F.3d at 1250-52; *Intellectual Prop. Dev.*, 248 F.3d at 1342; *Aspex*, 434 F.3d at 1341-43.

5.    As discussed in detail *infra*, pp. 18 - 20, "all substantial rights" under the patents at issue in this action were transferred from Inline to Mercury-BBTI pursuant to a March 4, 2004 "Exclusive License Agreement" (A180-97).  The transfer of rights to Mercury-BBTI was

# REDACTED

These "provisions themselves strongly favor a finding of an assignment not a license" (*Aspex*, 434 F.3d at 1342) and are

virtually identical to rights that the Federal Circuit held constituted a transfer of "all substantial rights" in *Speedplay*.

6. Conversely, Inline did not retain any significant rights to the patents-in-suit once the March 4, 2004 "Exclusive License Agreement" was executed. As discussed *infra* pp. 20 - 24, the four specific areas of alleged "retained" rights that Inline recently argued to the Virginia district court are either factually incorrect, unsupported, insignificant and/or legally insufficient.

7. Moreover, Mercury-BBTI has effectively conceded that it owns the patents-in-suit in its public representations and by filing a new, separate lawsuit against the Verizon defendants in this Court on May 3, 2006. *Broadband Technology Innovations, LLC et al., v. Verizon Internet Service, Inc., et al.*, Civil Action No. 06-291 (JJF). The new action was filed solely by Mercury-BBTI and Pie Squared, without joining or naming Inline as a plaintiff, thereby effectively conceding that the March 4, 2004 "Exclusive License Agreement" divested Inline of "all substantial rights" necessary to support constitutional standing.

8. Because Inline transferred "all substantial rights" under the patents-in-suit to Mercury-BBTI in 2004, it had no constitutional standing on April 6, 2005 when Mercury-BBTI's counsel filed this lawsuit "in the name of Inline" in the Eastern District of Virginia pursuant to Paragraph 7.3 of the "Exclusive License Agreement." As a matter of law, this Court lacks subject matter jurisdiction and has "no choice" but to enter judgment dismissing this action. *E.g., Pinpoint, Inc. v. Amazon.com*, 347 F. Supp. 2d 579, 581, 586 (N.D. Ill., 2004) (Posner, C.J. sitting by designation).

9.    Given the unique circumstances surrounding this litigation, the dismissal should be with prejudice. Verizon has now been sued three times on the same patents. The only suit over which this Court has proper subject matter jurisdiction is the newly-filed May 3, 2006 action by Mercury-BBTI and Pie Squared – the real parties in interest and the *de facto* owners of the patents at issue. The Verizon defendants will respond in that action and all other suits purportedly brought under the same patents should be dismissed with prejudice. In addition, dismissal with prejudice is also an appropriate sanction for the conduct of Mercury-BBTI and its counsel in attempting to "forum shop," evade and/or relitigate Judge Thynge's adverse rulings in the *AOL/EarthLink* litigations, and conceal the existence of the real parties in interest – all of whom are Delaware corporations. *See Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (district court has discretion to dismiss for lack of standing with prejudice); *Schrieber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204-05 (Fed. Cir. 2005) (misrepresentation of patent ownership and withholding information that would reveal lack of ownership is sanctionable).

## STATEMENT OF UNDISPUTED FACTS

### A.    The Technology At Issue

This case concerns so-called Digital Subscriber Line ("DSL") technology which is used to provide internet access by transmitting data over telephone lines that allow simultaneous use of the lines for regular voice communications. *See* Inline Motion To Stay (D.I. 81 at 2). The specific technology at issue, so-called "splitterless ADSL service," is described in more detail in Magistrate Judge Thynge's decisions in the co-

6

pending *AOL/EarthLink* litigations. *See Inline Connection Corp. v. AOL/EarthLink*, 364

F. Supp. 2d 417, at pp. 422-433 (D. Del. 2005).[3]

**B.    The Entities And Individuals Involved In The Ownership Issue**

**Goodman/Inline.** David Goodman is listed as one of the named inventors on each

of the patents-in-suit. In 1988, Goodman started a company known as Inline Connection

Corporation ("Inline"). All of the 1989 and 1991 priority patent applications for the

patents-in-suit were originally assigned to Inline by the named inventors. Goodman is

the president and controlling stockholder of Inline.

**Paperboy/Pie Squared/Mercury-BBTI.** Paperboy Ventures LLC ("Paperboy") is

a Delaware corporation with offices located at 1875 K Street, NW, Washington, DC.

