IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-866 (JJF) |
| | ) | |
| VERIZON INTERNET SERVICES, | ) | **PUBLIC VERSION** |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

REDACTED VERSION OF
**PLAINTIFF INLINE CONNECTION CORPORATION'S ANSWERING BRIEF IN
OPPOSITION TO VERIZON DEFENDANTS' MOTION TO
<u>DISMISS THIS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

OF COUNSEL:

Carl S. Nadler
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
202.912.2000

Alexander L. Brainerd
Michael K. Plimack
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
415.772.6000

Robert C. Bertin
C. Joël Van Over
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
202.424.7581

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiff Inline Connection
Corporation*

Original Filing Date: August 25, 2006
Redacted Filing Date: August 30, 2006

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDING............................2

III.   SUMMARY OF ARGUMENT ..............................................................................5

IV.    STATEMENT OF FACTS ....................................................................................6

    A.     Ownership of the Patents-in-Suit Is Transferred to Inline ...........................6

    B.     Inline Licenses Patents to BBTI, But Inline Retains Ownership....................8

        1.     Negotiation of the BBTI License .......................................................8

        2.     Terms of the License as Executed ...................................................11

V.     ARGUMENT....................................................................................................13

    A.     The Intention of the Parties.......................................................................13

    B.     The Rights Transferred .............................................................................13

    C.     The Rights Retained By Inline Are More Than Sufficient to Prevent Any Finding of Assignment.....................................................................18

    D.     The Verizon Defendants' Reliance on Documents Dated After March 4, 2004 Is Misplaced.....................................................................20

    E.     The Verizon Defendants' Request for Sanctions Is Unwarranted ...............21

VI.    CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

Page

Cases

*Abbott Labs. v. Diamedix Corp.,*
47 F.3d 1128 (Fed. Cir. 1995) ................................................................ *passim*

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.,*
434 F.3d 1336 (Fed. Cir. 2006) ................................................ 14, 16, 17, 19

*Ballenger v. Applied Digital Solutions, Inc.,*
189 F. Supp. 2d 196 (D. Del. 2002)........................................................... 2

*Eyeticket Corp. v. Unisys Corp.,*
155 F. Supp. 2d 527 (E.D. Va. 2001) ...................................................... 16

*Inline Connection Corp. v. AOL Time Warner Inc.,*
302 F. Supp. 2d 307 (D. Del. 2004).......................................................... 3

*Inline Connection Corp. v. AOL Time Warner Inc.,*
364 F. Supp. 2d 417 (D. Del. 2005).......................................................... 3

*Intellectual Prop. Dev. v. TCI Cablevision of Cal. Inc.,*
248 F.3d 1333 (Fed. Cir. 2001) ............................................................... 14

*Kamen v. AT&T,*
791 F.2d 1006 (2d Cir. 1986) ................................................................... 2

*Mortensen v. First Fed. Savings and Loan Ass'n,*
549 F.2d 884 (3d Cir. 1977) ..................................................................... 2

*Prima Tek II, LLC v. A-Roo Co.,*
222 F.3d 1372 (Fed. Cir. 2000) ............................................................... 14

*Rite-Hite Corp. v. Kelley Co.,*
56 F.3d 1538 (Fed. Cir. 1995) .................................................... 5, 13, 14

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
402 F.3d 1198 (Fed. Cir. 2005) ........................................................ 22, 23

*Sicom Systems Ltd. v. Agilent Technologies, Inc.,*
427 F.3d 971 (Fed. Cir. 2005) ........................................................ *passim*

*Speedplay, Inc. v. Bebop, Inc.,*
211 F.3d 1245 (Fed. Cir. 2000) ..................................................... 14, 15, 19

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,*
   944 F.2d 870 (Fed. Cir. 1991) ................................................................................ 6, 13

*Verizon Online Services, Inc. v. Ralsky,*
   203 F. Supp. 2d 601 (E.D. Va. 2002) .................................................................... 3, 4

## Statutes

35 U.S.C.
   § 100(d) ............................................................................................................................ 5
   § 281 ................................................................................................................................. 5

## I.  __INTRODUCTION__

The Verizon Defendants[1] are entirely incorrect that Plaintiff Inline Connection Corporation ("Inline") assigned ownership of the patents in suit to Broadband Technology Innovations, LLC ("BBTI").  To raise sufficient funds to pursue this litigation, Inline entered into an **exclusive license** arrangement with BBTI.  But the terms of that agreement create a **license,** not an assignment, and the parties' negotiating history demonstrates their clear intent to negotiate a license.  Inline remained the owner of the patents and – as such – the proper plaintiff to bring and pursue this lawsuit.

