# EXHIBIT 1

REDACTED

EXHIBIT 2

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05CV205 HCM |
| | ) | |
| VERIZON INTERNET SERVICES, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S RESPONSE TO CERTAIN DEFENDANT
OPERATING TELEPHONE COMPANIES'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff Inline Connection Corp. ("Inline") hereby responds to the motion of certain defendant operating telephone companies, Defendants ("OTC movants" or "moving OTCs") to dismiss for lack of personal jurisdiction.

**I.    INTRODUCTION**

In its complaint, Inline alleges that Defendants offer, sell, and use ADSL service as claimed in four Inline patents. Sixteen Verizon operating telephone companies move to dismiss the complaint, asserting that this Court lacks personal jurisdiction. Two other Verizon operating telephone companies concede personal jurisdiction.

In support of their motion to dismiss, the moving OTC's assert that they "operate entirely outside of Virginia as local telephone companies in their respective geographic regions" and "have no constitutionally relevant contacts whatsoever with Virginia or Virginia residents." This assertion, however, supported only by conclusory declarations, cannot withstand scrutiny. The manner in which all Verizon operating telephone companies ("Verizon OTCs") offer, sell, and

use the accused ADSL service at both the retail and wholesale levels is the same. All Verizon

OTCs transact substantial business with their resident Virginia affiliates, including Verizon

Internet Services, Inc., GTE.Net LLC, and Verizon Services Corp., defendants herein who do not

contest jurisdiction. Most Verizon OTCs also transact business with defendant Verizon Avenue

Corp., residing in Virginia. Specifically, in all cases, the Verizon OTC defendants offer and sell

their ADSL service through Verizon affiliates that are located in Virginia and that conduct

substantial business on their behalf in Virginia.[1]  These Virginia Verizon affiliates further control

all marketing and sales activities for the accused ADSL service and manage the entire Verizon

OTC network, at least as it pertains to DSL services. Indeed, the center of gravity for infringing

activity, through a web of Verizon affiliate agreements, agency relationships, and bi-lateral

transactions, is Virginia.

     The Verizon OTCs, including OTC movants, own and supply the underlying physical

connections and the equipment used to supply the accused DSL service to both retail and

wholesale customers. *Matter of Inquiry concerning the Deployment of Advanced*

*Telecommunications Capability to all Americans, Third Report*, FCC 02-33, CC Docket No. 98-

146 at ¶ 51,  for a general description of DSL technology, see *WorldCom, Inc. v. FCC*, 246 F.3d

690, 692 (D.C. Cir. 2001). The Verizon OTCs also supply, directly or indirectly, and require

that their wholesale customers supply, a self-installation kit to end user DSL customers that

conforms to their specifications. They direct their customers to install the components of their

---

[1] In addition, the OTC movants have contacts with Virginia because they also provide DSL
services to Internet Service Providers located in Virginia. For example, AOL, a Virginia Internet
Service Provider, uses the Verizon OTC's DSL services to provide ADSL to their customers
throughout the Verizon service territories. As Verizon Services Corp. is the DSL marketing and
sales agent for all Verizon OTCs, discovery should reveal that AOL and other Virginia Internet
Service Providers operating throughout the Verizon geographic footprint enter into contracts for
Verizon OTC DSL services in Virginia.

- 2 -

self-installation kit. Once installed, customers have access to the Internet and use the infringing DSL service to both send and receive information at high speeds over the Internet. The moving OTCs rely upon their Verizon affiliates, who reside in Virginia, to offer and sell DSL service, and to operate and manage the Verizon network used to supply this service. In sum, through a "tapestry" of inter-affiliate transactions and agency relationships, the OTC movants, like all Verizon OTCs, efficiently centralize the functions necessary to market, sell, operate and provide the accused DSL services. (Donovan Decl. Exh. 14 at 13). The principal focal point of these transactions is Virginia.

## II.    JURISDICTIONAL FACTS

1.    Verizon branded ADSL, "Verizon Online," is marketed and sold as an integrated service on a retail basis by Virginia resident defendants: Verizon Internet Services, Inc. ("Verizon Internet") and GTE.Net, LLC ("Verizon GTE.Net"). ADSL retail customers residing in states served by the moving OTCs' underlying DSL service must accept an agreement, or terms of service, with one of these two companies in order to purchase Verizon Online ADSL service. Exhs. 1 and 2 (Terms of Service).

2.    The terms of service accepted by Verizon Online ADSL retail customers require that – no matter where the customer is located and no matter where the underlying ADSL service is supplied by a Verizon OTC – every Verizon Online customer must submit to the personal jurisdiction of a single local Virginia court, and to the application of Virginia law:

> **You and Verizon agree that the substantive laws of the**
> **Commonwealth of Virginia, without reference to its principles**
> **of conflicts of laws, will be applied to govern, construe and**
> **enforce all of the rights and duties of the parties arising from**
> **or relating in any way to the subject matter of this Agreement.**
> **YOU AND VERIZON CONSENT TO THE EXCLUSIVE**
> **PERSONAL JURISDICTION OF AND VENUE IN A COURT**
> **LOCATED IN FAIRFAX COUNTY, VIRGINIA FOR ANY**
> **SUITS OR CAUSES OF ACTION CONNECTED IN ANY**

- 3 -

> WAY, DIRECTLY OR INDIRECTLY, TO THE SUBJECT
> MATTER OF THIS AGREEMENT OR TO THE SERVICE.
> **Except as otherwise required by law, including Virginia laws
> relating to consumer transactions, any cause of action or claim
> you may have with respect to the Service must be commenced
> within one (1) year after the claim or cause of action arises or
> such claim or cause of action is barred.**

Exh. 1 (at ¶ 19.4); Exh. 2 (at ¶ 19.4) (emphasis in originals).

3.     Verizon Internet has enforced this contractual provision successfully, in a suit filed by a Verizon Online ADSL customer in the District of Columbia, served by one of the moving OTCs. Exh. 3 (Court's decision dismissing suit, as Virginia is the only forum in which Verizon Internet may be sued). In summary, Verizon OTC retail ADSL customers, located in every state, must come to Virginia and submit to its laws when they purchase and use Verizon Online ADSL service.

4.     Additionally, defendants' integrated ADSL service system, including all OTC facilities, is "managed and maintained" by Verizon Internet, headquartered in Virginia. As Mr. Douglas H. Place declared under oath, in a judicial proceeding to enforce a subpoena against Verizon Internet:

> I am Vice President of Data Services and Network Operations for
> Verizon Internet Services, Inc., ("Verizon"). My primary duties
> include managing and maintaining the operations of Verizon's e-
> mail system, DSL network, and IP network *throughout the United
> States*.

Exh. 4 (Place Decl. at ¶ 1) (emphasis supplied).

5.     Further, Mr. Michael D. Poling declared under oath that another Virginia resident, and Verizon affiliate defendant, Verizon Services Corp. ("Verizon Services"), provides operational support to Verizon Internet and Verizon GTE.Net, the companies that manage Verizon's integrated ADSL service offerings on behalf of the Verizon OTCs:

- 4 -

> I am currently Vice President Broadband Solutions for Verizon
> Services Corp. My responsibilities include operational support for
> Verizon Internet Services Inc. ("VIS") and GTE.Net LLC
> ("GTE.Net"), including processes, systems, project management,
> and reporting for broadband products. In addition, my
> responsibilities include running the portal operations for these
> companies. I make this declaration of my personal knowledge and,
> if called as a witness, could and would testify competently to these
> statements.

