# EXHIBIT 4

Exhibit 4

1

1          IN THE UNITED STATES DISTRICT COURT
2         FOR THE EASTERN DISTRICT OF VIRGINIA
                  Norfolk Division
3

4

5  INLINE CONNECTION CORPORATION,        )
                                         )
6            Plaintiff,                   )
                                         )
7  v.                                     )  Civil Action No.:
                                         )     2:05cv205
8  VERIZON INTERNET SERVICES, et al.,     )
                                         )
9            Defendants.                  )

10

11

12

13              TRANSCRIPT OF PROCEEDINGS

14          (Hearing on Defendants' Motions)

15

16                  Norfolk, Virginia
17                   July 24, 2006

18

19

20  BEFORE:    THE HONORABLE HENRY COKE MORGAN
                United States District Judge

21

22

23

24                      COPY

25

Paul L. McManus, RMR
Official Court Reporter

2

1 | Appearances:

2 |       HELLER EHRMAN LLP
3 |            By: ALEXANDER LAMB BRAINERD, ESQUIRE
                MICHAEL KENNETH PLIMACK
                KYE E. KIRBY, ESQUIRE
4 |       - and -
         KAUFMAN & CANOLES, P.C.
5 |            By: STEPHEN E. NOONA, ESQUIRE
                Counsel for Plaintiff
6 |

7 |       WILEY, REIN & FIELDING, LLP
              By: JOHN BENEDICT WYSS, ESQUIRE
8 |       - and -
         MCGUIRE WOODS
              By: ROBERT WILLIAM MCFARLAND, ESQUIRE
9 |                Counsel for Defendants

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

Paul L. McManus, RMR
Official Court Reporter

3

P R O C E E D I N G S

1

2

3      (Proceedings commenced at 11:00 a.m. as follows:)

4

5      COURTROOM DEPUTY:  Inline Connection Corporation v.

6  Verizon Internet Services, Inc., et al., Civil Action No.

7  2:05cv205.

8      Counsel ready for the plaintiff?

9      MR. NOONA:  We are.

10     COURTROOM DEPUTY:  Counsel ready for the defendants?

11     MR. McFARLAND:  Counsel for the Verizon defendants are

12  ready, Your Honor.

13     THE COURT:  All right, I believe we are here on the

14  defendant's motion?

15     MR. McFARLAND:  Thank Your Honor.  May it please the

16  Court, Robert McFarland on behalf of the Verizon defendants.

17     There is one preliminary matter, Your Honor, that I

18  think Mr. Noona and I may want to just, as the Court is

19  undoubtedly aware of it, a number of documents and pleadings

20  have been filed under seal in this case.  I don't see anyone in

21  the courtroom who is not directly connected with this

22  proceeding.  But it is, I think, not only possible but perhaps

23  likely that some exhibits that were filed under seal may be

24  referenced today in the hearing.

25     THE COURT:  All right.

4

1    MR. NOONA:  Yes, sir, Your Honor.  We've both filed

2  Local Rule 5.

3    THE COURT:  All right.

4    MR. McFARLAND:  Your Honor, with that, let me

5  introduce my co-counsel, John Wyss, who is going to be doing the

6  argument on behalf of the Verizon defendants this morning.

7    THE COURT:  All right.

8    MR. WYSS:  Good morning, Your Honor.

9    THE COURT:  Good morning.

10    MR. WYSS:  We have today two issues before the Court

11  and which only this Court can answer.  The first issue is the

12  subject matter jurisdiction of this court over the lawsuit that

13  is still before it.  And secondly, an issue of whether Inline

14  and its counsel, when they brought this case, misled the Court

15  as part of a forum-shopping effort by making false complaint

16  allegations, misleading venue arguments, and concealing the

17  involvement of the real parties at interest who actually brought

18  the case, all of whom are Delaware corporations.

19    Your Honor, I would, if I might, I would like to

20  hand up, because it will help keep me, some demonstratives,

21  about eight charts that --

22    THE COURT:  Well, I don't want to derail your

23  presentation, counsel, but the first thing that I'm interested

24  in knowing is what the difference is between my transferring the

25  case in chief to Delaware and my not transferring this to

Paul L. McManus, RMR
Official Court Reporter

B042

5

1  Delaware, but keeping the stay in place until Delaware resolves

2  it?  Why should we have a parallel discovery proceeding going on

3  in this court when beginning, apparently in April, there was a

4  deposition given for this very same issue to be explored in

5  discovery there?

6           MR. WYSS:  Your Honor, with respect to the Delaware

7  case, and this is in my charts as a chart, Chart No. 2, the suit

8  in front of Judge Farnan and with the Verizon cases, that case

9  has been stayed.  It is on ice with the sole exception of

10 discovery going forward.  It is true discovery includes the

11 ownership issue, but the Court is not going to take any

12 substantive action in that case under his stay until the entire

13 AOL and Earthlink cases are over with.  Those cases are not

14 scheduled to go to trial until, I think, February of next year.

15 With the appeals and everything through the Federal Circuit

16 we're talking about 2008 or later.

17           In addition, Your Honor, and very importantly, the

18 critical entities, BBTI and Pi Squared, the people who actually

19 have jurisdiction, have the right to bring the lawsuit, they

20 have filed a new lawsuit up in Delaware which has been assigned

21 to Judge Farnan.  They have filed it without joining Inline.

22 They have asserted in the new lawsuit that they have the right

23 and the interest.  By doing that, Your Honor, they have

24 essentially eliminated any impetus for Judge Farnan to ever

25 address this issue.  They have got their separate lawsuit, and

6

1  that's the suit that's going to be up there.

2        In addition, the discovery has been very limited.  We

3  have had, we have been trying to get documents since this

4  ownership issue first came up last February.  Basically Inline

5  is taking the position that we're not going to give you any

6  documents other than the ones that we have in our files, even

7  though, as the agreement that is before the Court and here show,

8  that they have appointed BBTI as their, quote, "true and lawful

9  attorney and agent in fact" for doing everything with respect to

10  this litigation.  So this is an issue, Your Honor, which is --

11        THE COURT:  Well, now you say, how do you know that

12  Judge Farnan is not going to decide the subject matter

13  jurisdiction of the case?  Isn't the subject matter jurisdiction

14  of the case an issue in the new case that's been filed up there?

15        MR. WYSS:  It is an issue that has been raised.  And

16  we will defend on that.  It is also an issue in this case.

17        THE COURT:  But in the case, the pre-existing case up

18  there, that case was filed before these transfers took place.

19  So it's not necessarily an issue in that case, because at the

20  time they filed it they did have the ownership.  Or are you

21  saying that once they made these assignments it eliminated

22  jurisdiction?  In other words, is this same issue going to come

23  up in that other case?

