# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Inline Connection Corporation,

Plaintiff,

v.

Verizon Internet Services, Inc., et al.,

Defendants.

Civil Action No.  05-866 (JJF)

**REDACTED VERSION**
**SEPTEMBER 7, 2006**

## VERIZON DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DISMISSING THIS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile:  202.719.7049

Dated: September 1, 2006

Jeffrey B. Bove (#998)
James D. Heisman (#2746)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE  19801
Telephone:  302.658.9141
Facsimile:   302.658-5614

Counsel for Verizon Defendants

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

I.    Inline's Myopic Focus On The 1995 *Abbott* Opinion  Ignores Ten Years
      Of Subsequent Federal Circuit Decisions ......................................................... 3

II.   The Draft Negotiating Documents Confirm That Mercury-BBTI
      Wanted And Obtained A Transfer Of "All Substantial Rights" Under
      The DSL Patents ............................................................................................. 6

III.  The Broad Rights Transferred To Mercury-BBTI Under The Exclusive
      License Agreement, Particularly The Exclusive And Unrestricted Right
      To Grant Sublicenses, Are Dispositive ............................................................ 9

IV.   All Of Inline's Alleged "Retained Rights" Are Either Factually
      Incorrect Or Legally Insufficient .................................................................. 10

V.    Dismissal With Prejudice Is Appropriate In This Case ................................... 16

CONCLUSION ............................................................................................................. 18

i

## INTRODUCTION

Contrary to Inline's assertion (Br. 2 n.2), the issues of constitutional standing and subject matter jurisdiction now at issue have a factual component. Indeed, the law is clear that the burden of proof is on Inline to prove that it owned the patents-in-suit on April 6, 2005 when Mercury-BBTI's counsel first filed suit in Inline's name, and that it had not previously transferred "all substantial rights" under the DSL patents to Mercury-BBTI.

Because Inline bears the burden of proof, it cannot rely on mere allegations and assertions by counsel. Factual matters that are not controverted by proper evidentiary submissions are deemed established. *See* Rule 56(e), Fed. R. Civ. P. (party may not rest upon mere allegations and denials); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment appropriate where party with burden of proof fails to come forward with factual evidence).

Inline's brief does not and cannot contest the broad transfer of patent rights from Inline to Mercury-BBTI prior to April 2005. That transfer included:

REDACTED

. *See infra,*

pp. 9-10. Under controlling Federal Circuit precedent, this constitutes a transfer of "all substantial rights" under the patents, thereby depriving Inline of constitutional standing necessary for the exercise of federal court subject matter jurisdiction. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000).

Inline's attempt to avoid *Speedplay* and the Federal Circuit's recent *Aspex* decision[1] by relying almost exclusively on the older *Abbott* opinion[2] is unavailing. More recent Federal Circuit decisions, including opinions from Judge Bryson who authored both *Abbott* and *Speedplay*, have carefully limited *Abbott* to its unique facts where the licensor retained broad "make, use and sell" rights, explicitly limited the licensee's rights to prosecute and settle suits, and had an express contractual right to bring, control and settle lawsuits in its own name. None of these facts are present here. *See, infra*, pp. 3-6.

Nor can Inline stave off summary judgment based on conclusory, *post hoc* assertions of "subjective" intent. The terms of the March 4, 2004 Exclusive License Agreement speak for themselves and are controlling. *Speedplay*, 211 F.3d at 1250 (standing issue must be determined based on "the substance of what was granted" by the pertinent written instrument). If anything, the subsequent contemporaneous documents confirm that the parties understood that Inline had "assigned" all substantial rights to Mercury-BBTI before this suit was filed. *See infra*, pp. 6-8.

Likewise, Inline's alleged retention of nine so-called "rights" under the Exclusive License Agreement are all without merit. In each case, the alleged "retained right" is either factually unsupported, illusory, and/or insufficient as a matter of law. *See infra* pp. 10-15.

Consequently, because Inline had no constitutional standing when suit was filed in its name, the federal courts never obtained proper subject matter jurisdiction over this action and this Court has "no choice" but to dismiss. *E.g., Pinpoint, Inc. v. Amazon.Com*,

---

[1]   *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006).

[2]   *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995).

*Inc.,* 347 F. Supp. 2d 579, 581, 586 (N.D. Ill. 2004). In order to cut through the multiplicity of suits that have been filed against the Verizon defendants on the same patents, and as an appropriate sanction for false and misleading complaint allegations, this action should be dismissed with prejudice in favor of the newly-filed May 3, 2006 action (Civil Action No. 06-291(JJF)) brought by BBTI and Pie Squared alone – who are the only parties that have constitutional standing to sue. *See infra,* pp. 16-17.

