# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INLINE CONNECTION CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON INTERNET SERVICES, INC., et al.,<br><br>    Defendants. | Civil Action No. 05-866-JJF<br>**CONSOLIDATED** |
| BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>VERIZON INTERNET SERVICES, INC. et al.,<br><br>    Defendants. | Civil Action No. 06-291-JJF |

**UNITED ACCESS' REPLY SUPPORTING ITS MOTION TO SUBSTITUTE,
MOTION TO REOPEN, AND MOTION FOR PRE-TRIAL COORDINATION**

In its Response, Verizon primarily argues that (i) the *Verizon* cases are "formally" closed, despite the lack of a final order or judgment, and (ii) the Court should dismiss the lawsuits as a matter of equity. But the instant cases are only administratively closed, equity supports reopening the cases (especially in light of Verizon's unclean hands), and Verizon's other arguments are meritless. For these reasons, and the reasons in United Access' original motion, the Court should grant United Access' requested relief.

I. The *Verizon* Cases Remain Administratively Closed

The *WRS* and *Penn West* cases show that the Third Circuit requires a district court to enter an order and judgment to finally close a case:

> The potential for uncertainty is significant in cases involving administrative closings with built-in timetables for dismissal **without the entry of an order of dismissal**. . . . Parties need a definitive way of knowing if and when their case has been dismissed. Accordingly, we hold that although an administrative closure may mature into a final order of dismissal, **the district court** (or bankruptcy court) **must enter an order so providing. Without such an entry, the case simply remains administratively closed.**

*WRS Inc. v. Plaza Entm't Inc.*, 402 F.3d 424, 429 (3d Cir. 2005) (emphasis added); *see Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 128 & n.10 (3d Cir. 2004) (requiring a separate judgment under Rules 54 and 58). Verizon claims that the Court "formally closed" the cases on August 22, 2013, citing Exhibit H to the Wyss Declaration:

> These cases were initially administratively closed on August 6, 2009 and subsequently were formally closed on August 22, 2013 pursuant to the built-in condition and timetable set forth in Judge Farnan's prior August 6, 2009 Order (DI 159). All parties were officially notified of final closure through their counsel of record.[2] Shortly thereafter, the Court confirmed final

> [2] *See* Exhibit H to the accompanying November 2, 2015 Declaration of John B. Wyss (hereinafter "Wyss Dec.").

Resp. at 3. Exhibit H, however, is not an order formally closing the case, as required by *WRS*, and is not a judgment, as required by *Penn West*. Instead, Exhibit H shows that the Clerk's office entered a "remark" removing the ADMINCLOSING flag from the case:

> Docket Text:
> Remark: Clerk's office removed ADMINCLOSING flag due to closing of CA 02-272 on 9/5/2012 (rbe)

Wyss Dec., Ex. H. *WRS* and *Penn West* are clear: to finally close a case, the Court must enter a separate order and judgment.[1] The Court did not do so here. As a result, "the case[s] simply remain[] administratively closed." *See WRS*, 402 F.3d at 429.

Further, as shown in the excerpt above, Verizon claims that Judge Farnan's Order included a "built-in condition and timetable." Resp. at 3. This is incorrect—the Order does not include a "built-in timetable under which the administrative closing may automatically expire," as suggested[2] by *Penn West*, 371 F.3d at 148. The entire text of the Order appears on the next page:

> **ORDER**
>
> WHEREAS, the above-captioned action has been stayed (D.I. 246) pending resolution of Civil Action No. 02-272-MPT;
>
> NOW THEREFORE, IT IS HEREBY ORDERED that:
>
> 1. The above-captioned action is **ADMINISTRATIVELY CLOSED**.
>
> 2. Upon resolution of Civil Action No. 02-272, the parties shall notify the Court in writing as to how they wish to proceed.

ECF No. 159. Judge Farnan did not enter a final order dismissing the case or a final judgment. Under Third Circuit law, the case remains administratively closed. As contemplated by *Penn*

---

[1] *WRS* supported its analysis with a Second Circuit case: "[The Second Circuit held] that even 'self-executing orders' require the court issuing them to enter a final judgment." *WRS*, 402 F.3d at 429 (citing *Bogaerts v. Shapiro*, 316 F.3d 113, 118 (2d Cir. 2003)). *Bogaerts* also advised defendants to seek a final judgment, which Verizon failed to do: "In addition, PNL, for whom finality of the decision was perhaps of greatest importance, could have easily have asked the court on August 17, 2000, to enter a final (Rule 58) judgment." 316 F.3d at 119.

