## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-866 (LPS) |
| | ) | |
| VERIZON INTERNET SERVICES, INC., et al., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| BROADBAND TECHNOLOGY INNOVATIONS, LLC, and PIE SQUARED, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-291 (LPS) |
| | ) | |
| VERIZON INTERNET SERVICES, INC., et al., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |
| _____ | ) | |

### EXHIBIT K TO THE
### DECLARATION OF JOHN B. WYSS

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN LLP
1776 K Street NW
Washington, DC  20006
Tel: 202.719.7000
Fax: 202.719.7049
jwyss@wileyrein.com
kanderson@wileyrein.com

Dated: November 2, 2015

Jeffrey B. Bove (I.D. #998)
NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
1007 North Orange Street, 9th Floor
Wilmington, Delaware 19801
Tel: (302) 658-9141
Fax: (302) 658-5614
jeff.bove@novakdruce.com

*Attorneys for Defendants*

Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Inline Connection Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Verizon Internet Services, Inc., et al.,<br><br>Defendants. | Civil Action No. 05-866 (JJF)<br><br>**PUBLIC<br>REDACTED VERSION** |

## VERIZON DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DISMISSING THIS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Dated: August 11, 2006

Jeffrey B. Bove (#998)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE 19801
Telephone: 302.658.9141
Facsimile: 302.658-5614

Counsel for Verizon Defendants

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................. 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 2

SUMMARY OF ARGUMENT ............................................................................. 3

STATEMENT OF UNDISPUTED FACTS ............................................................. 7

    A.    The Technology At Issue ................................................................ 7

    B.    The Entities And Individuals Involved In The Ownership Issue .............. 7

    C.    The Original Delaware Lawsuits Filed In 2002 ...................................... 9

    D.    The June 2003 Pie Squared Acquisition Of Inline Patent Rights ............ 10

    E.    Events Leading To The Execution Of The Mercury-BBTI
        "Exclusive License Agreement" ...................................................... 11

    F.    The March 4, 2004 "Exclusive License Agreement" ............................. 13

    G.    The Filing Of The Present Lawsuit On April 6, 2005 ............................ 13

ARGUMENT .................................................................................................. 16

    I.    Only Parties That Have Been Granted "All Substantial Rights"
        Under A Patent Have Constitutional Standing To Sue For Patent
        Infringement ............................................................................... 16

    II.    Inline Transferred "All Substantial Rights" Under The Patents-In-
        Suit To Mercury-BBTI in 2004 ...................................................... 18

        A.    The March 4, 2004 "Exclusive License Agreement"
            Transferred All Significant DSL Patent Ownership Rights
            To Mercury-BBTI ................................................................ 19

        B.    Inline Did Not Retain Any Significant Rights To The
            Patents-In-Suit ................................................................... 21

        C.    Mercury-BBTI Has Effectively Conceded That It Owns
            The Patents-In-Suit .............................................................. 25

    III.    The Present Action Should Be Dismissed With Prejudice ...................... 26

CONCLUSION ............................................................................................... 29

9.     Given the unique circumstances surrounding this litigation, the dismissal should be with prejudice.  Verizon has now been sued three times on the same patents. The only suit over which this Court has proper subject matter jurisdiction is the newly-filed May 3, 2006 action by Mercury-BBTI and Pie Squared -- the real parties in interest and the *de facto* owners of the patents at issue.  The Verizon defendants will respond in that action and all other suits purportedly brought under the same patents should be dismissed with prejudice.  In addition, dismissal with prejudice is also an appropriate sanction for the conduct of Mercury-BBTI and its counsel in attempting to "forum shop," evade and/or relitigate Judge Thynge's adverse rulings in the *AOL/EarthLink* litigations, and conceal the existence of the real parties in interest – all of whom are Delaware corporations.  *See Sicom Systems Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (district court has discretion to dismiss for lack of standing with prejudice); *Schrieber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204-05 (Fed. Cir. 2005) (misrepresentation of patent ownership and withholding information that would reveal lack of ownership is sanctionable).

## STATEMENT OF UNDISPUTED FACTS

### A.     The Technology At Issue

This case concerns so-called Digital Subscriber Line ("DSL") technology which is used to provide internet access by transmitting data over telephone lines that allow simultaneous use of the lines for regular voice communications.  *See* Inline Motion To Stay (D.I. 81 at 2).  The specific technology at issue, so-called "splitterless ADSL service," is described in more detail in Magistrate Judge Thynge's decisions in the co-

pending *AOL/EarthLink* litigations. *See Inline Connection Corp. v. AOL/EarthLink*, 364 F. Supp. 2d 417, at pp. 422-433 (D. Del. 2005).[3]

## B.     The Entities And Individuals Involved In The Ownership Issue

**Goodman/Inline**. David Goodman is listed as one of the named inventors on each of the patents-in-suit. In 1988, Goodman started a company known as Inline Connection Corporation ("Inline"). All of the 1989 and 1991 priority patent applications for the patents-in-suit were originally assigned to Inline by the named inventors. Goodman is the president and controlling stockholder of Inline.