Paperboy is an investment company established by Allen Anderson. Other key personnel

at Paperboy include Anthony ("Tony") Garland, Paperboy's CFO, and Jaime Lewis,

Paperboy's business director who manages the investments on behalf of Tony Garland.

Wilkinson Dep. Tr. 33-36, 225 (A386-87).[4]

Pie Squared LLC ("Pie Squared") is a single-purpose shell entity wholly-controlled

by Paperboy. Paperboy established Pie Squared as a newly-formed Delaware corporation

on June 18, 2003.                                                      *Id.* at 77 (A392).

**REDACTED**                                                          *Id.* at 76,

225 (A392).

---

[3]    According to Inline: "The *AOL case* and this lawsuit involve substantially the same patent
claims and accused technology and services" (D.I. 81 at 11). Although the patents-in-suit purport
to cover DSL technology, the named inventor Goodman has admitted that one skilled in the art
could not possibly have created a DSL system from his disclosure.

[4]    Rule 30(b)(6) deposition of Pie Squared LLC and Broadband Technologies Innovations,
Inc. through their designated representative, Philip A. Wilkinson, taken on June 15, 2006 in the
*AOL/EarthLink* cases. Pertinent excerpts of the Wilkinson deposition transcript are reproduced in
the Appendix at A382-403.

. *Id.* at 76-78, 251 (A392-93, 400).   **REDACTED**

*Id.* at 78 (A393).

Mercury-BBTI is another shell Delaware LLC controlled by Paperboy. Mercury-BBTI was originally established under the name Mercury Communications I, LLC ("Mercury") on March 4, 2004, but changed its name to Broadband Technology Innovations ("BBTI") on September 29, 2005.

**REDACTED**

(A209, 226).

Wilkinson Dep. Tr. 33, 238, 253 (A386, 396, 400).

*Id.* at 54-55, 59, 70, 175, 242 (A388, 389, 391, 395, 399).

**REDACTED**

*Id.* at 236-37, 250-51 (A397, 400).

C.     **The Original Delaware Lawsuits Filed In 2002**

In early 2002, Inline entered into a contingency arrangement with the Kile law firm[5] to bring patent infringement lawsuits against various defendant companies under the patents-in-suit that had then issued. Under the terms of this arrangement,

**REDACTED**

(*see* A010).

---

[5]     The Kile law firm is a District of Columbia professional limited liability company that has had various names during the relevant time period, including Kile Goekjian Lerner & Reed PLLC and Kile Goekjian Reed & McManus, PLLC.

In April and June of 2002, Inline filed complaints in this Court against Verizon Communications, Inc. ("Verizon") (C.A. No. 02-878), AOL (C.A. No. 02-272) and EarthLink (C.A. No. 02-477). Each of the complaints alleged that, as of April and June 2002, Inline owned "the entire right, title and interest" in the patents-in-suit.

Verizon, AOL and EarthLink answered Inline's Delaware complaints. Shortly after Verizon filed its Answer on September 3, 2002, it filed a motion for summary judgment arguing in effect that Inline had named the wrong Verizon entity (*i.e.*, Verizon Communications Inc. was a holding company and the ultimate parent of all Verizon companies). Inline did not file a substantive response to Verizon's motion, nor did Inline amend its complaint to name the proper Verizon entities that actually offered the accused ADSL service. Instead, Inline made a tactical decision to dismiss the action against Verizon on September 17, 2002, and to proceed solely against AOL and EarthLink.[6]

**D.    The June 2003 Pie Squared Acquisition Of Inline Patent Rights**

In June of 2003, Inline and the Kile law firm negotiated a new set of agreements to fund the *AOL/EarthLink* litigations (A009-11). They brought in the Swidler law firm[7] and Paperboy (referred to as the "Investor Group"). Under the new arrangement,

**REDACTED**                    from the *AOL/EarthLink* cases, as well as

(*see* A243).

---

[6]    These facts are judicially-noticeable from this Court's dockets in the original 2002 lawsuits against Verizon, AOL and EarthLink.

[7]    The Swidler law firm was a District of Columbia limited liability partnership which operated under the name Swidler Berlin Shereff Friedman, LLP and Swidler Berlin LLP. In early 2006, the Swidler law firm became part of Bingham McCutchen LLP.

9

**REDACTED**                                          (A010;

A243).  In return,

        (A243).  The Kile law firm and Inline agreed

                (A010).