The Verizon Defendants' effort to re-characterize the Inline-BBTI agreement is yet another procedural tactic designed to postpone – even to evade – a resolution of this case on its merits.  But this current effort fails as a matter of fact and law.   Inline does not dispute that the agreement However, neither Inline nor BBTI intended for that agreement

**REDACTED**

---

[1]    Verizon Internet Services, Inc.; GTE.Net LLC, Verizon Services Corp.; Telesector Resources Group, Inc.; Verizon Corporate Services Group, Inc.; Verizon Advanced Data, Inc.; Verizon Avenue Corp.; Verizon Delaware, Inc.; and GTE Southwest, Inc. *d/b/a* Verizon Southwest.

**REDACTED**

*See* Attachment A hereto.  As explained in greater detail below, this bundle of retained rights is more than sufficient to establish Inline's continued ownership of the patents-in-suit.[2]  *See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130-31 (Fed. Cir. 1995).

## II.     STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

In 2002, Inline sued AOL Time Warner, Inc. ("AOL"); Earthlink, Inc. ("Earthlink"); and the Verizon Defendants' parent company, Verizon Communications Inc. ("VCI"), for patent infringement in this District.  *See* Docket for Civil Action No. 02-878.  VCI moved for summary judgment, asserting it was a mere holding company and not a correct party defendant.  *Id.* Accordingly, Inline dismissed VCI from that Delaware case without prejudice.[3]  *Id.*  Neither

---

[2]     The Verizon Defendants suggest the Court "direct[ed] the Verizon [D]efendants to file the present motion for summary judgment regarding 'ownership'".  Verizon Brief at 3. The Court's July 25, 2006 Order, however, merely directs the parties to file "any appropriate motions concerning the 'ownership' issue."  *See* July 25, 2006 Order (D.I. 122).  Although the Verizon Defendants' motion does attack the factual basis of a court's jurisdiction to hear Inline's claims, it remains a motion under Rule 12 and not under Rule 56.  *See, e.g., Ballenger v. Applied Digital Solutions, Inc.*, 189 F. Supp. 2d 196, 198-199 (D.Del. 2002), *citing Kamen v. AT&T*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

[3]     Ironically, having secured dismissal of the case against the VCI holding company on the grounds that its 100% control and ownership of its own subsidiaries was insufficient to

2

AOL nor Earthlink argued for dismissal based on their own corporate structures, and the Delaware Court subsequently consolidated those two actions. *See* Docket for Civil Action No. 02-477.

After that dismissal and consolidation, the Delaware court issued several key orders in the AOL/Earthlink lawsuit, including orders construing patent claims and granting partial summary judgment. *See, e.g., Inline Connection Corp. v. AOL Time Warner Inc.,* 302 F. Supp. 2d 307 (D. Del. 2004); *Inline Connection Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417 (D. Del. 2005). While the Verizon Defendants assert that the Delaware Court's claim construction rulings were adverse to Inline, those rulings have actually cleared the way for a trial on the merits next February – a trial in which Inline has strong infringement claims against AOL and Earthlink (and afterward, against Verizon in this action).

While the Delaware case against AOL and Earthlink proceeded, Inline worked to identify the Verizon subsidiaries central to the provision of the accused services. Inline chose to file suit against them in Virginia, the hub of the nationwide infringing activity and the forum where the Verizon subsidiaries are headquartered (or have a substantial presence). *See* App., Ex. 2 (B003) (Inline's Response at 3-20); *see also Verizon Online Services, Inc. v. Ralsky*, 203 F. Supp. 2d 601 (E.D. Va. 2002) (discussing central nature of Virginia-based internet servers in the Verizon Online Services network).

---

hold it responsible for those subsidiaries' acts of infringement, Verizon in its current motion makes repeated reference to Paperboy Ventures LLC ("Paperboy") as if it were a party here. Paperboy is not even the holding company for Inline, the plaintiff in this case. Instead, Paperboy has an 82% interest in BBTI, with the other 18% held by Inline. *See* Appendix to Verizon Defendants' Brief in Support of Motion for Summary Judgment Dismissing This Action for Lack of Subject Matter Jurisdiction ("Verizon App."), Ex. 24 (A198) (Mercury Communications I, LLC Limited Liability Company Agreement); Appendix to Plaintiff Inline's Opposition to Verizon Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("App."), Ex. 1 (B001) (Declaration of David D. Goodman) at ¶ 3. Its role in this case is no more significant than is the role of VCI, the ultimate and controlling parent company of the Verizon Defendants.