Exh. 5 (Poling Decl. at ¶ 1)[2]

  6. Verizon Internet's principal place of business is located in Reston, Virginia.

While Verizon GTE.Net lists its principal place of business in Texas, its Chairman and Chief

Executive Officer, Judy K. Verses, is located in Virginia, in the same office as Verizon Internet,

in Reston, Virginia. Exhs. 6 and 7 (state annual report filings).[3]

  7. The moving OTCs transact business with their Virginia resident affiliates through

Verizon affiliate agreements. While Verizon affiliate agreements are not always readily

available, some affiliate agreements are either available or have been described in certain

regulatory filings.[4] Certain affiliate agreements demonstrate that each moving OTC does

substantial business with their Virginia resident affiliates. For example:

---

[2] The Poling Declaration supported a motion to dismiss Verizon Internet Services, Inc. from a case filed against it in Texas. Broadband products include the accused ADSL service.

[3] Inline believes that discovery will show that other common Verizon affiliate officers and employees of GTE.Net also work in Virginia. At this time, the parties are discussing informal discovery requests but have not yet reached an agreement regarding the time or scope of such discovery. Should this good faith effort not result in agreement, this Court is charged with the discretion to grant expedited jurisdictional discovery. *Coastal Video Communications, Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 572 (E.D. Va. 1999).

[4] Many affiliate agreements are available for public review at Verizon Communications Inc. offices. Affiliated Agreements Verizon Select Services Inc., *at* http://www22.verizon.com/longdistance/regulatory/index.jsp.

- 5 -

      a)      The Amended and Restated Sales Agency Agreement establishes an agency relationship for all Verizon OTCs with their Virginia resident affiliates for the marketing and sale of DSL Services.  The Amended and Restated Sales Agency Agreement, as amended through Amendment Four, November 2004 (Donovan Decl. Exh. 3) covers the marketing and sale of internet access services, which includes ADSL services.  The relevant parties to this agreement are Verizon Internet and Verizon GTE.Net and the defendant Verizon OTCs.  The Verizon OTCs enter into the agreement through Verizon Services, their agent.[5]  Verizon Services is headquartered in Virginia.  By the terms of this agreement, each Verizon OTC has authorized Verizon Services to act on their behalf, to negotiate and to bind them contractually in Virginia. Donovan Decl. Exh. 3.  This agency relationship, between the Verizon OTCs and Verizon Services, would reasonably be expected to be memorialized in a written agreement, but whatever its terms, the Verizon OTCs do substantial business both with and through this Virginia resident, Verizon Services.

      b)      The Amended and Restated Sales Agency Agreement also establishes that the Verizon OTCs have no control of the marketing and sale of ADSL service on their own networks nor do they have control over the management and operations of their DSL networks. Exhs. 4 and 5 (Place and Poling Decls.).  This control lies with Virginia resident companies.[6]  In Amendment No. 3 (signed July 26, 2004) to the Amended and Restated Sales Agency Agreement, Verizon Internet and Verizon GTE.Net grant Verizon Services and the Verizon

---

[5] Verizon Services Group also executed the agreement on behalf of the Verizon OTCs.

[6] In Amendment No. 3 (signed July 26, 2004) to the Amended and Restated Sales Agency Agreement , Verizon Services, on behalf of the Verizon OTCs, grants Verizon Internet and Verizon GTE.Net the right to market and sell local telephone service supplied by the Verizon OTCs.  Thus, even these OTCs' local service is marketed and sold by Virginia resident companies.  Donovan Decl. Exh. 3 at Amendment 3.

- 6 -

OTCs the right to market and sell internet access and high speed data services (which includes the accused ADSL service). Verizon Services executes this amendment as the agent of all Verizon OTCs. In this Amendment, Verizon Services – on behalf of itself and the Verizon OTCs – agrees to "actively market and sell the [internet access and high speed data services] in a manner consistent with applicable law, and the information, training, policies, standards and practices that [Verizon Internet Services and GTE.Net LLC] may from time to time prescribe or furnish to [Verizon Services for itself and on behalf of the Verizon OTCs]." As this Amendment makes clear, it is Verizon Internet and Verizon GTE.Net, both residents of Virginia, that control the marketing and sale of ADSL service throughout the Verizon OTCs' geographic areas.

        c)      Verizon affiliate agreements also demonstrate the close financial relationship and overlapping corporate structure between the moving OTCs and the Virginia resident affiliates. The Verizon Annual Affiliate Interest Report for Report Year 2003 (Donovan Decl. Exh. 4) describes the affiliate arrangements between one of the moving OTCs, Verizon Northwest, Inc., and other Verizon defendant affiliates residing in Virginia, Verizon GTE.Net, Verizon Avenue Corp., and Verizon Services. *Id.* at 3.a. This report further describes the pricing and cost basis of these affiliate transactions for each affiliate. *Id.* at 3.b.1. This report sets forth the financial result from these transactions, showing that Verizon OTC revenues and expenses are recorded. *Id.* at Attachment 3.b.2, page 4 of 17; page 6 of 17; page 17 of 17. As the report also shows, there is a substantial number of overlapping officers between the OTC movants listed and their Virginia affiliates. *Id.* at Attachment 3.f. Significantly, this report also discloses the existence of a "Joint Operating Agreement dated January 1, 1995." This 1995 agreement is described as the agreement "which provides the terms and conditions under which the Verizon Operating Telephone Companies reimburse each other for the costs of services

and/or products provided by and for them." *Id.* at 3.a (description of products or services listed include OTC movants, GTE Southwest, Inc. (d/b/a Verizon Southwest), Verizon California, Inc., Verizon Florida, Inc., and Verizon North, Inc.). If this agreement (or similar agreements) are produced, it can be expected to include the Virginia OTCs (non-moving OTCs) as parties that transact business with some or all of the moving OTCs, as all Verizon OTCs offer and sell the same products and services.

      8.     The Verizon OTCs generate income from Verizon Internet and Verizon Services, who must use the Verizon OTCs' facilities to provide Internet access to their customers. The Verizon OTC filings with the SEC describe their business relationship with Verizon Internet and Verizon Services, and the revenue derived from the use of their internet access facilities by affiliates:

> The more significant affiliate transactions include revenues earned from
> *Verizon Internet Services Inc., Verizon Services* and Verizon Global Networks
> Inc. for utilization of our network facilities and provision of services.
> ...
> Our operating revenues include transactions with *Verizon Internet Services Inc.*
> (Verizon Internet Services) associated with the provision of network access and
> billing and collection services. These revenues are earned from Verizon Internet
> Services who utilizes our facilities to provide Internet access services to their
> customers.
>
> Exh. 8 (Verizon Virginia Inc.'s SEC 10-K (2004)).[7]

---

[7] All Verizon OTCs' 10-Ks describe their transactions with Verizon Internet Services and contain very similar language. Verizon New England Inc. reported that Verizon Internet Services Inc. was the largest revenue source for 2003, $97.6 Million, in their SEC 10-K (2004). Verizon Internet Service Inc. was also the largest source of revenue in 2003 for Verizon Maryland Inc. ($48.5 Million) and Verizon Virginia Inc. ($50.0 Million), and a significant source of revenue in 2003 for Verizon New York Inc. ($132.1 Million), and in 2002 for Verizon Florida Inc. ($24.1 Million), Verizon New Jersey Inc. ($87.4 Million), Verizon North Inc. ($15.2 Million) and Verizon Pennsylvania ($40.3 Million). Exh. 9 (collected relevant excerpts of SEC filings).