24        MR. WYSS:  It will not come up in that other case,

25  Your Honor.

7

1          THE COURT:  Why not?

2          MR. WYSS:  The other case is filed in the name of

3    BBTI.

4          THE COURT:  No, I don't mean that case, I mean --

5          MR. WYSS:  And Pi Squared.

6          The one that's been transferred up from Your Honor?

7          THE COURT:  No, the one that was up there first.

8          MR. WYSS:  The AOL and the Earthlink case, yes, Your

9    Honor, no, it will not.

10          THE COURT:  Why won't it come up in that case?

11          MR. WYSS:  Those cases --

12          THE COURT:  Because it predated the transfer?

13          MR. WYSS:  Absolutely.  Well, those cases were filed

14    in 2002.  At that time Inline owned all right, title and

15    interest.  The transfers took place in 2003, and critically with

16    respect to BBTI, in March of 2004.  So the AOL and Earthlink

17    case will never address this ownership issue at all.  And that's

18    the one we're being stayed in light of.

19          THE COURT:  Well, why should we have duplicate

20    discovery going on in two jurisdictions?  I mean, why -- when I

21    start thinking about this case I thought about that famous

22    quotation about the United States Senate referring to their

23    debates, and they said everything that can be said has been

24    said, but everybody hasn't said it yet.  Well, that's what

25    occurred to me here.  All the discovery that can be taken will

8

1  be taken, but everybody hasn't taken it yet.  So why should

2  these entities jump in and take this discovery that somebody

3  else is taking?  It seems to me that that's just an additional

4  expense for Verizon.  Why does Verizon want to do all this if

5  somebody else is doing it for them?

6          MR. WYSS:  Is this with respect to the ownership

7  discovery, Your Honor?

8          THE COURT:  Yes.

9          MR. WYSS:  Again, in the AOL and Earthlink cases, they

10 do not have the ownership issue that we have.  That is not part

11 of their case.  They have in that case, they have raised it in

12 terms of joining BBTI and Pi Squared to that case.

13         THE COURT:  Well, what discovery has gone on up there

14 under Judge Farnan's order?  The Court will grant but will

15 permit defendants to proceed with discovery as to their

16 unenforceability and invalidity defense.  That doesn't include

17 this issue?

18         MR. WYSS:  Your Honor, that, Judge Farnan's order is

19 in our case, in the transferred case.  The AOL/Earthlink case is

20 pending before Magistrate Judge Thynge.  Judge Farnan's order

21 allows us to do discovery.

22         Your Honor, we have got the exclusive license

23 agreement.  There is no further discovery that's necessary over

24 that.  It is the March 4, 2004 exclusive license agreement that

25 transferred all rights from Inline to BBTI.  We're right

9

1  squarely in the i-Ticket situation, Your Honor.

2      THE COURT:  So what you're saying is you don't need

3  any more discovery?

4      MR. WYSS:  That is correct.  Certainly on the

5  threshold jurisdictional issue, it is decided by the exclusive

6  license agreement as confirmed by the more-recently-revealed

7  Verizon agreement.

8      THE COURT:  All right.  Well, the case I've

9  transferred up there has been stayed except for this issue.  Now

10  you're telling me that Judge Farnan is not going to decide the

11  case I transferred up there until the AOL/Earthlink case is

12  decided?  How do we know that?

13      MR. WYSS:  Maybe I could just correct Your Honor.

14  Judge Farnan has stayed all substantive action in the case that

15  you transferred up there.  He has allowed discovery and only

16  discovery to go forward on invalidity and unenforceability

17  issues.  We believe that that should include the ownership

18  issue.  We filed a motion to compel, it was granted, we were

19  then filing a motion to enforce it, and he has now clarified

20  that we're entitled to discovery on the ownership issue as part

21  of unenforceability and invalidity.  However --

22      THE COURT:  I would think so, yes.

23      MR. WYSS:  However, everything substantively in that

24  case is stayed pending the final resolution of the parallel

25  AOL/Earthlink case before Magistrate Judge Thynge.

Paul L. McManus, RMR
Official Court Reporter

10

1          THE COURT:  Well, is the magistrate judge going to try

2  that case or is he just going to do the preliminaries?

3          MR. WYSS:  She, Your Honor.  She, I believe, will be

4  trying it, or has a trial date scheduled for February.  I could

5  certainly defer --

6          THE COURT:  On a consent?  She's trying it on a

7  consent?

8          MR. WYSS:  Yes, Your Honor, that is correct.

9          THE COURT:  All right.  So Judge Farnan is permitting

10  discovery on this ownership issue in Delaware and discovery has

11  been going forward on that issue, and indeed you tell me that

12  you have all you need?

13          MR. WYSS:  That's correct, Your Honor.

14          THE COURT:  Well, how do we know that Judge Farnan is

15  not going to decide -- if the ownership issue, if you prevail on

16  that here, you should prevail on that in Delaware too.  Why

17  would Judge Farnan withhold a ruling on the ownership issue

18  pending the trial of the other case if that's not an issue in

19  the other case?  I don't understand.

20          MR. WYSS:  He has two cases, Your Honor.  He has a

21  second case, the BBTI and the Pi Squared one without Inline,

22  where there is no ownership issue.

23          THE COURT:  All right.  Well, why is that a reason not

24  to decide the ownership issue?

25          MR. WYSS:  Because he, you know, he has no reason to

11

1  decide anything until the AOL and Earthlink cases are decided.

2          This is an issue which we believe Your Honor should

3  decide.  This is where the case was brought.  We will clearly

4  take up -- because you have no subject matter jurisdiction.

5  This is a threshold jurisdictional issue.  This is an issue --

6          THE COURT:  Well, it is a threshold jurisdiction issue

7  in Delaware too, isn't it?

8          MR. WYSS:  And it is a threshold issue in the stayed

9  case here with respect to the remaining parties that remains on

10  this Court's docket.

11          THE COURT:  Well, I don't understand why we have to be

12  going forward in two courts at one time just because you want to

13  get some damages in the form of sanctions against the plaintiff.

14  I mean, that seems to be the only reason to do anything here.

15          MR. WYSS:  We are currently bringing it here, Your

16  Honor, because Your Honor, Your Honor's court and we, were put

17  through about eight months of very intense litigation in the

18  case.

19          THE COURT:  And now we're going to go through more.  I

20  mean, if it's decided that there's no subject matter

21  jurisdiction in Delaware, it seems to me that would be some sort

22  of an estoppel in this case.  It might not be res judicata in

23  this court, the parties are not the same, but it seems to me it

24  would be some sort of estoppel here.  So the only thing to gain

25  by going forward here is that you hope I'll decide it in your

12

1   favor before it gets decided in Delaware.

2          But I don't understand why you say that Judge Farnan

3   is not going to decide this issue until the other case is over.

4          MR. WYSS:  Well, I say that, Your Honor, because that

5   is the status of his order.  Just as with you, I would have to

6   go to Judge Farnan, say Your Honor, we want you to lift the stay

7   and to address this issue in the one case, which won't affect

8   the parallel consolidated case at all.

9          THE COURT:  I keep reading this case, this opinion of

10  Judge Farnan.

11         MR. WYSS:  And Your Honor, I may not have been clear.

12  I guess what -- one point I did want to make with respect to

13  what Judge Farnan is going to do, there is this brand new filed

14  case up there which has no ownership issue, which has the right

15  parties, BBTI, Pi Squared, does not have Inline in it.