I.     **Inline's Myopic Focus On The 1995 *Abbott* Opinion Ignores Ten Years Of Subsequent Federal Circuit Decisions.**

Inline relies almost exclusively on Judge Bryson's 1995 opinion in *Abbott Laboratories v. Diamedix Corp.,* 47 F.3d 1128 (Fed. Cir. 1995). Significantly, Judge Bryson also wrote the subsequent opinion in *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245 (Fed. Cir. 2000), in which he carefully distinguished *Abbott* and held that virtually identical rights to those transferred in the March 4, 2004 "Exclusive License Agreement" constitute the transfer of "all substantial rights."

The Abbott licensees, unlike here, the licensee, did not receive a virtually unlimited grant of all statutory rights to make, use and sell the accused products and services. *See* Defendants' Opening Brief, pp. 18-20. Rather, the licensor, Diamedix, had previously granted eight non-exclusive patent licenses to various third parties, and expressly retained: (1) the right to make and use, for Diamedix's own benefit, products embodying the claimed inventions; and (2) the right to sell such products (a) to end users, (b) to pre-existing customers, and (c) to all eight of its pre-existing licensees. 47 F.3d at 1129, 1132. Thus, the "make, use and sell" rights retained by Diamedix were broadly comparable to those granted to Abbott.

3

With respect to the right to sue, the rights granted by Diamedix to Abbott were

<u>expressly limited</u>:

> If any patent included in PATENT RIGHTS is infringed, Abbott shall
> have the right, but not the obligation, to bring suit to suppress such
> infringement against any unlicensed third party. However, if such
> infringement continues and DIAMEDIX requests ABBOTT in writing to
> bring such suit, and ABBOTT declines to bring such suit against such
> infringer within six (6) months of such request, <u>DIAMEDIX shall have
> the right to bring such suit</u>. The party who brings suit <u>shall control the
> prosecution and any settlements thereof</u> provided, however, <u>Abbott shall
> not prejudice or impair the PATENT RIGHTS in connection with such
> prosecution or settlements</u> and shall not enter into any settlement which
> would result in DIAMEDIX receiving less than one percent (1%) of the
> net sales of the third party's infringing products. The other party shall
> be entitled to be represented therein by counsel of its own selection at its
> own expense.

*Id.* at 1129 (emphasis added).        , Diamedix (a) did <u>not</u> give Abbott the right to

sue in Diamedix's name; (b) retained an <u>express contractual right</u> to sue in its own name

if Abbott did not; (c) explicitly <u>limited</u> Abbott's rights to prosecute or settle a suit in ways

that might prejudice the patents; and (d) retained the <u>express contractual right</u> to control

the prosecution and settlement of any lawsuit that Diamedix brought in its own name.

In his subsequent *Speedplay* decision, Judge Bryson distinguished *Abbott*, noting

that Diamedix – unlike Inline – had retained significant rights "to make, use and sell

products embodying the patented invention." 211 F.3d at 1251. With respect to the right

to sue, he distinguished *Abbott* because: "Even if the licensee [Abbott] brought suit, it

could not manage the action in a manner that would compromise [Diamedix] from

participating in the suit." *Id.*

REDACTED

4

In fact, :

REDACTED

<span>|</span> *Id.* at 1251 ("Speedplay can render that right

nugatory by granting the alleged infringer a royalty-fee sublicense ... Speedplay thus

controls enforcement of the '778 patent for all practical purposes. Even though [the

licensors] retained the right to sue, that right would not hinder Speedplay's enjoyment of

the patent rights in any meaningful way.").

The Federal Circuit has reconfirmed Judge Bryson's *Speedplay* analysis in

subsequent decisions. In its recent 2006 *Aspex* opinion, for example, the Federal Circuit

specifically noted that the following three rights –        REDACTED

REDACTED      – "strongly favor a finding of an assignment, not a license":

(1) the exclusive right to make, use and sell products covered by the patent; (2) the right

to sue for infringement of the patent; and (3) a virtually unrestricted authority to

sublicense its rights under the agreement. 434 F.3d at 1342. Likewise, in *Intellectual*

*Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1342-

43 (Fed. Cir. 2001), the Federal Circuit cited Judge Bryson's *Speedplay* analysis with

approval and limited *Abbott* based on Diamedix's express retention of rights to make, use

and sell, to sue in its own name, to prevent Abbott from assigning rights to others, and to

participate in any suit brought by Abbott.