[2] Although *Penn West* suggests, in dicta, that an automatically executing order might formally close a case, the Third Circuit required a separate order in *WRS*. Compare *Penn W.*, 371 F.3d at 128, *with WRS*, 402 F.3d at 429. Further, *Penn West* requires a separate judgment to finally close a case. 371 F.3d at 128 n.10 (citing *United States v. Indrelunas*, 411 U.S. 216, 221-22 (1973)) (the separate-document requirement must be applied "mechanically")).

*West*, United Access now "returns to the [district court] to re-open [the] administratively closed cases." 371 F.3d at 129.[3]

## II. Equity Supports Reopening the Cases

Verizon claims that the Court should refuse to reopen the cases as a matter of equity. Verizon cites a number of equitable principles in shotgun fashion, but fails to apply any single principle to the facts of this case or cite any authority refusing to reopen a case in similar circumstances. *See* Resp. at 14-15 ("UAT is barred from reopening . . . based on . . . equitable principles of laches, acquiescence, waiver, unclean hands, or judicial estoppel."). If Verizon truly believed that a particular equitable principle supported denying the motion, Verizon should have at least identified the elements of that principle and analyzed its application to the present case. Verizon failed to do so.

Ideally, United Access and Verizon would have notified the Court of *EarthLink*'s resolution (and provided a plan on how to proceed) in early 2013, after United Access raised substitution with Verizon. But between discussions with Verizon and its ultimate refusal to consent to the substitution, the dismissal of the *CenturyTel* matter, the ensuing Federal Circuit appeal, and United Access' change of counsel, neither United Access nor Verizon alerted the Court to *EarthLink*'s resolution, nor provided a plan on how to proceed.

Equity nevertheless supports United Access' motion. Verizon is not prejudiced by the parties' failure to alert the Court in 2013 of how they wished to proceed—United Access' patents expired in 2009, so the parties' failure to alert the Court sooner did not extend the period of Ver-

---

[3] Verizon also claims an "agreement" that the cases are finally closed. *See* Resp. at 3 ("[W]ith the affirmative acquiescence and agreement of all parties . . ."). Verizon points to no such agreement, nor could such agreement satisfy *WRS* and *Penn West*. Verizon also does not attempt to explain how retrieving sealed documents satisfies *WRS* and *Penn West*. To prevail, Verizon must point to a final order and a judgment. Verizon cannot do so.

izon's infringement. Conversely, if the Court denies United Access' motion, it would effectively insulate Verizon from its years of patent infringement—if United Access were to refile the lawsuit tomorrow, United Access likely could not seek patent damages resulting from Verizon's infringement through 2009, due to 35 U.S.C. § 286 ("no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint"). *Cf. WRS*, 402 F.3d at 430 n.10 (in balancing the equities, a court may consider "the unlikelihood that [a litigant] would have knowingly forfeited [a multi-million-dollar] claim").

Verizon represents that United Access never told Verizon that the *EarthLink* case had concluded. Resp. at 9. ("UAT's counsel . . . contacted counsel for the Verizon Defendants . . . . he never revealed that [*EarthLink*] had been terminated almost six months prior"). This is not true. On February 20, 2013, United Access notified Verizon that the *EarthLink* case had concluded in an email to Verizon's Delaware counsel, Jeffrey Bove:

> Mr. Bove,
>
> I write as a follow-up to our call earlier today. We represent United Access Technologies, LLC, which currently owns the patents-in-suit in the case styled Inline Connection Corporation et al. v. Verizon Internet Services Inc. . . . That case was stayed pending the outcome of C.A. No. 02-272-MPT (the "EarthLink case"). **Since the EarthLink case has finally resolved**, we would like to discuss entering a stipulation to substitute United Access Technologies, LLC as the sole plaintiff in this case while keeping in place the current stay. To that end, could you please forward me the contact information from Verizon's counsel in this matter?

Olejko Dec. Ex. F. (emphasis added). Mr. Bove promptly forwarded the email to John Wyss, Verizon's lead counsel. *See id*. A second email from United Access' counsel (Daniel Olejko) to Mr. Wyss, later that same day, attached the following draft stipulation,[4] which stated that the *EarthLink* case ended six months prior:

---

[4] Mr. Wyss admits that he received a draft stipulation on February 20, 2013. Wyss Dec. ¶ 3.