**Paperboy/Pie Squared/Mercury-BBTI**. Paperboy Ventures LLC ("Paperboy") is a Delaware corporation with offices located at 1875 K Street, NW, Washington, DC. Paperboy is an investment company established by Allen Anderson. Other key personnel at Paperboy include Anthony ("Tony") Garland, Paperboy's CFO, and Jaime Lewis, Paperboy's business director who manages the investments on behalf of Tony Garland. Wilkinson Dep. Tr. 33-36, 225 (A386-87).[4]

Pie Squared LLC ("Pie Squared") is a single-purpose shell entity wholly-controlled by Paperboy. Paperboy established Pie Squared as a newly-formed Delaware corporation on June 18, 2003.                                        *Id.* at 77 (A392).

REDACTED

225 (A392).

---

[3]    According to Inline: "The *AOL case* and this lawsuit involve substantially the same patent claims and accused technology and services" (D.I. 81 at 11). Although the patents-in-suit purport to cover DSL technology, the named inventor Goodman has admitted that one skilled in the art could not possibly have created a DSL system from his disclosure.

[4]    Rule 30(b)(6) deposition of Pie Squared LLC and Broadband Technologies Innovations, Inc. through their designated representative, Philip A. Wilkinson, taken on June 15, 2006 in the *AOL/EarthLink* cases. Pertinent excerpts of the Wilkinson deposition transcript are reproduced in the Appendix at A382-403.

*Id.* at 76-78, 251 (A392-93, 400).        REDACTED

*Id.* at 78 (A393).

Mercury-BBTI is another shell Delaware LLC controlled by Paperboy.  Mercury-

BBTI was originally established under the name Mercury Communications I, LLC

("Mercury") on March 4, 2004, but changed its name to Broadband Technology

Innovations ("BBTI") on September 29, 2005.        REDACTED

(A209, 226). '

Wilkinson Dep. Tr. 33, 238, 253 (A386, 396, 400).

*Id.* at 54-55, 59, 70, 175, 242 (A388, 389, 391, 395,

399).        REDACTED

*Id.* at 236-37, 250-51 (A397, 400).

## C.    The Original Delaware Lawsuits Filed In 2002

In early 2002, Inline entered into a contingency arrangement with the Kile law

firm[5] to bring patent infringement lawsuits against various defendant companies under

the patents-in-suit that had then issued.  Under the terms of this arrangement,

REDACTED

(*see* A010).

---

[5]    The Kile law firm is a District of Columbia professional limited liability company that has
had various names during the relevant time period, including Kile Goekjian Lerner & Reed PLLC
and Kile Goekjian Reed & McManus, PLLC.

In April and June of 2002, Inline filed complaints in this Court against Verizon Communications, Inc. ("Verizon") (C.A. No. 02-878), AOL (C.A. No. 02-272) and EarthLink (C.A. No. 02-477). Each of the complaints alleged that, as of April and June 2002, Inline owned "the entire right, title and interest" in the patents-in-suit.

Verizon, AOL and EarthLink answered Inline's Delaware complaints. Shortly after Verizon filed its Answer on September 3, 2002, it filed a motion for summary judgment arguing in effect that Inline had named the wrong Verizon entity (*i.e.*, Verizon Communications Inc. was a holding company and the ultimate parent of all Verizon companies). Inline did not file a substantive response to Verizon's motion, nor did Inline amend its complaint to name the proper Verizon entities that actually offered the accused ADSL service. Instead, Inline made a tactical decision to dismiss the action against Verizon on September 17, 2002, and to proceed solely against AOL and EarthLink.[6]

**D.     The June 2003 Pie Squared Acquisition Of Inline Patent Rights**

In June of 2003, Inline and the Kile law firm negotiated a new set of agreements to fund the *AOL/EarthLink* litigations (A009-11). They brought in the Swidler law firm[7] and Paperboy (referred to as the "Investor Group"). Under the new arrangement,

REDACTED          from the *AOL/EarthLink* cases, as well as

(*see* A243).

---

[6]     These facts are judicially-noticeable from this Court's dockets in the original 2002 lawsuits against Verizon, AOL and EarthLink.

[7]     The Swidler law firm was a District of Columbia limited liability partnership which operated under the name Swidler Berlin Shereff Friedman, LLP and Swidler Berlin LLP. In early 2006, the Swidler law firm became part of Bingham McCutchen LLP.