As part of the new arrangement,

           **REDACTED**                          In

addition, the new arrangement included

                        (Paperboy's CFO)

(A020-64).[8]  Pursuant to this agreement,

                **REDACTED**

**REDACTED**

        (A029).[9]

---

[8]    The June 30, 2003 Agreement is also sometimes referred to as the "4-way" agreement in subsequent documents, reflecting the distinct interests of (1) Inline/Goodman; (2) the Swidler firm; (3) the Kile law firm; and (4) Pie Squared/Tony Garland.

[9]    In order to provide collateral to insure Inline's prompt and full performance under the 4-way Agreement, Inline

**REDACTED**

(A065-070).

E.     **Events Leading To The Execution Of The Mercury-BBTI "Exclusive License Agreement"**

In October of 2003, Goodman met with Paperboy's patent attorneys from the Heller law firm (*see* A081; A103).[10]  Goodman explained to the Heller attorneys that his original 1989 and 1991 patent applications could be used to secure new patent claims covering DSL services (*id.*).  Shortly thereafter, Paperboy's counsel at Hanify & King proposed a new ownership arrangement to Inline (A080).  The proposed arrangement included

# REDACTED

*(id.).*

Goodman expressed a series of concerns regarding the proposed assignment of Inline's intellectual property rights to Mercury (A081-82; A083).  As of January 26, 2004, Goodman remained "very confused," as the discussions had evolved into a much broader ownership arrangement that would involve modifications of the agreements previously reached with Pie Squared, the Swidler law firm and the Kile law firm in the June 30, 2003 "4-way Agreement" (A084).

On the following day, January 27, 2004, Judge Thynge issued her Markman decision in the *AOL/EarthLink* cases (302 F. Supp. 2d 307).  Under Judge Thynge's claim construction, ADSL services provided from a telephone company central office, which represents approximately 90% of the ADSL lines in service, do <u>not</u> infringe any of the patents at issue .  This ruling was clearly adverse to Inline and the other parties, *i.e.*,

---

[10]     The Heller law firm is a limited liability partnership that currently operates under the name HellerEhrman LLP.  The Heller website lists Paperboy as a client of the firm's patent and trademark practice.

11

the Swidler law firm and Paperboy/Pie Squared, who had made substantial investments in

the *AOL/EarthLink* litigations.[11]

After the Markman ruling, Paperboy and the Swidler law firm pressed for a

complete renegotiation of the July 30, 2003 agreements.  *See* A104

### REDACTED

; A105

### REDACTED

The new arrangement was embodied in seven separate contracts that were finalized

between February 27, 2004 and March 4, 2004  (*see* A245).[12]  The agreements consist of:

(A) a "Termination and Release Agreement" (A134-44), that dissolved the prior June 30,

2003 "4-way" Litigation Agreement; (B) a "Participation Agreement" (*see* A106-14) that

gives                              **REDACTED**

(C) a "Retention Agreement" (*see* A097-102 and A147-152), that

## REDACTED                  (D) a "LLC Agreement" (A198-229)

---

[11]    *See, e.g.,* Wilkinson Dep. Tr. 339-41 (A403) (Markman ruling was adverse because it
eliminated central office ADSL service which diminished scope of damages); A089 (agreement
drafted by Swidler attorneys states that "a decision by the United States District Court for the
District of Delaware in the *Markman* hearing in two of the Current Patent Suits was adverse to
Inline); A117 (same); A243 (under Judge Thynge's Markman ruling, "the defendant can use the
10th element to avoid infringement").

[12]    As Inline explained to its shareholders (A243-46), the new agreements "[f]ollowing the
*Markman* ruling" were based on various considerations, including: (a) although Judge Thynge
ruled in Inline's favor in 9 of the 10 claim construction elements, "the defendant can use the 10th
element to avoid infringement" (A243); (b) the Swidler law firm had already incurred over $2.7
million and "did not want to do any further work on a contingency basis (A 243-44); and (c) the
"Investment firm," *i.e.*, Paperboy/Pie Squared, had already paid $2 million and refused to do any
further work with the Kile law firm (*id.*).