Nine of the named Verizon subsidiaries immediately moved to transfer the case to this District. App., Ex. 3 (B025) (Dec. 5, 2005 Opinion and Order in Virginia) at 13. Inline resisted that motion, emphasizing both that much of the infringing activity was occurring in Virginia and that Inline itself is a Virginia corporation. On December 5, 2005, however, the Eastern District of Virginia (Judge Morgan) granted the requested transfer. *Id.* The Virginia Court simultaneously stayed all proceedings against the remaining sixteen Verizon subsidiaries – those that did not join the motion to transfer to this Court – pending the outcome here. *Id.*

This Court, with Verizon's consent, stayed Inline's transferred claims against the Verizon Defendants except as to discovery on specific invalidity and unenforceability issues. *See* D.I. 92 (Order, Apr. 17, 2006). When Verizon Defendants sought "ownership" discovery, Inline objected that this was not within the limited issues the Court's stay had allowed to proceed. *See* D.I. 97 (Order, Apr. 24, 2006). This Court ruled that ownership discovery should proceed, and Inline promptly provided it to Verizon. *Id.* Verizon represented to the Virginia court that discovery on ownership has been completed. *See, e.g.*, App., Ex. 4 (B039) (VA Hearing Transcript) at 10:9-13.

Throughout that discovery period, Verizon asserted that Inline lacked standing to maintain the current lawsuit, particularly without joining BBTI and Pie Squared. In fact, Verizon's answer to Inline's complaint asserted counterclaims against not only Inline, but also against BBTI and Pie Squared. *See* D.I. 89 (Verizon Defendants' first Answer and Counterclaims).

Because Verizon was disputing Inline's standing to sue, BBTI and Pie Squared answered Verizon's counterclaims and asserted their own counterclaims for patent infringement against the Verizon Defendants. Out of an abundance of caution, BBTI and Pie Squared also filed a separate patent infringement action against the same Verizon Defendants in this Court. *See* D.I. 103 (BBTI's and Inline's Answer and Counterclaims); App. Ex. 5 (B073) (BBTI's and Pie Squared's Complaint). In that separate suit, both BBTI and Pie Squared affirmatively assert that Inline is an owner of the patents and a proper party-plaintiff. *See* App., Ex. 5 (B078) (BBTI's

4

and Pie Squared's Complaint) ¶ 19.  BBTI and Pie Squared thus filed the separate suit only as an additional safeguard against Verizon's clear intent to challenge Inline's standing to pursue this suit.  *See* App., Ex. 6 (B087) (May 3 Letter from Mary Graham to this Court, noting that BBTI , Pie Squared and Inline all believe that Inline is a proper plaintiff to sue in its own right).

Instead of challenging Inline's standing in this Court, however, Verizon first filed a motion to lift the stay of litigation and to dismiss in the Virginia action.  The motion also requested harsh sanctions against Inline and its counsel for a purported "forum shopping scheme" that Verizon concocted out of whole cloth.  App., Ex. 7 (B089) (Verizon's Virginia motion).  Verizon's motion, and its unsubstantiated accusations that Inline and its counsel had conspired to mislead the Virginia Court, was submitted to this Court by means of  "courtesy copy."  After consulting directly with this Court as to its intentions, Judge Morgan denied Verizon's Virginia motion to lift the stay, decrying the kind of allegations that Verizon has made against Inline and Inline's counsel as "unfortunate" and "unprofessional."  *Id.*

The Verizon Defendants then filed this motion seeking dismissal based on a replay of the argument in Virginia that Inline lacked standing on the date that it filed suit to maintain claims of patent infringement against them.

### III.    SUMMARY OF ARGUMENT

1.    Standing to sue for patent infringement hinges on whether the plaintiff owns the patent-in-suit, holds an exclusive licensee to that patent, or holds a bare license to the patent.  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (citations omitted).  The patent owner can sue for infringement ***in its own name***, meaning that a complaint naming only the owner as plaintiff is immune from attack for lack of constitutional standing.  *See, id.* at 1538 (the right of a patentee to a remedy for patent infringement is created by 35 U.S.C. § 281, which provides that a "patentee", including successors in title to the patentee, "shall have remedy by civil action for infringement of his or her patent."), citing 35 U.S.C. §§ 100(d), 281 (other citations omitted).