- 8 -

9.    In executing agreements with other affiliates or third parties, the Verizon Services companies (Verizon Services Corporation[8], Telesector Resources Group, Inc.[9] and Verizon Corporate Services Group, Inc.[10])[11] are usually signatories on behalf of the OTC movants.[12] Each of the OTC movants describes its relationship with Verizon Services companies in its SEC 10-K. For example, Verizon Maryland Inc.'s SEC 10-K describes interaction with Verizon Services companies in the following way:

> [W]e recognize operating expense in connection with contractual arrangements with affiliates, primarily Verizon Services, for the provision of various centralized services to us.
>
> . . .
>
> Our operating revenues include transactions with Verizon Services for the provision of local telephone service and for the rental of facilities and equipment.
>
> We have contractual arrangements with Verizon Services for the provision of various centralized services. These services are divided into two broad categories. The first category is comprised of network related services which generally benefit only Verizon's operating telephone subsidiaries. These services include *marketing, sales, legal, accounting, finance, data processing, materials management, procurement, labor relations, and staff support for various network operations.* The second category is comprised of overhead and support services which generally benefit all subsidiaries of Verizon. Such services include

---

[8] Verizon Services Corporation is a corporation organized and existing under the laws of Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia.

[9] Telesector Resources Group, Inc. is a corporation organized and existing under the laws of Delaware, with a principal place of business at 1095 Avenue of the Americas, New York, New York, and offices in Reston, Virginia.

[10] Verizon Corporate Services Group, Inc. is a corporation organized and existing under the laws of Delaware, with a principal place of business at 750 Canyon Drive, Coppell, Texas.

[11] Verizon Services companies are commonly referred to as the combination of Verizon Services Corporation, Telesector Resources Group, Inc. (d/b/a Verizon Services Group), and Verizon Corporate Services Group Inc. *See, e.g.,* Verizon California Inc.'s SEC 10-K at F-21, F-22 (2003).

[12] *E.g.,* Donovan Decl. Exh. 6. DSL Premises Services Agreement between Verizon Internet Services Inc., GTE.Net LLC, and Verizon Services Corp. and Verizon Services Group (Telesector Resources Group, Inc.) on behalf of the Verizon OTCs (January 4, 2003); Donovan Decl. Exh. 4, Amended and Restated Sales Agency Agreement.

- 9 -

> corporate governance, corporate finance, external affairs, legal, media relations,
> employee communications, corporate advertising, human resources, and treasury.
> Costs may be either directly assigned to one subsidiary or allocated to more than
> one subsidiary based on functional reviews of the work performed.[13]

Exh. 10 (Verizon Maryland's SEC 10-K (2004)) (emphasis added).

    10.    The OTC movants also provide service to DSL customers of Verizon Internet and

Verizon GTE.Net, under the DSL Premises Services Agreement between Verizon Internet,

Verizon GTE.Net, and Verizon Services and Verizon Services Group (Telesector Resources

Group, Inc.) on behalf of the Verizon OTCs (January 4, 2003). Donovan Decl. Exh. 6. These

services include DSL support, installation (splittered or splitterless) and repair. *Id.* at Section 1.

The agreement states that Verizon Internet and Verizon GTE.Net are responsible for providing

retail DSL customer premises equipment:

> GTE.NET LLC AND VERIZON INTERNET SERVICES INC. shall have
> the customer premises equipment drop shipped to the customer's premise. The
> delivery will be scheduled prior to the scheduled installation date.

*Id.* at Section 6.5.

    Additionally, Verizon Internet and Verizon GTE.Net are responsible for coordinating all

efforts under the agreement, and the OTC movants only provide the DSL premises services

under the agreement through Verizon Internet and Verizon GTE.Net. *Id.* at Section 6.9.

    11.    Verizon Avenue acts an agent for the OTC movants and transacts substantial

business in Virginia on their behalf. Defendant Verizon Avenue Corp. ("Verizon Avenue")

resides in Herndon, Virginia. Exh. 11 (2003 Verizon press release announcing new officers

located in Herndon, Virginia). This company offers and sells the accused ADSL service to

multi-dwelling unit (*e.g.*, apartment building) subscribers in several states. At the same time, it

---

[13] The assignment and allocation of costs must be performed by a Verizon subsidiary responsible
for financial and accounting matters for the Verizon OTCs and other affiliates.

offers local telephone service. Verizon Avenue provides its services either as an agent of its

affiliates, including Verizon OTCs, or through other affiliate agreements. Verizon Avenue "acts

as a sales agent for Verizon." Exh. 12 at 2 (2002 Order by the New Jersey Board of Public

Utilities, also listing states in which it is authorized to do business). Finally, Verizon Avenue has

entered into "interconnection agreements" with various moving OTCs, so that it may provide

certain of its services throughout its service territory. Donovan Decl. at ¶¶ 17-23 (see exhibits

cited therein); Exh. 13 (Oregon Public Utility Commission filing, showing Verizon Avenue,

Herndon Va., doing business with OTC movant Verizon Northwest, Inc.)[14]

      12.   The OTC movants have significant contacts with Virginia through their

transactions with Verizon Advanced Data Inc. ("VADI").[15] During part of the time period

relevant to Inline's complaint, DSL facilities in each OTC local network were owned and

controlled by VADI.[16] VADI sold DSL services using OTC movants' coverage areas.[17] For

---

[14] Discovery will no doubt reveal other such agreements between Verizon Avenue and OTC
movants, executed in Virginia.

[15] Verizon Advanced Data Inc. is a corporation organized and existing under the laws of
Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia.

[16] The FCC required the creation of a separate data affiliate, Verizon Advanced Data Inc., to
provide DSL services as a condition of the merger between Bell Atlantic and GTE in June 2000.
Order, *Petition for Waiver of the Commission's Price Cap Rules For Services Transferred from
VADI to the Verizon Telephone Companies*, FCC DA 04-1062 at Paragraph 2 (Apr. 21, 2004).
Many of the OTC movants were required to transfer their advanced data assets (*See, e.g.,*
DSLAMs and Central Office splitters) to this data affiliate in the process. Most of the Verizon
OTCs transferred their assets to Verizon Ventures III, Inc., the parent of VADI. *See, e.g.,* Exh.
10 (Verizon Maryland Inc.'s SEC 10-K, Exh. F at F-22 (2004)). Others transferred their assets
directly to VADI. *See, e.g.,* Exh. 9 (Verizon New York Inc.'s SEC 10-K, Exh. F at F-23 (2003)).

[17] VADI filed a Tariff offering DSL services. Verizon Advanced Data Inc.'s Tariff F.C.C. No. 1
(selections at IA 15601-15650). Each of the OTC movants now owns DSL assets used to
provide service to customers of VADI, and the OTC movants acquired VADI customers. *See*
Exh. 14 (Oct. 15, 2001 letter from Verizon Advanced Data Inc. to Verizon Advanced Services
Customers, stating that responsibility for the customer will transfer from Verizon Advanced Data
Inc. to Verizon).

- 11 -

example, the 2004 SEC 10-K filing of Verizon Maryland Inc. describes how VADI's assets and

services were acquired and what regulatory conditions prompted the transaction:

> In 2001 and 2002, our operating revenues included transactions
> with Verizon Advance Data Inc. (VADI) associated with the
> provision of local and network access services, billing and
> collection services, and the purchase of unbundled network
> elements. These revenues were earned from VADI who utilized
> our facilities to provide advanced data services to their customers.
> ***Beginning in May 2002, the responsibility for the provision of
> advanced data services was transferred back to us (see
> Investment in Verizon Ventures III Inc. below).*** We continue to
> earn revenue from VADI for the provision of local telephone
> services.