16         THE COURT:  Right.

17         MR. WYSS:  And because that one has been assigned to

18  Judge Farnan, again, I think there's no -- if I were Judge

19  Farnan I'd say, ah, let's wait until AOL is completed and we'll

20  sort it all out, which is basically what his orders are saying.

21         THE COURT:  Why shouldn't I say the same thing?

22         MR. WYSS:  What?

23         THE COURT:  Why shouldn't I say the same thing?

24         MR. WYSS:  Because as I tried to make clear, in the

25  AOL and the Earthlink case that issue is not going to be

13

1  litigated.  This is a subject matter --

2          THE COURT:  Well, you --

3          MR. WYSS:  -- jurisdiction issue.

4          THE COURT:  -- can say the same thing to Judge Farnan,

5  can't you?

6          MR. WYSS:  I certainly can.

7          THE COURT:  Have you?

8          MR. WYSS:  I have not, Your Honor.  Because once we

9  got the information showing that when the case was brought down

10 here, that the complaint allegations that Inline had all right,

11 title and interest and the arguments made, and the documents

12 that we got showing that this case was brought by BBTI in the

13 name of Inline, that when you have that, this Court is the one

14 who was confronted with the case in the first place --

15         THE COURT:  Well, Inline and all these, Pi Squared and

16 all these people, they are what is referred to in the industry

17 as patent trolls --

18         MR. WYSS:  I believe that --

19         THE COURT:  -- or do they actually do anything?

20         MR. WYSS:  Well, it's very good, if you look at Tab 3

21 in the book, Your Honor, has the chart, that Paperboy Ventures

22 is the overall umbrella organization.  Pi Squared and BBTI are

23 pop-up Delaware LLC entities.  We do have the benefit of the

24 deposition that was taken in the AOL case of Pi Squared and BBTI

25 under Rule 30(b)(6).  And their witness made very clear that

Paul L. McManus, RMR
Official Court Reporter

1  they have no employees, they have no offices, they have no real

2  estate, they have no products, they have no customers, they have

3  no revenues since inception, they are entirely funded by

4  Paperboy Venture, and the sole operating -- that the Paperboy

5  Ventures, the CFO of that company, serves as the chief executive

6  officer and the manager of these LLCs.  So these are

7  single-purpose entities that have been sent up strictly to

8  litigate Pi Squared, to litigate the case against AOL on

9  Earthlink, BBTI to litigate the case against Verizon, as well as

10  any future suits that they might bring.

11          So I don't know if that makes them trolls.  They

12  clearly are people who fund patent litigation hoping to --

13          THE COURT:  I don't know, the Supreme Court didn't

14  seem to be impressed with the difference between trolls and

15  people who actually use the patents anyway.

16          MR. WYSS:  Well, I must confess, Your Honor, I was on

17  the side of the NTP, which is the, in the Blackberry case, so I,

18  I have been accused of being a troll.  But in that case we

19  clearly represented the actual inventor who prosecuted these and

20  actually had a working system back in the early '90s.

21          THE COURT:  Well, are you counsel of record in the

22  case that was transferred to Delaware as well?  Or do you just

23  represent the entities that weren't part of the transfer?

24          MR. WYSS:  Your Honor, I am counsel of record in this

25  case and counsel of record in both of the cases.  The one that

15

1  was transferred --

2           THE COURT:  Well, why haven't you said to Judge Farnan

3  you've let us take discovery, we've taken discovery, and we now

4  would like for you to decide that there is no subject matter

5  jurisdiction?  Why haven't you asked him to make that decision?

6           MR. WYSS:  I came to this court because this is the

7  court where the case was filed and where the actual complaint

8  allegations were made.  And also because, as here, up there I am

9  facing a stay which Inline requested that all substantive action

10 other than this litigation discovery go forward.

11          THE COURT:  All right.  Well, I want to get all this

12 straight before we start talking about the merits of ownership.

13 Who do you represent among the transferred defendants?

14          MR. WYSS:  I represent all of the transferred

15 defendants, Your Honor.

16          THE COURT:  All right.  Well, let me hear what the

17 other side has to say.

18          MR. NOONA:  May it please the Court, Your Honor,

19 Stephen Noona on behalf of Inline.  I'd like to introduce Mr.

20 Alexander Brainerd from the Heller firm, he'll be arguing the

21 motion.

22          MR. BRAINERD:  Good morning, Your Honor.

23          THE COURT:  Good morning.

24          MR. BRAINERD:  As you well know, it's our position

25 that there is no reason to lift the stay.  I think in large part

16

1  for the reasons that the Court has alluded to and the questions

2  that it's asked.

3          THE COURT:  Well, I mean these accusations are against

4  both you and your client.

5          MR. BRAINERD:  That's true.  And I'm --

6          THE COURT:  Obviously you don't want the stay listed,

7  but --

8          MR. BRAINERD:  Let me just say, Your Honor, maybe I

9  should say this at the outset so I can get beyond those

10  allegations, and then I'll get to the merits of what you're

11  concerned about.

12          But you know, I've been practicing law for 38 years.

13  I've never had the kinds of charges that have been leveled

14  against us and our firm ever leveled against me in my entire

15  career.  I find them to be offensive and irresponsible.  And I

16  want this Court to know, and I'm here to stand before this Court

17  and represent to this Court and assure this Court that neither

18  myself, Mr. Plimack, Ms. Kirby, the Heller firm or the Swidler

19  firm did anything to misrepresent anything before this Court.

20  And I'm happy to answer any questions or address any concerns

21  the Court may have on that subject when the time is appropriate.

22          THE COURT:  Well, somebody --

23          MR. BRAINERD:  But I'm not, I'm not --

24          THE COURT:  Somebody's misrepresented something before

25  this Court.  Either your firm has or the other side has, one or

Paul L. McManus, RMR
Official Court Reporter

B054

17

1  the other.

2          MR. BRAINERD:  Well, I mean --

3          THE COURT:  I can't reconcile these two positions.

4  And I hate to see litigation deteriorate into personal

5  allegations.

6          MR. BRAINERD:  I do too, Your Honor.  And I'm

7  perfectly willing to address and defend the conduct of my firm

8  and the Swidler firm at any moment in time.

9          But I want to get back to the issues that you're

10  raising, because I think they are important issues.  And the

11  first thing I want to point out is Mr. Wyss just indicated to

12  the Court that the stay was requested by Inline in the context

13  of the case up in Delaware.  That's not accurate.  The stay was

14  requested by both parties.  Both by Inline and Verizon.  And it

15  was at Verizon's request that Judge Farnan issued an order which

16  allowed for discovery on the ownership issues to move forward.

17          THE COURT:  All right.  Now, wait a minute.  It says

18  "pending before the Court is plaintiff Inline's motion to stay."