REDACTED

5

In sum, subsequent Federal Circuit case law has limited *Abbott* to its specific facts
in which the licensor retained broad "make, use and sell" rights, did not grant the licensee
unfettered sublicensing rights and expressly retained the right to sue in its own name and
to control the prosecution and settlement of any such lawsuit. None of these facts apply
here. Rather,

REDACTED

Consequently, and as a matter of law, Inline had no constitutional standing on
April 6, 2005 when Mercury-BBTI's counsel filed suit in Inline's name.[3]

## II. The Draft Negotiating Documents Confirm That Mercury-BBTI Wanted And Obtained A Transfer Of "All Substantial Rights" Under The DSL Patents.

The interpretation of the March 4, 2004 Exclusive License Agreement is a legal
issue that must be determined based on "the substance of what was granted."
*Speedplay*, 211 F.3d at 1250. Assertions regarding the parties alleged "subjective" intent
-- years after the fact -- cannot override the express terms of that agreement and
controlling Federal Circuit precedent construing similar provisions. Moreover, to the
extent extrinsic contemporaneous documents are considered, they fully confirm that the
parties understood that the effect of the Exclusive License Agreement was in fact an
"Assignment Agreement."

---

[3]    Inline admits REDACTED    In fact, this action was filed by
Paperboy/BBTI's regular patent counsel at the Heller law firm and the only engagement letter
identified (but not produced) is solely between the Heller law firm and BBTI (*see* Defendants'
Opening Br. 14, n.13). Inline has the burden of proof and cannot make conclusory assertions, yet
simultaneously withhold the underlying documents.

Thus,

REDACTED

REDACTED

REDACTED

Under Federal Circuit

precedent, it is those terms and conditions – not the label assigned to the document, nor

the parties positions during prior negotiations – that determine whether Inline transferred

---

[4]    C004-14 (February 23, 2004 "MARK-UP" of draft license agreement by Inline's attorney Mr. Peisner).

"all substantial rights" under the patents to Mercury-BBTI. *E.g.*, *Aspex*, 434 F.3d at 1340

(citing *Waterman v. Mackenzie*, 138 U.S. 232, 256 (1891): "Whether a transfer of a

particular right or interest under a patent is an assignment or a license does not depend

upon the name by which it calls itself, but upon the legal effect of its provisions").[5]

    To the extent characterizations and labels have any significance, the parties and

their counsel expressly acknowledged that the Exclusive License Agreement was, in fact,

an "assignment." Thus,

REDACTED

REDACTED

---

[5]    Inline's discussion of draft language from one intermediate version of this agreement
(Br. 9-10) is both irrelevant and misleading.

REDACTED

*Eloxex Phase II Power Management Litigation*, 2002 U.S. Dist. LEXIS 2591, at *16-17 (D. Del.
Feb. 20, 2002) (licensor "assigned substantially all rights" in view of broad license grant,
unrestricted right to sublicense, and the licensee's "right to prosecute and settle suits on behalf of
itself or [the licensor]"). (Ex. A).

**III. The Broad Rights Transferred To Mercury-BBTI Under The Exclusive License Agreement, Particularly The Exclusive And Unrestricted Right To Grant Sublicenses, Are Dispositive.**

Inline's opposition brief does not and cannot contest that the transfer of DSL patent rights to Mercury-BBTI under the March 4, 2004 Exclusive License Agreement included:

REDACTED

*See* Defendants' Opening Brief, pp. 18-20 and Attachments A and B.  These rights,

REDACTED

REDACTED

Indeed, the dispositive nature of the broad license grant to Mercury-BBTI is clearly demonstrated by examining the situation that existed on April 6, 2005, when Mercury-

BBTI's counsel filed the present lawsuit in Inline's name in the Eastern District of

Virginia. Once the suit was brought,                                    REDACTED

                                          Rather,


                    REDACTED



Federal courts repeatedly emphasize the strong public policy favoring settlement.

*E.g., Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.

Cir. 1998)( "The policy favoring settlement is manifest in, among other places, the

Federal Rules of Evidence."); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 477 (Fed.

Cir. 1991) (noting the "strong public interest" in settlements). Courts simply would be

overwhelmed if litigants could not settle. Indeed, approximately 95% of patent cases

settle before trial.              REDACTED


## IV.  All Of Inline's Alleged "Retained Rights" Are Either Factually Incorrect Or Legally Insufficient.

Inline's opposition brief (pp. 1-2, 14-18) asserts that Inline retained nine specific

"rights" which are "more than sufficient to prevent any finding of assignment." In each

instance, however, the alleged "retained right" is either factually unsupported, illusory or

insufficient as a matter of law.