> **STIPULATION TO SUBSTITUTE
> PLAINTIFF UNITED ACCESS TECHNOLOGIES, LLC**
>
> WHEREAS, on August 6, 2009, the Court stayed this case pending the resolution of Civil Action No. 02-272-MPT (the "EarthLink action") and ordered the parties to notify the Court in writing as to how they wish to proceed upon resolution of the EarthLink action;

\* \* \*

> ==WHEREAS the district court entered final judgment in the EarthLink action on September 5, 2012;==

Olejko Dec. Ex. G. Verizon thus knew, by February 2013, that *EarthLink* had concluded.

Verizon seeks equity from the Court. But Verizon claimed in its briefing, repeatedly, that Verizon did not know that the *EarthLink* case had concluded—statements that are demonstrably false in light of the emails referenced above. *Compare* Resp. at 9 ("UAT's counsel . . . contacted counsel for the Verizon Defendants . . . . **he never revealed that [*EarthLink*] had been terminated**".); *id.* at 14 ("UAT's counsel **kept the Verizon Defendants' counsel in the dark regarding final termination [of *EarthLink*]**"); *id.* at 2 ("The record clearly shows that UAT . . . **failed to tell the Verizon Defendants about the termination [of *EarthLink*]**"); *id.* at 4, 5, 11 (three other similar statements); *and* Wyss Dec. ¶ 4; *with* Olejko Ex. F (email from United Access to Verizon stating "**the EarthLink case has finally resolved**"); Olejko Ex. G (draft stipulation sent to Verizon stating "**the district court entered final judgment in the EarthLink action on September 5, 2012**") (emphases added throughout). The Court has broad discretion to refuse equity to those with unclean hands. *Monsanto Co. v. Rohm & Hass Co.*, 456 F.2d 592, 598 (3d Cir. 1972) ("[W]hile equity does not demand that its suitors shall have led blameless lives . . . it does require that they shall have acted fairly and without fraud or deceit as to the controversy at is-

sue."); *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959) ("The clean hands maxim gives wide sweep to the equity court's exercise of discretion in refusing to aid the unclean litigant."). In light of Verizon's misrepresentations, the Court should exercise its discretion to deny Verizon's recourse to equity. *See Monsanto*, 456 F.2d at 598.

Further, Verizon ignores that Judge Farnan's Order puts the onus on *all* parties (including Verizon) to update the Court about the status of the *EarthLink* case (a matter of public record) and provide a plan on how to proceed. ECF No. 159. Verizon thus shares the blame—all parties are responsible for not providing Judge Farnan with a plan on how to proceed at the close of the *EarthLink* matter. Verizon should not benefit from its own inaction.

In sum, accommodating the parties' failure to provide a going-forward plan to the Court in 2013 does not materially prejudice Verizon, while denying United Access' motion would severely prejudice United Access. A balance of the equities thus supports reopening the cases, especially in light of (i) Verizon's unclean hands and (ii) Verizon's independent duty to provide a plan on how to proceed after the *EarthLink* matter had concluded.

### III. Verizon's Other Arguments Fail

United Access briefly addresses Verizon's remaining arguments below.

**Transfer of the Patents.** Verizon essentially argues that <u>no one</u> can reopen the instant cases because Plaintiffs transferred their interests in the patents during the pendency of the litigation. Resp. at 13 ("Inline, BBTI, and Pie Squared divested themselves of standing in May 2010 and this Court no longer has subject matter jurisdiction over their claims."). Although Verizon emphasizes delay, Verizon argues that any period of time when the named Plaintiffs do not own the patents must result in dismissal. This is not the law—federal courts allow the substitution of plaintiffs, mid-lawsuit, when ownership of the lawsuit or the asset at issue changes, to "facilitate the conduct of the litigation" and ensure that "the efforts of the Court and the parties up until this

time [are not] for naught." *Abbott Labs. v. Roxane Labs., Inc.*, No. 12-457, 2013 WL 2322770, at *4 (D. Del. May 28, 2013); *Gen. Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258, 262 (D. Del. 1982); Fed. R. Civ. P. 25(c); *see also United Access Techs. LLC v. EarthLink, Inc.*, No. 02-272, ECF No. 710 (D. Del. Dec. 9, 2010) (allowing United Access to substitute for Plaintiffs months after receiving its interest in the patents). Here, Plaintiffs sold their interests in the patents to United Access, who now seeks to substitute under Rule 25(c). The transfer of the patents does not implicate standing and should not result in dismissal.