REDACTED                                              (A010;

A243).  In return,


(A243).  The Kile law firm and Inline agreed

(A010).

As part of the new arrangement,                REDACTED

In

addition, the new arrangement included

(Paperboy's CFO)

(A020-64).[8]  Pursuant to this agreement,

REDACTED



· (A029).[9]

REDACTED



---

[8]      The June 30, 2003 Agreement is also sometimes referred to as the "4-way" agreement in
subsequent documents, reflecting the distinct interests of (1) Inline/Goodman; (2) the Swidler
firm; (3) the Kile law firm; and (4) Pie Squared/Tony Garland.

[9]      In order to provide collateral to insure Inline's prompt and full performance under the 4-
way Agreement, Inline

REDACTED

(A065-070).

**E.   Events Leading To The Execution Of The Mercury-BBTI "Exclusive License Agreement"**

In October of 2003, Goodman met with Paperboy's patent attorneys from the Heller law firm (*see* A081; A103).[10]  Goodman explained to the Heller attorneys that his original 1989 and 1991 patent applications could be used to secure new patent claims covering DSL services (*id.*).  Shortly thereafter, Paperboy's counsel at Hanify & King proposed a new ownership arrangement to Inline  (A080).  The proposed arrangement included                                  REDACTED


(*id.*).

Goodman expressed a series of concerns regarding the proposed assignment of Inline's intellectual property rights to Mercury (A081-82; A083).  As of January 26, 2004, Goodman remained "very confused," as the discussions had evolved into a much broader ownership arrangement that would involve modifications of the agreements previously reached with Pie Squared, the Swidler law firm and the Kile law firm in the June 30, 2003 "4-way Agreement" (A084).

On the following day, January 27, 2004, Judge Thynge issued her Markman decision in the *AOL/EarthLink* cases (302 F. Supp. 2d 307).  Under Judge Thynge's claim construction, ADSL services provided from a telephone company central office, which represents approximately 90% of the ADSL lines in service, do not infringe any of the patents at issue .  This ruling was clearly adverse to Inline and the other parties, *i.e.*,

---

[10]   The Heller law firm is a limited liability partnership that currently operates under the name HellerEhrman LLP.  The Heller website lists Paperboy as a client of the firm's patent and trademark practice.

the Swidler law firm and Paperboy/Pie Squared, who had made substantial investments in

the *AOL/EarthLink* litigations.[11]

   After the Markman ruling, Paperboy and the Swidler law firm pressed for a

complete renegotiation of the July 30, 2003 agreements.  *See* A104

REDACTED


A105

REDACTED


   The new arrangement was embodied in seven separate contracts that were finalized

between February 27, 2004 and March 4, 2004  (*see* A245).[12]  The agreements consist of:

(A) a "Termination and Release Agreement" (A134-44), that dissolved the prior June 30,

2003 "4-way" Litigation Agreement; (B) a "Participation Agreement" (*see* A106-14) that

REDACTED

(C) a "Retention Agreement" (*see* A097-102 and A147-152), that

REDACTED          (D) a "LLC Agreement" (A198-229)

---

[11]    *See, e.g.,* Wilkinson Dep. Tr. 339-41 (A403) (Markman ruling was adverse because it
eliminated central office ADSL service which diminished scope of damages); A089 (agreement
drafted by Swidler attorneys states that "a decision by the United States District Court for the
District of Delaware in the *Markman* hearing in two of the Current Patent Suits <u>was adverse to
Inline</u>); A117 (same); A243 (under Judge Thynge's Markman ruling, "the defendant can use the
10th element to avoid infringement").

[12]    As Inline explained to its shareholders (A243-46), the new agreements "[f]ollowing the
*Markman* ruling" were based on various considerations, including:  (a) although Judge Thynge
ruled in Inline's favor in 9 of the 10 claim construction elements, "the defendant can use the 10th
element to avoid infringement" (A243); (b) the Swidler law firm had already incurred over $2.7
million and "did not want to do any further work on a contingency basis (A 243-44); and (c) the
"Investment firm," *i.e.,* Paperboy/Pie Squared, had already paid $2 million and refused to do any
further work with the Kile law firm (*id.*).

REDACTED

(F) an Exclusive License Agreement (A180-97) which

and (G) a Consulting Agreement (A230-35)

## F.     The March 4, 2004 "Exclusive License Agreement"

The March 4, 2004 "Exclusive License Agreement" between Inline/Goodman and

Mercury-BBTI is reproduced in the accompanying Appendix at pages A180-97.  The

terms of the agreement speak for themselves.  As discussed *infra*, pp. 17 - 25, the

Exclusive License Agreement                         REDACTED

## G.     The Filing Of The Present Lawsuit On April 6, 2005

On April 6, 2005, Mercury-BBTI's counsel at the Heller law firm filed a complaint

initiating the present action in the Eastern District of Virginia (A294-314).  That same

day, Mercury-BBTI's other attorneys at the Swidler law firm sent some three dozen

identical letters to various other telecommunications companies notifying them that the

Verizon lawsuit had just been filed, that Mercury-BBTI was the exclusive licensee of the

asserted patents, and that the Swidler attorneys on the licensing/settlement team

represented both Inline and Mercury.  Wilkinson Dep. Exh. 10 (A292-93); Wilkinson Tr.