12

REDACTED

⸴ (F) an Exclusive License Agreement (A180-97) which

and (G) a Consulting Agreement (A230-35)

F.    **The March 4, 2004 "Exclusive License Agreement"**

The March 4, 2004 "Exclusive License Agreement" between Inline/Goodman and Mercury-BBTI is reproduced in the accompanying Appendix at pages A180-97. The terms of the agreement speak for themselves. As discussed *infra*, pp. 17 - 25, the Exclusive License Agreement ·

REDACTED

G.    **The Filing Of The Present Lawsuit On April 6, 2005**

On April 6, 2005, Mercury-BBTI's counsel at the Heller law firm filed a complaint initiating the present action in the Eastern District of Virginia (A294-314). That same day, Mercury-BBTI's other attorneys at the Swidler law firm sent some three dozen identical letters to various other telecommunications companies notifying them that the Verizon lawsuit had just been filed, that Mercury-BBTI was the exclusive licensee of the asserted patents, and that the Swidler attorneys on the licensing/settlement team represented both Inline and Mercury. Wilkinson Dep. Exh. 10 (A292-93); Wilkinson Tr. 98-100, 296-97 (A394, 401).

The complaint filed in Inline's name in the Eastern District of Virginia against the Verizon defendants, however, made absolutely no mention of Mercury-BBTI, Pie Squared or Paperboy – all of which are Delaware corporations. Instead, the complaint alleged that: "Inline is the owner of <u>all</u> right, title and interest in and to the '596, '718, '446 and '585 Patents" (A308 at ¶ 24). This allegation was not true, since Inline had previously assigned

REDACTED

13

(A012-19)                                   REDACTED

(*see infra*, pp. 18 - 24).

Some four months after the present lawsuit was filed, Inline, Goodman and

Mercury-BBTI concluded a new agreement – called the "Verizon Agreement" –

governing the present litigation (A316-66).  Although the Verizon Agreement was <u>back-</u>

<u>dated</u> "as of this 13th day of April 2005," it was, in fact, not executed until sometime in

August of 2005 (*see* A315).[13]

The Verizon Agreement expressly

the March 4, 2004 Exclusive License                    REDACTED


REDACTED


In addition, the Verizon Agreement expressly


REDACTED                    *See* A331 ("The

---

[13]     The copy of the Verizon Agreement produced to the Verizon defendants and recently
submitted by Inline to the Virginia district court is incomplete.  The Heller and Swidler
engagement letters (Exhibit C) and the agreement between Inline/Goodman and the Kile law firm
(Exhibit D) have not been produced, even though they are incorporated into and constitute an
integral part of the Verizon Agreement.  In any case, it is undisputed that: (a) at the time this
lawsuit was filed on April 6, 2005, the Heller law firm represented Paperboy and Mercury-BBTI;
(b) a month later, on March 9, 2005, the Heller law firm sent an engagement letter to Tony
Garland at Mercury-BBTI confirming the terms on which Heller would provide legal services in
connection with the present lawsuit; and (c) subsequently, on July 26, 2005, the Swidler law firm
sent Mercury-BBTI and Inline a new engagement letter.  It appears that the March 9 and July 26
engagement letters constitute the missing Exhibit C to the Verizon Agreement.

# REDACTED

## ARGUMENT

I.   **Only Parties That Have Been Granted "All Substantial Rights" Under A Patent Have Constitutional Standing To Sue For Patent Infringement.**

The question of standing to sue in a patent infringement case is jurisdictional. *Aspex*, 434 F.3d at 1339; *Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 U.S. Dist. LEXIS 7367 (D. Del., March 18, 2005) at ¶ 6; *Monsanto Co. v. Aventis*, 226 F. Supp 2d 531, 537 (D. Del. 2002). Standing to sue is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of the [jurisdictional] doctrines." *FW/PGS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Under controlling Federal Circuit precedent, a party may bring an action for patent infringement only if it "owns" the patent either by issuance or by assignment. *Speedplay*, 211 F.3d at 1249-50. The party that "owns" a patent for purposes of standing and subject matter jurisdiction is the party that "has been granted <u>all substantial rights</u> under the patent" (*id.* at 1250).

> A grant of <u>all substantial rights</u> in a patent amounts to an assignment – that is a transfer of title in the patent – which confers constitutional standing on the assignee to sue for patent infringement in its own name.

*Intellectual Property Dev. Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

15

Inline, as the party invoking federal jurisdiction in this case, bears the burden of proof on the ownership issue. *See Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) ("Standing to sue is a threshold requirement in every federal action ... [and] must be present at the time suit is brought.... The party bringing the action bears the burden of establishing that it has standing."). In particular, Inline must prove that "it owned the patent or (as here) patents on which its suit is based when it filed its complaint" against the Verizon defendants in the Eastern District of Virginia on April 6, 2005. *See Pinpoint, Inc. v. Amazon.com*, 347 F. Supp. 2d 579, 581 (N. D. Ill., 2004) (Posner, C. J. sitting by designation). If Inline transferred "all substantial rights" under the patents-in-suit to Mercury-BBTI and/or Pie Squared prior to April 6, 2005, this Court lacks subject matter jurisdiction and has "no choice" but to direct the entry of judgment dismissing this action. *Pinpoint*, 347 F. Supp. 2d at 581, 586.