2.    Standing is determined as of the filing of the complaint.  *See, e.g., Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005).

3.    A patent owner does not generally give up ownership of a patent – and with it the right to bring suit under the patent – by granting a license to a third party.  *Id.* at 1551-1552.

4.    But, if the license transfers ***all*** substantial rights in the patent to the grantee, then a court may re-characterize a license as an assignment of full ownership in the patent.  Before doing so, however, a court "must assess the substance of the rights transferred and the intention of the parties involved."  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 874 (Fed. Cir. 1991).

5.    Here, both factors – the parties' intention and the substance of rights transferred – compel the conclusion that the BBTI license

6.                              **REDACTED**

IV.    **STATEMENT OF FACTS**

A.    **Ownership of the Patents-in-Suit Is Transferred to Inline**

David Goodman and Robert Domnitz invented the technology at the core of this case, and in 1988, Goodman started a small company – Inline – to secure the financing necessary both to pursue his inventive activities and protect his intellectual property from infringement by

6

others.  *See* App., Ex. 1 (B001) (Declaration of David D. Goodman ("Goodman Dec.")) at ¶ 2.

Inline is the original owner by assignment of each and every one of the patents in suit.[4]

Inline later entered into several additional agreements to '

**REDACTED**

---

[4]     On December 1, 1998, the U.S. Patent and Trademark Office issued U.S. Patent No. 5,844,596 ("the '596 Patent"), listing David D. Goodman as the inventor.  App., Ex. 8 (B110).  Likewise, U.S. Patent Nos. 6,236,718 ("the '718 Patent"); 6,243,446 ("the '446 Patent"); and 6,542,585 ("the '585 Patent") were issued on May 22, 2001; June 5, 2001; and April 1, 2003, respectively, each listing Goodman as the inventor.  App., Exs. 9 – 11 (B174 – B327).  Inline is an assignee on all four issued patents, with a Washington, D.C.-based company called CAIS, Inc. ("CAIS") also listed as joint assignee for the '718 and '446 patents.  By agreement dated June 1, 2001,     *See* App., Ex. 12 (B328) (Termination/Nonexclusive License Agreement).

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

Since standing to sue is decided based on the facts as of the day the suit is filed, however, those agreements came too late to be relevant in any way to this motion.  *See, e.g., Sicom*, 427 F.3d at 975-976 (citation omitted).

**REDACTED**

**REDACTED**

## V.    <u>ARGUMENT</u>

A patent owner does not generally give up ownership of a patent – and with it the right to bring suit under the patent – by granting a license to a third party.  *See Rite-Hite*, 56 F.3d at 1551-1552.  But, if the license transfers ***all*** substantial rights in the patent to the grantee, then a court may re-characterize a license as an assignment of full ownership in the patent.  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 874 (Fed. Cir. 1991).  Before doing so, however, a court "must assess the substance of the rights transferred and the intention of the parties involved."  *See id.*  Here, both factors – the parties' intention and the substance of rights transferred – compel the conclusion that the BBTI license is just that: a license and nothing more.

### A.    <u>The Intention of the Parties</u>

**REDACTED**

### B.    <u>The Rights Transferred</u>

**REDACTED** ___ ____, and therefore, on April 6, 2005, it retained

sufficient standing to maintain a suit against Verizon in its own name.[5]  *See, e.g., Rite Hite*, 56

F.3d at 1551; *see also Abbott Labs.*, 47 F.3d at 1130-31.

### The Right to Sue to Prevent Infringement and to Receive Infringement Damages.

**REDACTED**                                        See *Aspex Eyewear, Inc. v.*

*Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006) (citing P*rima Tek II, LLC v. A-Roo*

*Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000)) ("A key factor has often been where the right to sue

for infringement lies.").          **REDACTED**

. See Abbott Labs., 47 F.3d at 1132

(finding an agreement to be a license where, inter alia, the licensor retains the right to sue when

the licensee declines exercise of its first right to sue); see also, *Intellectual Prop. Dev. v. TCI*

*Cablevision of Cal. Inc.*, 248 F.3d 1333, 1343-44 (Fed. Cir. 2001) (distinguishing Vaupel and