Exh. 10 (emphasis added).

Although many of these DSL assets were transferred back to each of the Verizon OTCs

between 2001 and 2003, many DSL related transactions originating and/or occurring in Virginia

through VADI, continue. Around the same time DSL assets were transferred, the OTC movants

entered into contractual arrangements for centralized advanced data services with VADI,

including network provisioning, maintenance, engineering, data processing for various network

operations, finance, human resources, treasury, procurement, marketing, sales, and support staffs.

Thus, a good deal of the OTC movants' DSL business takes place, and has taken place, in

Virginia through VADI. *E.g.*, Exh. 10 Verizon Maryland Inc.'s SEC 10-K, Exh. F at F-21. This

SEC filing reports revenues ($0.5 Million) and costs ($26.7 Million) from Verizon Advanced

Data Inc. *Id.* at F-20, F-21. Revenues and expenses associated with Verizon Advanced Data

Inc. were also reported by other moving OTCs (*e.g.*, Verizon New York Inc. and Verizon New

Jersey Inc.)[18]

---

[18] Exh. 9.

- 12 -

13.    Not only do the moving OTCs transact business in Virginia related to both marketing and sale of retail and wholesale DSL services but they conduct substantial business in Virginia related to their local telephone service, including the negotiation and execution of "interconnection agreements" and the administration of these agreements. Donovan Decl. at ¶¶ 17-23 (*see* exhs. cited therein). The moving OTCs also negotiate private "Wholesale Advantage Agreements" on a global basis, through their Verizon Service affiliate in Virginia. *Id.* at ¶¶ 19-22. These agreements cover the same general scope as the interconnection agreements, but as they are commercial agreements not requiring state regulatory approval, Verizon Services (or another Virginia affiliate) may execute a single agreement covering all Verizon OTC territories. *Id.*

## III.   ARGUMENT

### A.    Applicable Law

When a court addresses the question of personal jurisdiction on the basis of only motion papers, legal memoranda and the relevant allegations of the complaint, plaintiff's burden is to make a *prima facie* showing of a sufficient jurisdictional basis to survive the challenge. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff . . . and draw the most favorable inferences for the existence of jurisdiction." *Id.* Therefore, at this early stage in litigation, without the benefit of jurisdictional discovery and a hearing on factual issues, Inline's burden is no more than to establish a *prima facie* case. *Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004) (a court may decide disputed factual issues concerning personal jurisdiction at trial, or at a separate evidentiary hearing). Once the plaintiff shows "that there are sufficient minimum contacts to satisfy due process, it becomes the

- 13 -

defendants' burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Electronics For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1351-52 (Fed. Cir. 2003)

A district court may exercise personal jurisdiction over non-resident defendants if 1) the defendants are "amenable to service of process under the appropriate state long-arm statute," and 2) "the culmination of [defendants'] activities within the forum state . . . satisfy the minimum contacts requirement of the due process clause." *Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002). Because the Virginia long-arm statute has been construed by Virginia courts to extend personal jurisdiction to the full extent permitted by the Due Process Clause, the first inquiry is often merged with the due process analysis. *Reynolds,* 301 F. Supp. 2d at 550.

There are two types of personal jurisdiction, general and specific, that may be exercised over a nonresident. *Coastal Video Communications, Corp. v. Staywell Corp.,* 59 F. Supp. 2d 562 (E.D. Va. 1999). General jurisdiction concerns the jurisdiction over a defendant in a suit unrelated to that defendant's contacts with the forum state where the defendant maintains "continuous and systematic contacts." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed. Cir. 1998). Specific jurisdiction requires "minimum" contacts with the forum state based on the relationship among the defendant, the forum and the litigation. *Verizon Online Servs., Inc. v. Ralsky,* 203 F. Supp. 2d 601, 611 (E.D. Va. 2002) (citing *Calder v. Jones,* 465 U.S. 783 (1984)).

To satisfy due process, the defendant need not be present within the territory of the forum, but must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Akro Corp. v. Luker,* 45

- 14 -

F.3d 1541, 1545 (Fed. Cir. 1995) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The defendant's "minimum contacts" with the state are sufficient if the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to those activities.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985) (citations omitted). Due process is satisfied where a defendant "has created 'continuing' obligations between himself and residents of the forum." *Id.* at 476. By creating such continuing obligations, the defendant avails himself of the privilege of conducting business with the forum, and invokes the benefits and protections of its laws. *Coastal Video*, 59 F. Supp. 2d 562.[19]

This Court has both specific and general jurisdiction over the OTC movants.

**B.    The Verizon Operating Telephone Companies Are Subject To This Court's Specific Jurisdiction.**

In determining the relationship between the defendant, the forum and the litigation for specific jurisdiction, a court must first decide whether a defendant "purposefully availed" itself of the "privilege of conducting activities within the forum State." *Verizon Online*, 203 F. Supp. 2d at 611 (citing *Burger King Corp.*, 471 U.S. 462, 475). Second, a court must determine whether the causes of action alleged by a plaintiff arise from defendant's activities in the forum state. *Id.* Last, a court must ask whether the acts by the defendant, or the consequences of the

---

[19] The Federal Circuit has exclusive jurisdiction over appeals from district courts on claims of patent infringement, and applies Federal Circuit law rather than regional circuit law when assessing the due process component of personal jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) (finding that Federal Circuit was not required to apply regional circuit law in assessing whether long-arm statute and due process clause allowed district court to exercise personal jurisdiction based on stream of commerce theory).

- 15 -

acts by the defendant, have a sufficient connection with the forum state to render the exercise of jurisdiction reasonable. *Id.*[20]

While the OTC movants have not specifically addressed jurisdiction under the provisions of the Virginia long-arm statute, as that statute specifically covers their activities in Virginia, the Virginia long-arm statute provides that "a court may exercise jurisdiction over a person, *who acts directly or by an agent*, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;"

Va. Code Ann. § 8.01-328.1 (2004) (emphasis added).[21]

---

[20] There are several additional factors that may be considered in assessing whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) most efficient resolution of controversy; and (5) the shared interests of the States in furthering social policies. *Burger King*, 471 U.S. at 477. All of these factors favor personal jurisdiction here. As the "jurisdictional facts" set forth herein demonstrate, all moving OTC defendants offer, sell and enter into contracts for the accused ADSL service in Virginia, with and through their Virginia Verizon affiliates, also defendants in this case. Most witnesses and documents relevant to this litigation are thus located in Virginia, as OTC movants' DSL service is also managed and largely operated through these Virginia affiliates. Retail ADSL customer contracts require that all related disputes be settled in Virginia state court, under Virginia law. It is likely that certain wholesale ADSL contracts, negotiated and entered into in Virginia, also require the application of Virginia law. As the offer and sale of OTC ADSL service occurs in Virginia, infringement harms Inline, a Virginia corporation, in Virginia.

- 16 -

Here, the jurisdictional facts satisfy each of the foregoing provisions of the Virginia long-arm statute and due process. The OTC movants have appointed their Virginia affiliates as their agents to market and sell their ADSL service to customers located throughout their geographic territories. Verizon Internet and Verizon GTE.Net market and sell the Verizon OTCs' DSL service, including the accused ADSL service, throughout the Verizon footprint, and require every customer of this service to submit to the jurisdiction and laws of Virginia. Thus, the Verizon OTCs and Verizon Internet and Verizon GTE.Net invoke and enjoy the benefits of the laws of Virginia. It is difficult to imagine a clearer case of jurisdictional fairness requiring the moving OTC defendants to defend a patent case in Virginia that involves the offering for sale of these same services by their Virginia affiliate sales agents. Their Virginia agents not only market, sell and use the Verizon OTCs' ADSL services, but they also manage and direct the operations of the Verizon OTC ADSL service offerings, to assure uniform policies, standards, training, and practices.