19          MR. BRAINERD:  Right.

20          THE COURT:  It doesn't say -- I'm looking now at Judge

21  Farnan's order, doesn't say a joint motion.

22          MR. BRAINERD:  But they stipulated to that motion,

23  Your Honor.  They agreed with it.  So I mean, it's --

24          THE COURT:  Wait a minute.  Does it say that in here?

25          MR. BRAINERD:  Well, I'm making a representation to

18

1   the Court based upon what I understand to be the record that

2   they in fact did agree to it.

3            THE COURT:  Is that right, counsel?

4            MR. WYSS:  Your Honor, we took the position that the

5   case should go forward on our issues because of the problem of

6   trying to find prior art from the 1980s and 1990s, and we did

7   not object to the staying of their infringement discovery

8   because the current systems were not going to change.  But our

9   defenses are the ones that we said we needed the full right to

10  go forward on.

11           MR. BRAINERD:  But let me, I want to read from a

12  couple of documents.  One is Exhibit 13 to Mr. Wicky's

13  declaration in support of our opposition, Your Honor.  And this

14  was a motion to compel discovery regarding the threshold

15  jurisdictional ownership issue that was filed by counsel for

16  Verizon.  And they tell the Court, "The ownership issue and

17  Inline's standing to sue are threshold jurisdictional issues

18  that must be addressed at the outset."

19           And then Judge Farnan, in responding to that motion

20  issues an order which is at Tab 11 of that same declaration, and

21  he says "The Court concludes that the evidence sought by

22  defendants is relevant to defendant's claim that the Court lacks

23  jurisdiction.  Ownership is a threshold issue, and the Court may

24  lack jurisdiction if, as defendants contend, plaintiff assigned

25  all substantial rights to a non-party."

19

1    It's very clear that Judge Farnan -- they keep saying

2  the case is stayed.  Well, the case is not stayed in Delaware

3  with respect to this ownership issue.  Judge Farnan has

4  indicated that the discovery is going forward, it is going

5  forward.  Judge Farnan has given an indication in this order he

6  is going to address this issue.  I mean, for example, they

7  wouldn't be asking for this discovery unless they presumably had

8  an intent to use it in some fashion.

9    This whole idea about this other complaint is a total

10 red herring.  In that complaint that was filed by Pi Squared and

11 BBTI, they allege that they believed that Inline is the proper

12 owner of these patents, and that he's filed simply because the

13 allegations against them is a belt-and-suspenders kind of

14 pleading.  There's absolutely no question that Judge Farnan is

15 dealing with these issues now, will resolve these issues, and

16 therefore there is no reason for this Court to lift the stay at

17 this time to deal with these issues down here.

18    I mean, after all, the Court, as we know, transferred

19 the case up there.  You did so, as I understand from your order,

20 in large part because you felt, because of the knowledge and

21 familiarity of the court in Delaware with the underlying issues

22 of this litigation, it was the best and most efficient court in

23 which to litigate the issues.  We are litigating the ownership

24 issue.  It will be resolved up there.  And there's --

25    THE COURT:  Well, what about counsel keeps telling the

Paul L. McManus, RMR
Official Court Reporter

20

1  Court that that's, that won't be resolved until the AOL, the

2  final decision is made in the AOL case.

3          MR. BRAINERD:  There is no connection between the two.

4  I mean, Magistrate Thynge is going to go to trial on the

5  AOL/Earthlink case in February of next year.  And the ownership

6  issues as -- and I agree with Mr. Wyss on this, Mr. Wyss on

7  this -- that the ownership issues in this case are not the same

8  as the ownership issues in this case.  And there's every

9  indication from Judge Farnan --

10          THE COURT:  That's because when that case was filed it

11  was before all these alleged transfers took place.

12          MR. BRAINERD:  Exactly.  Exactly.  And Judge Farnan --

13          THE COURT:  And the fact that they took place

14  afterwards doesn't oust the Court of jurisdiction.  Nobody's

15  saying that.

16          MR. BRAINERD:  No.  As far as I know.  I mean, I'll

17  let Ms. Kirby...

18          THE COURT:  All right.

19          MR. BRAINERD:  So there's nothing to, there is nothing

20  to indicate that Judge Farnan is going to wait for the AOL case

21  to resolve before moving forward.

22          THE COURT:  I can just pick up the phone and call

23  Judge Farnan.  I happen to know Judge Farnan.  I can call him up

24  and ask him.

25          MR. BRAINERD:  Pardon me, Your Honor?  I'm sorry.

Paul L. McManus, RMR
Official Court Reporter

21

1      THE COURT:  I say I can call him up and ask him.

2      MR. BRAINERD:  Well, I, we invite --

3      THE COURT:  Do you have any problem with that?

4      MR. BRAINERD:  No.  I certainly don't.

5      THE COURT:  All right.  So what you're saying is that

6  Judge Farnan has not, in your view, stayed a decision on the

7  ownership issue, he's simply just stayed action on the

8  infringement issue because he feels that the infringement issue

9  will probably be decided by the AOL/Earthlink case anyway?

10      MR. BRAINERD:  No.  What Judge Farnan did, and we can

11 pass up -- I think the orders may be incorporated in all the

12 papers that are before you -- Judge Farnan essentially issued a

13 stay with certain carve-outs.

14      THE COURT:  Yes.

15      MR. BRAINERD:  And the carve-outs related primarily to

16 the issues of invalidity and unenforceability.

17      THE COURT:  Right.

18      MR. BRAINERD:  Because Verizon came along and said

19 there was testimony and evidence out there that might become

20 stale over a certain period of time because it related to

21 people's memories and things of that nature.

22      THE COURT:  Right.

23      MR. BRAINERD:  So at that time Judge Farnan, when he

24 issued his order, he carved out from his stay initially the

25 subject matter of validity and enforceability.  At the same time

22

1  they came back and said, well, we've got to get this ownership

2  issue resolved.  It's a threshold issue, we need to get it

3  resolved.  We need discovery on ownership.  And what I read to

4  you just a minute ago was Judge Farnan's order responding to

5  that motion indicating very clearly that he agreed, he was

6  granting their request to proceed with discovery on ownership,

7  and indicating he as well thought it was a threshold issue.

8          THE COURT:  And what he said in the last sentence of

9  his prior order -- I assume this order was subsequent to April

10  13th -- he said "The Court will grant Inline's motion to stay,

11  but will permit the defendants to proceed with discovery as to

12  their unenforceability and invalidity defenses."  That included

13  discovery on the ownership.

14          MR. BRAINERD:  He specifically provided in the order,

15  discovery --

16          THE COURT:  The subsequent order.

17          MR. BRAINERD:  I believe -- yes, it is a subsequent

18  order.  That's right.  And that is, Judge, Tab 11 to the Wicky

19  declaration that accompanied our opposition papers.

20          So if you look at the briefs that Verizon filed in

21  order to get him to do that, they're telling the judge this is a

22  threshold issue, Judge, we've got to get discover on this so we

23  can get this wrapped up.  And his order, which is at Tab 11,

24  Judge Farnan orders the discovery on ownership and indicates he

25  agrees that it's a threshold issue.