     1.

                    REDACTED

REDACTED

*See supra*, pp. 5, 9;

*Speedplay*, 211 F. 3d at 1251 (licensee can negate right to sue by granting alleged

infringer a royalty-free sublicense); *Intellectual Prop. Dev.*, 248 F.3d at 1343-44 (where

licensor retained no supervisory or veto power over exclusive licensee's grant of

sublicenses, licensor's retained right to participate in infringement lawsuits is

insignificant).

    2.

REDACTED

*See* ¶7.3 (Attachment B to

Defendants' Opening brief).

REDACTED

*See Abbott*, 47 F.3d

at 1129 (pertinent contractual language reproduced *supra*, p. 4).

    3.

REDACTED

As the party invoking federal jurisdiction,

11

Inline has the burden of proof to establish both that it retained such rights on

April 6, 2005 when the present action was filed and that such rights are "substantial."

Inline has failed to do either.

REDACTED

In any event, Inline has not established

REDACTED

Indeed, Paperboy/Pie Squared have

already invested many millions of dollars in litigating the DSL patents against AOL and

EarthLink (*see* A243).  Inline, however, has failed to present any information at all

---

6

7

REDACTED

12

concerning the alleged value, if any,               REDACTED

4.

REDACTED

E.g., *Vaupel Textilmaschien KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1990) ("the right to receive infringement damages was merely a means of compensation under the agreement; this was not inconsistent with an assignment"); *Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 U.S. Dist. LEXIS 7367, at ¶13 (D. Del. Mar. 18, 2005) (licensor does not limit transfer of all substantial rights by retaining a portion of royalties or settlement). (Ex. B).

5.     **The rights (and responsibilities) under pre-existing licenses.** The fact that Inline retained certain rights and obligations under pre-existing licenses is completely irrelevant. As a matter of law, any assignment of patent rights is necessarily subject to all previously issued license rights. A party simply cannot assign or transfer rights that it no longer has.

Inline's "pre-existing licenses" argument is clearly refuted by

REDACTED

13

the existence of these pre-existing licenses did not detract from the explicit "<u>assignment</u>"

of an undivided property interest in the patents-in-suit to Pie Squared.[8]

6.

REDACTED

7.

REDACTED

*Vaupel*, 944 F.2d at 875

(termination provisions in agreement based on "condition subsequent" were "entirely

consistent with an assignment"); *Speedplay*, 211 F.3d at 1252 (a licensor does not retain a

substantial right in a patent merely by reserving a reversion in the patent contingent on

future events); *Aspex*, 434 F.3d at 1343 (discussing case law concerning contingent

reversionary interests); *see Syngenta Seeds*, at ¶12 (unexercised option to terminate the

license in the future "does not amount to a substantial right").

    In addition, as a factual matter,         REDACTED        is purely illusory and

of no real world significance.  *See* Attachment D to Defendants' Opening Brief.

REDACTED

---
[8]                        REDACTED

14

Moreover,

REDACTED

Thus, not only has Inline failed to carry its burden of proof on the factual prerequisite, but

REDACTED

8.

REDACTED

It has no real world significance, nor any factual support.

9.

REDACTED

REDACTED

---

[9]     For some reason, Inline repeats this argument – *in haec verba* – on page 16 and then again on pages 17-18 of its brief. Mere repetition, however, does not make it valid.

[10]     Inline's further assertion that it retained technical "title" to the patents is also insufficient as a matter of law. *E.g., Syngenta Seeds,* at ¶15 ("retention of title" does not constitute a "substantial right").

## V.   Dismissal With Prejudice Is Appropriate In This Case.

Contrary to Inline's suggestion (Br. 21-22), there is no question that Verizon has been subject to multiple lawsuits brought on the same patents concerning the exact same accused DSL products and services. Indeed, there are now three separate pending cases – one in the Eastern District of Virginia and two separate actions in this Court. The fundamental purpose of standing doctrine in patent infringement lawsuits is to prevent precisely this sort of multiplicity of suits. *E.g.*, *Speedplay*, 211 F.3d at 1253.

The newly-filed May 3, 2006 action by Mercury-BBTI and Pie Squared (C.A. No. 06-291) is not merely "belts and suspenders," as Inline would suggest (Br. 22). To the contrary, it is a separate action brought by the *de facto* owners of the patents-in-suit and the only lawsuit over which this Court has proper subject matter jurisdiction.[11]

Similarly, Inline's claim that

REDACTED

. when they filed the complaint.