**Rule 25(c) and Closed Cases.** Verizon argues that Rule 25(c) has no application to closed cases. But, as explained above, the instant cases are administratively closed, not finally closed, which has "no effect other than to remove a case from the court's active docket." *Penn W.*, 371 F.3d at 127. Because the cases are not finally closed, the Court may substitute United Access in for Plaintiffs under Rule 25(c). *See Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc.*, No. 12-355, 2015 WL 1284243, at *1 (D. Del. Mar 19, 2015) (granting motion to substitute while the case was stayed); *see also* Mot. at 8.

**Standing.** Verizon requests that the Court postpone ruling on subject-matter jurisdiction. Resp. at 16 ("The Court need not and should not address any standing issues in the *Verizon* Delaware Actions, unless those cases can be properly reopened . . ."). Whether the Court addresses subject-matter jurisdiction at this point or later, standing is proper. As shown in United Access' motion, (i) at the inception of each lawsuit, each co-owner plaintiff had Article III standing, and (ii) the substitution of United Access will address any concerns with prudential standing. Mot. at 8-9.[5]

---

[5] *Israel Bio-Engineering* and *Ethicon* (cited by Verizon) do not state otherwise. In *Israel Bio-Engineering*, the Federal Circuit did not require all co-owners to be joined **at the time of filing** (as Verizon claims), but instead stated "Where one co-owner possesses an undivided part of the

**Purchase Agreement.** In its "Supplemental Opposition," (filed only in the *Broadband/Verizon* matter, No. 06-291, ECF No. 36) Verizon claims that United Access does not own the right to pursue the *Broadband/Verizon* action. The Asset Purchase Agreement dated May 28, 2010, provides that right to United Access, and United Access is prepared to file the agreement under seal at the Court's direction. Further, the "Assignment and Confirmation of Ownership" evidences the assignment of both *Verizon* cases. While the No. 06-291 case is not listed at subsection 3(c), the **consolidated** case is listed (No. 05-866). Garza Dec. Ex. C ¶ 3(c). The Assignment (signed by all Plaintiffs in both *Verizon* cases) also shows that United Access received "all rights" in the patents and the "right to . . . enforce" the patents. *Id.* ¶¶ 3, 3(b).

**Coordination.** Verizon speculates that United Access will use coordination to "evade" Plaintiffs' prior discovery responses. Resp. at 17. United Access fully intends to comply with its discovery obligations, and will do so in accordance with the Federal Rules and the Court's Orders. Notably, Verizon did not address the natural parallels between the *Verizon* cases and the *AT&T*, *CenturyTel*, and *Frontier* cases—for example, common claim construction, invalidity cases, and damages cases. To prevent the Court from duplicating efforts over multiple lawsuits (which all remain in their infancy), the Court should coordinate all four lawsuits under Rule 42(a).

---

entire patent, that joint owner **must join** all the other co-owners to establish standing." *Israel Bio-Eng'g Project v. Amgen*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (emphasis added); *accord Mentor H/S Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018-19 (Fed. Cir. 2001) (entertaining a motion to join a co-owner *on appeal*). *Ethicon* dealt with a situation where a co-owner (Mr. Choi) had licensed the defendant, preventing a patent-infringement suit. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) ("[O]ne co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). As no co-owners have licensed Verizon (or have otherwise withheld consent to suit), *Ethicon* is inapplicable here.


## IV. Conclusion

The Court should grant United Access' motions in their entirety.

Dated: November 6, 2015

Respectfully submitted,

 */s/ Stamatios Stamoulis*

| | |
|---|---|
| ANTHONY GARZA (*admitted pro hac vice*)<br>agarza@ccrglaw.com<br>**CHARHON CALLAHAN ROBSON & GARZA, PLLC**<br>3333 Lee Parkway, Suite 460<br>Dallas, Texas 75219<br>Telephone: (214) 521-6400<br>Telecopier: (214) 764-8392<br><br>*Attorneys for United Access Technologies, LLC* | Stamatios Stamoulis (#4606)<br>stamoulis@swdelaw.com<br>Richard C. Weinblatt (#5080)<br>weinblatt@swdelaw.com<br>**STAMOULIS & WEINBLATT LLC**<br>Two Fox Point Centre<br>6 Denny Road, Suite 307<br>Wilmington, DE 19809<br>Telephone: (302) 999-1540<br><br>*Attorneys for United Access Technologies, LLC* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606