98-100, 296-97 (A394, 401).

The complaint filed in Inline's name in the Eastern District of Virginia against the

Verizon defendants, however, made absolutely no mention of Mercury-BBTI, Pie

Squared or Paperboy – all of which are Delaware corporations.  Instead, the complaint

alleged that: "Inline is the owner of <u>all</u> right, title and interest in and to the '596, '718,

'446 and '585 Patents" (A308 at ¶ 24).  This allegation was not true, since Inline had

previously assigned                         REDACTED

(A012-19)                                     REDACTED


: (*see infra*, pp. 18 - 24).

Some four months after the present lawsuit was filed, Inline, Goodman and

Mercury-BBTI concluded a new agreement – called the "Verizon Agreement" –

governing the present litigation (A316-66).  Although the Verizon Agreement was back-

dated "as of this 13th day of April 2005," it was, in fact, not executed until sometime in

August of 2005 (*see* A315).[13]

The Verizon Agreement expressly
                                                          REDACTED
the March 4, 2004 Exclusive License




REDACTED




In addition, the Verizon Agreement expressly

REDACTED

*See* A331 ("The

---

[13]     The copy of the Verizon Agreement produced to the Verizon defendants and recently
submitted by Inline to the Virginia district court is incomplete.  The Heller and Swidler
engagement letters (Exhibit C) and the agreement between Inline/Goodman and the Kile law firm
(Exhibit D) have not been produced, even though they are incorporated into and constitute an
integral part of the Verizon Agreement.  In any case, it is undisputed that:  (a) at the time this
lawsuit was filed on April 6, 2005, the Heller law firm represented Paperboy and Mercury-BBTI;
(b)  a month later, on March 9, 2005, the Heller law firm sent an engagement letter to Tony
Garland at Mercury-BBTI confirming the terms on which Heller would provide legal services in
connection with the present lawsuit; and (c) subsequently, on July 26, 2005, the Swidler law firm
sent Mercury-BBTI and Inline a new engagement letter.  It appears that the March 9 and July 26
engagement letters constitute the missing Exhibit C to the Verizon Agreement.

REDACTED

## ARGUMENT

### I. Only Parties That Have Been Granted "All Substantial Rights" Under A Patent Have Constitutional Standing To Sue For Patent Infringement.

The question of standing to sue in a patent infringement case is jurisdictional. *Aspex*, 434 F.3d at 1339; *Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 U.S. Dist. LEXIS 7367 (D. Del., March 18, 2005) at ¶ 6; *Monsanto Co. v. Aventis*, 226 F. Supp 2d 531, 537 (D. Del. 2002). Standing to sue is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of the [jurisdictional] doctrines." *FW/PGS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Under controlling Federal Circuit precedent, a party may bring an action for patent infringement only if it "owns" the patent either by issuance or by assignment. *Speedplay*, 211 F.3d at 1249-50. The party that "owns" a patent for purposes of standing and subject matter jurisdiction is the party that "has been granted <u>all substantial rights</u> under the patent" (*id.* at 1250).

> A grant of <u>all substantial rights</u> in a patent amounts to an assignment – that is a transfer of title in the patent – which confers constitutional standing on the assignee to sue for patent infringement in its own name.

*Intellectual Property Dev. Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2015, I caused a true and correct copy of the

foregoing *Exhibit K to the Declaration of John B. Wyss* to be sent to plaintiff's counsel,

in the manner indicated, upon:


> Julia Heaney
> Mary B. Graham
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> Wilmington, DE 19899-1347
> jhefiling@mnat.com
> mbgefiling@mnat.com


This confidential document is not being served on counsel listed below for United

Access Technologies, LLC because United Access Technologies, LLC is not a party in

these case(s), and is not covered by the protective order.


> Stamatios Stamoulis
> Stamoulis & Weinblatt LLC
> Two Fox Point Centre
> 6 Denny Road, Suite 307
> Wilmington, DE 19809


> Anthony M. Garza
> Charhon Callahan Robson & Garza, PLLC
> 3333 Lee Parkway, Suite 460
> Dallas, TX 75219


                                             /s/  Jeffrey B. Bove
                                             Jeffrey B. Bove (#998)