It is well established that "an exclusive license agreement may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee <u>all substantial rights</u> to the patent at issue." *Aspex*, 434 F.3d at 1340. In this connection, it is irrelevant how the parties may have characterized the transactional documents. *Speedplay*, 211 F.3d at 1250 ("A party that has been granted all substantial rights under the patent is the owner regardless of how the parties characterize the transaction that conveyed those rights"); *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."); *Intellectual Prop. Dev.*, 248 F.3d at 1344 ("The title of the agreement at issue, which uses the term 'license' rather than the term 'assignment,' is not determinative of the nature of

16

the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination.").

In determining whether there has been a prior transfer of "all substantial rights" in a patent, the proper focus for the Court must be on "the substance of what was granted" by the pertinent written instruments. *Speedplay*, 211 F.3d at 1250. The Federal Circuit has established a two step analysis in this regard: first, the Court must consider the scope of the patent rights conveyed under an exclusive license agreement to the licensee; and second, the Court must determine the "significance," if any, of any rights allegedly retained by the licensor. *Speedplay*, 211 F.3d at 1250-52; *Intellectual Prop. Dev.*, 248 F.3d at 1342 (court should consider "rights retained by the grantor in addition to rights transferred to the grantee"); *Aspex*, 434 F.3d at 1341-43 (analyzing "the transfer or retention" of rights associated with ownership of a patent).

As shown in the next section, application of the Federal Circuit's two step analysis to the pertinent transactional documents in this case clearly establishes that Inline transferred "all substantial rights" in the patents-in-suit to Mercury-BBTI prior to April 6, 2005. Consequently, because Inline did not have standing when it filed suit, this Court lacks subject matter jurisdiction and must dismiss this action.

## II. Inline Transferred "All Substantial Rights" Under The Patents-In-Suit To Mercury-BBTI in 2004.

The key "ownership" agreement in this case is the March 4, 2004 "Exclusive License Agreement" (A180-97) between Inline/Goodman and Mercury-BBTI. This agreement transferred to Mercury-BBTI "all substantial rights" under the patents-in-suit. Indeed, the provisions of the March 4, 2004 "Exclusive License Agreement" are virtually indistinguishable from those held to constitute a transfer of "all substantial rights" in

17

*Speedplay* and cited by the Federal Circuit in *Aspex* as "strongly favor[ing] a finding of an assignment."

### A. The March 4, 2004 "Exclusive License Agreement" Transferred All Significant DSL Patent Ownership Rights To Mercury-BBTI.

The grant of patent rights to Mercury-BBTI in the March 4, 2004 "Exclusive License Agreement" could not have been much broader. The key "grant" provisions appear in paragraphs 4.1, 1.4, 1.7 and 1.10 of the agreement, which are excerpted for the Court's convenience in Attachment A to this brief.

## REDACTED

Thus, as of March 4, 2004, Mercury-BBTI was the only party that could be constitutionally injured by another entity that might attempt to make, use or sell any of the accused products or services in this case.

## REDACTED

It is undisputed that these rights cover all of Inline's present and future DSL patent rights.[14]

---

[14]    To be sure, the March 4, 2004 "Exclusive License Agreement" REDACTED

(¶ 1.10). These rights have nothing to do with the DSL technology at issue in this case

Even more important, Mercury-BBTI received

# REDACTED

¶ 4.1).  As

the Federal Circuit recognized in *Speedplay*, the unrestricted authority of an exclusive

licensee to sublicense its rights is <u>critical</u> and gives the exclusive licensee effective

control over the right to sue infringers.  211 F.3d at 1251 (unrestricted right to grant

sublicenses renders "illusory" any right retained by licensor to sue infringers if the

exclusive licensee does not; such a retained right does "not hinder [the exclusive

licensee's] enjoyment of the patent rights in any meaningful way").

With respect to the right to sue, the March 4, 2004 "Exclusive License Agreement"

# REDACTED

# REDACTED

# REDACTED

---

and, in any event, appear to have been subsequently transferred to Mercury-BBTI (A282).  *See infra*, pp. 22-23.