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) on the basis that those cases

involved effective transfer of the **entire** right to sue).[6]

---

[5]        A party brings suit *in its own name* or *on its own behalf* when that party directly owns the
right that it seeks to vindicate in court – *i.e.* , that a patent owner has constitutional and
prudential standing to sue for infringement means the same thing as a patent owner has
the right to sue in its own name/on its own behalf.  This contrasts with the situation where
a party can only bring suit in another's name or on another's behalf, which is meant to
signify that the right that the party (in this context, an exclusive licensee) is seeking to
vindicate in court is derived (here, by exclusive license) from that other entity (here, the
patent owner).
                                        It has not done so in this case, as the
Verizon Defendants have inexplicably and repeatedly contend. *See, e.g.,* Verizon Brief at
14-15.  BBTI is not a named plaintiff at all.  Rather, it is Inline, as patent owner, that has
sued *in its own name and on its own behalf.*  See Complaint.

[6]        The right to sublicense is not determinative of the nature of an agreement transferring
rights in a patent, as the Verizon Defendants suggest.  Verizon Brief at 19.  Rather, the
Federal Circuit has refused to re-characterize a license as an assignment where the right
to sublicense has been transferred.  *See, e.g., Abbott Labs.*, 47 F.3d at 1129 (noting
transferor's right to practice the patent for its own benefit including the right to sell
products to transferee's sublicensees).

REDACTED

**REDACTED**

*also, Abbott Labs.*, 47 F.3d at 1132 (finding an agreement to be a license where, *inter alia*, the license contemplates the presence of the licensor in any suit brought by the licensee); *compare Speedplay*, 211 F.3d at 1251 (finding an agreement to be an assignment where, *inter alia*, the agreement does not contemplate the participation of the transferor in lawsuits brought by the transferee).

**REDACTED**

*See* § 1.10 (A183); *see also Abbott Labs.*, 47 F.3d at 1132

---

[7]    Contrary to the Verizon Defendants' assertion,

**REDACTED**

(finding an agreement to be a license where, *inter alia*, the transferor retains "the right to make and use, for its own benefit, products embodying the inventions claimed in the patents").[8]

**REDACTED**

Such a right of reversion is not one triggered simply by bankruptcy or default. *See Aspex*, 434 F.3d at 1342-43 (distinguishing a reversion of rights on a date certain).

.

**REDACTED**

---

[8] The Verizon Defendants have stated, without support, that the right to exploit the Inline patents in the area of ethernet over voice "has nothing to do with" DSL technology. *See, e.g.*, Verizon Brief at 23. That characterization is incorrect. Both ethernet over voice and DSL technology involve the transfer of data, including information from the world wide web, over a transmission line also used to carry voice signals. Ethernet over voice would more typically be employed within a single building or complex (*i.e.*, point-to-point communications in a hotel), while DSL involves interaction with the phone company itself; however, these applications of the patented technology are very closely related. The Verizon Defendants' reliance on *Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527 (E.D. Va. 2001) is thus misguided. The fields of use at issue here are not wholly separable.

In any event, Inline respectfully submits that the *Eyeticket* court's reasoning is flawed in finding that because exclusivity is defined by field of use, it necessarily follows that ownership itself should be defined by field of use. Such logic would permit the possibility that there could be multiple different owners of a single patent, all with standing to sue in their respective fields of use without joining any of the others, that separate right to sue in each owner's own name necessarily including the right to effect the construction of the same patent's claims as a matter of law. Such reasoning is untenable.

16

**REDACTED**

*See, e.g., Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342-43 (Fed. Cir. 2006) (distinguishing a reversion of rights on a date certain).

**REDACTED**

### C.    The Rights Retained By Inline Are More Than Sufficient to Prevent Any Finding of Assignment

On balance, the Inline/BBTI agreement is strikingly similar to the one addressed by the Federal Circuit in *Abbott Labs*, 47 F.3d at 1132. There, the Federal Circuit declined to re-characterize an agreement licensing certain patent rights from Diamedix Corp. ("Diamedix") to Abbott Laboratories ("Abbott") as an assignment of patent rights.