The moving OTCs also authorize their Virginia affiliate, Verizon Services, to negotiate and enter into contracts on their behalf, and Verizon Services does so. To the extent that jurisdictional discovery is permitted, there is little doubt that at least some of these contracts provide for the application of Virginia law. Moreover, Verizon Services not only acts as the Verizon OTCs' agent in contracting, but the "Broadband Solutions" group at Verizon Services provides "operational support," "including processes, systems, project management and

---

[21] The Federal Circuit has recognized and applied long-arm statutes in assessing personal jurisdiction in patent cases. *Beverly Hills Fan Co.*, 21 F.3d 1558, 1571 (applying Virginia's long-arm statute in assessing personal jurisdiction, finding that place of injury in patent infringement is location where infringing activity directly impacts on interests of patentee); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (applying District of Columbia's long-arm statute in assessing personal jurisdiction in same manner as *Beverly Hills Fan Co.*).

- 17 -

reporting for broadband products," the products ultimately provided through the Verizon OTCs' facilities and sold through their Virginia affiliate agents.

Finally, Verizon Avenue, another Virginia affiliate, offers and sells Verizon OTC ADSL service and local service on behalf of the OTCs to apartment dwellers in many Verizon OTC territories.[22]

In sum, the moving OTCs transact substantial business through their Virginia agent affiliates who then contract to provide both retail and wholesale ADSL service on their behalf in Virginia. The Verizon OTCs not only earn revenues from these activities, but also pay for the services they receive from their Virginia agent affiliates. These activities are in no way unilateral, sporadic, occasional or nonexistent, as the OTC movants assert. Rather, OTC movants have created "continuing obligations between [themselves] and residents of [Virginia]," such that it is not unreasonable to require them to litigate in Virginia. *Burger King,* 471 U.S. at 471-476 (finding jurisdiction over a Michigan franchisee in Florida). Indeed, the movant OTCs are able to jointly launch their ADSL products and services into the stream of commerce efficiently by appointing agents to act on their behalf collectively. *See Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424 (Fed. Cir. 1996). By authorizing their agent affiliates in Virginia to offer to sell their products and services, and to negotiate and execute contracts on their behalf, the OTC movants may fairly be haled into this forum to answer to Inline's claims of patent infringement related to these activities. *See 3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1379 (Fed. Cir. 1998).

---

[22] Inline acknowledges that Verizon Avenue may also purchase ADSL service from moving OTCs to resell to their customers. Whether it acts on their behalf, or contracts to resell service, the OTC movants do substantial business with Verizon Avenue in Virginia.

- 18 -

Courts find personal jurisdiction based upon much less substantial connections to the forum state than the OTC movants have here. *Akro Corp.*, 45 F.3d 1541 (warning letters and entry into an exclusive licensing agreement). In *United Coal Co. v. Land Use Corp.*, 575 F. Supp. 1148 (W.D. Va. 1983), the court found that personal jurisdiction was proper over a nonresident corporation that contracted with a resident corporation that acted as an exclusive sales agent for the nonresident. In *United Coal*, the court interpreted the "[t]ransacting any business in this Commonwealth" language of the Virginia long-arm-statute, Va. Code § 8.01-328.1.A.1, and found that sending various communications to Virginia, negotiating an agreement in Virginia, receiving a signed letter-agreement from and returning it to Virginia, authorizing a Virginia corporation to be an exclusive sales agent, receiving payments drawn on and paid by Virginia banks, and obtaining shipment orders from the Virginia agent were adequate to constitute transacting business in Virginia. *Id.* at 1154. Consistent with *United Coal*, the United States District Court for the Eastern District of Virginia has found that personal jurisdiction is proper when a defendant is marketing through a sales agent in the forum. *Dee-K Enters., Inc. v. Heveafil SDN. BHD.*, 982 F. Supp. 1138, 1147 (E.D. Va. 1997) (citing *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102 (1987) for the rule that a defendant is not normally subject to personal jurisdiction when its sole contacts with the forum are through a third party, unless the defendant is marketing through a sales agent). In sum, the OTC movants' activities in Virginia provide a sufficient basis to support personal jurisdiction in this forum. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945) (the activities of defendant's sales agents in the forum, systematic and continuous throughout the relevant period, resulting in a large volume of business, satisfy due process).

- 19 -

**C.    The OTC Movants Are Subject To General Jurisdiction In Virginia.**

A defendant is subject to the general jurisdiction in the forum state when its activities

there are "continuous and systematic." *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369,

1375 (Fed. Cir. 2000).  The cause of action the defendant must defend in the forum need not be

related to these "continuous and systematic" activities. *Coastal Video*, 59 F. Supp. 2d 562, 569-

572 (finding general jurisdiction as a result of defendant's internet-based contacts).

Not only are the OTC movants' activities in Virginia "continuous and systematic" with

regard to their offer, sale, management and operation of the accused DSL system, but their agent

in Virginia, Mr. Masoner, negotiates and executes all of their interconnection agreements for the

use of their local facilities by third parties.  Donovan Decl. at ¶¶ 17, 18.  It may reasonably be

expected that the OTC movants follow the same course in the negotiation and execution of their

commercial Wholesale Advantage agreements. *Id.*  Indeed, OTC movants conduct a substantial

portion of their marketing and sales activities in Virginia and are "managed" by their affiliates in

Virginia.  These ubiquitous activities for which they pay and from which they derive substantial

revenues are sufficient to fairly subject them to the general jurisdiction of this Court.


**IV.    CONCLUSION**

The OTC movants have sufficient contacts with Virginia to exercise either specific or

general personal jurisdiction consistent with due process.  Accordingly, Inline respectfully

requests that this Court deny the OTC movants' motion to dismiss for lack of jurisdiction.

INLINE CONNECTION CORPORATION

By _____
                 Of Counsel

Stephen E. Noona
VSB No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23514-3037
(757) 624-3000
(757) 624-3169 Facsimile

Ralph A. Mittelberger
VSB No. 15098
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
(202) 912-2000
(202) 912-2020 Facsimile

Alexander L. Brainerd
Michael K. Plimack
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
(415) 772-6000
(415) 772-6268 Facsimile

C. Joël Van Over
Robert C. Bertin
VSB No. 41278
Swidler Berlin, LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
(202) 424-7581
(202) 424-7634 Facsimile

*Counsel for Plaintiff*
*Inline Connection Corporation*

- 21 -

## CERTIFICATE OF SERVICE

I hereby certify that on the _13th_ day of June 2005, a true copy of the foregoing

was sent by hand and via e-mail to:

> Robert W. McFarland, Esq.
> McGuire Woods LLP
> 900 World Trade Center
> 101 W. Main Street
> Norfolk, VA 23510-1655

And *via* e-mail without exhibits and Federal Express with exhibits to:

> Brian C. Riopelle, Esq.
> McGuireWoods LLP
> One James Center
> 901 E. Cary Street
> Richmond, VA 23219
>
> Andrew G. McBride, Esq.
> John B. Wyss, Esq.
> Kevin P. Anderson, Esq.
> Wiley Rein & Fielding LLP
> 1776 K Street NW
> Washington, DC 20006

- 22 -

EXHIBIT 3

Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

FILED

DEC - 5 2005

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

INLINE CONNECTION CORPORATION,

PLAINTIFF,

v.                                          CIVIL ACTION NO.: 2:05CV205

VERIZON INTERNET SERVICES, INC., et al.,

DEFENDANTS.