23

1          Now, if that doesn't --

2          THE COURT:  Has he ever said that he was not going to

3    decide that issue until after the AOL/Earthlink trial was over?

4          MR. BRAINERD:  Never.

5          THE COURT:  Has he ever said otherwise?  Has he ever

6    said he was going to decide it first?

7          MR. BRAINERD:  Let me just -- give me a minute.

8          He said here at the bottom of the same order that we

9    were looking at, Tab 11, at the bottom of the second page, Page

10   2, "In the Court's view, the outcome of the AOL/Earthlink case

11   is irrelevant to the ownership issue because those cases were

12   filed in 2002, and the rights allegedly were not transferred

13   until March of 2004."

14         So he's saying that he doesn't consider the outcome or

15   the development of facts in the AOL/Earthlink case to have any

16   bearing upon his decision regarding ownership in the Verizon

17   days.  So he clearly indicated by virtue of his orders, one,

18   we're going to have discovery; and two, I think it's a threshold

19   issue; and three, the AOL/Earthlink case does not have any

20   impact upon this issue as far as I'm concerned.  And from that I

21   think we can properly conclude -- and I don't believe that

22   Verizon would be conducting this discovery unless they intended

23   to proceed with it in some fashion -- we can properly conclude

24   that Judge Farnan has in mind resolving this issue at the

25   earliest possible moment.

24

1          And there's absolutely no reason to lift the stay down

2   here when we have the issue being fully litigated in Delaware

3   where we are specifically at Verizon's request and Your Honor's

4   order, which indicated that was the best and most reasonable

5   forum to litigate the merits of this case.

6          THE COURT:  All right.  Beth, would you see if you can

7   get Judge Farnan on the telephone?

8          Mr. Wyss?

9          MR. WYSS:  Yes, Your Honor.

10         THE COURT:  Something is wrong here.  I mean, your

11  allegations against the plaintiffs and the plaintiff's attorneys

12  are very serious.  If they're true, then they have got a

13  problem.  If they're not true, you've got a problem.

14         MR. WYSS:  Your Honor, I stand by my allegations which

15  are documented in the documents; that the, at the time the

16  complaint was filed in this case --

17         THE COURT:  All right.  Well, people disagree on the

18  meaning of that language.  That's the issue.  And I don't know

19  whether that disagreement on what that language means is

20  reasonable or not.

21         MR. WYSS:  With due respect, Your Honor, the complaint

22  allegation of all right, title and interest being in Inline was

23  not accurate.  There had been an assignment of a percentage

24  interest in Pi Squared prior to that.  And a year before,

25  particularly bringing in this case, there was this exclusive

25

1  license agreement entered --

2          THE COURT:  I know.  Well --

3          MR. WYSS:  -- which gave BBTI --

4          THE COURT:  -- this is exactly what I don't want get

5  into if Judge Farnan is going to do it.  Because this situation

6  could be interpreted as you trying to get me to do the same

7  thing that you accuse the plaintiff of trying to get me to do,

8  which was you said they were forum shopping, trying to get me to

9  make a decision after allegedly unfavorable decisions were made

10  in Delaware.  That's what you say that they did.  They had

11  unfavorable decisions in Delaware, and so they came here and

12  they wanted me to make a decision which they hoped would be

13  different than the way things came out in Delaware.

14          Well, now here's Judge Farnan with the issue before

15  him, and you want me to decide the same issue that's before him,

16  perhaps in the hopes that I will make some decision that may be

17  different from his, or perhaps will influence his.

18          So it almost sounds like you're doing the same thing

19  that you're accusing them of.

20          MR. WYSS:  Your Honor, Judge Farnan has not addressed

21  this issue.

22          THE COURT:  Well, I know he hasn't addressed it.  But

23  I mean, you're telling me that he had no intention of addressing

24  it until after the other trial.  I don't know that that's right.

25  I mean, you can't show me any order he's entered that says that,

26

1 that's just what your interpretation of what you think he's

2 going to do.

3        MR. WYSS:  That is correct, Your Honor.

4        THE COURT:  But he said in another order that the

5 outcome of AOL/Earthlink is entirely a separate, has nothing to

6 do with the ownership issue.  They just pointed that out.

7        MR. WYSS:  Well, Your Honor, it is my desire to get

8 the ownership issue decided.  In this Court's case, the case

9 pending before this Court, it is square.  It is presented.  In

10 the case before Judge Farnan, because of the subsequent filing

11 of the BBTI and Pi Squared suit, he no longer has any impetus to

12 address that issue.

13        THE COURT:  Well, I don't know about that.

14        MR. WYSS:  I mostly, Your Honor, want to get this

15 issue decided, and decided as promptly as possible.

16        THE COURT:  Well, that's what they could say.  That's

17 what they said when they filed the suit in this court when one

18 had been pending in Delaware, because they said that we'd decide

19 it fast, which maybe we would have.  That's the same thing they

20 said.

21        MR. WYSS:  Fundamentally there's been no adverse

22 decision against me by -- there's been no decision.  I'm stayed

23 up there, I'm stayed down here.  I'd like to have -- I came to

24 this court because this is the court which does not have this

25 second layer --

27

1          THE COURT:  Well, you're contending that you're stayed

2     up there, but you're not stayed on this issue, on the ownership

3     issue.

4          MR. WYSS:  I'm not stayed on discovery on this issue.

5     I will have to file a motion to have to lift stay to get Judge

6     Farnan to do anything substantively in that case beyond

7     discovery.

8          THE COURT:  Just like you're doing here.

9          MR. WYSS:  That is correct, Your Honor.

10          THE COURT:  Well, why did you do it here instead of

11     there?

12          MR. WYSS:  Because in this case there's no second

13     suit.  In this case it is squarely presented.  And in this case,

14     again, the original filing and the original representations were

15     made to this Court.  And this Court is aware of the eight months

16     we were put through down here litigating what is now Delaware

17     corporations, in a case that should have been brought originally

18     in Delaware.

19          THE COURT:  Well, I'm going to take about a 10-minute

20     recess and find out if we're able to get Judge Farnan on the

21     telephone.  Since my clerk is not here, I'll state that we're

22     taking a 10-minute recess.

23          (Recess taken from 11:37 a.m. to 11:57 a.m.)

24          THE COURT:  Well, I don't know what we're going to be

25     able to do about contacting Judge Farnan, because he's in a

28

1    trial.  His secretary said that he had a sentencing that he was

2    going to do during lunch hour.  So I don't know when I'll be

3    able to get up with him.

4         So one of you is telling me that he's not going to

5    decide this ownership issue until after the AOL/Earthlink case

6    finishes the trial and all its appeals.  The other one is saying

7    there's no reason why he wouldn't go ahead and decide it

8    whenever he's asked to, but nobody's asked him to.  Is that

9    right?

10        MR. WYSS:  That's correct, Your Honor.  Nobody has

11   asked him to.  We asked you to, Your Honor, because quite

12   frankly we felt we had an obligation to come to this court where

13   this case was started and where the representations were made,

14   and where we hope we would get a prompt resolution of the, this

15   threshold jurisdictional issue which impacts the case still

16   pending before Your Honor.