REDACTED

(A023).

Moreover, Federal Circuit law is clear that: "an action for infringement must join as plaintiffs all co-owners." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456,

---

[11]   A true "belts and suspenders" action would have named Mercury-BBTI, Pie Squared and Inline. Instead, the new action was filed solely by Mercury-BBTI and Pie Squared and constitutes a judicial admission that these two parties – and only these two parties – have the requisite constitutional standing to sue.

1467 (Fed. Cir. 1998).[12] This "settled principle" is well known to all experienced patent
litigators. Mercury-BBTI and its counsel, however, could not afford to reveal Pie
Squared's ownership interest, since Pie Squared was a <u>Delaware</u> corporation and any
disclosure of its participation would inevitably reveal that Mercury-BBTI – also a
<u>Delaware</u> corporation – holds all substantial patent rights and has <u>sole and exclusive</u>
control over this litigation. Instead, Mercury-BBTI's counsel falsely alleged that "Inline
is the owner of all right, title and interest" in the patents-in-suit in an unsuccessful
attempt to stave off transfer from the Eastern District of Virginia to Delaware.

By dismissing the present action with prejudice, and allowing the newly-filed
Mercury-BBTI/Pie Squared action to proceed, the Court can eliminate the current
multiplicity of pending lawsuits, avoid future procedural dispute,[13] and properly exercise
its subject matter jurisdiction as required under Federal Circuit precedent.

---

[12]    That Inline ~~REDACTED~~ As the
Supreme Court's *Waterman* decision contemplates, the transfer only need be a "part or share."
This result was subsequently confirmed in *Willingham v. Lawton*, 555 F.2d 1340, 1344-45 (6th
Cir. 1977)(ownership structure was 75% vs. 25%). Although *Willingham* is a Sixth Circuit case,
it has been discussed and approved by the major Federal Circuit cases on the issue. *E.g.*, *Ethicon*,
135 F.3d at 1468; *Schering Corp. v. Zeneca, Inc.*, 104 F.3d 341, 344-45 (Fed. Cir. 1997).

[13]    Even were the Court to conclude that Inline has carried its burden of proof regarding
constitutional standing – which it has not – this action is still invalid under *Ethicon* because of
Inline's failure to join Pie Squared as co-owner. Pie Squared did not assert any claim in this
action until the May 4, 2006 filing of counterclaims by Mercury-BBTI and Pie Squared. That
belated appearance by the real owners of the patents-in-suit does not relate back to the original
complaint's filing date. *See PE Corp. v. Affymetrix, Inc.*, 2001 U.S. Dist. LEXIS 15792 (D. Del.
Sept. 27, 2001). (Ex. C).

## CONCLUSION

For the foregoing reasons, the Verizon defendants' motion for summary judgment should be granted and the present action should be dismissed with prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

OF COUNSEL:                                 By: /s/ Jeffrey B. Bove_____
John B. Wyss                                      Jeffrey B. Bove (#998)
Kevin P. Anderson                                 James D. Heisman (#2746)
WILEY REIN & FIELDING LLP                         CONNOLLY BOVE LODGE & HUTZ LLP
1776 K Street NW                                  The Nemours Building
Washington, DC 20006                              1007 North Orange Street, Suite 878
Telephone: 202.719.7000                           Wilmington, DE 19801
Facsimile: 202.719.7049                           Telephone: 302.658.9141
                                                  Facsimile: 302.658.5614
Dated: September 1, 2006

**REDACTED VERSION**                              Counsel for Verizon Defendants
**SEPTEMBER 7, 2006**

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on the 1st day of September, 2006 a true copy of the *Verizon Defendants' Reply Brief In Support Of Motion For Summary Judgment Dismissing This Action For Lack Of Subject Matter Jurisdiction* was sent to plaintiff's counsel, in the manner indicated, upon:

Michael K. Plimack, Esq.            (Served electronically & by overnight delivery)
Alexander L. Brainerd, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104
Alexander.Brainerd@hellerehrman.com
Michael.Plimack@hellerehrman.com


C. Joël Van Over, Esq.            (Served electronically & by overnight delivery)
BINGHAM MCCUTCHEN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007-5116
joel.vanover@bingham.com


Julia Heaney, Esq.            (Served by hand delivery)
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
Post Office Box 1347
Wilmington, Delaware 19899-1347
jheaney@mnat.com


**REDACTED VERSION**
**SEPTEMBER 7, 2006**

_____
James D. Heisman (#2746)