19

**REDACTED**

The March 4, 2004 Exclusive License Agreement also

**REDACTED**

A summary chart of the transferred ownership rights, with citations to specific paragraph numbers in the Exclusive License Agreement, is attached for the Court's convenience as Attachment C to this brief.

In sum, it is undisputed that the DSL patent ownership rights transferred by Inline to Mercury-BBTI under the March 4, 2004 "Exclusive License Agreement" included:

**REDACTED**

These "provisions themselves <u>strongly favor</u> a finding of an assignment, not a license" (*Aspex*, 434 F.3d at 1342), and are virtually identical to rights that were held to constitute a transfer of "all substantial rights" in *Speedplay*.

**B.    Inline Did Not Retain Any Significant Rights To The Patents-In-Suit.**

The second step of the Federal Circuit's ownership/standing analysis concerns the rights, if any, retained by a party at the time it files suit and the relative "significance" of those retained rights as compared to the substantiality of the rights transferred to the exclusive licensee. In recent filings in the Eastern District of Virginia, Inline asserts that it "retains substantial rights in the patents-in-suit" in four specific areas (A405-07). In

20

fact, each of the cited "retained" rights is either factually incorrect or else legally insufficient under Federal Circuit precedent.

First, Inline asserts that it retained "[t]he right to pursue the current suits for infringement against AOL and EarthLink" (A405). This assertion is flatly contradicted by the various agreements entered in February and March 2004, which gave

REDACTED                    For example,

the March 1, 2004 letter from the Swidler law firm to Mr. Goodman regarding the *AOL/EarthLink* litigation expressly

REDACTED

(A149). Likewise, pursuant to the March 3, 2004 "Litigation Agreement," Inline

REDACTED

(A161).

REDACTED

. Accordingly, Inline's claim that it retains "the right to pursue the current patent infringement suits against AOL and EarthLink" is baseless.

Second, Inline claims that it retained

(A405). Any such right, however, is irrelevant in this case where

REDACTED

**REDACTED**              Moreover, the Federal Circuit has ruled

that the contingent right of a licensor to sue if its exclusive licensee does not is purely

"illusory" and of no legal significance where, as here, the exclusive licensee has been

granted unrestricted sublicensing rights. *Speedplay*, 211 F.3d at 1251.

Thus, the licensor's retained right to sue at issue in *Speedplay* was virtually

identical to Inline's asserted right to sue if Mercury-BBTI does not. *Id.* ("'In the event

that [Speedplay] fails to halt an infringement ... within three (3) months,' then [the

licensors] 'Byrne and/or Zoumaras' shall have the option to initiate appropriate legal

proceedings in his/their own name"). The Federal Circuit held that this retained right was

insubstantial and "illusory" in view of the exclusive licensee's unfettered sublicensing

rights.

> Byrne and Zoumara's right to sue an infringer if Speedplay does not
> is <u>illusory</u>, because Speedplay can render that right nugatory by
> granting the alleged infringer a royalty-free sublicense. ...
> Speedplay [the exclusive licensee] thus controls enforcement of the
> [patent-in-suit] for all practical purposes. Even though Byrne and
> Zoumara retained the right to sue, that right would not hinder
> Speedplay's enjoyment of the patent rights in any meaningful way.

*Id.*; *accord Intellectual Prop. Dev.*, 248 F.3d at 1343-44 (confirming *Speedplay* analysis);

*Aspex*, 434 F.3d at 1342 (where licensor retained "no supervisory or veto power over

[exclusive licensee's] grant of sublicenses," licensor's retained right to participate in

infringement lawsuits is "<u>insignificant</u>," particularly where licensor "does not have a right

to make decisions on litigation strategy").

Third, Inline asserts

# REDACTED

(A406).

In fact, the March 4, 2004 Exclusive License Agreement makes clear that,

## REDACTED

*See Eyeticket Corp. v. Unisys Corp.*, 515 F.

Supp. 2d 527, 538 (E.D. Va. 2001) (Morgan, J.) ("assignments or exclusive licenses

tantamount to assignments must be appropriately judged by field of use" that is relevant

to a particular lawsuit). Nor is there any evidence that the retained rights in this "limited

field of use" have any monetary value or real-world significance.[15]

    Fourth, Inline claims : **REDACTED**

                                                    (A406). The

provision of the Exclusive License Agreement on which Inline relies is paragraph 4.5,

which is reproduced for the Court's convenience as Attachment D to this brief.