The Federal Circuit noted that Abbott (like BBTI here) took its rights under the agreement in question "subject to prior licenses granted by Diamedix." *See Abbott Labs*, 47 F.3d at 1132. Diamedix (like BBTI) also retained the right to make and use products embodying the inventions claimed in the patent, and if Abbott refused to bring suit to stop an infringement, Diamedix retained the right to prosecute its own infringement action. *See id.* The Court also noted the significance of language in the agreement that appeared to contemplate participation by Diamedix in any suit brought by Abbott. *Id.*

**REDACTED**

Although the agreement in *Abbott Labs* "was not assignable by either party without the consent of the other", the case does note that Diamedix's right to practice the patent for its own benefit included the right to "sell such products...to *Abbott's* sublicensees". *Id.* at 1129 (emphasis added). This language suggests that the transfer of the right to sublicense is not, *per se*, indicative of an assignment, but rather, all of the rights transferred and retained under the agreement have to be considered before determining whether it creates a license or an assignment.[9]

---

[9]    The Federal Circuit's consideration of the rights transferred under the *Abbott Labs* agreement occurred in the context of deciding whether it was proper for the district court to deny Diamedix's motion to intervene in an infringement action brought by Abbott.

Unsurprisingly, the Verizon Defendants largely ignore the Federal Circuit's decision in *Abbott Labs*, instead relying heavily on the *Speedplay* decision. But the *Speedplay* opinion makes crystal clear that the case now before the Court is far closer to *Abbott Labs* (where the agreement was confirmed as a license) than to *Speedplay*. Thus, the *Speedplay* Court distinguished *Abbott Labs* explicitly because the license in *Speedplay* "was not subject to any prior-granted licenses or to any retained rights by the licensor to practice the patent". *See Speedplay*, 211 F.3d at 1251. Here, like in *Abbott Labs* and unlike in *Speedplay*, the agreement in question ***does*** permit Inline to practice the patent and does subject its terms to "prior granted licenses", as well as to other earlier-entered agreements. Thus, although the *Abbott Labs* decision did not "control the case" in *Speedplay*, it does here, and, as in *Abbott Labs*, ⸢

## REDACTED

---

*Abbott Labs*, 47 F.3d at 1130. Abbott had sued a defendant without joining Diamedix as a party, prompting Diamedix to move to intervene on the basis that it owned the patents-in-suit, which Abbott opposed by claiming that the license agreement transferred ownership to Abbott. *See id.* This adversarial posture between the transferor (Diamedix) and the transferee (Abbott) may explain the failure of the *Abbott Labs* Court to weigh the intent of the parties when deciding whether to re-characterize the license as an assignment.

[10] The Verizon Defendants also rely on *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006). *See, e.g.*, Verizon Brief at 17. However, that case holds that when an agreement contains a reversion of rights transferred on a date certain (and not only, *e.g.*, in the event of default or bankruptcy), it is a license, not an assignment of ownership. *See Aspex*, 434 F.3d at 1342-44. In dicta, the *Aspex* Court does suggest that, absent the reversion of rights, the other rights transferred in that case "strongly favor[ed] a finding of an assignment", but those circumstances are not present here. For example,

### REDACTED

⸱. Nor is it clear that the *Aspex* transferee took its rights under the agreement in question subject to prior-granted licenses to the patent at issue there. Had the licensor retained the right to practice the patented inventions and had the licensee taken its rights subject to prior-granted licenses, the *Aspex* court could just as easily have relied on *Abbott* to reach its conclusion, without having to consider various forms that reversion of rights might take.

**D.     The Verizon Defendants' Reliance on Documents Dated After March 4, 2004 Is Misplaced**

Because standing is determined solely as of the date suit is filed, nothing occurring after April 6, 2005 is pertinent to the motion now before the Court. *See, e.g., Sicom*, 427 F.3d at 975-976. For this reason, the Court should dismiss entirely Verizon's reliance on later events such as the BBTI/Pie Squared Suit (Verizon Brief at 24, 25), the so-called "White Paper," *id.* at 24, and the Verizon Agreement, *id.* at 14. Even if the Court could rely on these documents, none of them support a finding that the BBTI license should be re-characterized as an assignment. Nor do the Goodman e-mails that the Verizon Defendants cite support their argument for re-characterization. *Id.*

*The BBTI/Pie Squared Complaint.* Within the four corners of the complaint itself, BBTI and Pie Squared expressly state their belief that Inline remains the owner of the patents-in-suit. *See* App., Ex. 5 (Complaint) (B073). The suit was filed solely as a "belt-and-suspenders" safeguard against the very motion Verizon has filed. It is an exercise in caution, not an admission of anything.