### OPINION AND ORDER

This matter comes before the Court on a Motion to Transfer the present action to the

United States District Court for the District of Delaware, brought by nine (9)[1] of the named

defendants in this action ("Moving Defendants"), and to Sever and Administratively Dismiss

Claims against Verizon Virginia Inc. and Verizon South Inc., pending resolution of the action in

Delaware. (Doc. 20.)  The Court heard arguments in open court on October 4, 2005, and granted

the Motion to Transfer from the bench.  For reasons set forth below, the Court ORDERS that the

remaining sixteen (16) Defendants that did not join in the instant Motion to Transfer shall be

SEVERED from the present action and further ORDERS that the severed action be STAYED without

prejudice to Inline Communications Corporation taking further action against the severed parties.

This Order and Opinion further explains the Court's ruling.

---

[1]The Moving Defendants are: Verizon Internet Services, Inc., GTE.Net LLC d/b/a Verizon Internet
Solutions, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc.,
Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc., d/b/a
Verizon Southwest.

12 08 05

## I. Procedural Background and Factual History

Inline Connection Corporation ("Plaintiff") is incorporated in Virginia and maintains its principal place of business in Washington, D.C. Complaint at ¶ 1. Plaintiff owns United States Patent Nos. 5,844,596, 6,236,718, 6,243,446 and 6,542,585 ("patents-in-suit"), which relate to systems and methods for simultaneous transfer of voice and data streams over telephone lines. On April 6, 2005, Plaintiff filed a Complaint with the Alexandria Division of this Court against twenty-five (25) Verizon entities[2] ("Defendants") (Doc. 1), alleging infringement of these patents-in-suit relating to the provision of Digital Subscriber Line ("DSL") services for high-speed Internet access to subscribers. The Complaint was thereafter transferred to the Norfolk Division in accord with this Court's established rotation system. On May 31, 2005, Defendants filed their Answer, (Doc. 17), with the exception of sixteen (16) Defendants[3] that instead filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 18.)

Plaintiff is currently engaged in parallel litigation involving the same patents-in-suit that are at issue in this case[4] before the United States District Court for the District of Delaware ("Delaware court"). In April and June of 2002, Plaintiff filed complaints with the District of

---

[2]All Defendants in this action are: Verizon Internet Services, Inc., GTE.Net L.L.C., Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Florida, Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., GTE Southwest, Inc., Contel of the South, Inc., Verizon Delaware, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Virginia, Inc., and Verizon South, Inc. Verizon Hawaii, Inc. was sold on May 2, 2005, and is no longer a Verizon-related entity.

[3]Defendants joining in the Motion to Dismiss for Lack of Personal Jurisdiction are: Verizon Florida, Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., Contel of the South, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Delaware, Inc., and Verizon Southwest.

[4]U.S. Patent No. 6,542,585 was added to the Delaware action after Plaintiff's initial filing there.

2

Delaware, naming leading Internet Service Providers ("ISPs"), AOL Time Warner, Inc. and Earthlink, Inc., as well as Verizon Communications, Inc., alleging the same violations of its patents-in-suit. On October 2, 2002, Verizon Communications, Inc. was dismissed without prejudice pursuant to a stipulation of dismissal upon discovering that the company was only a holding company for Verizon companies.[5] After Verizon was dismissed, the Delaware action proceeded against Earthlink and AOL, but Plaintiff did not amend its complaint to add Verizon ISPs or any other Defendants named in the present action.

The Delaware court has invested substantial time in scheduling conferences, presiding over discovery disputes, and ruling on numerous motions. Further, the Delaware court has spent considerable time familiarizing itself with the relevant technology as evidenced in its detailed opinions.[6] More specifically, the court has issued extensive orders regarding: 1) the proper construction of approximately 15 disputed claim terms, see Ex. D to Ds.' Mem. in Supp. of Mot. to Trans.; 2) modification of the construction of four of the disputed terms on a motion for reconsideration, see Ex. E to Ds.' Mem. in Supp. of Mot. to Trans.; and 3) cross motions for summary judgment, see Ex. F to Ds.' Mem. in Supp. of Mot. to Trans. The Delaware court is presently considering motions for clarification, reconsideration and a broader motion for summary judgment of noninfringement.

While Plaintiff is engaged in litigating its patents-in-suit in Delaware, Plaintiff alleges in this action that each named Defendant has "used, sold and/or offered to sell . . . [DSL service]

---

[5]Plaintiff recognized that it had the wrong Verizon entity after Defendant Verizon filed a motion for summary judgment, arguing such on September 3, 2002.

[6]See Inline Connection Corp. v. AOL Time Warner Inc., et al., 302 F. Supp. 2d 307 (D. Del. 2004); Inline Connection Corp. v. AOL Time Warner Inc., et al., 347 F. Supp. 2d 56 (D. Del. 2004); Inline Connection Corp. v. AOL Time Warner Inc., et al., 364 F. Supp. 2d 417 (D. Del. 2004).

3

that infringes one or more" of the same patents-in-suit. Complaint at ¶ 26. However, Defendants' involvement with the provision of the allegedly infringing service is not entirely coextensive. After reviewing the briefs submitted by both Parties and the evidence presented at the hearing, the undisputed facts place Defendants in four categories with respect to their relationship to the sale or provision of the allegedly infringing Internet service.

(1) Internet Service Providers: Verizon Internet Services and GTE.Net are ISPs and are the entities responsible for providing Verizon's DSL service to subscribers. Both are incorporated in Delaware. Complaint at ¶¶ 2-3. Verizon Internet Services' territory is the eastern United States and GTE.Net's is the western United States.

(2) Service Companies: Verizon Advanced Data and Verizon Avenue Corp. are Service Companies that have some connection to the provision of DSL services and are incorporated in Delaware. Complaint at ¶¶ 4-6.

(3) General Service Companies: Telesector Resources Group, Verizon Services Corp., and Verizon Corporate Services are General Service Providers that provide services such as account management, sales, product management, legal, human resources, regulatory, negotiation and marketing to other Verizon entities and are incorporated in Delaware. Complaint at ¶¶ 6-8.

(4) Individual Operating Telephone Companies ("OTCs"): These remaining eighteen (18) companies provide local telecommunication services to customers within their specific regional localities pursuant to federal tariff. They are incorporated and operate in various states outside of Virginia and Delaware, with the exception of two OTCs incorporated in Virginia, Verizon Virginia Inc. and Verizon South Inc., and two OTCs incorporated in Delaware, Verizon Delaware Inc. and GTE Southwest. Complaint at ¶¶ 9(a)-(r).

4

The Moving Defendants argue that this action should be transferred to the District of

Delaware since Plaintiff is currently engaged in parallel litigation in Delaware involving the

instant patents-in-suit.  The Moving Defendants contend that Plaintiff's object in filing in the

Eastern District of Virginia is to avoid unfavorable rulings on its patents-in-suit in the Delaware

action and to utilize this forum's allegedly faster moving docket to obtain separate expedited

rulings.  See Ds.' Mem. in Supp. of Mot. to Trans. at 6.  The Moving Defendants further contend

that Plaintiff has added the Verizon OTCs to this action to prevent transfer and that the OTCs are

wholly unnecessary and peripheral to the present action.  See id.