17        THE COURT:  Well, the point is, as with the other

18   issues that caused this case to be transferred, which you asked

19   me to do -- didn't you ask me to transfer?

20        MR. WYSS:  Yes we did, Your Honor.

21        THE COURT:  All right.

22        MR. WYSS:  And what --

23        THE COURT:  Judge Farnan has been into it and I

24   haven't, other than receiving this motion.  And I don't see any

25   reason for both of us to be working on the same issue at the

29

1  same time.

2      MR. WYSS:  Just so I'm clear, Your Honor, Judge Farnan

3  has not been asked to look at this issue.  We did not file

4  anything there.  We alerted him when we came down and told him

5  what we were doing down here specifically so he would not waste

6  time getting into that.

7      THE COURT:  Well, he's gotten into it to the extent

8  that he's entered an order saying that his stay encompasses the

9  ownership issue, and the ownership issue is different than the

10  issue in the AOL/Earthlink case.  Hasn't he done that?

11      MR. WYSS:  Yes, that is correct.

12      THE COURT:  So what is it about that that leads you to

13  the belief that he won't decide the ownership issue until after

14  that case is tried?  I mean, he apparently entered an order

15  saying that that case had nothing to do with the ownership

16  issue.

17      MR. WYSS:  Because in that case, Your Honor, he also

18  has the simultaneously filed BBTI and Pi Squared case.

19      THE COURT:  I knew you were going to say that.  But I

20  don't understand why you say that effects it, because he said

21  that was not the same issue.

22      MR. WYSS:  Your Honor, we're just trying to get a

23  resolution on this.  Again, I felt that it was to this Court

24  where the complaint was filed, where the representations were

25  made, is where we should come first.  And that was, that was our

Paul L. McManus, RMR
Official Court Reporter

30

1  decision. And Judge Farnan has not invested any time or energy

2  considering this issue. And for the reasons I've stated, I'm

3  not sure when and if and ever he's going to get to addressing

4  those issues. As you point out, if the AOL/Earthlink case finds

5  no infringement, he's never going to have to reach that. He'll

6  just let it, he can let this case stay till the end of that

7  case.

8        THE COURT: Well, I guess he'll never reach this issue

9  unless and until somebody asks him to reach the issue.

10       MR. WYSS: That's correct, Your Honor. We did not ask

11  him to do it. We came here first.

12       THE COURT: All right.

13       MR. BRAINERD: Your Honor, I don't want to belabor

14  this, I just, I don't think we're getting quite an accurate

15  statement of what's gone on here, as I mentioned before.

16       In the very brief in which they asked Judge Farnan to

17  open up discovery on the ownership issue, they tell the Court in

18  this brief that one of the reasons why that should happen, they

19  being Verizon, "The ownership issue and Inline's standing to sue

20  are threshold jurisdictional issues that must be addressed at

21  the outset."

22       Based upon that representation, Judge Farnan issues an

23  order that then -- I'm reading from Exhibit 13 to Mr. Wicky's

24  declaration -- Judge Farnan issues an order which I've already

25  reviewed with the Court in which he agrees this is a threshold

31

1   issue, I'm giving you your discovery.  He also says the

2   AOL/Earthlink case has no bearing upon this.  Let's get started

3   and let's proceed.

4           Now, I cannot believe that Verizon made this motion

5   and made these representations to the Court; that is, Judge

6   Farnan, unless it had an intent to press the jurisdictional

7   issue in front of him.  I have to believe, based upon Judge

8   Farnan's order, that he recognized this as a issue threshold

9   issue, embraced it as a threshold issue, granted discovery on

10  this matter, and fully intends to resolve it.  And he's

11  indicated that his resolution of this issue is going to have

12  nothing to do with the progress of the AOL/Earthlink case.

13  That's the status of the record.

14          They went up to Delaware at their request, that's

15  where they are.  They told the Court that this was the best and

16  the most efficient forum in which to litigate, that's where

17  they're litigating.  And it's our position there's no reason for

18  to you lift this stay.  Judge Farnan will deal with these

19  issues, and the results will dictate how we proceed down here.

20          THE COURT:  All right.  I have a message that Judge

21  Farnan can speak with me at one o'clock today.  So we'll recess

22  until 1:15, and I'll talk with Judge Farnan about it and we'll

23  figure out what we'll do.  But -- well, I won't say anything

24  more until that time.  So I'll see you at 1:15.

25          (Recess taken from 12:04 p.m. to 1:15 p.m.)

Paul L. McManus, RMR
Official Court Reporter

B069

32

```
 1        THE COURT:  Well, counsel, I was able to get in touch
 2   with Judge Farnan.  He is trying a patent case and he had a
 3   sentencing that he did during his lunch hour, but I was able to
 4   get a few minutes with him.  And he said, as I expected him to
 5   say, that he fully intended to decide the ownership issue
 6   himself.  He said the reason that he opened discovery on the
 7   ownership issue was so that he could decide it.  He said it was
 8   a separate issue, and there was no reason why it had to wait for
 9   the decision in the AOL Online case, and that he gave counsel a
10   certain amount of time, he couldn't remember how much, to
11   complete discovery.  And I told him that the defendants
12   represented to the court that discovery was complete.  So he
13   said that with the cases pending in his court, that he thought
14   it made more sense for him to decide the issue than for me to
15   decide it, which is exactly what I thought.
16        So the Court's going to defer to Delaware, which --
17   and I might say that what he had to say I concur in completely.
18   Indeed, that's exactly what I was thinking.  With all of the
19   other issues pending in Delaware, that there was no reason for
20   this court to grab hold of one single issue in part of a case
21   when he had all of the other issues pending in Delaware.  So
22   he's going to decide.  And he said when you finish discovery,
23   just ask him for a hearing, and he'll give you whatever type of
24   hearing you need, whether it's a factual hearing or any other
25   type of hearing.
```

33

1       So I'm going to decline to lift the stay on the cases

2   in Norfolk.  That order will be effective today.  I'll prepare a

3   written order explaining the reason for the Court's ruling in

4   more detail, but the order declining to lift the stay is

5   effective today.

6       And I just think it's unfortunate that what should be

7   litigation between two parties gets to the point where it's a,

8   there are allegations back and forth between counsel.  I have no

9   idea what the validity of allegations are, and I don't intend to

10  get into it.  But I just think it's unfortunate that those

11  things have to arise.  I think it's unprofessional.  And I hope

12  that the case can be resolved on its merits without further

13  personal barbs being traded in either direction.

14       (Whereupon, proceedings concluded at 1:20 p.m.)

15

16

17

18

19

20

21

22

23

24

25

Paul L. McManus, RMR
Official Court Reporter

34

## CERTIFICATION

I certify that the foregoing is a true, complete and correct transcript from the record of proceedings in the above-entitled matter.