## REDACTED
[16]

    (¶ 4.5).

paragraph 4.5 is meaningless. Indeed, this is exactly the type of "condition subsequent"

provision that all Federal Circuit cases uniformly reject as an indicia of ownership

---

[15]    Indeed, the documents produced by Inline indicate · **REDACTED**

[16]    The Verizon defendants specifically asked Inline to produce documents concerning the "annual operating budgets" on May 8, 2006. Inline counsel's June 1 response explicitly stated that: "the annual operating budgets' are <u>not relevant</u> to the ownership of the patents-in-suit."

retention. *See, e.g., Aspex*, 434 F.3d at 1343-44 (discussing case law concerning contingent reversionary interests triggered by bankruptcy, paying off a mortgage or other hypothetical future events).

In sum, none of the so-called "retained rights" that Inline argued to the Virginia district court constitutes a "substantial" ownership right with respect to the patents-in-suit. Rather, all such substantial ownership rights were transferred to Mercury-BBTI before the present lawsuit was filed "in the name of Inline" by Mercury-BBTI's counsel on April 6, 2005.

### C.  Mercury-BBTI Has Effectively Conceded That It Owns The Patents-In-Suit.

The accompanying Appendix contains a copy of a December 21, 2005 "White Paper" prepared for Mercury-BBTI regarding "BBTI's Splitterless DSL Patents" (A367-81). The "White Paper" is currently posted on BBTI's website at www.bbtechi.com/main.html.

The White Paper expressly represents that "BBTI <u>holds</u> a substantial portfolio of patents which are fundamental to splitterless DSL" technology (A374). Indeed, the White Paper asserts that "<u>BBTI's current set of U.S. granted patents</u>" includes three of the key patents at issue in this litigation (A375).[17] These public representations of ownership of the patents-in-suit fully confirm that Mercury-BBTI received "all substantial rights" under those patents pursuant to the March 4, 2004 Exclusive License Agreement.

---

[17]    Goodman and Inline have similarly conceded that "<u>Mercury owns</u> the exclusive rights provided by a portfolio of patents that are based on patent applications originally filed by Inline CC in 1989 and 1991" and that "<u>Mercury also owns</u> rights to the other Inline patents and applications" (A287). All of the patents in suit are indisputably based on patent applications originally filed by Inline in 1989 and 1991. *See* A286 (Goodman 12/24/04 email states that: "My DSL partners sort of 'control the show,' now, on <u>all of Inline's IP</u>.").

In addition, Mercury-BBTI and Pie Squared have also conceded that they – and not Inline – "own" the patents-in-suit for purposes of constitutional standing and subject matter jurisdiction when they filed a new, independent action against the Verizon defendants in this Court on May 3, 2006. *Broadband Technology Innovations, LLC et al. v. Verizon Internet Services, Inc., et al.*, Civil Action No. 06-291 (JJF). The complaint in the new May 3, 2006 action was filed solely by Mercury-BBTI and Pie Squared. Tellingly, Inline was not joined as a party plaintiff. By filing this new third lawsuit against the Verizon defendants without naming Inline, Mercury-BBTI effectively concedes that the March 4, 2004 "Exclusive License Agreement"

## REDACTED

 (see complaint in CA No. 06-291 at ¶ 20).

### III.  The Present Action Should Be Dismissed With Prejudice.

Because Inline transferred "all substantial rights" under the patents-in-suit to Mercury-BBTI in 2004, it had no constitutional standing on April 6, 2005 when Mercury-BBTI's counsel filed this lawsuit in Inline's name in the Eastern District of Virginia. Therefore, as a matter of law, this Court lacks subject matter jurisdiction and has "no choice" but to enter judgment dismissing this action. *Pinpoint*, 347 F. Supp 2d at 581, 586.

In this case, the dismissal should be with prejudice consistent with the fundamental policy underlying the standing doctrine in patent infringement lawsuits. As the Federal Circuit explained in *Speedplay*:

> By restricting the availability of a remedy for infringement to the *de facto* owner of the patent, the standing doctrine serves "to enable the alleged infringer to respond in one action to all claims of infringement

for his act, and thus either to defeat all claims in the one action, or by
satisfying one adverse decree to bar all subsequent actions.