*The White Paper.* The Verizon Defendants also point to a White Paper currently posted on BBTI's website that states that "BBTI holds a substantial portfolio of patents which are fundamental to splitterless DSL" and that makes reference to "BBTI's current set of U.S. granted patents." *See* Verizon Brief at 24, citing Verizon App., Ex. 49 (A374-375). These statements show nothing more than the truth: BBTI does *hold* considerable rights to the Inline patent portfolio. It is an exclusive licensee with sublicensing rights, exploitation rights, and a portion of the right to sue to stop infringement. BBTI's statements on its website do not make it the owner of legal title to Inline's patents, though.

*The Verizon Agreement.* Any reliance on the "Verizon Agreement" to bolster the Verizon Defendants' arguments is misplaced, as standing is determined as of the date on which the complaint was filed. *See, e.g., Sicom*, 427 F.3d at 975-976. Moreover, the Verizon Defendants cannot be heard to complain about the adequacy of Inline's production with respect to ownership documents. *See, e.g.*, Verizon Brief at 14, n. 13. Counsel for both the Verizon

Defendants and the Verizon subsidiaries still before the Virginia Court has expressly stated that all "ownership" discovery was complete as of July 24, 2006. *See, e.g.,* App., Ex. 4 (VA Hearing Transcript) at 10:9-13 (B048).

*The Goodman E-Mails.*    Finally, the Goodman emails, also cited by the Verizon Defendants, are hardly evidence of a purported "concession" of a transfer in ownership. Significantly, Goodman writes in those emails that BBTI "owns the exclusive rights..." and "also owns rights to other Inline patents..." *See* Verizon Brief at 24, n.17, citing Verizon App., Ex. 41 (A286-287). BBTI does own rights to Inline's patents; again, that does not mean that BBTI owns the patents themselves (or that Goodman believed BBTI owned the patents themselves).

### E.    The Verizon Defendants' Request for Sanctions Is Unwarranted

Finally, the Verizon Defendants seek to have Inline's case against them dismissed with prejudice as a sanction against Inline, apparently based on two grounds: (1) "Verizon has now been sued <u>three times</u> on the same patents"; and (2) BBTI's alleged "misdirection" and "false and misleading complaint allegations."[11]  *See* Verizon Brief at 2, 25-27.  Neither of these is accurate, let alone sufficient grounds to sanction Inline in any way.

As an initial matter, the Verizon Defendants have been sued only twice – not three times – as they have repeatedly claimed throughout their brief.[12]  In any event, it is ***Verizon***, not Inline, that forced this case to be divided into several suits.  Inline first tried to accomplish a single

---

[11]  The Verizon Defendants repeatedly suggest that this lawsuit was filed by BBTI but in Inline's name.  That suggestion does not gain truth through repetition.  Inline sued the Verizon Defendants as patent owner, in its own name, to vindicate its own patent rights.

[12]  When the Verizon Defendants claim that "Verizon" has been sued three times, they are taking the exact opposite approach of their parent corporation VCI.  While many a plaintiff would likely appreciate it if "Verizon" would let go of its position that it is not a single, coordinated enterprise, "Verizon" should not be heard to use the corporate form to force others to treat them as separate legal entities only to turn around and conflate those entities when it is convenient for "Verizon" to do so.  Thus, VCI has been sued once, and the Verizon Defendants have been sued twice, in response to their own litigation tactics.

lawsuit in 2002 when it sued the Verizon parent corporation, VCI.  However, VCI chose to use the corporate form to evade responsibility for the infringement occurring under the "Verizon" banner.  Inline tried again to accomplish the Verizon Defendants' desired single lawsuit when it sued all 25 of the involved Verizon entities in the District that is home to most of them (as well as to most of the infringing activity), the Eastern District of Virginia.  Those Verizon entities themselves split that "single lawsuit" into two by seeking and receiving transfer of the case against nine of them to this Court.

The third lawsuit to which the Verizon Defendants refer is the recent complaint filed by BBTI and Pie Squared in this Court – a complaint that tracks nearly perfectly the counterclaims that BBTI and Pie Squared have asserted in response to being joined to the present action *by the Verizon Defendants themselves*.  As BBTI and Pie Squared have repeatedly indicated, they will seek consolidation of that "belt and suspenders" separate action to this case as soon as such consolidation is feasible.  Inline would have no objection, were the sixteen Verizon subsidiaries remaining in Virginia to waive their objections to the personal jurisdiction of this Court and allow transfer and consolidation as well.  Inline – as well as BBTI and Pie Squared – would be perfectly content to see a single lawsuit in which "Verizon" actually answers for its infringement, rather than endlessly postpones that day.