## III. ANALYSIS

Section 1404(a) of United States Code Title 28 provides that "for the convenience of

parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought."  Courts have interpreted this

provision to require the moving party to prove: (1) that the plaintiff could have originally brought

the action in the transferee forum; and (2) that the interests of justice and convenience of the

parties and witnesses favor such a transfer.  See, e.g., Agilent Techs., Inc. v. Micromuse, Inc.,

316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004); Verosol B.V. v. Hunter Douglas, Inc., 806 F.

Supp. 582, 592 (E.D. Va. 1992).  The decision whether to transfer an action is soundly within the

discretion of the district court.  Agilent Technologies, 316 F. Supp. 2d at 325; Southern Ry. Co.

v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).  As moving parties, the Moving Defendants bear

the burden of demonstrating that transfer of venue is appropriate in this case.  Cognitronics

Imaging Sys. v. Recognition Research Inc., 83 F. Supp. 2d 689, 696 (E.D. Va. 2000); Verosol,

806 F. Supp. at 592.

A.  Jurisdiction of the Potential Transferee Forum

5

In <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343 (1960), the United States Supreme Court held

that "the power of a District Court under § 1404(a) to transfer an action to another district is

made to depend not upon the wish or waiver of the defendant but, rather, upon whether the

transferee district was one in which the action 'might have been brought' by the plaintiff." Thus,

the threshold matter this Court must consider is whether this entire action could have originally

been brought by Plaintiff in the District of Delaware, with respect to both venue and personal

jurisdiction. <u>Corry v. CFM Majestic Inc.</u>, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998).

The venue provision for patent infringement actions provides that "[a]ny civil action for

patent infringement may be brought in the judicial district where the defendant resides[.]" 28

U.S.C. § 1400(b). Although § 1400(b) does not specify what satisfies the residence requirement,

§ 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any

judicial district in which it is subject to personal jurisdiction at the time the action is

commenced." As acknowledged by Plaintiff in the Complaint, the Moving Defendants were all

incorporated in Delaware when the present action was filed. <u>See</u> Complaint at ¶¶ 2-8, 9(h), 9(j).

Because the Moving Defendants are incorporated in the Delaware, they reside there for purposes

of establishing both personal jurisdiction and venue. <u>See</u> §§ 1400(b) and 1391(c); <u>Cognitronics

Imaging</u>, 83 F. Supp. 2d at 691-92.

While the Parties do not dispute that the Delaware court would have been an appropriate

forum for the Moving Defendants, neither Party contends that the Delaware court was an

appropriate forum for the remaining OTC Defendants, nor does the evidence submitted to the

Court demonstrate such conclusion. <u>See</u> Complaint at ¶ 9(a)-(r); Ds.' Mem. in Supp. Mot. Trans.

at 5. Thus, the Court concludes that the entire action could not be transferred to Delaware.

Accordingly, the Court must consider the Moving Defendants' Motion to sever claims against

6

the remaining OTC Defendants and stay the present action against them.

B.  Sever Peripheral Claims and Stay Action

It is an established principle that "when venue or personal jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant and transfer the remaining claims to the more convenient forum pursuant to § 1404(a)." Corry, 16 F. Supp. 2d at 664; see also Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc., 219 F. Supp. 2d 705, 709 (E.D. Va. 2002) (finding that severance is appropriate when the claims against an indirect defendant are "peripheral to the claims that lie at the heart of [the] case"). According to Corry, the rationale of this procedure is to give courts the power to prevent plaintiffs from manipulating the system by joining defendants that have no essential involvement with the core claims of the case, and is appropriate where the "administration of justice would be materially advanced." Corry, 16 F. Supp. 2d at 665.

According to the test outlined in Corry, the Court may sever indirect claims and transfer those remaining only when: "(1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under § 1404(a)." Corry, 16 F. Supp. 2d at 665; see also LG Elecs., Inc. v. Asustek Computers, 126 F. Supp. 2d 414, 421 (E.D. Va. 2000). The facts of this case satisfy all three elements of the test.

1. Peripheral Nature of Remaining Claims

This Court has consistently acknowledged that whether a defendant is peripheral depends upon "'the degree of involvement each defendant has in the transactions which form the basis of

7

the plaintiff's cause of action.'" Corry, 16 F. Supp. 2d at 666 (quoting Mobil Oil Corp. v. W. R. Grace & Co., 334 F. Supp. 117, 122-23 (S.D. Tex. 1971)). In this case, Plaintiff's cause of action is based upon the ISPs provision of DSL service. The undisputed facts clearly demonstrate that any connection the OTCs have with this action is peripheral to the present action since the ISPs are the source of the allegedly infringing service. See LG Electronics, 126 F. Supp. 2d at 422 (holding that the core infringement claim was against the manufacturer and primary distributors as the source of the allegedly infringing products and that resellers that later sold the products were peripheral and unnecessary to accord plaintiff with complete relief); Brown Manufacturing, 219 F. Supp. 2d at 710 (holding that obtaining relief against downstream merchants is "clearly secondary to [the plaintiff's] assertion of its rights against the source of the products").

The facts of this case show that the OTCs do not contract with the ultimate consumers or offer for sale any portion of the allegedly infringing service, nor do they receive any of the revenues for that service. Instead, the service is sold and provided by the ISPs, while the OTCs provide the means of transmitting the DSL service through their telephone lines. Furthermore, the OTCs provide DSL service solely pursuant to federal tariff and state regulation and only to customers located in the specific geographic territory where they are licensed to offer service.[7] While Plaintiff does not dispute these facts, counsel for Plaintiff contended at oral argument that the OTCs nevertheless engage in their own acts of infringement when their lines transmit the allegedly infringing service provided by the ISPs. The Court finds that Plaintiff's claim against

---

[7] It is undisputed that the OTCs are regulated by the Federal Communications Commission ("FCC") and state regulatory commissions and provide services in accordance with rates, terms, and conditions set forth in tariffs filed with the FCC and the state agencies. The FCC regulates the boundaries of these areas, which in general encompass a single state. See 47 U.S.C. § 153(25).

8

the OTCs is no more logically related to the allegedly infringing conduct than a similar claim

asserted against a disinterested commercial carrier that transports goods manufactured, marketed

and sold by third parties to ultimate consumers. Moreover, unlike Brown Manufacturing and LG

Electronics, where an injunction against the primary manufacturer might not prevent the

downstream resellers from selling existing stock, here, any injunction issued against the ISPs will

necessarily prohibit the OTCs from transmitting any offensive service through their phone lines.

Not only are the OTCs peripheral to the heart of this action, but their presence appears to be

wholly unnecessary to accord Plaintiff complete relief. Therefore, the Court concludes that the

OTCs degree of involvement with the source of the alleged infringement is incidental and clearly

peripheral to the heart of this action.

### 2. Potential Disposition of Remaining Claims Upon Adjudication

If the Court transfers the claims against the Moving Parties, which includes those against

the ISPs, the Service Providers, General Service Providers and two Delaware-based OTCs,[8] the

adjudication of those claims would dispose of the claims against the severed OTCs. See LG

Electronics, 126 F. Supp. 2d at 422; Corry, 16 F. Supp. 2d at 665. As transmitters of the

allegedly infringing service, the OTCs would only be liable if the Delaware court also found that

the service infringed Plaintiff's patents. Furthermore, since the source of the allegedly infringing

service are the ISPs, any injunction issued against them will prohibit the OTCs from transmitting

any infringing service. Thus, the OTCs presence in this action have no true bearing on Plaintiff's

---

[8] As the Delaware court appears to have jurisdiction over these two OTCs, the Plaintiff must elect whether
to pursue them in the transferred action, potentially adding complication and expense to the proceeding.