_Paul L. McManus_

Paul L. McManus, RMR

8/01/06

Date

Paul L. McManus, RMR
Official Court Reporter

EXHIBIT 5

Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BROADBAND TECHNOLOGY INNOVATIONS, LLC, and PIE SQUARED LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>VERIZON INTERNET SERVICES, INC.; GTE.NET LLC d/b/a VERIZON INTERNET SOLUTIONS; VERIZON SERVICES CORP.; TELESECTOR RESOURCES GROUP, INC. d/b/a VERIZON SERVICES GROUP; VERIZON CORPORATE SERVICES GROUP INC. d/b/a VERIZON SERVICES GROUP; VERIZON ADVANCED DATA INC.; VERIZON AVENUE CORP.; GTE SOUTHWEST INC. d/b/a VERIZON SOUTHWEST; and VERIZON DELAWARE INC., )<br><br>Defendants. ) | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

FILED
2006 MAY -3 PM 4: 44
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## COMPLAINT FOR PATENT INFRINGEMENT
### AND DEMAND FOR JURY TRIAL

Broadband Technology Innovations, LLC ("BBTI") and Pie Squared LLC ("Pie Squared") (collectively, "Plaintiffs") demand a jury trial, and complain against Verizon Internet Services, Inc., GTE.Net LLC d/b/a Verizon Internet Solutions, Verizon Services Corp., Telesector Resources Group, Inc. d/b/a Verizon Services Group, Verizon Corporate Services Group Inc. d/b/a Verizon Services Group, Verizon Advanced Data, Inc., Verizon Avenue Corp., GTE Southwest Inc. d/b/a Verizon Southwest, and Verizon Delaware Inc. (collectively "Defendants") as follows:

## THE PARTIES

1.    BBTI is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 1875 K Street, N.W., Washington, D.C. 20006.  BBTI was incorporated under the name Mercury Communications I, LLC on March 4, 2004 and changed its name from "Mercury Communications I, LLC" to "Broadband Technology Innovations LLC" on September 29, 2005.

2.    Pie Squared is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 1875 K Street, N.W., Washington, D.C.  Pie Squared was incorporated on June 18, 2003.

3.    On information and belief, Verizon Internet Services, Inc. ("VIS") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1880 Campus Commons Drive, Reston, Virginia.  Upon information and belief, VIS conducts throughout the United States, and acts as an agent for Verizon affiliates, including certain Defendants herein.

4.    On information and belief, GTE.Net LLC d/b/a Verizon Internet Solutions ("Verizon Internet Solutions") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 4055 Corporate Drive, #400, Grapevine, Texas.  Upon information and belief, Verizon Internet Solutions conducts substantial business throughout the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

5.    On information and belief, Verizon Services Corp. ("Verizon Services") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1310 N. Court House Road, Arlington, Virginia.  Upon information

- 2 -

and belief, Verizon Services conducts substantial business throughout many states within the United States and acts as the agent for Verizon affiliates, including certain Defendants herein.

6.     On information and belief, Telesector Resources Group, Inc. d/b/a Verizon Services Group ("Verizon Services Group") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 104 West Street, New York, New York.   Upon information and belief, Verizon Services Group conducts substantial business throughout many states within the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

7.     On information and belief, Verizon Corporate Services Group Inc. d/b/a Verizon Services Group ("Verizon Corporate Services Group") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 140 West Street, New York, New York.   Upon information and belief, Verizon Corporate Services Group conducts substantial business throughout many states within the United States and acts as an agent for Verizon affiliates, including certain Defendants herein.

8.     On information and belief, Verizon Advanced Data, Inc. ("VADI") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia.   Upon information and belief, VADI conducts substantial business throughout many states within the United States, and acts as an agent for Verizon affiliates, including certain Defendants herein.

9.     On information and belief, Verizon Avenue Corp. ("Verizon Avenue") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 12901 Worldgate Drive, Herndon, Virginia.   Upon information and

B075

belief, Verizon Avenue conducts substantial business throughout many states within the United States and acts as the agent for Verizon affiliates, including certain Defendants herein.

10.     Upon information and belief, GTE Southwest Inc. d/b/a Verizon Southwest ("Verizon Southwest") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 600 Hidden Ridge, Irving, Texas (with a business address at 1095 Avenue of the Americas, New York, New York). Upon information and belief, Verizon Southwest conducts substantial business throughout many states within the United States.

11.     Upon information and belief, Verizon Delaware Inc. ("Verizon Delaware") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 901 Tatnall Street, Wilmington, Delaware. Upon information and belief, Verizon Delaware conducts substantial business throughout many states within the United States.

## JURISDICTION AND VENUE

12.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

13.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1400(b). Each Defendant is incorporated in this judicial district; has committed acts of infringement in this judicial district, which acts are continuing; and/or has already answered related claims of infringement in this judicial district.

- 4 -

## BACKGROUND

14.    On December 1, 1998, U.S. Patent No. 5,844,596 ("the '596 Patent") was duly and legally issued for an invention entitled "Two-way RF Communication at Points of Convergence of Wire Pairs from Separate Internal Telephone Networks," listing David D. Goodman as the inventor. Robert Domnitz was later duly and lawfully added as a co-inventor. A copy of the '596 patent is attached hereto as Exhibit A.

15.    On May 22, 2001, U.S. Patent No. 6,236,718 ("the '718 Patent") was duly and legally issued for an invention entitled "Video Transmission and Control System Utilizing Internal Telephone Lines," listing David D. Goodman as the inventor. Robert Domnitz was later duly and lawfully added as a co-inventor. A copy of the '718 Patent is attached hereto as Exhibit B.

16.    On June 5, 2001, U.S. Patent No. 6,243,446 ("the '446 Patent") was duly and legally issued for an invention entitled "Distributed Splitter for Data Transmission Over Twisted Pairs," listing David D. Goodman as the inventor. Robert Domnitz was later added duly and lawfully as a co-inventor. A copy of the '446 patent is attached hereto as Exhibit C.

17.    On April 1, 2003, U.S. Patent No. 6,542,585 ("the '585 Patent") was duly and legally issued for an invention entitled "Distributed Splitter For Data Transmission Over Twisted Wire Pairs," listing David D. Goodman as the inventor. Robert Domnitz was later added duly and lawfully as a co-inventor. A copy of the '585 Patent is attached hereto as Exhibit D.

18.    On November 29, 2005, U.S. Patent No. 6,970,537 ("the '537 Patent") was duly and legally issued for an invention entitled "Video Transmission and Control

- 5 -

System Utilizing Internal Telephone Lines," listing David D. Goodman as the inventor. Robert Domnitz was added duly and lawfully as a co-inventor. A copy of the '537 Patent is attached hereto as Exhibit E.

19.    Prior to June 30, 2003, Inline Connection Corporation ("Inline") was the owner of the entire right, title and interest in and to the '596, '718, '446, '585, and '537 Patents (the "Inline Patents"). On June 30, 2003, Inline entered into a "Bill of Sale and Assignment and Assumption Agreement" with Pie Squared under which Inline granted to Pie Squared a five percent interest in Inline's entire right, title and interest in and to the Inline Patents. Today, Inline and Pie Squared together are the owners of all right, title and interest in and to the Inline Patents. As owner of the Inline Patents, Pie Squared has standing under Article III of the U.S. Constitution to sue for acts of infringement.