211 F.3d at 1253 (quoting from *Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269
U.S. 459 (1926)).

Verizon has now been sued <u>three times</u> on the same patents. First, Verizon was
sued by Inline in this Court in June 2002 at a time when Inline, in fact, held "all right,
title and interest" to the patents at issue. Second, Verizon was sued again by Mercury-
BBTI's counsel "in the name of Inline" in the Eastern District of Virginia in April 2005,
at a time when Inline had already transferred "all substantial rights" to Mercury-BBTI
and had no constitutional standing. Third, Verizon has been sued yet again in a separate
and independent lawsuit filed by Mercury-BBTI and Pie Squared in this Court just a few
months ago. During each iteration, the Verizon defendants have been forced to incur
substantial litigation expenses. The <u>only suit</u> over which this Court has proper subject
matter jurisdiction is the newly-filed May 3, 2006 action by Mercury-BBTI and Pie
Squared – the *de facto* owners of the patents-in-suit. The Verizon defendants will
respond in that action and all other suits purportedly brought under the same patents must
be dismissed with prejudice.

Dismissal with prejudice of the present suit is also an appropriate sanction for the
conduct of Mercury-BBTI and its counsel during this action. Although Inline originally
sued Verizon in 2002 in this Court, Mercury-BBTI refiled this case in the Eastern District
of Virginia "rocket docket" as part of a forum-shopping effort to evade Judge Thynge's
adverse rulings in the *AOL/EarthLink* litigations, to relitigate issues (*e.g.*, claim
construction) previously decided by Judge Thynge, and to "leap-frog" the *AOL/EarthLink*
cases before they could proceed to trial. To this end, Mercury-BBTI's counsel falsely

26

alleged in the complaint that "Inline is the owner of all right, title and interest" in the

patents-in-suit. Complaint at ¶ 24 (A308). At the time this allegation was made, Pie

Squared, Mercury-BBTI and their counsel were all well aware of the various assignment

and exclusive license agreements executed among the parties in 2003 and 2004.[18]

The Federal Circuit has recognized that the conduct of a party and its counsel

misrepresenting ownership of a patent and concealing evidence that would reveal lack of

ownership is clearly sanctionable. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402

F.3d 1198, 1204-05 (Fed. Cir. 2005) (plaintiff "repeatedly misrepresented its ownership

of the '860 patent and concealed evidence that would reveal its lack of ownership;"

plaintiff and its counsel could not have "reasonably believed that these facts were not

material to subject matter jurisdiction"). Nor does Mercury-BBTI have any basis to

complain about a dismissal with prejudice in the circumstances of this case, since it has

already filed a separate and independent action in its own name. *See Sicom Systems Ltd.*

*v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (district court has

discretion to dismiss for lack of standing with prejudice).

---

[18]    Mercury-BBTI's counsel compounded this misdirection at the October 4, 2005 oral
argument before the Virginia district court on the Verizon defendants' motion to transfer to
Delaware by repeatedly emphasizing that Inline was incorporated in Virginia. While technically
true, the argument was clearly misleading by failing to apprise the court that the real parties in
interest – Mercury-BBTI, Pie Squared and Paperboy – <u>were all Delaware corporations</u>.

## CONCLUSION

For the foregoing reasons, the Verizon defendants' motion for summary judgment should be granted and the present action, over which the federal courts never obtained proper subject matter jurisdiction, should be dismissed with prejudice.

Respectfully submitted,

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Dated: August 11, 2006

By: /s/ Jeffrey B. Bove
    Jeffrey B. Bove (#998)
    CONNOLLY BOVE LODGE & HUTZ LLP
    The Nemours Building
    1007 North Orange Street, Suite 878
    Wilmington, DE 19801
    Telephone: 302.658.9141
    Facsimile: 302.658.5614

Counsel for Verizon Defendants

28

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2006 a true copy of the *Redacted Public Version of D.I. 124, Verizon Defendants' Opening Brief In Support Of Motion For Summary Judgment Dismissing This Action For Lack Of Subject Matter Jurisdiction,* was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq.          (Served electronically & by overnight delivery)
Alexander L. Brainerd, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brainerd@hellerehrman.com
Michael.Plimack@hellerehrman.com


C. Joël Van Over, Esq.          (Served electronically & by overnight delivery)
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
joel.vanover@bingham.com


Julia Heaney, Esq.               (Served electronically & by hand delivery)
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
Post Office Box 1347
Wilmington, Delaware 19899-1347
jheaney@mnat.com

By: /s/ *Jeffrey B. Bove*
    Jeffrey B. Bove (#998)

**Exhibit A**

REDACTED

**Exhibit B**



**Exhibit C**

REDACTED

**Exhibit D**

REDACTED