Finally, the Verizon Defendants cannot show that the failure to mention Pie Squared's highly-restricted five percent interest in Inline's patent portfolio in the original complaint was anything but an inadvertent and entirely harmless error.  Instead, they concoct "forum-shopping efforts" to "leap-frog" over Judge Thynge, where no such efforts existed.  *See* Verizon Brief at 26.  Inline sued the 25 Verizon subsidiaries in the hub of infringing activity and in the District where all of them could be called before a single federal court:  the Eastern District of Virginia.  That action constitutes, not impermissible forum-shopping, but prudence and a respect for judicial economy.

The Verizon Defendants' citation to *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) is unavailing.  That case concerns a defendant's request for relief

22

from entry of judgment under Rule 60 based on demonstrably false assertions of ownership made by a plaintiff witness and the related actions of counsel for plaintiff during the course of trial. *Schreiber,* 402 F.3d at 1201-02. However, Verizon omits a key aspect from its discussion of *Schreiber*: the agreement that transferred rights in the patent-in-suit in that case was acknowledged by all parties involved, ***including the plaintiff***, to have been an assignment of ownership. *Id.* at 1200-01. More specifically, the plaintiff owned the patent-in-suit at time of filing its complaint, but during the course of litigation, it ***intentionally*** assigned its ownership to a subsidiary ***as part of a scheme to avoid state income tax***, explicitly becoming a non-exclusive licensee under the patent and formally notifying the U.S. PTO of the change in ownership. *Id.* By contrast, here, Inline vigorously disputes Verizon's interpretation of the Exclusive License Agreement with BBTI,

## VI.    CONCLUSION

Verizon offers no legitimate basis for the Court to re-characterize the BBTI license as an assignment.

**REDACTED**

---

[13]    Furthermore, when an attorney for the plaintiff in *Schreiber* came across the intentional, undisputed assignment of ownership, he advised his client to reacquire the patent, which the client did, but no one took any action to inform the court about the period of time during the suit where the plaintiff lacked ownership, nor did anyone correct the testimony of a plaintiff witness who, during the period when the patent-in-suit had been assigned away, stated that the plaintiff-parent, and not the subsidiary, still owned the patent. *Schreiber,* 402 F.3d at 1201-02. Here, as soon as it became clear that Verizon would contend that Inline lacked standing to sue for infringement – a contention with which Inline, BBTI, and Pie Squared strenuously disagree – these parties have sought to correct any arguable defect, by filing counterclaims and an entirely separate complaint of their own against the Verizon Defendants.

**REDACTED**

Under *Abbott Labs*, these rights are more than sufficient to prevent re-characterization of the license as an assignment.

Inline respectfully requests that the Court deny the Verizon Defendants' motion in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julie Heaney (#3052)*
Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiff Inline Connection Corporation*

OF COUNSEL:

Carl S. Nadler
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
202.912.2000

Alexander L. Brainerd
Michael K. Plimack
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
415.772.6000

Robert C. Bertin
C. Joël Van Over
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
202.424.7581

August 25, 2006
534314

# Attachment A

**<u>ATTACHMENT A</u>:**

**REDACTED**

---

[14] Citation is to the March 4, 2004 Exclusive License Agreement.

[15] Citation is to the Amendment to Clarify Exclusive License Agreement.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 25, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Jeffrey B. Bove
> Patricia S. Rogowski
> Connolly Bove Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> Jeffrey B. Bove
> Patricia S. Rogowski
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS (Saturday delivery)

> John B. Wyss
> Kevin Anderson
> Wiley Rein & Fielding LLP
> 1776 K Street, N.W.
> Washington, DC 20006
> jwyss@wrf.com
> kanderson@wrf.com

> /s/ Julia Heaney (#3052)
> Julia Heaney (#3052)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 30, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Jeffrey B. Bove
> Patricia S. Rogowski
> Connolly Bove Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> Jeffrey B. Bove
> Patricia S. Rogowski
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> John B. Wyss
> Kevin Anderson
> Wiley Rein & Fielding LLP
> 1776 K Street, N.W.
> Washington, DC  20006
> jwyss@wrf.com
> kanderson@wrf.com

> */s/ Julia Heaney (#3052)*
> Julia Heaney (#3052)