9

opportunity to obtain relief.[9]

### 3. Transfer of the Remaining Claims Under § 1404(a)

While the Court concludes that the OTCs are peripheral and unnecessary to the present action, the Court must now decide whether Delaware is a more appropriate forum for the remaining claims, a decision which is within the sound discretion of a district court. Agilent Technologies, 316 F. Supp. 2d at 325. In determining whether transfer is warranted, the Court considers the traditional balancing test of § 1404 factors, which includes plaintiff's choice of forum, party and witness convenience, and the interests of justice. GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).

At the outset, the Court notes that "a plaintiff's choice of forum is entitled to substantial weight." Agilent Technologies, 316 F. Supp. 2d at 326 (citing Hester Indus., Inc. v. Stein, Inc., 1996 U.S. Dist. LEXIS 19926 (E.D. Va. 1996)). At oral argument, counsel for Plaintiff asserted that its primary reasons for selecting the Virginia forum were that Plaintiff is a Virginia resident and that the Verizon companies that are central to this action are based in Virginia. The Court finds that the weight of these facts are diminished by Plaintiff's posture regarding the ongoing Delaware action. Plaintiff's choice of forum should not be accorded great weight where, as here, Plaintiff originally selected a separate forum within which to litigate its patents and is simultaneously engaged in litigation in that forum. Indeed, Plaintiff cannot contend that the Delaware forum is inconvenient when it chose to litigate there for over three years. Additionally,

---

[9]At oral argument, Plaintiff's counsel attempts to persuade the Court to retain the remaining OTCs in the present action on the grounds that it cannot obtain complete relief without them because the OTCs provide local telephone service to other ISPs, which Plaintiff has not named in any action. Presumably, Plaintiff would have the Court enjoin the conduit of the DSL service, rather than inconvenience the Plaintiff to either join as a party or institute suit against the ISP sources of the alleged infringement. This argument is not persuasive.

10

Plaintiff's reliance upon the presence of Verizon in Virginia as the reason for filing here does not comport with Plaintiff's original choice of Delaware as the forum to bring suit against Verizon. Thus, Plaintiff's initial preference for the Delaware forum for both Parties and its ongoing presence in that forum leads the Court to discount any importance the Court would otherwise place upon Plaintiff's or Verizon's presence in Virginia.

Plaintiff also cites the docket conditions in the Eastern District of Virginia as a motive for its choice of forum. While docket conditions are a factor in considering whether a case may be transferred, they cannot be the primary factor for retaining a case in this district. See Cognitronics Imaging, 83 F. Supp. 2d at 697 n.8, 698-99; Corry, 16 F. Supp. 2d at 666. Although Plaintiff contends that this was not the primary motivation in its choice of forum, this factor is also diminished since the Delaware court has already spent more than three years litigating Plaintiff's patents, and thus has a significant "head start" on this Court.

Notwithstanding the weak support for Plaintiff's choice of forum, the Court "should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer in favor of the defendant." Verizon Online Servs. v. Ralsky, 203 F. Supp. 2d 601, 624 (E.D. Va. 2002) (citing Nossen v. Hoy, 750 F. Supp. 740, 742 (E.D. Va. 1990)). In light of the prospective duplication of efforts involved with two courts litigating the same patent claims brought by the same party, the balance of hardships in this case clearly favors transfer.

According to GTE Wireless, "the interest of justice factors include such circumstances as 'the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment.'" GTE Wireless, 71 F. Supp. 2d at 519 (quoting Hester Industries, 1996 U.S. Dist. LEXIS 19926 (citations omitted)). The

11

pendency of the parallel Delaware action and the Delaware court's familiarity with Plaintiff's case are the most important factors here.

In Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960), the Supreme Court observed that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Since Continental Grain, courts have observed that transfer is particularly appropriate in patent cases where a prior pending lawsuit involves the same facts, transactions, or occurrences, and is warranted even when the parties are different. See, e.g., Hunter Eng'g Co. v. ACCU Indus., 245 F. Supp. 2d 761, 776 (E.D. Va. 2002). Morever, when two different courts are interpreting the same patent, inconsistent results impede the administration of justice and favors transfer whenever possible to where the lawsuit is already pending. Datatreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003) (citing Hunter Engineering, 245 F. Supp. 2d at 776). The risk of inconsistent results is especially acute where, as here, the central issues involve claim construction. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

This case involves the same claims of infringement now pending before the District of Delaware, brought by the same Plaintiff against similarly-situated principal parties over three years ago. During this time, the Delaware court has invested substantial time in scheduling conferences, presiding over discovery disputes and ruling on several motions, including cross motions for summary judgment and claim construction, which involve complex technology and detailed determinations of noninfringement. By retaining jurisdiction over this case, this Court would cause expensive and unnecessary duplication of the Delaware court's efforts. This Court would be required to invest considerable time in familiarizing itself with the patents in this case

12

and in making separate determinations. The judicial economy factor here is so heavily weighted that it alone supports transfer to the District of Delaware. See Hunter Engineering, 245 F. Supp. 2d at 776; LG Elecs. v. Advance Creative Computer Corp., 131 F. Supp. 2d 804, 814-15 (E.D. Va. 2001) (holding that judicial economy warrants transfer where the receiving court previously rendered a claim construction on the patents in issue and was therefore more familiar with the issues presented in the case). Therefore, the balance of hardships clearly favors transferring this case to the District of Delaware.[10]

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the nine (9) Moving Defendants' Motion to Transfer, which includes claims against the ISPs, the Service Providers, General Service Providers and the two Delaware-based OTCs.[11] Of the twenty-five (25) named Defendants in this action, sixteen (16) remain before the Court.[12] The instant Motion only addressed the two Virginia-based OTCs, arguing that they should be severed from the present action. By letter dated October 12, 2005, the Parties stipulated to a proposed disposition, whereby the Court would sever the action against all sixteen (16) Defendants remaining in this action, which includes the two Virginia-based OTCs and the fourteen (14) remaining OTCs.

---

[10]Plaintiff argues that the principal Defendants' presence in Virginia makes this forum more convenient with respect to access to sources of proof and witnesses. See Pl.'s Mem. in Opp. Mot. to Trans. at 10. However, these Defendants have a nationwide presence that makes the District of Delaware at least as convenient for both the Parties and witnesses, if not more convenient in light of the Delaware court's familiarity with this case, its institutional knowledge, and its access to sources of proof, witnesses and existing discovery.

[11]These transferred Defendants are: Verizon Internet Services, Inc., GTE.Net LLC d/b/a Verizon Internet Solutions, Verizon Services Corp., Telesector Resources Group, Inc., Verizon Corporate Services Group, Inc., Verizon Advanced Data, Inc., Verizon Avenue Corp., Verizon Delaware, Inc., and GTE Southwest, Inc., d/b/a Verizon Southwest.

[12]These remaining Defendants are: Verizon Florida Inc., Verizon Hawaii, Inc., Verizon North, Inc., Verizon Northwest, Inc., Verizon West Coast, Inc., Contel of the South, Inc., Verizon Maryland, Inc., Verizon New England, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, D.C., Inc., Verizon West Virginia, Inc., Verizon California, Inc., Verizon Virginia, Inc., and Verizon South, Inc.

13

Accordingly, the Court **ORDERS** that the remaining sixteen (16) Defendants which did not join in the Motion to Transfer be **SEVERED** from the transferred action. The Court further **ORDERS** that the remaining action against the severed Defendants be **STAYED** without prejudice to the Plaintiff taking further action against the severed parties.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and to certify the order to the Director of the Patent and Trademark Office.

It is so **ORDERED.**


HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
November *l C* , 2005

14

B038