20.    On March 4, 2004, BBTI, operating under its former name "Mercury Communications I, LLC", entered into agreement with Inline, through which BBTI became the exclusive licensee to, with a first right to sue for past, present, and future infringement of, the Inline Patents in the area of Digital Subscriber Line ("DSL") technology. As exclusive licensee to the Inline Patents in this area, BBTI has standing under Article III of the U.S. Constitution to sue for acts of infringement in this field of use.

21.    On April 6, 2005, Inline filed suit in the Eastern District of Virginia for infringement of the Inline Patents by Defendants, through their ongoing use, sale, and offer for sale of DSL Service. On December 5, 2005, the Eastern District of Virginia transferred Inline's claims against Defendants to the District of Delaware under 28 U.S.C. § 1404(a), which claims are now pending in Civil Action No. 05-866 (JJF) of this Court.

22.    On March 28, 2006, Defendants filed a "Motion to Compel Discovery Regarding Threshold Jurisdictional 'Ownership' Issue", by which Defendants seek discovery related to the transfer of any rights to the Inline Patents, apparently contending that the March 4, 2004 agreement between Inline and BBTI constitutes an assignment of the Inline Patents.

23.    On April 4, 2006, Defendants jointly answered Inline's complaint in Civil Action No. 05-866, and VIS and Verizon Delaware filed counterclaims against Plaintiffs for a declaratory judgment of non-infringement, invalidity, and unenforceability of the Inline Patents.  Plaintiffs have answered those counterclaims and have filed their own counterclaims for infringement of the Inline Patents in Civil Action No. 05-866 against Defendants.

24.    Plaintiffs believe that Inline, as owner of the Inline Patents, has standing to sue for acts of infringement in its own name and on its own behalf, and thus is a proper plaintiff standing alone.  However, Plaintiffs file this complaint to ensure that this Court hears its claims against Defendants for infringement of the Inline Patents, whether any court dismisses Inline's original complaint for lack of subject matter jurisdiction.

25.    Plaintiffs will seek consolidation of the action that arises from this complaint with Civil Action No. 05-866 at the appropriate time to further ensure that all proper parties with an interest in Defendants' ongoing acts of infringement of the Inline Patents are represented in a single action over the entirety of which there can be no doubt that this Court retains subject matter jurisdiction.

- 7 -

## COUNT ONE

## INFRINGEMENT OF THE '596 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

26.    Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 24 above.

27.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '596 Patent without license.

28.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '596 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

29.    On information and belief, Defendants have had notice of the '596 Patent. Defendants' infringement of the '596 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

30.    As a direct and proximate consequence of the acts and practices of Defendants, Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

31.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Plaintiffs for which there is no

- 8 -

adequate remedy at law, and for which Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

**COUNT TWO**
**INFRINGEMENT OF THE '718 PATENT**
**(35 U.S.C. §§ 271 ET SEQ.)**

32.     Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 24 above.

33.     Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '718 Patent without license.

34.     By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '718 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

35.     On information and belief, Defendants have had notice of the '718 Patent. Defendants' infringement of the '718 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

36.     As a direct and proximate consequence of the acts and practices of Defendants, Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

37.     As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are

- 9 -

enjoined by the Court, will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

**COUNT THREE**

**INFRINGEMENT OF THE '446 PATENT**
**(35 U.S.C. §§ 271 ET SEQ.)**

38.     Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 24 above.

39.     Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '446 Patent without license.

40.     By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '446 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

41.     On information and belief, Defendants have had notice of the '446 Patent. Defendants' infringement of the '446 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

42.     As a direct and proximate consequence of the acts and practices of Defendants, Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

- 10 -

43. As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## COUNT FOUR
### INFRINGEMENT OF THE '585 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

44. Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 24 above.

45. Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '585 Patent without license.

46. By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '585 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

47. On information and belief, Defendants have had notice of the '585 Patent. Defendants' infringement of the '585 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

48. As a direct and proximate consequence of the acts and practices of Defendants, Plaintiffs have been, are being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and have suffered, are

- 11 -

suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

49.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## COUNT FIVE
### INFRINGEMENT OF THE '537 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

50.    Plaintiffs repeat and incorporate herein the entirety of the allegations contained in paragraphs 1 through 24 above.

51.    Defendants have used, sold and/or offered to sell and, unless enjoined, will continue to use, sell and/or offer to sell, DSL Service that infringes one or more claims of the '537 Patent without license.

52.    By using, selling and/or offering for sale DSL Service, Defendants have directly and/or indirectly infringed, and, unless enjoined, will continue to directly and/or indirectly infringe, one or more claims of the '537 Patent under 35 U.S.C. § 271 (a), (b) (c), and/or (f), literally and/or under the doctrine of equivalents.

53.    On information and belief, Defendants have had notice of the '537 Patent. Defendants' infringement of the '537 Patent under 35 U.S.C. § 271(a), (b), (c), and/or (f) has been and continues to be willful and deliberate.

54.    As a direct and proximate consequence of the acts and practices of Defendants, Plaintiffs have been, are being, and, unless such acts and practices are enjoined by

- 12 -

the Court, will continue to be injured in its business and property rights, and have suffered, are suffering and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284.

55.    As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to permanent injunctive relief under 35 U.S.C. § 283.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial for all issues deemed to be triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the entry of a judgment from this Court:

a.    Declaring that the '596, '446, '718, '585, and '537 Patents were duly and legally issued, and are valid and enforceable;

b.    Declaring that each Defendant has directly and/or indirectly infringed one or more claims of each of the '596, '446, '718, '585, and '537 Patents;

c.    Awarding Plaintiffs damages including a reasonable royalty in accordance with 35 U.S.C. § 284, including damages incurred after those proven at trial, for which Plaintiffs request a post-verdict accounting;

d.    Declaring that Defendants have willfully infringed one or more claims of each of the '596, '446, '718, '585, and '537 Patents and awarding Plaintiffs treble damages therefor;

- 13 -

     e.     Deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Plaintiffs to an award of its reasonable attorneys' fees, expenses, and costs in this action;

     f.     Enjoining Defendants, and their respective officers, agents, servants, representatives, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement under 35 U.S.C. § 271 of any one or more claims of each of the '596, '446, '718, '585, and '537 Patents, pursuant to 35 U.S.C. § 283;

     g.     Awarding Plaintiffs its costs in connection with this action; and

     h.     Awarding Plaintiffs such other and further relief as this Court deems just and proper.

OF COUNSEL:

Ralph A. Mittelberger
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
202.912.2000

Alexander L. Brainerd
Michael K. Plimack
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
415.772.6000

Robert C. Bertin
C. Joël Van Over
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
202.424.7581

Dated: May 3, 2006
518675

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiffs Broadband Technology
Innovations, LLC and Pie Squared LLC*

- 14 -